## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cr-123 (PLF)** |
| | ) | |
| **VITALI GOSSJANKOWSKI,** | ) | |
| | ) | |
| **Defendant** | ) | |
| _____ | ) | |

## MOTION TO DISMISS OBSTRUCTION CHARGE
## UNDER 18 U.S.C. § 1512(c)(2) (COUNT TWO)

Vitali GossJankowski, through undersigned counsel, and pursuant to Fed. R. Crim. P.

12(b)(3), hereby respectfully requests that the Court dismiss Count Two of the Superseding

Indictment, which charges him with obstruction of an official proceeding under 18 U.S.C. §

1512(c)(2) & 2.

In Count Two, the Superseding Indictment alleges that on or about January 6, 2021, in

the District of Columbia and elsewhere, Mr. GossJankowski

> attempted to, and did, corruptly obstruct, influence, and impede an official
> proceeding, that is, a proceeding before Congress, specifically, Congress's
> certification of the Electoral College vote as set out in the Twelfth Amendment of
> the Constitution of the United States and 3 U.S.C. §§ 15-18.

ECF No. 41. This Court should dismiss Count Two because it is fatally flawed for several

reasons.

First, undersigned counsel acknowledgesthat this Court has considered similar

arguments and largely found them to be unpersuasive in *United States v. Puma*, No. 21-CR-0454

(PLF), 2022 WL 823079 (D.D.C. Mar. 19, 2022). However, the U.S. Supreme Court and the

D.C. Circuit have not ruled on this issue and Judge Nichols recently found in another January 6

case that the conduct Mr. GossJankowski has been accused of committing cannot qualify as

conduct that "otherwise obstructs, influences, or impedes" an official proceeding, within the meaning of Section 1512(c)(2). *United States v. Miller*, 1:21-CR-119 (CJN), 2022 WL 823070 (D.D.C. March 7, 2022) [hereinafter "*Miller* mem. op."].[1] Mr. GossJankowski submits that the rationale applied by Judge Nichols applies with equal force to his case.

       Second, 18 U.S.C. § 1512(c)(2) only prohibits the corrupt obstruction of tribunal-like proceedings before Congress related to the administration of justice. It does not prohibit the obstruction of a ceremonial meeting in Congress like the certification of the electoral college vote. Thus, Mr. GossJankowski's alleged obstruction of the certification of the electoral college vote is not a crime under 18 U.S.C. § 1512(c). Third, Section 1512(c)(2) is unconstitutionally vague in that "corruptly" is undefined, vague on its face, and vague as applied to the facts of this case.

       For these reasons, and in light of the demands of the rule of lenity, Mr. GossJankowski respectfully requests that the Court dismiss Count Two.[2]

---

[1] Judge Nichols's opinion is attached hereto as Ex. 1.  Judge Nichols subsequently denied a government motion to reconsider his order.  That opinion is attached hereto as Ex. 2.

[2] Mr. Gossjankowski recognizes that several of this Court's colleagues have recently denied motions to dismiss charges of obstruction under 18 U.S.C. § 1512(c)(2). *See* Memorandum Opinions in *United States v. Williams*, No. 21-CR-618 (ABJ), 2022 WL 2237301 (D.D.C. June 22, 2022); *United States v. Andries,* No. 1:21-CR-93 (RC), 2022 WL 768684 (D.D.C. March 14, 2022)*; United States v. Robertson*, 1:21-CR-34 (CRC), 2022 WL 969546, *3-7 (D.D.C. February 25, 2022); *United States v. Sandlin, et al.*, No. 21-CR-88 (DLF), 2021 WL 5865006 (D.D.C. Dec. 10, 2021)*; United States v. Caldwell et al.*, No. 21-CR-28 (APM), 2021 WL 6062718 (D.D.C. Dec. 20, 2021); *United States v. Nordean, et al.,* No. 21-CR-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021); *United States v. Mostofsky*, No. 21-CR-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021); *United States v. McHugh*, 21-CR-453 (JDB), 2022 WL 296304 (D.D.C. Feb. 1, 2022). However, in *United States v. Miller*, Judge Nichols dismissed the obstruction count concluding that "§1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *Miller* mem. op. at 28.

I.      **COUNT TWO FAILS TO ALLEGE CONDUCT THAT "OTHERWISE OBSTRUCTS, INFLUENCES, OR IMPEDES ANY OFFICIAL PROCEEDING."**

Count Two fails to allege an *actus reus* that falls within 18 U.S.C. § 1512(c)(2). *See Miller* mem. op. at 15 (dismissing obstruction count in a January 6 case where Indictment did not allege or imply that defendant Miller "took some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence Congress's certification of the electoral vote.").

Section 1512(c) of Title 18 provides:

(c) Whoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

Because Section 1512(c)(2) only prohibits "otherwise obstruct[ing], influenc[ing], or imped[ing] any official proceeding," only acts that fall within that clause violate the act. This is because the "otherwise" clause must be construed in light of § 1512(c) as a whole, and the broader statutory context for that provision. As Judge Nichols found in the attached opinion and as the Department of Justice's own Attorney General recently explained, Supreme Court case law demonstrates that this is so. Relying on *Begay v. United States*, 553 U.S. 137 (2008), and *Yates v. United States,* 574 U.S. 528 (2015), the former Attorney General explained:

[I]t is clear that use of the word "otherwise" in the residual clause [of Section 1512(c)(2)] expressly links the clause to the forms of obstruction specifically defined elsewhere in the provision. Unless it serves that purpose, the word "otherwise" does no work at all and is mere surplusage. [An] interpretation of the residual clause as covering any and all acts that influence a proceeding reads the word "otherwise" out of the statute altogether. But any proper interpretation of the clause must give effect to the word "otherwise;" it must do some work.

Memorandum from William Barr to Deputy Attorney General Rod Rosenstein and Assistant

Attorney General Steve Engel of June 8, 2018 [hereinafter "Barr Memo"] at 4 (emphasis

omitted).[3] After discussing *Begay* and *Yates* and how those cases emphasized that "specific

examples enumerated prior to the residual clause are typically read as refining or limiting in

some way the broader catch-all term used in the residual clause," he continued,

> Consequently, under the statute's plain language and structure, the most natural
> and plausible reading of 1512(c)(2) is that it covers acts that have the same kind
> of obstructive impact as the listed forms of obstruction — *i.e.*, impairing the
> availability or integrity of evidence — but cause this impairment in a different
> way than the enumerated actions do. Under this construction, then, the "catch all"
> language in clause (c)(2) encompasses any conduct, even if not specifically
> described in 1512, that is directed at undermining a proceeding's truth-finding
> function *through actions impairing the integrity and availability of evidence.*

*Id.* at 4-5 (emphasis omitted) (emphasis added).[4]

The former Attorney General noted that case law reflects this application of the residual

clause as only applying to "attempts to interfere with, or render false, evidence that would

---

[3] Available at https://s3.documentcloud.org/documents/5638848/June-2018-Barr-Memo-to-DOJ-Muellers-Obstruction.pdf (last visited Sept. 9, 2022).

[4] Although *Yates* was a plurality opinion, Justice Alito's concurring opinion also supports the former Attorney General's and Mr. GossJankowski's position. According to Justice Alito, the statute's list of nouns, its list of verbs, and its title all stood out as showing that the statute in question did not reach the conduct of the defendant in that case. *Yates*, 574 U.S. at 549 (Alito, J., concurring). Regarding the nouns, Justice Alito considered the application of both *noscitur a sociis* and *ejusdem generis* to find that the term "tangible object" should refer to "something similar to records or documents." *Id*. at 549–50. In this case, Section 1512(c)(1) refers to "a record, document, or other object." There is no allegation that Mr. GossJankowski interfered with any such item, much less any evidence. Justice Alito then looked at the verbs and noticed some glaring problems trying to apply those verbs to any tangible object. *Id*. at 551 ("How does one make a false entry in a fish?"). Because there was no evidence interfered with by Mr. GossJankowski (nor will there ever be), the verbs in Section 1512(c) have no object to reference. Finally, Justice Alito pointed to the title of the statute: "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy" and noted "This too points toward filekeeping, not fish." *Id*. at 552. The title of Section 1512 clearly supports a finding that it was not intended to apply to all forms of obstructive conduct.

4

become available to a proceeding" or "to prevent the flow of evidence to a proceeding." *Id*. at 5

(citing *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014) (soliciting tips from corrupt

officers to evade surveillance); *United States v. Phillips*, 583 F.3d 1261 (10th Cir. 2009)

(disclosing identity of undercover agent to subject of grand jury drug investigation); *see also e.g.*

*United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (involving false testimony to a grand

jury); *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (involving intentional false

statements to court during a preliminary injunction hearing); *United States v. Lucas*, 499 F.3d

769, 780–81 (8th Cir. 2007) (involving a defendant having others falsely claim ownership of a

firearm); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007) (involving defendant's

"attempt[s] to orchestrate" grand jury witness's testimony by sending notes to an attorney who in

turn "coached" the witness); *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015)

(involving false statements in a court proceeding); *United States v. Pugh*, 945 F.3d 9, 28 (2d Cir.

2019) (involving destruction of several USB drives and deletion of data); *see also United States*

*v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (involving providing false answers to interrogatories

in a civil law suit filed by a person seeking damages for mistreatment while in police custody,

explaining that §1512(c)(1) "covers obstructive conduct in the form of physical destruction of

documents and records" whereas § 1512(c)(2) covers "otherwise" obstructive behavior to

include giving false statements in interrogatories relating to a civil law suit). As the former

Attorney General correctly observed, "the natural and plausible reading of 1512(c)(2)" requires

some conduct that impairs the integrity and availability of some *evidence.*

      This is entirely consistent with the legislative history of Section 1512(c)(2) as noted by

the former Attorney General and Judge Nichols in *Miller*. *See Miller* mem. op. at 23. Section

1512(c) was passed as part of the Sarbanes-Oxley Act of 2002, "[a]n Act to protect investors by

improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." SARBANES-OXLEY ACT OF 2002, Pub. L. No. 107-204, 116 Stat. 745. Subsection (c) was added in part to ensure that there would be liability for those who destroyed records before an "official proceeding" had convened even if they did not foresee one convening (so long as their intent is to ensure that the records would be unavailable), and even if they acted alone (rather than caused others to act in ways that obstructed justice), largely in reaction to Arthur Andersen LLP having evaded criminal liability for destroying documents in the wake of the Enron scandal under Section 1512(b)(2), because that section only criminalized actions directed at another person. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707-07 (2005).

The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations." S. REP. NO. 107-146, at 2 (2002). The Committee Report noted that much of Arthur Andersen's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron." *Id.* at 4. Congress was adamant that "[w]hen a person destroys evidence with the intent of obstructing any type of investigation and the matter is within the jurisdiction of a federal agency, overly technical legal distinctions should neither hinder nor prevent prosecution and punishment." *Id.* at 6-7. Thus, the legislative history of Section 1512(c)(2) "was expressly designed to 'clarify and close loopholes in the existing criminal laws *relating to the destruction or fabrication of evidence* and the preservation of financial and audit records.'" Barr Memo at 5-6 (quoting S. REP. NO. 107-146, at 14-15) (emphasis added). As Judge Nichols put it, "in the wake of the Enron scandal, Congress was faced with a very specific loophole: that then-

existing criminal statutes made it illegal to case or induce another person to destroy documents, but it did not make it illegal to do by oneself. Congress closed that loop by passing subsection (c), and *nothing in the legislative history suggest a broader purpose than that." Miller* mem. op. at 28 (emphasis added). Likewise, the former Attorney General also observed that "[r]eading the residual clause as an all-encompassing proscription cannot be reconciled either with the other subsections of § 1512, or with the other obstruction provisions in Title 18 that must be read in *pari passu* with those in § 1512." Barr Memo at 5.

　　If Section 1512(c)(2) is interpreted as the government wants it to be — as an all-encompassing catch-all to include something so unique as protesting the electoral vote count (when it could have no actual impact on the outcome of the election) — "clause (c)(2) would render all the specific terms in clause (c)(1) surplusage; moreover, it would swallow up all the specific prohibitions in the remainder of § 1512 — subsections (a), (b), and (d)." *Id*. And, as Mr. Barr continued, "[m]ore than that, it would subsume virtually all other obstruction provisions in Title 18. . . . It is not too much of an exaggeration to say that, if § 1512(c)(2) can be read as broadly as being proposed, then virtually all Federal obstruction law could be reduced to this single clause." *Id*.; *see also Marx v. General Revenue Corp*., 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

　　In sum, the canons of construction employed by the Court in *Begay* and *Yates*, the text, structure, and the practical application of Section 1512(c)(2) as demonstrated in caselaw, as well as its legislative history, all support a holding that the "otherwise" clause in Section 1512(c)(2) must be construed in a similar vein to the terms that are in clause one. Thus, in order for Count Two to sufficiently allege a violation, it must allege that Mr. GossJankowski took "some action

with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding." *Miller* mem. op. at 28. Because no such allegation exists in the Superseding Indictment here (nor can there ever be one), this Court should adopt the reasoning applied by Judge Nichols in *Miller* and dismiss Count Two of the Superseding Indictment alleging a violation of Section 1512(c)(2).

## II.   THE CERTIFICATION OF THE ELECTORAL VOTE WAS NOT AN "OFFICIAL PROCEEDING."

### A.   Section 1512(c)(2) prohibits obstructing only "official proceedings," which are tribunal-like proceedings relating to the administration of justice.

Congress defined the term "official proceeding" for purposes of Sections 1512 and 1513 in Section 1515(a)(1), as follows:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

The language of the statute suggests that the term "official proceeding" refers to tribunal-like proceedings relating to adjudication, deliberation, and the administration of justice, all features which the electoral count lacks. As such, though the counting of the electoral vote takes place in Congress, it is not an "official proceeding."

        i.     *The text in and around Sections 1515 and 1512 support this view.*

A judge in this Circuit recently examined the qualities of an "official proceeding," holding that the "plain meaning of § 1512(c)(2) and § 1515(a)(1)(A) is unambiguous—an informal, routine agency action like clearance-adjudication does not fall within the statutory definition of an "official proceeding." *U.S v. Guertin*, 1:21-CR-262 (TNM), 2022 WL 203467 (D.D.C. Jan. 24, 2022) at *5. Instead, the court found that an "official proceeding" must "resemble a formal tribunal." *Id.* at *6. By the rationale applied by this Court in *Guertin*, the electoral count likewise does not qualify as an "official proceeding."

    In *Guertin*, the court began by noting that "official proceeding" can have a broad or narrow definition. The court found for good reason that the narrow definition must be applied. *Id*. at *5. The court then went on to analyze the text of 1512(c)(2), observing that "official" appears before "proceeding," thus "textually limiting covered proceedings to those bearing indicia of officiality." *Id* at *7. Next, the court found that the definitional provisions in 1515(a)(1) support that reading, observing that the "word 'before' suggests an 'official proceeding' would typically entail convening a formal tribunal or adjudicative body before which parties are compelled to appear." *Id*. (internal citations omitted) (emphasis omitted). After careful textual analysis, the court held that taken together, Sections 1515(a)(1) and 1512 make clear that a covered "proceeding before a Federal government agency" must resemble a formal tribunal." *Id. See also United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013) (analyzing the text in and surrounding Sections 1515 and 1512 to determine that the phrase "a proceeding before a Federal Government agency which is authorized by law" in Section 1515(a)(1)(C) does *not* include FBI investigations); *United States v. Ramos,* 537 F.3d 439, 462–63 (5th Cir. 2008) (stating that "use[ of] the preposition 'before' in connection with the term 'Federal Government agency' . . . implies that an 'official proceeding' involves some formal convocation of the agency

in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency."). The foregoing analysis demonstrates that Section 1515(a)(1)(B) does not include the counting of electoral votes.

          ii.     *The electoral count is not an official proceeding because it is a ceremonial event.*

Just as the "criminal investigation" in *Ermoian* and the "routine certification" in *Guertin* did not meet the definition of an "official proceeding" under the obstruction of justice statute with the full context in mind, neither does the electoral vote count meet that same definition here. Indeed, when considering Congress's role in counting electoral votes pursuant to the 12th Amendment and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15, it is clear that the electoral count is a ceremonial and administrative event, bearing no resemblance to a tribunal. The Twelfth Amendment and 3 U.S.C. § 15 place responsibility on Congress to count electoral votes *after* the states have already heard disputes and certified the vote. *See Bush v. Gore*, 531 U.S. 98, 113 (2000) (Rehnquist, J. concurring) (the "State's selection of electors shall be conclusive, and shall govern in the counting of the electoral votes."). The Joint Session does not have the power under the Constitution to actually reject the votes of any State. *See* Vasan Kesavan, *Is the Electoral Count Act Unconstitutional*?, 80 N.C. L. REV. 1653, 1709 (2002) [hereinafter Kesavan].

Thus, though the electoral vote count may be "official," no one is "before" the Congress in that proceeding; the proceeding entails no formal investigation or consideration of facts; and there is little to no discretion on the part of the Joint Session of Congress and its Presiding Officer. No parties are summoned to attend the proceeding; no witness or evidence is produced, offered or taken; and nothing is adjudicated by Congress. As such, the electoral vote count is nothing like tribunal proceedings, and has nothing in common with the "business done in

courts," or acts "done by the authority or direction of the court, express or implied." *See Ermoian*,752 F.3d at 1170 ("'Proceeding' is a word much used to express the business done in courts and "is an act done by the authority or direction of the court, express or implied.") (quoting Black's Law Dictionary commentary, cited *supra*). Instead, the vote count is entirely ministerial and ceremonial.

The history of "objections" lodged at the Electoral Count further demonstrate the ceremonial nature of the electoral count. The past objections were mostly made in the 1800's because of the confusion of when new states were admitted to the union and how that impacted whether their votes should count. Objections were ultimately rejected because it was determined that the Joint Session did not have the authority to judge the proceedings already had in the states. *See* Kesavan, *supra,* at 1678-94. In 1876, the most tumultuous American election thus far, Samuel Tilden and Rutherford Hayes were separated by one electoral vote and four states sent Congress multiple electoral returns. *Id.* Instead of the Joint Session resolving this issue (because Congress recognized that the Joint Session did not have the authority to do so), Congress formed a separate commission to sort through the chaos and decide the issues of fact and law presented. *Id*. Subsequently, to address issues like this in the future, Congress enacted the Electoral Count Act of 1887, placing on the states the responsibility to resolve disputes about electors and their appointments and certifications. Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 FLA. L. REV. 540, 543 (July 2004).

In 1969, there was an objection that a vote sent up to Congress from North Carolina should not be counted because it reflected the "faithless" elector who had refused to give his vote to Richard Nixon, despite Nixon winning the popular vote in that state. The objection was

rejected, and the vote at issue counted, because of the strong reminder of representatives such as

R. Rarick who said:

> We are not election supervisors nor given the discretion to re-compute the vote received from a sovereign state. The Constitution clearly proscribes our duty as to 'count the electoral votes,' the ***ministerial*** function of a central collecting agency and a tabulating point.

Kesavan, *supra,* at 1694, 2022 (emphasis added).

For all these reasons, the Electoral Count is not "a proceeding" akin to a formal hearing and it is not "tribune-like," as the court found to be required in *Guertin*. Rather, it is a ceremonial meeting of both houses of Congress. While steeped in tradition, it decides nothing. It is a political performance conducted in order to give the country a feeling of finality over the already final election results. As a result, the Electoral Count is not an "official proceeding" and Count Two of the Superseding Indictment should be dismissed.

## III.   SECTION 1512(c)(2) IS UNCONSTITUTIONALLY VAGUE BECAUSE "CORRUPTLY" IS VAGUE.

The Court should dismiss Count Two of the Superseding Indictment for a third and related reason.  Section 1512(c)(2) as applied to Congressional proceedings fails to provide constitutionally required notice of what the statute prohibits because the contextual meaning of "corruptly" is vague. In the alternative, the only construction of "corruptly" that might enable the statute to pass constitutional muster is acting with the intent to obtain an unlawful advantage for oneself or an associate contrary to the due administration of justice. But because the Superseding Indictment against Mr. GossJankowski fails to allege anything related to the administration of justice, the Court should dismiss Count Two. In addition, this Court should dismiss Count Two because, under any definition of "corruptly," the Superseding Indictment fails to allege how it is that Mr. GossJankowski acted corruptly.

In order to comply with the requirements of due process, a statute must give fair warning of the prohibited conduct. *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964). A statute is unconstitutionally vague under the due process clause if "it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595–96 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) ("[A] penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries ... pursue their personal predilections.'"); *Connally v. General Construction Company*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."). The allegations against Mr. GossJankowski in Count Two of the Superseding Indictment fail in both respects.

A.      **"Corruptly," as used in Section 1512(c)(2), is unconstitutionally vague.**

In *United States v. Poindexter,* 951 F.2d 369 (D.C. Cir. 1991) the Court of Appeals for this Circuit ruled that the word "corruptly" is prone to causing vagueness in a case concerning Section 1505, which criminalizes

> [w]hoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress –

18 U.S.C. § 1505.

Congress later added the definition of "corruptly" now applicable to the statute via Section 1515(b)), but in *Poindexter*, the court analyzed the text without that context. The court stated that the word "corruptly" in the text "must have some meaning, because otherwise the statute would criminalize all attempts to 'influence' congressional [proceedings] – an absurd result that Congress could not have intended in enacting the statute." *Poindexter*, 951 F.2d at 377 (analyzing application of § 1505 as applied to making false statements to Congress).

The court also found that dictionary alone did not make clear what that meaning is. First, there are several dictionary definitions:

> "[C]orruptly" is the adverbial form of the adjective "corrupt," which means "depraved, evil: perverted into a state of moral weakness or wickedness . . . of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." A "corrupt" intent may also be defined as "the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others."

*Id.* at 378 (quoting *United States v. North*, 910 F. 2d 843, 881-82 (D.C. Cir. 1990)). Poindexter argued that, "so defined, 'corruptly' is vague as used in section 1505." *Id.* at 1378. Mr. GossJankowski argues that, so defined, "corruptly" as used in Section 1512 is as well.

The Court of Appeals acknowledged, and this Court must as well, that "on its face, the word 'corruptly' is vague; that is, in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'" *Id.* at 378. And, just as the D.C. Circuit found that "corruptly influencing" a congressional inquiry "does not at all clearly encompass lying to Congress, which is, by way of contrast, clearly a violation of § 1001," *id.*, this Court must acknowledge that the conduct alleged in the instant Superseding Indictment – which also would clearly violate another statute (40 U.S.C. § 5104) – does not clearly fall within "corruptly . . . otherwise obstructing, influencing, or impeding" an official proceeding, using the dictionary definitions of "corruptly." That is because "[t]he various dictionary definitions of the adjective

14

'corrupt'" are themselves vague. *Id.* "Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific – indeed they may be less specific – than 'corrupt.'" *Id.* at 378-79. Because of this, the Court of Appeals for this Circuit found the word "corruptly" as used in Section 1505 "too vague to provide constitutionally adequate notice that it prohibits lying to the Congress." *Id.* at 379.

Applying the logic of *Poindexter*, the only way the use of the word in Section 1512 can avoid the same fate is if the text or other context "clearly indicates a more specific meaning of the term 'corruptly,'" and Mr. GossJankowski's "conduct comes within that meaning." *Id.* at 379 (considering whether the use of the word, the legislative history of 1505, or judicial gloss on the statute provided a clear indication of a more specific meaning of the word in that statute, and ultimately concluding that it did not).

In *Poindexter*, the court first considered whether the usage of the word "corruptly" gave it more definition. *Id.* at 379. The court noted:

> the verb "corrupt" may be used transitively ("A corrupts B," i.e., "A causes B to act corruptly") or intransitively ("A corrupts," i.e., "A becomes corrupt, depraved, impure, etc."). So too, the adverbial form "corruptly" may have either the transitive or the intransitive sense. *See* 3 Oxford English Dictionary 974 (2d ed. 1989) ("corruptly" may mean either "by means of corruption or bribery," i.e., by means of corrupting another, or acting oneself "in a corrupt or depraved manner").

*Id.* at 379. But the court found that this analysis did not evade the vagueness in the word itself because:

> Either a transitive or an intransitive interpretation would still be unconstitutionally vague . . . if more specific content is not given to the word "corruptly." Reading "corruptly" to prohibit one from influencing another to act "immorally" or improperly" provides no more guidance than does reading it to prohibit one from acting "immorally" or "improperly" oneself.

*Id.*

The same issue is presented here: No matter how "corruptly" is used in Section 1512(c)(2) – transitively or intransitively – the word lacks definition and remains too vague to provide the constitutionally-required notice or protection against arbitrary enforcement.

## IV.    THE RULE OF LENITY CONFIRMS THAT THE COURT SHOULD DISMISS COUNT TWO.

Finally, if recourse to any of the "traditional tools of statutory construction leaves any doubt" about the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512(c)(2), this Court could also invoke the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 547-48 (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)). As in *Yates*, "[t]hat interpretative principle is relevant here, where the Government urges a reading of [Section 1512(c)(2)] that exposes individuals to 20-year prison sentences" for obstructing any proceeding before Congress in any manner that it deems "corrupt." *Id*. (citing *Liparota v. United States*, 471 U.S. 419, 427 (1985)) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

As with Section 1519 in *Yates*, it would likewise be "appropriate, before [choosing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite" for Section 1512(c)(2).  *Id*. (quoting *Cleveland*, 531 U.S. at 25). Because Congress failed to do so, and the government has accused Mr. GossJankowski such that it is not "clear and definite" that his conduct violated Section 1512(c)(2), this Court should dismiss Count Two of the Superseding Indictment against him.

**CONCLUSION**

For all of these reasons, and such others as may be advanced in further briefing on this motion, and a hearing on this matter, Mr. GossJankowski respectfully requests that the Court grant this motion and dismiss Count Two of the operative indictment.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Ubong E. Akpan
Celia Goetzl
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

17