UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VITALI GOSSJANKOWSKI,<br><br>                Defendant. | Crim. No. 21-123 (PLF) |

### MOTION TO DISMISS CIVIL DISORDER CHARGE
### UNDER 18 U.S.C. § 231(a)(3) (COUNT ONE)

Vitali GossJankowski, through undersigned counsel, and pursuant to Rule of Criminal Procedure 12(b)(3), hereby respectfully requests that the Court dismiss Count One of the Superseding Indictment ("SI"), ECF 41, which charges him with civil disorder, in violation of 18 U.S.C. § 231(a)(3). For the reasons discussed below, § 231(a)(3) is unconstitutionally vague and overbroad, and impermissibly criminalizes conduct protected under the First Amendment.

### BACKGROUND

The operative indictment alleges six counts against Mr. GossJankowski relating to the events at the U.S. Capitol on January 6, 2021. Tracking the language of 18 U.S.C. § 231(a)(3), Count One alleges that Mr. GossJankowski:

> committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, lawfully engaged in the lawful performance of his/her official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

SI at 1–2.

Section § 231(a)(3) provides that:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function shall be fined under this title or imprisoned not more than five years or both.

18 U.S.C. § 231(a)(3). For purposes of this statute, "civil disorder" is defined as:

> any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual.

18 U.S.C. § 232(1). "Commerce" is defined as:

> (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia.

18 U.S.C. § 232(2). "Federally protected function" is defined as:

> any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails.

18 U.S.C. § 232(3).

## ARGUMENT

**I.  Section 231(a)(3) is Unconstitutionally Vague and Overbroad.**

Section 231(a)(3) is overbroad and unconstitutionally vague because its imprecise and subjective standards fail to provide fair notice and create significant risk of arbitrary enforcement. In addition, several of the statute's terms are so broad and indefinite as to impose unqualified burdens on a range of protected expression.

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United*

*States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997). The void-for-vagueness doctrine protects against arbitrary or discriminatory law enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

"The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Johnson v. United States*, 576 U.S. 591, 595 (2015) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). As the Supreme Court has explained,

> [i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basis First Amendment freedoms, it operates to inhibit the exercise of those freedoms.

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (internal citations and quotations omitted). As mentioned by the Supreme Court in *Grayned*, vagueness concerns are most acute when the statute imposes criminal penalties and implicates the First Amendment by chilling exercise of protected expression. *See Kolender v. Lawson*, 461 U.S. 352, 358-59 n. 8 (1983); *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982); *see also Smith v. Goguen*, 415 U.S. 566, 573 (1974) (Where "a statute's literal scope [reaches] expression sheltered by the First

Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts.").

Section 231(a)(3) is replete with vague and imprecise terms that fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. The following examples are illustrative of §231(a)(3)'s vagueness.

### *"Any Act to Obstruct, Impede, or Interfere"*

By penalizing "any act to obstruct, impede, or interfere," §231(a)(3) reaches the outer limits of verbal and expressive conduct without drawing any distinction that could exclude acts undertaken merely to convey a message or symbolic content. *See Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (acknowledging that "[s]tanding alone . . . a prohibition on 'any act [undertaken] in such a manner as to disturb or alarm the public' fails meaningfully to guide the police and thus poses a substantial risk of arbitrary or discriminatory enforcement.") (quoting *Louisiana v. Cox*, 379 U.S. 536, 551-52 (1965)). The phrase "any act to obstruct, impede, or interfere" can fairly include within its plain meaning such diverse acts as pure speech, expressive conduct, minimal jostling or even grievous, violent assaults.

### *"Incident to and During the Commission of a Civil Disorder"*

The phrasing "incident to and during the commission of a civil disorder" is also problematic for its vagueness. The term "civil disorder," as defined under §232(1), is extremely far-reaching, applying to "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of . . . injury to the property." 18 U.S.C. § 232(1). This definition of "civil disorder" offers no limitation to solve the vagueness problem because it could apply to virtually any tumultuous public gathering to which police might be called, not just large-scale protests or riots. Further, there is no indication within the statute whether the

4

defendant is required to have participated in the civil disorder, or if it is sufficient that he or she be in the general vicinity of the event.

### *Lack of Scienter*

The Supreme Court has repeatedly affirmed that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests.*, 455 U.S. at 499. But here, there is no such mitigation, because Section 231(a)(3) contains no scienter requirement, thus creating 'a trap for those who act in good faith.'" *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (quoting *United States v. Ragen*, 314 U.S. 513, 524 (1942)). Because the statute omits an express *mens rea* requirement, it is left to police, prosecutors, and judges to decide whether the statute requires knowledge or specific intent or neither. The absence of a scienter/*mens rea* element weighs in further favor of the statute's unconstitutionality.

By enacting a statute with such imprecise language, Congress created "a criminal prohibition of alarming breadth." *United States v. Stevens*, 559 U.S. 460, 474 (2010). "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). Section 231(a)(3)'s scope "may entirely depend" on a law enforcement official's unbounded speculation about subjective factors, *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971), thus subjecting "individuals to the risk of arbitrary or discriminatory prosecution and conviction." *United States v. Kozminski*, 487 U.S. 931, 949-50 (1988) (holding statute unconstitutionally vague where liability "depend[ed] entirely upon the victim's state of mind").

In *Houston v. Hill*, 482 U.S. 451 (1987), the Supreme Court declared unconstitutional a municipal ordinance that made it unlawful to interrupt a police officer in the performance of his or her duties, finding that the ordinance's sweeping nature was neither "inevitable" nor "essential to maintain public order." 482 U.S. at 464. Because the ordinance was "not narrowly tailored to prohibit only disorderly conduct or fighting words," it wrongly gave police "unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Id*. at 465. Similarly, here, §231(a)(3) casts far too wide a net. By expansively encompassing "any act" that could interfere with the duties of a police officer or firefighter during a civil disorder, §231(a)(3) is not limited to "violent acts" or acts that result in bodily injury or that otherwise put persons or property in imminent danger. *C.f. United States v. Reese*, 92 U.S. (2 Otto) 214, 221 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large."). Moreover, the statute does not weed out those acts with protected expressive content or those that occur in a traditional public forum. Instead, as discussed further below, §231(a)(3) reaches a substantial amount of expressive conduct, and without clear boundaries, the law chills free speech and invites discriminatory application by law enforcement and the government.

II. **Section 231(a)(3) Impermissibly Criminalizes Conduct Protected Under the First Amendment.**

"In the First Amendment context, . . . a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). The first Amendment protects expressive conduct like cross-burning, flag-burning and

assembly in inconvenient places.[1]  Conduct is considered expressive, and therefore protected, under the First Amendment when it "is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (quoting *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999)).

The plain language of §231(a)(3) is at odds with the protections of the First Amendment. Indeed, the broadness of §231(a)(3)'s scope authorizes a felony conviction for a bystander who yells at police to desist from an arrest, one who flips off officers to distract or encourage resistance, or one who records police activity with a cell phone. *See Hill*, 482 U.S. at 459 ("[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them."); *Glick v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) ("[T]he First Amendment protects the filming of government officials in public places."). The First Amendment does not permit an unqualified prohibition on "interference" with police duties because "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462-462; *see also McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 550 (D.S.C. 2013) (invalidating a state statute for overbreadth that made it "unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties.").

Such broad criminal statutes like §231(a)(3) "must be scrutinized with particular care." *Hill*, 482 U.S. at 459; *see also Winters v. New York*, 333 U.S. 507, 515 (1948) ("The standards of

---

[1] *See Virginia v. Black*, 538 U.S. 343, 365-66 (2003) ("[S]ometimes the cross burning is a statement of ideology, a symbol of group solidarity"); *Texas v. Johnson,* 491 U.S. 397, 405-06 (1989) (flag burning constituted "expressive conduct" protected by the First Amendment); *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984) (assuming that "sleeping in connection with the demonstration is expressive conduct protected to some extent by the First Amendment.").

certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."). Criminal laws that "make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id*. Section 231(a)(3) extends to a substantial amount of constitutionally protected speech and expressive conduct, well in excess of the law's legitimate sweep.

**III.     Section 231(a)(3) Cannot be Saved by Construction without Violating the Constitutional Separation of Powers.**

Judicial interpretation cannot save § 231(a)(3) from its constitutional invalidity. A statute's vagueness does not permit judges to "rewrite a law to confirm it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *Stevens*, 559 U.S. at 481. Rather, "[w]hen Congress passes a vague law, the role of the courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Davis*, 139 S. Ct. at 2323.

**IV.     In the Alternative, the Indictment Should be Dismissed Because it Neither Provides Adequate Notice nor Assures that the Grand Jury Made the Determinations Required by the Fifth Amendment.**

The constitutional rights to presentment to a grand jury and adequate notice of the charges are embedded in the Fifth and Sixth Amendments to the United States Constitution and in Rule 7(c) of the Federal Rules of Criminal Procedure. In the array of January 6th cases, the government mass produced indictments identical in language with little exception. The charge against Mr. GossJankowski in Count One lacks any specifics regarding the alleged acts or circumstances and contains only conclusory allegations.

"[R]eal notice of the true nature of the charge" is "the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). In holding that the

8

notice requirements of the Sixth Amendment apply to the States through the requirement of due process, the Supreme Court stated: "No principle of procedural due process is more clearly established than that notice of the specific charge [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *see* Joseph Story, Commentaries on the Constitution, § 1799 (1833) ("[T]he indictment must charge the time, and place, and nature, and circumstances of the offense, with clearness and certainty; so that the party may have full notice of the charge, and be able to make his defense with all reasonable knowledge and ability.").

It is not enough for an indictment simply to parrot the statute and its generic terms. The indictment must set forth, on its face, the "essential facts" of the offense and "descend to particulars," beyond statutory boilerplate. Fed. R. Crim. P. 7(c)(1); *Russell v. United States*, 369 U.S. 749, 765 (1962); *United States v. Ballestas*, 795 F.3d 138, 148–49 (D.C. Cir. 2015). In other words, "the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980). As such, the sufficiency of the allegations in an indictment dovetail with a criminal defendant's rights under the Fifth and Sixth Amendments and the court's ability to answer questions of law concerning the charges.[2]

---

[2] Courts in this District regularly dismiss counts in indictments that do not allege "essential facts." *See, e.g.*, Mem. Op., *United States v. Miller*, Case No. 21-cr-119 (CJN) (D.D.C. Mar. 7, 2022), ECF No. 72 [hereinafter "*Miller* slip op."], at 28–29 (in Capitol breach case, dismissing count that failed to allege violation of § 1512(c)(2)); *United States v. Guertin*, 2022 WL 203467, at *1 (D.D.C. Jan. 24, 2022) (dismissing indictment that failed to allege violations of §§ 1343 and 1512(c)(2)); *United States v. Payne,* 382 F. Supp. 3d 71, 74–77 (D.D.C. 2019) (dismissing charge under § 922(g)(1)); *Hillie*, 227 F. Supp. 3d at 72–74 (dismissing child pornography-related charges); *United States v. Singhal*, 876 F. Supp. 2d 82, 95–96 (D.D.C. 2012) (dismissing charges under § 1001); *Sunia,* 643 F. Supp. 2d at 69, 78–81 (dismissing counts that failed to allege offenses under § 666(a)(1) and § 1505); *United States v. Brown*, 2007 WL 2007513, at *3–5 (D.D.C. July 9, 2007) (dismissing counts that failed to allege violation of § 1512(c)(2)).

The Fifth Amendment's presentment provision also requires that the facts be elucidated sufficiently in the indictment so that the grand jury's finding of probable cause can be ascertained and to foreclose conviction based on any offense not found by the grand jury. *See Stirone*, 361 U.S. at 215. Without specificity of charged conduct and circumstances, the court would be forced to "guess what was in the minds of the grand jury at the time they returned the indictment," which would "deprive the defendant of a basic protection that the grand jury was designed to secure," by allowing a defendant to be convicted "on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (quoting *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) (citing *Russell v. United States*, 369 U.S. 749, 770 (1962)).

The assembly-line indictments in the January 6th cases generally, and Mr. GossJankowski's case in particular, fail to fulfill either the notice or presentment requirements of the Fifth and Sixth Amendments. There is no attempt within the indictment to fulfill Rule 7(c)'s requirement of a "plain, concise, and definite written statement of the *essential facts* constituting the offense charged." (emphasis added). The indictment does not specify Mr. GossJankowski's actual conduct or the specific circumstances involved. Accordingly, the indictment in this case does not demonstrate that the grand jury made the required finding of probable cause, and it provides the defense insufficient notice of the conduct charged.

The indictment is plainly defective. It does not specify what "act" Mr. GossJankowski is alleged to have committed or attempted to commit "to obstruct, impede, or interfere with a law enforcement officer." It does not allege "any way" in which Mr. GossJankowski "obstruct[ed], delay[ed], or adversely affect[ed] commerce or the movement of any article or commodity in

commerce." It does not state what "commerce," or article or commodity in commerce, was "affected."

Lastly, to the extent that the indictment charges Mr. GossJankowski with an act "which in any way and degree obstructed, delayed, and adversely affected . . . the conduct and performance of any federally protected function," the indictment further fails to state an offense. "Federally protected function" is statutorily defined as "any function, operation, or action carried out, under the laws of the United States, *by any department, agency, or instrumentality of the United States*." 18 U.S.C. § 232(3) (emphasis added). The indictment states no department, agency, or instrumentality of the United States. Congress is not a department, agency, or instrumentality of the United States, but rather the *legislative branch* of the United States. *See* 18 U.S.C. § 6 (defining "department" and "agency"); *Hubbard v. United States*, 514 U.S. 695, 700 (1995); *United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997) ("an entity within the Legislative Branch cannot be a 'department' within the meaning of . . . 18 U.S.C. § 6").

## CONCLUSION

For all of these reasons, and such others as may be advanced in further briefing on this motion, and a hearing on this matter, Mr. GossJankowski respectfully requests that the Court grant this motion and dismiss Count One (§ 231 charge) of the operative indictment.

    Respectfully Submitted,

    A.J. KRAMER
    FEDERAL PUBLIC DEFENDER

    _____/s/_____
    Ubong E. Akpan
    Celia Goetzl
    Assistant Federal Public Defenders
    625 Indiana Avenue, N.W., Suite 550
    Washington, D.C.  20004
    (202) 208-7500