UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-123-PLF |
| v. : | |
| : | |
| VITALI GOSSJANKOWSKI, : | |
| : | |
| Defendant. : | |

_____

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT**
_____

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Vitali Gossjankowksi's Motion to Dismiss Count One of the Superseding Indictment, ECF 41, which charges the defendant with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). Gossjankowski raises three arguments in his motion. First, he contends that Section 231(a)(3) is overbroad and unconstitutionally vague. ECF 41:2. Second, he claims that Section 231(a)(3) impermissibly criminalizes conduct that is protected under the First Amendment. ECF 41:6. Finally, the defendant claims that the Indictment must be dismissed because it does not provide sufficient notice and fails to state an offense. ECF 41:8. These arguments are without merit and the motion should be denied.

**PROCEDURAL HISTORY AND FACTUAL DEVELOPMENT**

The government incorporates its Response in Opposition to Grossjankowski's Motion to Dismiss Count Two of the Superseding Indictment, ECF 74, pages 2-4, regarding the factual background and procedural history of this case.

**ARGUMENT**

I.  **GOSSJANKOWSKI'S VAGUENESS ARGUMENTS INGORE PRECEDENT AND THE PLAIN LANGUAGE OF THE STATUTE.**

Improperly isolating various statutory terms, Gossjankowski argues that Section 231(a)(3), the civil disorder statute, is unconstitutionally vague and overbroad.[1] Three judges in this district have recently rejected nearly identical challenges to Section 231. *See See United States v. Mostofsky,* 21 WL 6049891, at *8–*9 (rejecting overbreadth challenges); *United States v. Nordean,* 2021 WL 6134595, at *16–*17 (rejecting vagueness and overbreadth challenges); *United States v. McHugh,* 21-cr-453 (JDB), ECF No. 51, at 28–37.[2] This Court should too.

Section 231(a)(3) (the civil disorder statute) criminalizes any "act" (or attempted act) to "obstruct, impede, or interfere" with a law enforcement officer "lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder." 18 U.S.C. § 231(a)(3). For the statute to apply, the civil disorder must "in any way or degree obstruct[], delay[], or adversely affect[] commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." *Id.* The statute defines civil disorder as "any public disturbance involving acts of violence by assemblages of three

---

[1] Although Gossjankowski asserts in Section I of his motion that Section 231(a)(3) is overbroad, he makes no such argument in the Section but rather focuses exclusively on vagueness. His "overbroad" argument is limited to Section II in which he asserts Section 231(a)(3) infringes upon the First Amendment. Accordingly, the government addresses the "overbroad" argument below.

[2] A number of courts outside this circuit have also recently rejected similar challenges to Section 231. *See United States v. Phomma*, No. 20-465, 2021 WL 4199961, at *5 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16–*20 (D. Minn. Jan. 6, 2021) (Report & Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *United States v. Pugh*, No. 1:20-cr-73-TFM, slip op. (S.D. Ala. May 13, 2021); *United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). Reading the statute as a whole, it passes muster; Gossjankowski cannot meet the high bar required to invalidate a statute as vague or overbroad. The statute sufficiently provides notice of the conduct it prohibits.

### A. Vagueness doctrine

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating

3

rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. *See United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

**B.     Section 231 is not void for vagueness**

Federal legislation enjoys a presumption of constitutionality that may only be overturned "upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 607 (2000). Gossjankowski cannot overcome this presumption.

Section 231(a)(3) is not constitutionally vague. *See McHugh,* 21-cr-453, ECF No. 51, at 23*; Nordean,* 2021 WL 6134595, at *17. It provides sufficient notice of the conduct it prohibits. The terms Gossjankowski attacks, such as "any act to obstruct, impede, or interfere" and "civil disorder," ECF 69 at 4, do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Nordean*, 2021 WL 6134596*,* at *16 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder."). Like the challenge recently rejected by Judge Bates, Gossjankowski's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is

4

perfectly normal, while the former is indicative of constitutional difficulty." *McHugh,* 21-cr-453, ECF No. 51, at 23.

Section 231(a)(3) does not prohibit mere presence at a civil disorder, but rather, "an act committed during the course of such disorder." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971). And not just any act: it prohibits only concrete "act[s]" that are performed with the specific purpose to "obstruct, impede, or interfere" with firefighters or law enforcement carrying out their official duties during a civil disorder. It punishes intentional conduct, not "mere inadvertent conduct." *United States v. Featherston,* 461 F.2d 1119, 1122 (5th Cir. 1972).

Contrary to defendant's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind, as in the cases defendant cites. *See Nordean,* 2021 WL 6134595, at *16; see also Williams*, 553 U.S. at 306; Mot. at 8 (citing *Coates*, 402 U.S. at 614, *United States v. Kozminski,* 487 U.S. 931, 949–50 (1988)).[3] "An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement."*McHugh,* 21-cr-453, ECF No. 51, at 33. In addition, Section 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing" the government's efforts to

---

[3] Gossjankowski also cites *McCoy v. City of Columbia*, 929 F. Supp. 2d 541 (D.S.C. 2013) (ECF 69:7); he states that *McCoy* invalidated the law at issue as overbroad, but *McCoy* in fact found it unconstitutionally vague. Id. at 554. In any event, *McCoy* is distinguishable. *See McHugh,* 21-cr-453, ECF No. 51, at 33. *McCoy* invalidated an ordinance making it unlawful "for any person to interfere with or molest a police officer in the lawful discharge of his duties." *Id.* at 546. As Judge Bates observed, unlike Section 231(a)(3), "the ordinance at issue in *McCoy* did not include a scienter requirement, and its use of only two operative verbs ('interfere and molest') prevented interpreters from . . . giving those words 'more precise content by the neighboring words with which it is associated." *McHugh*, at 33 n.24 (citing *McCoy*, 929 F. Supp. 2d at 553) ((quoting *United States v. Stevens*, 559 U.S. 460, 474 (2010)).

5

enforce the law and maintain public order, and they have been upheld. *See, e.g.,* 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice,* 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties); *see also* Cal. Penal Code § 148 (prohibiting resisting, delaying, or obstructing any peace officer or emergency medical technician); *State v. Illig-Renn,* 341 Or. 228 (2006) (rejecting constitutional attacks leveled against O.R.S. 162.247(1)(b), which prohibits interference with a police officer); *State v. Steen,* 164 Wash. App. 789, 808 (2011) (rejecting as-applied constitutional challenge to RCW 9A.76.020(1), which criminalizes obstructing police officers).

Gossjankowski also claims that the phrase "incident to and during the commission of a civil disorder" is vague because he cannot tell whether the statute requires an individual to have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. ECF 69:7. This argument, too, is meritless. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a)(3)." *Mechanic*, 454 F.2d at 852; *see also Howard*, 2021 WL 3856290, at *14 ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). Contrary to Gossjankowski's argument that any "tumultuous public gathering" could qualify (ECF 69:4), "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual."

*Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 232(1); *cf. United States v. Huff,* 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge to "civil disorder" term in 18 U.S.C. § 231(a)(2) and citing definition in 18 U.S.C. § 231(1)). *See McHugh*, 21-cr-453, ECF No. 51, at 32, 32 n.22.

And even if a broad range of public gatherings could be deemed "civil disorders," Section 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to narrow the situation where the statute may apply—unlike other statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C. § 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus* take place in the context of a civil disorder does not make Section 231 vague; to the contrary, it limits its application.

Gossjankowski's argument that the statute is vague because it lacks an express scienter requirement or *mens rea* (ECF 69:5) is also incorrect. Gossjankowski ignores the fact that Section 231(a)(3) requires *intent*, which narrows its scope. *See Williams*, 553 U.S. at 294 (focusing on scienter requirement in finding that a statute was not overbroad); *McHugh,* 21-cr-453, ECF No. 51, at 29–31 (finding that Section 231(a)(3) includes an intent requirement). The requirement that a defendant who violates Section 231(a)(3) act with the intent to obstruct, interfere or impede is critical to the First Amendment analysis. *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of statute to protected speech). The statute requires proof that the "act" was done "to obstruct, impede, or interfere" with a firefighter or police officer, *i.e.,* the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere. *See Mechanic*, 854 F.2d at 854 (construing Section 231(a)(3) to include an intent requirement). And even if the statute lacked an express scienter requirement, courts "generally

7

interpret [] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

Gossjankowski's vagueness claim also fails because his conduct clearly falls within the ambit of Section 231. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean,* 2021 WL6134595, at *17 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (cleaned up)); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute]is vague as applied to his conduct"). The January 6, 2021 attack on the United States Capitol was clearly a "civil disorder," not just some "tumultuous public gathering" to which the police were called. And there is no question that Gossjankowski participated in the disorder. Tracking the statutory language, the superseding indictment alleges that he "commit[ted] an act to obstruct, impede, and interfere with a law enforcement officer." ECF 41. Gossjankowski crossed into the restricted area, wielded a stun gun, took police shields and assaulted a police officer. He was not some bystander yelling at police to desist. No one could credibly claim to believe that he could lawfully enter on to restricted Capitol grounds during the riot, and then engage in such action against law enforcement who were attempting to protect and clear the mob from the Capitol. The statute is "sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854.

## II. GOSSJANKOWSKI'S FIRST AMENDMENT CHALLENGE TO COUNT ONE IS MERITLESS.

Gossjankowski contends that § 231(a)(3) is unconstitutionally overbroad under the First Amendment because it "extends to a substantial amount of constitutionally protected speech and expressive conduct, well in excess of the law's legitimate sweep." ECF 69:8. Gossjankowski makes no mention of his own conduct on January 6, much less explain how charging him with a violation of 231(a)(3) undermined his own First Amendment rights that he intended to exercise that day. Rather, his argument presents only facial challenges to the statute that does not depend in any way on its application to this case. Indeed, he does not even address the differences between "as applied" and facial First Amendment challenges.[4]

For instance, Gossjankowski argues that "by penalizing 'any act,' § 231(a)(3) reaches to the outer limits of verbal and expressive conduct without drawing any distinction that could exclude acts undertaken merely to convey a message or symbolic content." *Id*. He also contends that the word, "interfere," as it appears in the statute but which the statute does not define, could include within its plain meaning such diverse acts as pure speech, expressive conduct, minimal jostling or even grievous, violent assaults. *Id*.

As every other judge in this district who has addressed this precise claim has held, this claim fails. A criminal law is facially overbroad only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Washington*

---

[4] One raising a facial challenge must establish "that no set of circumstances exists under which [the challenged statute] would be valid or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010). The person challenging the statute need not show injury to himself. *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984). On the other hand, to prevail on an as-applied First Amendment challenge, the person challenging the statute must show that the regulations are unconstitutional as applied to their particular speech activity. *See Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802-03 (1984); *accord, Edwards v. D.C.*, 755 F.3d 996, 1001 (D.C. Cir. 2014).

*State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769-71 (1982)); *see also United States v. Williams*, 553 U.S. 285, 293 (2008); *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). A facial overbreadth challenge faces a steep climb when the statute focuses mainly on conduct, as § 231(a)(3) assuredly does. *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to ... constitutionally unprotected conduct").

Judge Berman Jackson is the most recent member of this court to reject an overbreadth challenge to § 231(a)(3). *See United States v. Williams*, 21-cr-0618 (ABJ), 2022 WL 2237301, at *6-7 (D.D.C. June 22, 2022). She noted that "[i]n the past year, at least four other courts in this district have considered whether section 231(a)(3) is overbroad on its face, and all have concluded it is not." *Id*. at *6.[5] Judge Berman Jackson "agree[d] with the reasoning in those decisions." *Id*. "First, the statute plainly covers conduct, not speech, as it criminalizes 'any *act* to obstruct, impede, or interfere with' a law enforcement officer engaged in the performance of official duties, and the terms 'obstruct, impede, or interfere with' are all plainly understood and must be supported by the facts in any particular case." *Id*. (emphasis added). "Although some 'acts' could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally

---

[5] Citing *McHugh*, 2022 WL 296304, at *17; *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; and *Gossjankowski*, 2022 WL 782413, at *3. Judge Berman Jackson also cited three out of district cases that reached the same result. 2022 WL 2237301, at *6, citing *United States v. Howard*, 21-cr-28 (PP), 2021 WL 3856290, at *11-12 (E.D. Wis. Aug. 30, 2021); *United States v. Phomma*, 561 F. Supp. 3d 1059, 1067-68 (D. Or. 2021); and *United States v. Wood*, 20-cr-56 (MN), 2021 WL 3048448, at *7-8 (D. Del. July 20, 2021).

protected activity." *Id*. "Since section 231(a)(3) does not 'make unlawful a substantial amount of constitutionally protected conduct,' it is not overbroad on its face." *Id*. (citing *City of Houston v. Hill*, 482 U.S. 451, 459 (1987)).

Judge Berman Jackson also noted that "a *scienter* requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*. at *7 (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)). She concluded that § 231(a)(3) "only criminalizes acts performed 'to obstruct, impede, or interfere with' a law enforcement officer," "in other words, the statute requires obstructive intent." *Id*. See also *Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969) ("It is true that section 231(a)(3) does not specifically refer to intent, but it only applies to a person who 'commits or attempts to commit any act to obstruct, impede, or interfere' with firemen or law enforcement officers."); *United States v. Mechanic*, 454 F.2d 849, 854 (8th Cir. 1971) (agreeing with *Foran* "that § 231(a)(3) must be construed to require intent"). Other judges of this district are in accord. *See Mostofsky*, 2021 WL 6049891, at *8 (rejecting overbreadth challenge to § 231(a)(3)); *Nordean*, 2021 WL 6134595, at *16-18 (§ 231(a)(3) is neither vague nor overbroad); *McHugh*, 2022 WL 296304, at *13 (same).

Those decisions are consistent with the applicable overbreadth principles. In the typical case, a litigant bringing a facial constitutional challenge "must establish that no set of circumstances exists under which the [law] would be valid," or the litigant must "show that the law lacks a plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quotation omitted). In the First Amendment context a litigant must demonstrate that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id*. (cleaned up). Refusing to enforce a statute because of overbreadth

11

concerns is "strong medicine," and courts will refuse to enforce the statute on such grounds "only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech," *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

The Eighth Circuit's decision in *Mechanic*, rejecting an overbreadth challenge to § 231(a)(3), is particularly instructive. After noting that the statutory language "applies only to a person who acts to impede, obstruct, or interfere with an official described in the statute," that court held that "conduct involved here [the massing of a mob that threw stones at an R.O.T.C. building on a college campus to protest the Viet Nam war, followed by rock and bottle throwing at firemen who arrived to quell the disturbance] is not entitled to constitutional protection." 454 F.2d at 852. "The First Amendment has not been extended to protect rioting, inciting to riot, or other forms of physical violence." *Id.* (citing *Foran*, 411 F.2d at 937). Thus, § 231(a)(3) "does not purport to reach speech of any kind. It reaches only acts to impede, obstruct, or interfere with police officers and firemen." *Id.* "[I]t is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Id.*

Apparently seeking to identify "a substantial number" of unconstitutional applications of 231(a)(3), Grossjankowski contends the statute's prohibitions would apply to someone who "yells at police to desist from an arrest" or "flips off officers to distract or to encourage resistance," or "records police activity with a cell phone." ECF 69:7. Even assuming these examples both fall within the scope of the statute and improperly trench on First Amendment protections, they do not

12

demonstrate that § 231(a)(3) is unconstitutionally overbroad. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984); *see also Howard*, 2021 WL 3856290, at *11 (rejecting overbreadth claim that "the government perhaps could charge someone who yelled at an officer during a civil disorder and could argue that the yelling was an 'act' that 'attempted to obstruct' an officer performing her lawful duties"). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of City Council of City of Los Angeles*, 466 U.S. 789, 801 (1984). Grossjankowski identifies no such cases, and no wonder. Laws like § 231(a)(3) that are "not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124. Indeed an "overbreadth challenge" to such a law will "[r]arely, if ever … succeed." *Id*.

Grossjankowski has given this Court no reason to depart from the unanimous holdings of other judges in this district and elsewhere that 231(a)(3) is not unconstitutionally overbroad.

## III.    COUNT ONE PROVIDES SUFFICENT NOTICE

In his final argument, Gossjankowski argues the charges in Count One lacks any specifics and contain only conclusory allegations and therefore provides him with inadequate notice, violates his right to presentment to a grand jury, and fails to state an offense. ECF 69:8.

Gossjankowski misunderstands the purpose of an indictment and the "low bar" an indictment must clear to satisfy the federal rules and Constitution. (*United States v. Sargent,* 1:21-cr-00258-TFH ECF 50:2 (04/14/22)). Federal Rule of Criminal Procedure 7(c)(1) states, in relevant part, "[t]he indictment . . . must be a plain, concise, and definite written statement of the

13

essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." As the D.C. Circuit explained in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), "[a]lthough an indictment must – in order to fulfill constitutional requirements – apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." *Id.* at 124. Indeed, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).

"While detailed allegations might well have been required under common-law pleading rules, . . . they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007). As a mere notice pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Id.* at 108; *Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established."). An indictment is sufficient if it "first . . . contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Resendiz-Ponce*, 549 U.S. at 108 (cleaned up) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The indictment "should be read in its entirety, construed

14

according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007). Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient. *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)).

Applying these principles, courts in this District have upheld the sufficiency of indictments far less specific than Gossjankowski's. For example, in *United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017), the defendants were charged with offenses under 18 U.S.C. § 924(c). The indictment provided only "general detail as to the places where the offenses were committed: namely, Mexico and the United States." *Id.* at 154. Regarding the time of the offense, the indictments alleged that the offenses had occurred over a two- and nine-year period. *Id*. Finally, the indictments "d[id] not specify a particular weapon that was possessed," or "specify whether the firearms were 'used, carried or brandished'" under the statute. *Id*. Nonetheless, the indictments in *Apodaca* were sufficient. *Id*. at 153-54.

> Count One of Gossjankowski's indictment states that:
>
> On or about January 6, 2021, within the District of Columbia, VITALI GOSSJANKOWSKI committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his/her official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

(ECF 41:1-2).

Count One of Gossjankowski's indictment is more specific than that in *Apodaca*. Here, Count One alleges the offenses took place specifically in this District. Here, Count One notifies Gossjankowski of the exact day on which the alleged crime occurred: January 6, 2021. *Id.* And

15

here, Gossjankowski admits that "Count One of the Indictment tracks the language of § 231(a)(3)." (ECF 41:1). Gossjankowski demands specificity not required under the Constitution, the Federal Rules, or precedent in this District.

Gossjankowski's "complaint seems to result . . . from a general misunderstanding of the purpose of the indictment and, especially, from an inflated notion of what must be included therein." *Haldeman*, 559 F.2d at 124. As the D.C. Circuit concisely explained in rejecting a similar argument in *Verrusio*:

> Verrusio contends that Count Two of the indictment failed to allege an official act because it failed to say "how Mr. Verrusio was going to use his position" to help United Rentals . . . . The indictment certainly need not allege precisely how Verrusio contemplated [committing the crime]. Would he do it by himself or ask someone else to do it? Would that someone else be Colonel Mustard or Professor Plum? With a candlestick or a rope, in the library or the study? Answering those questions is not required at the indictment stage.

762 F.3d at 14–15; *see also United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018) (affirming denial of a motion to dismiss a count charging the defendant with making a threat against a federal law enforcement officer "with intent to retaliate against such . . . officer on account of the performance of official duties," 18 U.S.C. § 115(a)(1)(B), because the "statute speaks in terms of a threat made 'on account of the performance of official duties,' not to draw attention to a particular official duty, but instead to assure that the threat generally relates to the officer's performance of official duties rather than to a personal dispute having nothing to do with the officer's job functions"). Gossjankowski's specificity argument fails.

Similarly, Gossjankowksi's contention that his right to presentation to the grand jury is also without merit. The Fifth Amendment right to presentation to the grand jury simply means that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217, 80 S. Ct. 270, 273 (1960). See also: *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988). The defendant relies upon *United States v.*

16

*Du Bo* to support his claim that the right to presentation to the grand jury has been violated. In *Du Bo* the indictment lacked the necessary allegation of a criminal intent. *See United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (quoting *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979). But Gossjankowski makes no claim that the indictment is missing an essential element. And, as set forth above, his claim that the indictment fails to state and offense or provide adequate notice is without merit.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  */s/ Barry K. Disney*
Barry K. Disney
KS Bar No. 13284
Assistant United States Attorney – Detailee
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Email:  Barry.Disney@usdoj.gov
Cell:  (202) 924-4861