## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 21-cr-123-PLF |
| | : | |
| **VITALI GOSSJANKOWSKI,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
### TO DISMISS COUNTS FOUR AND FIVE

Defendant Vitali Gossjankowksi asks this Court to dismiss Counts Four and Five of the Superseding Indictment, charging him with, respectively, entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), and disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2).

The defendant first argues that in order for an area to be "restricted" within the meaning of subsections (a)(1) and (a)(2), the Secret Service must so designate it, and that the Secret Service did not designate the Capitol building and grounds on January 6, 2021. (ECF 67:5). Next Gossjankowski contends that that the area in question does not meet the statutory definition of a "restricted building or grounds" because Vice President Pence was not "temporarily visiting. (ECF 67:7). In *United States v. Puma*, 21-cr-454, ECF 37 (March 19, 2022) this Court considered and rejected these exact arguments. It should do the same here. Finally, the defendant, citing no supporting precedent, claims that Section 1752(a)(2) is "vague and overbroad" requiring Count Five of the Superseding Indictment to be dismissed. This claim is meritless as well and should also be denied.

## FACTUAL AND PROCEDURAL HISTORY

The government incorporates its Response in Opposition to Grossjankowski's Motion to Dismiss Count Two of the Superseding Indictment, ECF 74, pages 2-4, regarding the factual background and procedural history of this case.

## LEGAL STANDARDS

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The main purpose of a charging document, such as an indictment, is to inform the defendant of the nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015) (discussing purpose of an indictment). Thus, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). When assessing the sufficiency of criminal charges before trial, an information "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether "the allegations … , if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Ibid*.

## ARGUMENT

I. **Section 1752 Makes No Mention Of Which Official Entity Can Restrict Entry Into Areas Covered By The Statute, Much Less Require That Only The Secret Service Can Do So**

The text of § 1752 provides, in pertinent part that:

(a) Whoever--

> (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
>
> (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive

> conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;
>
> * * * *
>
> (5) * * * *shall be punished as provided in subsection (b).

As this Court has recognized: "[t]he text of Section 1752 'is not complex,' and it 'plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area'". *United States v. Puma*, No. 21-cr-454, 2022 WL 823079, at *29 (D.D.C. Mar. 19, 2022) (Friedman, J.) (quoting *United States v. Griffin*, 2021 WL 2778557 at *3 and *United States v. Mostofsky*, 2021 WL 6049891, at *13, respectively).

Section 1752(c)(1) provides three alternate definitions for the term "restricted buildings and grounds."

> (c) In this section--
>
> > (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area--
> >
> > > (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
> > >
> > > (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
> > >
> > > (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and
> >
> > (2) the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

18 U.S.C. § 1752(c).

The definition that applies here is § 1752(c)(1)(B), "any posted, cordoned off, or otherwise restricted area ... of a building or grounds where the President or other person

protected by the Secret Service is or will be temporarily visiting." "Person[s] protected by the Secret Service" include the Vice President and the Vice President-elect. *See* § 1752(c)(2); 18 U.S.C. § 3056(a)(1) ("Under the direction of the Secretary of Homeland Security, the United States Secret Service is authorized to protect the … the Vice President"). The proscribed conduct within a "restricted building or grounds" includes, as relevant here, "knowingly and unlawfully entering or remaining … without lawful authority to do so," § 1752(a)(1) (Count 4), and "knowingly and with intent to impede or disrupt … government business," engaging in "disorderly or disruptive conduct" that "in fact, impedes or disrupts" government business," § 1752(a)(2) (Count 5).

This Court should decline the defendant's request to import an extra-textual requirement that the Secret Service is the only entity that can restrict an area under § 1752. As Judge McFadden of this Court held in rejecting that precise argument "[t]hese extratextual arguments are unavailing." *United States Of America v. Couy Griffin*, No. 21-CR-00092 (TNM), 549 F. Supp. 3d 49, 2021 WL 2778557, at *4 (D.D.C. July 2, 2021). If § 1752 is "'directed to' anyone—a dubious claim—it would seem directed at prosecutors, would-be violators, and courts; it is not a regulatory statute." *Id*. " More importantly, the Court will not invoke the statute's supposed purpose or legislative history to create ambiguity where none exists." *Id*. "If Congress intended a statute designed to safeguard the President and other Secret Service protectees to hinge on who outlined the safety perimeter around the principal, surely it would have said so." *Id*. at *6. *See United States v. Thomas Edward Caldwell*, D.D.C. 21-cr-28 (APM), ECF 415 at p. 4 ("The court finds Judge McFadden's reasoning in *Griffin* persuasive and adopts it in full here.").

Judge McFadden also explained why the legislative history on which Gossjankowski principally relies undercuts his argument:

4

> From its enactment in 1970 until 2006, Section 1752 contained a provision that authorized the Treasury Department (of which, until 2003, the Secret Service was a component) to "designate by regulations the buildings and grounds which constitute the" protected residences or offices of Secret Service protectees and "prescribe regulations governing ingress or egress to ... posted, cordoned off, or otherwise restricted areas where" protectees were present. 18 U.S.C. § 1752(d) (1970)….
>
> By 2006 Congress rewrote the statute, in the process eliminating reference to the Treasury Department and to any "regulations" from any executive branch agency. 18 U.S.C. § 1752 (2006). More, the new statute criminalized merely entering or remaining in a restricted area; the old statute required further action, such as impeding government business, obstructing ingress or egress, or physical violence. *Compare* 18 U.S.C. § 1752(a)(1) (2006) *with* 18 U.S.C. § 1752(a) (1970). But Congress did not stop there. In 2012 it reconfigured the statute, adding the term "restricted buildings or grounds" and then defining it under subsection (c), as it appears today. 18 U.S.C. § 1752(a) (2012). Congress did not take that opportunity to clarify who can or must do the restricting, leaving it open-ended. But Congress did lower the *mens rea* requirement, striking the requirement that a defendant act "willfully."

*Griffin*, 2021 WL 2778557, at *4 (footnote omitted).

The defendant offers nothing new to counter the reasoning in *Griffin* and this Court's prior decision in *Puma*.

### II. The Court Should Deny Gossjankowksi's Motion To Dismiss Counts Four and Five – Which Allege Violations Of 18 U.S.C. § 1752 – Because The Vice President Plainly Can "Temporarily Visit" The U.S. Capitol

As Chief Judge Howell stated "common sense easily resolves" this challenge and "[e]very Judge on this Court * * * to consider these same challenges has rejected these exercises in wordsmithing and fabricating ambiguity, and no persuasive reason is presented here to deviate from this uniform and consistent denial of the arguments raised by defendant." *United States v. Mels*, No. 21-cr-184, ECF 65, at 3 (D.D.C. July 21, 2022).[1]

---

[1] See United States v. McHugh, No. 21-cr-453, 2022 WL 296304, at *20–21 (D.D.C. Feb. 1, 2022) (Bates, J.); United States v. Bozell, No. 21-cr-216, 2022 WL 474144, at *8 (D.D.C. Feb. 16, 2022) (Bates, J.); United States v. Andries, No. 21-cr-93, 2022 WL 768684, at *16–17 (D.D.C. Mar. 14, 2022) (Contreras, J.); United States v. Fischer, No. 21-cr-234, 2022 Case 1:21-cr-00184-BAH Document 65 Filed 07/21/22 Page 4 of 5 5 WL 782413, at *4–5 (D.D.C. Mar. 15, 2022) (Nichols, J.); United States v. Puma, No. 21-cr-454, 2022 WL 823079, at *16–19 (D.D.C. Mar.

Counts Four and Five allege violations of Section 1752 of Title 18, which prohibits the unlawful entry into and disruptive or disorderly conduct in a "restricted buildings or grounds." A "restricted building or grounds" is a "posted, cordoned off, or otherwise restricted area … where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). At the time the defendant entered the U.S. Capitol grounds during and in furtherance of the January 6, 2021, attack, the Vice President was present in the Capitol building. Gossjankowski's conduct accordingly falls within the Section 1752's plain sweep: as alleged in the Superseding Indictment, the defendant unlawfully entered and engaged in disorderly or disruptive conduct on restricted ground – *i.e.*, in an area where the Vice President was "temporarily visiting."

Gossjankowski nonetheless argues that Counts Four and Five fail to state violations of Section 1752 because Vice President Pence's presence at the Capitol on January 6, 2021, does not establish that he was "temporarily visit[ing]" the U.S. Capitol that day. (ECF 67:8-10). He further claims that his is the "commonsense" reading of the statute. *Id.* at 10. Gossjankowski is wrong. His reading of Section 1752 contravenes the statute's plain terms, structure, and purpose.

To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (internal quotation omitted) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). As noted, subsection 1752(c)(1)(B) defines "restricted buildings or grounds," in relevant part, as "any posted, cordoned off, or otherwise restricted area … of a building or grounds where the President or other

---

19, 2022) (Friedman, J.); United States v. Bingert, No. 21-cr-91, 2022 WL 1659163, at *15 (D.D.C. May 25, 2022) (Lamberth, J.); United States v. Anthony Robert Williams, No. 21-cr-377, ECF No. 88 (D.D.C. June 8, 2022) (Howell, C.J.); United States v. Riley Williams, No. 21-cr-618, 2022 WL 2237301, at *20 (D.D.C. June 22, 2022) (Jackson, J.)

person protected by the Secret Service is or will be *temporarily visiting*." (Emphasis added). In turn, the verb "visit" means, *inter alia*, "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[2] And the adverb "temporarily" adds that the protectee's visit must occur "during a limited time."[3]

As a textual matter, then, either definition of "visit" plainly describes the Secret Service protectee's activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the Second Superseding Indictment, two other Secret Service protectees (members of the Vice President's immediate family), also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings while they were ongoing and Vice President Pence was present. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. And all three protectees visited the Capitol temporarily – *i.e.*, during a limited time. Given the nature of the presence of the Vice President (and his family members), the U.S. Capitol plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting," 18 U.S.C. § 1752(c)(1)(B). *See Williams*, No. 1:21-cr-377, ECF 88, at 5-6 (adopting the "plain reading of the words" in subsection 1752(c)(1)(B) urged by the government); *McHugh*, 2022 WL 296304, at *21 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol"); *Andries*, 2022 WL 768684, at *16 ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only. Plainly he did. He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count

---

[2]   https://www.merriam-webster.com/dictionary/visit (last visited June 21, 2022).
[3]   https://www.merriam-webster.com/dictionary/temporarily (last visited June 21, 2022).

proceeding; he intended to and did stay there only for a limited time."); *Puma*, 2022 WL 823079, at *17 (under the plain language of Section 1752, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification.").

Gossjankowski's contrary contentions lack merit. First, Gossjankowski insists that the phrase "temporarily visiting" requires more than "physical[] presen[ce]" and must "include[] an implicit normally-lives-or-works carveout" – a carveout that, in Gossjankowski's view, is dispositive here because "[t]he Constitution obligates the Vice President to be physically present in the Senate with some frequency." (ECF 67:8-10). But Chief Judge Howell rejected this argument in *Mels*, and for good reason. "Despite having a limited role as President of, and tiebreaker for, the Senate . . . the Vice President is generally regarded as an executive branch officer, and generally works in locations other than the Capitol." *Mels*, No. 21-cr-377, ECF 65, at 3 (citing U.S. Const. art. I, § 3, cl. 4 and art. II, § 1, cl. 1). Moreover, "a government official can clearly appear somewhere temporarily and still be doing official work in the process." *Id*. It follows from these uncontroversial principles that "the Vice President's presence for official duties by presiding over a session of Congress" on January 6 did not "make him any less of a temporary visitor" at the Capitol on that day. *Ibid*.

Second, Gossjankowski observes that Vice Presidents have long had "a dedicated, permanent office" reserved for their use in the Senate. (ECF 67:4). That is true but irrelevant.[4]

---

[4]  To be clear, Gossjankowski's suggestion that "when Congress enacted § 1752 in 1971," the Vice President had an office in the Senate but "did not even have an office in the West Wing" (ECF 38, at 9 (emphasis omitted)) is misleading. While Vice President Walter Mondale was the first to have an office in the West Wing, Vice Presidents had used offices in the Eisenhower Executive Office Building since 1960. *See, e.g.*, The Vice President's Residence and Office, https://www.whitehouse.gov/about-the-white-house/the-grounds/the-vice-presidents-residence-office/#:~:text=The%20Vice%20President's%20Ceremonial%20Office,on%20the%20White%20House%20premises (last visited June 21, 2022).

8

Section 1752(c)(1)(B) defines the restricted area by reference to the location of the protectee, not the location of his or her physical offices. When Vice President Pence traveled to the U.S. Capitol on January 6 to oversee the Joint Session of Congress, he was "visiting" the building. And because Vice President Pence intended to leave at the close of the session, this visit was "temporar[y]." Or, as Chief Judge Howell put it in *Mels*, "[t]he fact that the Vice President has a space set aside in the Capitol for occasional use – notably, not the location where Vice President Pence was working inside the Capitol on January 6, 2021 – makes this official no less a 'visitor' and no less 'temporary' when making an appearance on the premises of the Capitol." *Mels*, No. 21-cr-184, ECF 65, at 3.

Third, Gossjankowski cites cases where either the President or Vice President were "traveling outside of the District of Columbia 'visiting' that area for a 'temporary' purpose." (ECF 67:11 (citing *United States v. Bursey,* 416 F.3d 301 (4th Cir. 2005) (airport hangar); *United States v. Junot*, 902 F.2d 1580 (9th Cir. 1990) (unpublished) (park)). But Chief Judge Howell's recent ruling in *Mels* correctly rejected that argument as well: "the fact that those situations clearly qualify does not mean that the relevant situation on January 6 cannot count as well." No. 21-cr-184, ECF 65, at 3. The last case Gossjankowski cites, *United States v. Jabr*, No. 18-cr-105-PLF, 2019 WL 13110682, at *7 (D.D.C. May 16, 2019) (Friedman, J.), is even further afield. There, another judge of this District ruled that a *different* prong of 18 U.S.C. § 1752(c)(1) – subparagraph (A), which defines "restricted building or ground" to specifically include "any posted, cordoned off, or otherwise restricted area … of the White House or its grounds" – did not cover the U.S. Treasury Building or its grounds. *Id.* at *6-10. Nothing in that ruling or its reasoning supports Gossjankowski's position in this case.

Fourth, Gossjankowski asserts (ECF 67:12) that the common-sense interpretation adopted by every judge of this District to have considered the question, and by the government "creates

9

fair notice problems." That is so, Gossjankowski argues, because, under that reading, "the statute's reach expands and contracts based on fluid, unidentified factors" such as "the frequency with which the Vice President casts a tie-breaking vote, their personal preference for working in their Senate office, their travel schedule, etc." *Id.* at 13. But Gossjankowski's argument overlooks Section 1752(c)(1)'s overall structure. Once again, this Court's recent decision in *Williams* explains why:

> Under § 1752, certain conduct is criminalized in certain sensitive areas around both the President and the Vice President. The residences of both, whether the occupant is present or not, are covered at all times. 18 U.S.C. § 1752(c)(1)(A). When either the President or Vice President is "temporarily visiting" some other location, a *de facto* bubble follows him or her and affords similar protection. *Id.* § 1752(c)(1)(B). All of this makes sense, and creates no notice problems

*Mels*, No. 21-cr-184, ECF 65, at 4. Not only does this structure "make[] sense"; it removes *all* uncertainty as well: a person violates Section 1752(a)(1) and (2), at a minimum, whenever, with the requisite *mens rea*, he enters or remains in (or engages in disorderly or disruptive conduct in) a posted, cordoned off, or otherwise restricted area around the President or Vice President. The government's reading, in other words, ensures that Section 1752 supplies a predictable, uniform basis for prosecution whenever a suspect breaches the "*de facto* bubble" following the President and Vice President. It is Gossjankowski's own reading that, in contrast, "would produce absurd results" – by "inexplicably pop[ping] that bubble for an ill-defined set of destinations where the President or Vice President's presence is sufficiently 'frequent' or the reason for their presence sufficiently 'official.'" *Mels*, No. 21-cr-377, ECF 64, at 4 ("The Court declines to introduce such needless ambiguity into a simple statutory phrase."). *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

10

Finally, Gossjankowski asserts (ECF 67:14-17) that that his interpretation is supported by the rule of lenity. But that claim is also unavailing. The Supreme Court has made clear that the rule applies only if, "'after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended.'" *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)). No such ambiguity exists here. As explained above, Section 1752's text, structure, and purpose yield a clear meaning. The rule of lenity should, therefore, play no role in this case.[5]

### III. Section 1752(a)(2) Is Not Unconstitutionally Vague

#### A. Vagueness doctrine

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford

---

[5] Citing Justice Gorsuch's concurrence in the judgment in *Wooden v. United States*, 142 S. Ct. 1063 (2022), Gossjankowski suggests that there is "ambiguity in the case law over the level of ambiguity required to trigger the rule of lenity." (ECF 67:15 n.12). He is again incorrect. First, Justice Gorsuch's concurrence in *Wooden*, which only one other Justice joined, is not – and does not reflect – binding precedent. Under Supreme Court precedent, "the rule of lenity does not apply when a law merely contains some ambiguity or is difficult to decipher." *Id.* at 1075 (Kavanaugh, J., concurring). It applies only when the ambiguity is "grievous[]"– *i.e.*, "'at the end of the process of construing what Congress has expressed.'" *Ibid.* (quoting *Callanan v. United States*, 364 U.S. 587, 596 (1961)). Justice Gorsuch's concurrence itself recognizes that the Supreme Court has set the bar for lenity at grievous ambiguity. *Id.* at 1084. This Court should apply the controlling grievous ambiguity standard, leaving it to the Supreme Court "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). Second, even under Justice Gorsuch's view, lenity comes into play only "[w]here the traditional tools of statutory interpretation yield no clear answer." *Wooden*, 142 S. Ct. at 1085-1086. As explained above, with respect to the meaning of "restricted buildings or grounds," those traditional tools of interpretation do yield a clear answer.

11

the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it '[does] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. See *United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

### B. Section 1752(a)(2) is not void for vagueness

In *Puma* this Court rejected a similar vagueness argument. *Puma*, 2022 WL 823079, at *17 (finding the terms corruptly" and "official proceeding" are not vague). Here, Gossjankowksi attacks the terms: "impede or disrupt the orderly conduct of Government business or official functions," and "within such proximity to any restricted building or grounds." ECF 67:18-19. Tellingly, the defendant offers no authority for his claim. For the same reasons this Court rejected the vagueness arguments in *Puma* it should reject Gossjankowksi's arguments.

Like the challenge recently rejected by Judge Bates, Gossjankowski's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh,* 21-cr-453, ECF No. 51, at 23.

As this Court recognized in *Puma,* the text of 1752 is not complex. The terms Gossjankowksi complains about do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Nordean*, 2021 WL 6134596, at *16 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others'.

Gossjankowski does not argue 1752(a)(2) is unconstitutional as applied to him under the facts of the case. Rather, he asserts the statute is vague on its face. "[A] criminal statute is not unconstitutionally vague on its face unless it is 'impermissibly vague in all of its applications." *United States v. Sandlin*, 2021 WL 5865006, at *10 (quoting *Village of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 497 (1982). Because 1752(a)(2) plainly covers the charges against Gossjankowski this Court, as it did in *Puma,* need not "analyz[e] other hypothetical applications of the law," [*id*], or determine "the outer contours" of the statute's application, *United States v.*

13

*Sandlin*, 2021 WL 5865006, at *13. See also *United States v. McHugh*, 2022 WL 296304, at *9 ("[T]he vagueness determination 'must be made on the basis of the statute itself and other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectations of particular defendants.'") (quoting Bouie v. City of Columbia, 378 U.S. 347, 355 n.5 (1964)).

As Chief Judge Howell did in *Mels, supra,* this Court should reject Gossjankowksi's attempt to "fabricat[e] ambiguity" and deny his claim of vagueness.

## CONCLUSION

For these reasons, the defendant's motion to dismiss Counts Four and Five of the Second Superseding Indictment should be denied.

Dated: September 23, 2022.

            Respectfully submitted,

            MATTHEW M. GRAVES
            United States Attorney
            D.C. Bar No. 481052

By: */s/ Barry K. Disney*
   BARRY K. DISNEY
   KS Bar No. 13284
   Trial Attorney – Detailee
   U.S. Attorney's Office for the District of Columbia
   601 D Street, N.W.
   Washington, D.C. 20530
   Email: Barry.Disney@usdoj.gov
   Cell: (202) 924-4861