UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-123-PLF |
| v. : | |
| : | |
| VITALI GOSSJANKOWSKI, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO SUPPRESS PHYSICAL EVIDENCE AND RETURN
### PROPERTY

Defendant Vitali GossJankowski, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved to suppress at trial information obtained from his electronic devices, and return said devices under Federal Rule of Criminal Procedure 41(g). Because the defendant fails to establish why this Court, reviewing the probable cause determination of a Magistrate Judge, should exclude the evidence or that the physical devices should be returned, this Court should deny Defendant's motion.

### STATEMENT OF FACTS

GossJankowski joined the mob of rioters on January 6, 2021, outside of the Capitol during Congress's attempt to certify the electoral count of the 2020 Presidential Election as required by the Twelfth Amendment and the Electoral Count Act. While outside of the Capitol, GossJankowski joined others attempting to breach through the Lower West Terrace Door, the "Capitol tunnel," before being handed a

hand-held stun gun from another rioter. GossJankowski then maintained possession of the weapon.

GossJankowski later displayed and activated this weapon several times before using it during an attempt to assault on a fully uniformed officer who had been pulled into the crowd.

On January 10, 2021, the Federal Bureau of Investigation (FBI) placed depictions of GossJankowski from the scene on its website seeking information to identify GossJankowski. On January 14, 2021, GossJankowski repeated called the Metropolitan Police Department (MPD) requesting to speak with police after learning his picture was one the FBI was seeking information about.

GossJankowski was met by officers, including a native-ASL-speaking officer from MPD's Deaf and Hard of Hearing Unit (DHHU), who arranged for GossJankowski to meet with agents from the FBI on January 17, 2021. GossJankowski told the FBI he was at the Capitol on January 6, 2021, and that he used his cell phone to record some events from that day. He further admitted that he had possession of the 'taser' during the events of that day. GossJankowski finally confirmed for officers his address as well as his cell phone number.

On January 18, 2021, United States Magistrate Judge G. Michael Harvey issued a warrant to search GossJankowski's home, and seize evidence related to GossJankowski's acts at the Capitol. Attachment B of the Affidavit specifically lists, among the items to be seized, "[a]ny digital device which is capable of containing and reasonably could contain fruits, evidence, information, contraband, or

2

instrumentalities as described in the search warrant affidavit and above, hereinafter the 'Device(s).'" The term "digital device" was later clarified to mean:

> Any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop computers, laptop computers, notebooks, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, USB flash drives, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); security devices; and any other type of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions.[1]

During the search, law enforcement officers seized nine items. Defendant moves this Court to suppress information from: (1) a droid phone, (2) a tablet in black case, (3) two silver Apple laptops, (4) a black Lenovo laptop, (5) an iPhone 11 Pro Max, and (6) a red iPhone XR.

## ARGUMENT

Defendant asks this Court to review the Magistrate Judge's probable cause determination before he issued the search warrant. "To begin with, we give 'great deference' to the issuing judge's probable-cause determination. Even if we disagree with the judge's probable-cause determination after giving it 'great deference,' that

---

[1] *See* Attachment B p 6

3

disagreement alone does not justify exclusion of evidence."[2] Here, law enforcement obtained a warrant prior to a search.

Probable cause to search a residence exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[3] "Moreover, '[t]here must, of course, be a nexus . . . between the item to be seized and criminal behavior.'"[4] "A magistrate may infer a nexus between a suspect and his residence, depending upon 'the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'"[5]

**A. There was probable cause to search GossJankowski's residence.**

Defendant's heavy reliance upon *United States v Griffith*, 867 F.3d 1265 (D.C. Cir 2017), is misplaced. In *Griffith*, our Court of Appeals reasoned:

> the affidavit in this case conveyed no reason to think that Griffith, in particular, owned a cell phone. There was no observation of Griffith's using a cell phone, no information about anyone having received a cell phone call or text message from him, no record of officers recovering any cell phone in his possession at the time of his previous arrest (and confinement) on unrelated charges, and no indication otherwise of his ownership of a cell phone at any time. To the contrary, the circumstances suggested Griffith might have been less likely than others to own a phone around the time of the search: he had recently completed a ten-month period of confinement, during which he of course had no ongoing access to a cell phone; and at least one person in his

---

[2] *United States v Spencer*, 530 F.3d 1003, 1006 (D.C. Cir 2008) (quoting *Illinois v Gates*, 462 U.S. 213, 236; 103 S. Ct. 2317 (1983)
[3] *Illinois v Gates*, 462 U.S. 213, 238; 103 S. Ct. 2317 (1983)
[4] *United States v Griffith*, 867 F.3d 1265, 1271 (D.C. Cir 2017) (quoting *Warden, Md. Penitentiary v Hayden*, 387 U.S. 294, 307; 87 S.Ct. 1642 (1967))
[5] *United States v Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (quoting *United States v Savoca*, 761 F.2d 292, 298 (6th Cir. 1985))

circle—his potential co-conspirator, Carl Oliphant—was known not to have a cell phone.[6]

The affidavit in the present case provides the opposite.

Paragraph 15 of the affidavit provides: "GOSSJANKOWSKI also provided a cellular phone number of 202-XXX-XXXX. I have communicated with GOSSJANKOWSKI via text message using that phone number." Later, in paragraph 16, the affidavit provides: "[GossJankowski] also stated that *he took pictures and video when he was on the Capitol grounds*, but that he either deleted them or they were lost *when his phone died*." (emphasis added). This affidavit was sworn 12 days after the events of January 6, 2021. Further, within those 12 days, GossJankowski continued to use the phone to communicate with the affiant. This provides the nexus that was lacking in *Griffith*.

**B. The warrant is narrowly tailored.**

Acknowledged by Defendant is that paragraph 20 outlines that the search was to *include* means of communication—within the affiant's experience and training—used by individuals participating in events such as the January 6, 2021, attack. Paragraph 13 outlines the *coordination* observed by the affiant, which allowed the Magistrate Judge to find probable cause that evidence of a crime would be found *within* those means of communication.

In paragraph 13 of the affidavit, the affiant provided the Magistrate Judge with 'screen captures' of a publicly available video and explained: "The video shows

---

[6] *Griffith*, 867 F.3d at 1272-73.

Person 1: entering the covered area leading to an entrance to the U.S. Capitol building . . . possessing a black-colored handheld Taser, which *was handed to him by an unknown man in a desert camouflage jacket* . . . and pushing himself through the crowd of violent individuals towards the police line . . . ." (emphasis added). The affiant also provided the publicly available Uniform Resource Locator (URL) where the video itself could be accessed online.

Again, Defendant seems to rely heavily upon *Griffith* for his particularity argument; however, the facts of this case are distinguishable.

In *Griffith*, the Circuit Court reasons:

> The warrant in this case authorized police to search for and seize "all electronic devices to include but not limited to cellular telephone(s), computer(s), electronic tablet(s), devices capable of storing digital images (to include, but not limited to, PDAs, CDs, DVD's [and] jump/zip drives)." The affidavit, as explained, failed to establish probable cause to suspect that any cell phones or other electronic devices belonging to Griffith and containing incriminating information would be found in the apartment. Yet the warrant did not stop with any devices owned by Griffith, which already would have gone too far. It broadly authorized seizure of *all* cell phones and electronic devices, without regard to ownership. That expansive sweep far outstripped the police's proffered justification for entering the home—viz., to recover any devices owned by Griffith.[7]

Here, Attachment B is not so broad.

Paragraph 1(o) of Attachment B authorized the seizure of: "Any digital device which is capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities *as described in the search warrant affidavit and above* . . . ." (emphasis added). Paragraph 19 described the devices as:

---

[7] *Griffith*, 867 F.3d at 1276 (internal citation to affidavit omitted)

"includes computers, mobile phones, and/or tablets owned, used, or controlled by GOSSJANKOWSKI."

A further limitation was placed within Attachment B allowing: "law enforcement personnel are also specifically authorized to obtain from GOSSJANKOWSKI . . . the compelled display of any physical biometric characteristics . . . necessary to unlock any Device(s) requiring such biometric access subject to seizure . . .." However, such authorization specifically excluded: "(but not any other individuals present at the PREMISES at the time of execution of the warrant)."

Admittedly, the *Griffith* court defined the particularity requirement in terms of just ownership of the device.[8] And here the narrowing includes both ownership *and* a possessory interest in the device. But the *Griffith* court's ruling relied on a lack of *any* narrowing, not by *how much* the seizure was narrowed. The warrant in this case was sufficiently narrowly tailored given the *type* of evidence the warrant sought to search for.

### C. The warrant was executed in Good Faith.

As noted above, the posture of this matter is the review of the Magistrate Judge's probable cause determination. Law enforcement, here, did precisely what we expect of them: they sought a warrant before performing a search. "[T]he

---

[8] "[T]he terms of the warrant allowed officers unfettered access to any electronic device in the apartment even if police *knew* the device belonged to someone other than Griffith." *Griffith*, at 1276 (emphasis in original).

'exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges.'"[9]

In *United States v Leon*, 468 U.S. 897 (1984), the Supreme Court carved out the "good faith" exception to the exclusionary rule when law enforcement relies upon the probable cause determination of a magistrate. Outside of Defendant's general and conclusory assertions, there was little attempt to explain *how* law enforcement *could have* acted without good faith.

Even if Defendant could identify some deficiency in the warrant, that would not be enough to merit relief because Defendant has not identified a facial deficiency *so glaring* no reasonable officer could overlook it. This Court has no reason to conclude that the presumption of good faith does not apply.

### D. A pretrial return of physical computers could harm the United States' case.

In May 2021, the parties communicated and arranged return of digital copies of the information within the electronic devices seized following the January 18, 2021 warrant. To date, Defendant has not agreed to stipulate that the digital copy is accurate, and stems from Defendant's computers.

The only means by which the United States would be able to stave off a challenge of "a genuine question [ ] raised about the original's authenticity" would be to maintain the original until after trial.[10] Defendant delivered a hard drive to receive

---

[9] *United States v Spencer*, 530 F.3d 1003, 1006 (D.C. Cir 2008) (quoting *Massachusetts v Sheppard*, 468 U.S. 981, 990; 104 S. Ct 3424 (1984))
[10] FRE 1003

the digital copies from the computers on May 7, 2021. It was ready for pick-up on May 11, 2021.

Related to authenticating the United States' copy of the devices is the 'chain of custody' of the device prior to the admission of the copies. Unique to digital "originals" is the modification of the data, often automatically without the user's input. Each of the copies, Defendant's copy and the United States' copy, would not experience the same modifications by the original should the original continue to be used. With more use of the original device, it becomes more difficult to authenticate either copy.

## CONCLUSION

For the foregoing reasons, the United States respectfully submits that the Court should deny Defendant's Motion to Suppress Electronic Evidence.

    Respectfully Submitted,

    MATTHEW M. GRAVES
    United States Attorney
    D.C. Bar No. 481052

    /s/
    ADAM M. DREHER
    Assistant United States Attorney
    MI Bar No. P79246
    601 D. St. N.W.
    Washington, D.C. 20530
    (202) 252-1706
    adam.dreher@usdoj.gov