UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 21-cr-123 (PLF) |
| | ) | |
| VITALI GOSSJANKOWSKI, | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

### REPLY IN SUPPORT OF MOTION TO SUPPRESS PHYSICAL EVIDENCE AND RETURN PROPERTY

Mr. Vitali GossJankowski, through counsel, respectfully replies to the Government's Opposition to [His] Motion to Suppress Physical Evidence and Return Property ("Gov't Opp'n"), ECF No. 84.

The Court should grant the defense motion to suppress and return of property for several reasons. First, the government has controlled and searched, without any limitation on its authority, Mr. GossJankowski's digital devices for almost two years, yet has identified *zero* evidence of the charges on any device. Second, the government fails to address many of the key points in Mr. GossJankowski's motion, Def. Mot. at ECF No. 72, and fails to provide any justification for keeping any of his electronic devices for any more than the almost two years they have had the devices already. Third, the lack of evidence identified, further, highlights the complete lack of probable cause to seize and search the devices to begin with. Therefore, notwithstanding the government's inaccurate claim that it must maintain (evidence-less) devices to authenticate digital copies of them at trial, the government's retention of the devices for a single minute longer is plainly unreasonable, and the Court should order the immediate return of Mr. GossJankowski's property, regardless of the suppression issue. The Court should also suppress at trial the still-

1

unidentified "evidence" seized.

### A. The Search Warrant Lacked Probable Cause.

With respect to probable cause, the government acknowledges that probable cause requires a nexus between the item to be seized and the criminal behavior. Gov't Opp'n at 4. For probable cause to support the warrant, the government relies exclusively on Paragraphs 15 and 16 of the affidavit. *Id.* at 5. Paragraphs 15 and 16 of the affidavit provide a nexus solely between Mr. GossJankowski's behavior and *a* cell phone. The government makes no attempt to identify or explain how these paragraphs support probable cause for any device other than a cell phone and they provide no such support. There was no reason to believe that Mr. GossJankowski brought any other digital device to the Capitol.

In any event, the search warrant lacked probable cause to search Mr. GossJankowski's entire residence for any digital device, including a cell phone. People generally keep cell phones on their persons, *see United States v. Griffith,* 867 F.3d 1265, 1273 (D.C. Cir. 2017), and the government in fact recovered Mr. GossJankowski's primary cell phone (i.e., the phone number identified in Paragraph 15 of the affidavit) from his person, Def. Ex. 3, FBI Report dated Jan. 19, 2021, ECF No. 72-5 at 2. Notably, the government did not retain this device—it properly and appropriately returned the device to Mr. GossJankowski days after seizure—because the government does not actually need the device to authenticate its digital copy of the device if necessary at trial. The government's proper return of the cell phone further undermines its unsupported assertion that returning Mr. GossJankowski's other devices to him "could [somehow] harm [its] case." Gov't Opp'n at 8.

Furthermore, Mr. GossJankowski's communications with the FBI case agent on his cell phone do not provide the "nexus" missing from *Griffith*. Gov't Opp'n at 5. There was nothing

criminal in communicating with the agent—and the government already possessed all of those communications on the agent's own cell phone.

### B. The Search Warrant Lacked Particularity.

With respect to particularity, the government's reliance on paragraphs 13 and 20 of the *affidavit* to support its assertion that the *warrant* was narrowly tailored (Gov't Opp'n at 5) is misplaced. As a threshold matter, "a court may construe a warrant with reference to a supporting application or affidavit" only "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Groh v. Ramirez*, 540 U.S. 551, 557–58 (2004) ("The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents."); *United States v. Maxwell*, 920 F.2d 1028, 1031 (D.C. Cir. 1990). *See also United States v. Griffith*, 867 F.3d 1265, 1277 (D.C. Cir. 2017) ("We read warrants by reference to an affidavit . . . only if the issuing judge uses 'explicit words on the warrant' indicating an intention to incorporate the affidavit's contents[.]" (citation omitted)). Here, the warrant does not expressly incorporate the affidavit and the affidavit accompanied only the application for the warrant, not the warrant itself. *See* Def. Ex. 2, Search Warrant & Return, ECF No. 72-4. Therefore, the affidavit does not in any way limit or tailor the warrant in this case.

Furthermore, paragraphs 13 and 20 of the affidavit would not limit or narrow the warrant even if the warrant incorporated the affidavit. Indeed, neither paragraph even purports to limit the scope of the warrant in any way. Nor do those paragraphs of the affidavit provide any reason to believe that Mr. GossJankowski's entire residence and all digital devices found therein contained evidence of trespassing and assault charges. Moreover, those paragraphs do not provide any reason to believe that Mr. GossJankowski was involved in any conspiracy or "*coordinat[ed]*" (Gov't Opp'n at 5) with anyone else at any time on January 6. To support its particularity

argument, the government contends that a video capturing hundreds of obviously uncoordinated people shows that "an unknown man" randomly handed Mr. GossJankowski a stun gun in a moment of chaos. Gov't Opp'n at 5-6. The video, however, provides no reason to believe that Mr. GossJankowski engaged in a coordinated criminal effort.

The government does not, and cannot, meaningfully distinguish *Griffith* from the instant case. Gov't Opp'n at 6–7. As the government recognizes, the warrant "*includes* computers, mobile phones, and/or tablets owned, used, or controlled by GOSSJANKOWSKI" (emphasis added), and it nowhere *excludes* digital devices owned, used, or controlled by other individuals. In addition, the word "*used*" expressly broadened the scope of the warrant to devices that Mr. GossJankowski did not himself *own or control*. The government had identified no particular "computers, mobile phones" (other than the one found on his person), "and/or tablets owned, used, or controlled by" Mr. GossJankowski. And the government did not know whether Mr. GossJankowski had ever used one of his roommates' digital devices, nor was there any reason to believe any such device contained evidence, fruits, or instrumentalities of the charges in this case.

Moreover, the authorization "to obtain from GOSSJANKOWSKI (but not any other individuals present at the PREMISES at the time of execution of the warrant) the compelled display of any physical biometric characteristics . . . necessary to unlock any Device(s) requiring such biometric access" expressly contemplates that the government *may* seize and search devices of other individuals who may or may not be present at the premises when the warrant is executed. Thus, that provision does not distinguish this case from *Griffith* but, rather, underscores the same lack of limitation found to be plainly unconstitutional in *Griffith*. That the government could not compel individuals other than Mr. GossJankowski to display physical biometric characteristics did not in any way limit the scope of what the government could seize or search under the overly broad

4

warrant.

Indeed, the government concedes that "the *Griffith* court defined the particularity requirement in terms of just ownership of the device" and held unconstitutional a warrant with terms that "'allowed officers unfettered access to any electronic device in the apartment even if police *knew* the device belonged to someone other than *Griffith*.'" Gov't Opp'n at 7 & n.8 (quoting *Griffith*, 867 F.3d at 1276 (emphasis in original)). The exact same is true here. The government's contention that the instant warrant is somehow more narrowly tailored because it "includes both ownership and a possessory interest in the device," Gov't Opp'n at 7, is inconsistent. Including more in the scope of the warrant does exactly the opposite—it broadens the warrant. Here, as in *Griffith*, there is not "*any* narrowing." Gov't Opp'n at 7. Lastly, the government's argument that "the warrant in this case was sufficiently narrowly tailored given the *type* of evidence the warrant sought to search for" is unexplained and unclear. *Id*. The warrant "sought to search for" and seize any digital device found in Mr. GossJankowski's residence, regardless of who it belonged to or what it was used for. That is plainly overbroad and insufficiently particularized under *Griffith*.

**C.  The Good Faith Exception Does Not Apply.**

With respect to the good faith exception, the government argues that "Defendant has not identified a facial deficiency *so glaring* no reasonable officer could overlook it." Gov't Opp'n at 8. The warrant in this case was plainly and obviously deficient and unconstitutional under *Griffith*. The government does not explain how officers could have possibly acted in good faith in applying for and executing the warrant. The warrant was drafted specifically to be unlimited in scope and contains no limitation on what digital device could be seized and searched. It was plainly unconstitutional. While the warrant application was longer—i.e., contained more words and pages—than the warrant application in *Griffith*, this Court should not condone the government's

5

attempt to bury the application's otherwise-*glaring* facial deficiency in limitless verbiage. The law enforcement officers in this case "could not have harbored an objectively reasonable belief in the existence of probable cause" to seize and search all digital devices in Mr. GossJankowski's residence, particularly in light of the fact that no charge or element of the offenses charged involves the use of a computer or digital device. *United States v. Leon*, 468 U.S. 897, 923 (1984).

### D. Since no evidence has been identified from the devices that the government intends to use at trial, the devices must be returned.

Most importantly, the government identifies no evidence of the crimes charged found on any digital device, nor any evidence from any device that it plans to use at trial. On this basis alone, the Court should order the return of the property. As Rule 16 of the Federal Rule of Criminal Procedure mandates, the government must permit inspection of evidence that "the government intends to use the item in its case-in-chief at trial." Fed. R. Crim. P. R. 16 (a)(1)(E)(ii). Hence, since the government has not identified any evidence from the devices it intends to use at trial, the devices should be returned. Furthermore, this Court "has both the jurisdiction and the duty to ensure the return" "to the defendant [of] that property seized from him in the investigation but which is not alleged to be stolen, contraband, or otherwise forfeitable, and which is not needed, or is no longer needed, as evidence." *United States v. Wilson*, 540 F.2d 1100, 1101 (D.C. Cir. 1976) (discussing Rule 41(e), the predecessor to Rule 41(g)).

Here, the devices are not stolen, are not contraband and are otherwise not forfeitable. The devices are also not needed as evidence. The government contends that returning the physical computers would harm the government's case. Gov't Opp'n at 8. However, as stated above, the offense here is not a computer crime. There is no allegation that Mr. GossJankowski brought or was seen with a computer on January 6th. The government cites Rule 1003 of the

6

Federal Rules of Evidence to support its argument; however, that rule clearly states that duplicates are admissible as originals. Furthermore, there should be no concern that the duplicates will not be admissible because counsel understands that MD5 hash values were generated from the original devices. The government's forensic agent report along with the chain of custody report authenticated the validity of the forensic images. The government has returned devices in others cases, without requiring a stipulation.

Notably, the government avoids addressing *United States v. Dennis*, ___ F. Supp. 3d ___, 2022 WL 3580315 (S.D.N.Y. Aug. 19, 2022), where a District Court reasoned that "a phone is not contraband simply when it was used in the commission of a crime." *Id.* at *1. In that case, the Court ordered the return of the cell phone after a lawfully executed search warrant. In determining that the government had "not established its need for continuing possession" of the defendant's property, the Court explained

> Government can authenticate the contents of the phone by other means. It can, for example, call witnesses who can testify that the extracted data was pulled from Mr. Dennis's phone. Additionally, the Government has not explained how presentation at trial of Mr. Dennis's phone will increase the credibility of its assertion that that the extracted data did indeed come from Mr. Dennis's phone.

Dennis, 2022 WL 3580315, at *2.

The fact that the government identifies no evidence underscores the lack of probable cause in this case. Moreover, the government's retention of the property for almost two years violates Mr. GossJankowski of his constitutional right to be secure in his property. Hence, the evidence must be suppressed and the devices must be returned.

## CONCLUSION

For the foregoing reasons, and for any other reasons set forth at a hearing on this motion or in supplemental pleadings, and that this Court may deem just and proper, the Court should order

the government to return immediately Mr. GossJankowski's digital devices and suppress at trial the use of all physical evidence obtained from the devices seized and searched.

                                              Respectfully submitted,

                                              A.J. KRAMER
                                              FEDERAL PUBLIC DEFENDER

                                              _____/s/_____
                                              Ubong E. Akpan
                                              Celia Goetzl
                                              Assistant Federal Public Defenders
                                              625 Indiana Ave., N.W., Suite 550
                                              Washington, D.C.  20004
                                              (202) 208-7500