UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
UNITED STATES OF AMERICA                  )
                                          )
        v.                                )        Criminal No. 21-0123 (PLF)
                                          )
VITALI GOSSJANKOWSKI,                     )
                                          )
        Defendant.                        )
_____)

OPINION AND ORDER

        Defendant Vitali GossJankowski has filed a Motion to Dismiss Restricted Area

Charges Under 18 U.S.C. § 1752(a) (Counts Four and Five) ("Counts Four and Five Mot.") [Dkt.

No. 67]; a Motion to Dismiss Obstruction Charge Under 18 U.S.C. § 1512(c)(2) (Count Two)

("Count Two Mot.") [Dkt. No. 68]; and a Motion to Dismiss Civil Disorder Charge Under 18

U.S.C. § 231(a)(3) (Count One) ("Count One Mot.") [Dkt. No. 69].  Mr. GossJankowski moves

to dismiss these counts pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure for

failure to state an offense, as well as on constitutional grounds.

        The legal challenges that Mr. GossJankowski raises in the first two motions have

been considered and rejected by this Court in United States v. Puma, 596 F. Supp. 3d 90

(D.D.C. 2022) and the legal challenges in all three motions have been addressed by many other

judges in this district.  See, e.g., United States v. Griffin, 549 F. Supp. 3d 49, 52-58

(D.D.C. 2021) (18 U.S.C. § 1752(a)); United States v. Sandlin, 575 F. Supp. 3d 16, 21-34

(D.D.C. 2021) (18 U.S.C. § 1512(c)(2)); United States v. Caldwell, 581 F. Supp. 3d 1, 10-34

(D.D.C. 2021) (18 U.S.C. § 1512(c)(2)); United States v. Mostofsky, 579 F. Supp. 3d 9, 15-28

(D.D.C. 2021) (18 U.S.C. § 231(a)(3); 18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)); United

States v. Montgomery, 578 F. Supp. 3d 54, 62-87 (D.D.C. 2021) (18 U.S.C. § 1512(c)(2));

United States v. Nordean, 579 F. Supp. 3d 28, 41-61 (D.D.C. 2021) (18 U.S.C. § 231(a)(3); 18

U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)); United States v. McHugh, 583 F. Supp. 3d 1, 11-35

(D.D.C. 2022) (18 U.S.C. § 231(a)(3); 18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)); United

States v. Bozell, Crim. No. 21-216, 2022 WL 474144, at *2-9 (D.D.C. Feb. 16, 2022) (18 U.S.C.

§ 1512(c)(2); 18 U.S.C. § 1752(a)); United States v. Andries, Crim. No. 21-93, 2022

WL 768684, at *3-17 (D.D.C. Mar. 14, 2022) (18 U.S.C. § 1512(c)(2); 18 U.S.C. § 1752(a)).

      For the following reasons, the Court concludes that the superseding indictment

adequately states the offenses with which Mr. GossJankowski is charged and provides him with

sufficient notice.  The Court therefore will deny Mr. GossJankowski's motions.[1]

## I.  BACKGROUND

      The charges against Mr. GossJankowski relate to the events at the U.S. Capitol on

January 6, 2021.  The events of January 6, 2021 are summarized in the Court's opinion in United

States v. Puma.  See United States v. Puma, 596 F. Supp. 3d at 93-94.  This factual summary is

"for background purposes only," and these facts "do not inform the Court's analysis of

---

[1]  The materials that the Court has considered in relation to the pending motions include:  Statement of Facts [Dkt. No. 1-1]; Superseding Indictment [Dkt. No. 41]; Motion to Dismiss Restricted Area Charges Under 18 U.S.C. § 1752(a) (Counts Four and Five) ("Counts Four and Five Mot.") [Dkt. No. 67]; Motion to Dismiss Obstruction Charge Under 18 U.S.C. § 1512(c)(2) (Count Two) ("Count Two Mot.") [Dkt. No. 68]; Motion to Dismiss Civil Disorder Charge Under 18 U.S.C. § 231(a)(3) (Count One) ("Count One Mot.") [Dkt. No. 69]; Supplement to Motion to Dismiss Obstruction Charge Under 18 U.S.C. § 1512(c)(2) (Count Two) [Dkt. No. 70]; Government's Response in Opposition to Defendant's Motion to Dismiss Count Two of the Superseding Indictment [Dkt. No. 74]; Government's Response in Opposition to Defendant's Motion to Dismiss Count One of the Superseding Indictment [Dkt. No. 76]; Government's Response to Defendant's Motion to Dismiss Counts Four and Five [Dkt. No. 77]; and Reply in Support of Motion to Dismiss Restricted Area Charges Under 18 U.S.C. § 1752(a) (Counts Four and Five) [Dkt. No. 80].

[Mr. GossJankowski's] motions to dismiss, which must be limited to 'the four corners of the indictment.'" United States v. Montgomery, 578 F. Supp. 3d at 59 n.1 (quoting United States v. Safavian, 429 F. Supp. 2d 156, 161 n.2 (D.D.C. 2006)).

The United States alleges that Mr. GossJankowski was a member of the crowd that entered the Capitol building on January 6, 2021 and engaged in certain activities while there. See Superseding Indictment.  According to the statement of facts accompanying the criminal complaint in this case, a publicly available video depicts Mr. GossJankowski attempting to gain access to the U.S. Capitol building on January 6, 2021.  See Statement of Facts at 2.  The video depicts Mr. GossJankowski handling and activating a Taser.  See id.  On January 14, 2021, Mr. GossJankowski contacted law enforcement regarding an FBI "Be on the Lookout" poster that included a picture of him, and FBI agents and Metropolitan Police Department officers interviewed him that same day.  See id. at 4.  Law enforcement interviewed Mr. GossJankowski again on January 17, 2021.  See id. at 5.  During these interviews, Mr. GossJankowski admitted to possessing a Taser but denied using the Taser on a law enforcement officer.  See id.

On January 18, 2021, the United States charged Mr. GossJankowski by criminal complaint for offenses arising out of his conduct in relation to the Capitol riot.  See Complaint [Dkt No. 1].  A grand jury returned an indictment on February 17, 2021, and a superseding indictment on November 10, 2021, which charges Mr. GossJankowski with five felony offenses and one misdemeanor offense.  See Superseding Indictment.  On September 9, 2022, Mr. GossJankowski moved to dismiss Count One, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Count Two, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; and Counts Four and Five, Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18

U.S.C. §§ 1752(a)(1) and (b)(1)(A), and Disorderly and Disruptive Conduct in a Restricted

Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C.

§§ 1752(a)(2) and (b)(1)(A).  These motions are now ripe for decision.

## II.  LEGAL STANDARD

A defendant in a criminal case may move to dismiss an indictment or count before

trial for "failure to state an offense."  FED. R. CRIM. P. 12(b)(3)(B)(v).  An indictment may fail to

state an offense if the statutory provision at issue does not apply to the charged conduct or if the

statutory provision at issue is unconstitutional.  See, e.g., United States v. Eshetu, 863

F.3d 946, 952 (D.C. Cir. 2017) ("The defense of failure of an indictment to charge an offense

includes the claim that the statute apparently creating the offense is unconstitutional." (citation

omitted)), vacated on other grounds, 898 F.3d 36 (D.C. Cir. 2018).  In determining if an offense

has been properly charged, the operative question is "whether the allegations, if proven, would

be sufficient to permit a jury to find that the crimes charged were committed."  United States v.

Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011) (citing United States v. Sampson, 371

U.S. 75, 76 (1962)).  In considering a motion to dismiss, a court must accept the allegations in

the indictment as true.  United States v. Ballestas, 795 F.3d 138, 149 (D.C. Cir. 2015).

"An 'indictment's main purpose is to inform the defendant of the nature of the

accusation against him.'"  United States v. Ballestas, 795 F.3d at 148-49 (quoting United States

v. Hitt, 249 F.3d 1010, 1016 (D.C. Cir. 2001)).  "It therefore need only contain 'a plain, concise,

and definite written statement of the essential facts constituting the offense charged.'"  Id. at 149

(quoting FED. R. CRIM. P. 7(c)(1)).  An indictment "is sufficiently specific where it (1) contains

the elements of the offense charged and fairly informs the defendant of those charges so that he

may defend against them, and (2) enables him to plead acquittal or conviction in bar of future

prosecutions for the same offense.'" <u>United States v. Safavian</u>, 429 F. Supp. 2d at 158 (quoting <u>Hamling v. United States</u>, 418 U.S. 87, 117-18 (1974)).

"In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the <u>face</u> of the indictment and, more specifically, the <u>language used</u> to charge the crimes." <u>United States v. Sunia</u>, 643 F. Supp. 2d 51, 60 (D.D.C. 2009). "Because a court's use of its supervisory power to dismiss an indictment directly encroaches upon the fundamental role of the grand jury, dismissal is granted only in unusual circumstances." <u>United States v. Ballestas</u>, 795 F.3d at 148 (alterations and quotation marks omitted).

## III. DISCUSSION

### A.  *18 U.S.C. § 1752(a)(1) and 18 U.S.C. § 1752(a)(2)*

Mr. GossJankowski moves to dismiss Counts Four and Five of the superseding indictment, which charges him pursuant to 18 U.S.C. §§ 1752(a)(1) and (a)(2), respectively.  <u>See</u> Superseding Indictment [Dkt. No. 41] at 3.  That statute provides:

> (a)  Whoever—
>
> > (1)  knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
> >
> > (2)  knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; . . .
>
> or attempts or conspires to do so, shall be punished as provided in subsection (b) . . . .
>
> (c)  In this section—
>
> > (1) the term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area—

> (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
>
> (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
>
> (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. §§ 1752(a), (c).

Mr. GossJankowski asserts that Counts Four and Five fail to state an offense because the United States Capitol and its grounds do not meet the statutory definition of a "restricted building or grounds."  Counts Four and Five Mot. at 3.  He maintains that in order for an area to be "restricted" within the meaning of subsections (a)(1) and (a)(2), the Secret Service must designate, post, cordon off, or otherwise restrict the area, and that the Secret Service did not do so to the Capitol building and grounds on January 6, 2021.  Id. at 5-6.  In addition, he argues that the area in question does not meet the statutory definition of a "restricted building or grounds" because Vice President Pence was not "temporarily visiting" the Capitol and its grounds.  Id. at 7.  Finally, Mr. GossJankowski argues that Count Five, alleging a violation of § 1752(a)(2), should be dismissed because the statute is unconstitutionally vague and overbroad. The Court disagrees with Mr. GossJankowski and discusses his arguments in turn.

First, this Court in United States v. Puma – and many other judges in this district – have rejected nearly identical legal arguments regarding whether the Secret Service must designate an area as "restricted."  In United States v. Puma, the Court concluded that the text of Section 1752 makes plain that the statute does not require that the Secret Service designate an area as "restricted."  United States v. Puma, 596 F. Supp. 3d at 109.  The Court explained:

The text of Section 1752 "is not complex," United States v. Griffin, 2021 WL 2778557 at *3, and it "plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area," United States v. Mostofsky, 2021 WL 6049891, at *13. "[S]omeone can violate the statute by knowingly 'entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting." United States v. Griffin, 2021 WL 2778557 at *3 (quoting Wilson v. DNC Servs. Corp., 417 F. Supp. 3d 86, 98 (D.D.C. 2019)). The plain language of the statute imposes no limitation whatsoever on which authority restricts the building or grounds. United States v. Bozell, 2022 WL 474144, at *8. Indeed, "[t]he statute focuses on perpetrators who knowingly enter a restricted area around a protectee, not on how it is restricted or who does the restricting." United States v. Griffin, 2021 WL 2778557 at *3 "[T]he only reference in the statute to the Secret Service is to its protectees. Section 1752 says nothing about who must do the restricting." Id. at *4. Congress chose to delineate the outer boundary of this statute not by who does the restricting but [] who is being protected. "Congress's failure to specify how an area becomes 'restricted' just means that the statute does not require any particular method for restricting a building or grounds." United States v. McHugh, 2022 WL 296304, at *18.

Id. Judges Contreras, Bates, Kelly, Boasberg, Mehta, and McFadden have all interpreted

Section 1752 in the same commonsense manner. See United States v. Andries, 2022

WL 768684, at *14; United States v. Bozell, 2022 WL 474144, at *8; United States v.

McHugh, 583 F. Supp. 3d at 29-31; United States v. Nordean, 579 F. Supp. 3d at 59-60; United

States v. Mostofsky, 579 F. Supp. 3d at 28; Omnibus Order, United States v. Caldwell, Crim.

No. 21-28 (D.D.C. Sept. 14, 2021) [Dkt. No. 415] at 4; United States v. Griffin, 549 F. Supp. 3d

at 54-55.

Mr. GossJankowski argues that "[t]he legislative history [of Section 1752]

bolsters []his interpretation" that the Secret Service must designate, post, cordon off, or

otherwise restrict an area in order for it to be "restricted" within the meaning of the statute.

7

Counts Four and Five Mot. at 6.  The Court, however, rejected this argument as well in United

States v. Puma.  After describing the history of Section 1752, the Court concluded:

> [T]he statutory text "has a plain and unambiguous meaning with
> regard to the particular dispute in this case," Robinson v. Shell Oil
> Co., 519 U.S. at 340, so there is no need to "look beyond the text for
> other indicia of Congressional intent," United States v.
> Villanueva-Sotelo, 515 F.3d 1234, 1237 (D.C. Cir. 2008).  Even if
> the Court considers this history, however, it does not illuminate any
> requirement for the Secret Service to have restricted the
> area . . . .  The Court agrees with Judge McFadden that the history of
> amendments to Section 1752 provides little information about who
> must restrict an area.  See United States v. Griffin, 2021
> WL 2778557, at *5.  At the very least, the amendments to
> Section 1752 have served to increasingly, if only modestly, expand
> the scope of the statute.  See id. ("[A]t every turn, [Congress] has
> broadened the scope of the statute."); see also [United States v. Jabr,
> Crim. No. 18-0105, 2019 WL 13110682, at *9 (D.D.C.
> May 16, 2019)] ("[T]he amendments added [in 2012] were intended
> to expand federal jurisdiction, but in a finite way.").  This history
> provides no support whatsoever for the notion that there is an
> extratextual requirement that the Secret Service, rather than some
> other federal authority, must restrict the area.

United States v. Puma, 596 F. Supp. 3d at 110-12.  The legislative history, like the plain text of

Section 1752, neither states nor clearly implies that the Secret Service alone may designate an

area as restricted.

Second, the Court has also addressed Mr. GossJankowski's argument that the

Vice President was not "temporarily visiting" the Capitol and its grounds because the Vice

President has an office in the Capitol and conducts official business from that office.  Counts

Four and Five Mot. at 8-9.  In United States v. Puma, the Court rejected this argument,

concluding that "[t]he language of the statute is plain:  it covers instances where a protected

person 'is [currently] temporarily visiting' or 'will be temporarily visiting' a 'restricted

building[] or grounds.'"  United States v. Puma, 596 F. Supp. 3d at 113 (quoting 18 U.S.C.

§ 1752(c)(1)(B)).  Under the plain meanings of "temporary" and "visiting," "Mr. Pence was

temporarily visiting the Capitol on January 6, 2021:  he was there for a limited time only in order to preside over and participate in the Electoral College vote certification." Id. at 112 (citing United States v. Andries, 2022 WL 768684, at *16).

Mr. GossJankowski argues for a narrower construction of "temporarily visiting" that excludes from its meaning locations where someone normally lives or works.  Counts Four and Five Mot. at 8.  This interpretation, however, is supported by neither the plain meaning of the statutory text nor, as the Court explained in United States v. Puma, the statutory context:

> The legislative history of the statute's amendments confirms that the statute's protections encompass places of work and other locations where a protectee may conduct business.  See 112 CONG. REC. H1,373 (daily ed. Feb. 28, 2011) ("A key component of the Service's protection mission is securing the buildings and grounds where those protected work or visit.  From the White House to a hotel ballroom, the Secret Service must provide a secure environment for the President and other protectees.") (statement of Rep. Thomas Rooney) (emphasis added); see also 112 CONG. REC. H953 (daily ed. Feb. 27, 2012) ("H.R. 347 ensures that the President, the First Family, the Vice President, and others are protected whether they are in the White House or attending an event in a convention center or meeting hall.") (statement of Rep. Lamar Smith).

United States v. Puma, 596 F. Supp. 3d at 113.  Moreover, such a construction would lead to an arbitrary gap in the application of Section 1752:

> [I]f "temporarily visiting" were construed narrowly as Mr. [GossJankowski] suggests, an individual could violate Section 1752(a) in connection with the official residence of a Secret Service protectee, or at a location that the protectee visits briefly outside of Washington, D.C., but not in connection with any location in Washington, D.C. (other than an official residence) where the protectee maintains an office – unless that location is "restricted in conjunction with an event designated as a special event of national significance."  18 U.S.C. § 1752(c)(1)(C).  Mr. [GossJankowski's] proposed construction would leave an arbitrary gap in the application of the law by excluding such locations from its reach.

Id. at 113-14.

Mr. GossJankowski asserts that "[i]f there is a gap in the statute, then it is for the legislature, not the judiciary to fill." Counts Four and Five Mot. at 17. This mischaracterizes the Court's reasoning in <u>United States v. Puma</u> – the Court did not go so far as to "fill" any gap in Section 1752, but rather declined to interpret the statute in a way that creates a gap. <u>See</u> <u>United States v. Puma</u>, 596 F. Supp. 3d at 113-14. Nonetheless, even if the Court were to accept Mr. GossJankowski's narrower construction of the statute, the statute would still apply:

> "The U.S. Capitol is not the Vice President's regular workplace, nor was Vice President Pence's trip to the Capitol on January 6, 2021 analogous to a regular commute to the office." <u>United States v. McHugh</u>, 2022 WL 296304, at *22. Despite having formal office space set aside at the U.S. Capitol, "the Vice President is principally an executive officer who spends little time at the Capitol and likely even less in her 'office' there." <u>Id.</u>; <u>accord</u> <u>United States v. Andries</u>, 2022 WL 768684, at *17 ("Like a President who maintains an office at his home-state residence, and like the CEO who maintains a reserve office at her firm's satellite location, Vice President Pence held an office at the Capitol, but did not use that office as his primary, regular workspace.").

<u>Id</u>. at 114.

Mr. GossJankowski also argues that Section 1752 fails to put individuals on notice of prohibited conduct because there are "no parameters by which the ordinary person can discern when the Vice President is 'temporarily visiting' a public government building and, in turn, know when the building is 'restricted' for purposes of Section 1752(a)." Counts Four and Five Mot. at 12. The Court disagrees that Section 1752 creates any notice problems. As the government points out, Mr. GossJankowski's argument "overlooks Section 1752(c)(1)'s overall structure." Government's Response to Defendant's Motion to Dismiss Counts Four and Five [Dkt. No. 77] at 10. In <u>United States v. Mels</u>, Chief Judge Beryl Howell, in considering Section 1752 as a whole, also rejected any notice problems with the statute, stating:

> Under § 1752, certain conduct is criminalized in certain sensitive areas around both the President and the Vice President. The residences of both, whether the occupant is present or not, are covered at all times. 18 U.S.C. § 1752(c)(1)(A). When either the President or Vice President is "temporarily visiting" some other location, a de facto bubble follows the official and affords similar protection. Id. § 1752(c)(1)(B). All of this makes sense, and creates no notice problems: a person would violate Section 1752(a) "at a minimum, whenever, with the requisite mens rea, he enters or remains in (or engages in disorderly or disruptive conduct in) a posted, cordoned off, or otherwise restricted area around the President or Vice President."

United States v. Mels, Crim. No. 21-184, Dkt. No. 65, at 4 (D.D.C. July 21, 2022) (citation omitted). Moreover, the Court is not persuaded by Mr. GossJankowski's attempt to characterize United States v. McHugh's similar reading of Section 1752(c)(1)(B) as failing to provide "sufficient definiteness that due process requires." Counts Four and Five Mot. at 14-15. And because the term "temporarily visiting" is not ambiguous, Mr. GossJankowski's arguments about lenity and constitutional avoidance favoring a narrower construction of "temporarily visiting" must fail.

Finally, Mr. GossJankowski contends that Count Five of the superseding indictment, alleging a violation of Section 1752(a)(2), should be dismissed because the statute is unconstitutionally vague and overbroad. Counts Four and Five Mot. at 18. In particular, Mr. GossJankowski argues that the statute is unconstitutionally vague because it contains "vague and imprecise terms and phrases that fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited" and overbroad because the phrase "impede or disrupt the orderly conduct of Government business or official functions" includes "within its plain meaning acts such as pure speech, express conduct, and lobbying," which are protected by the First Amendment. Id. at 19. The Court disagrees with these arguments.

With respect to the vagueness challenge, the Court concluded in United States v. Puma that the text of Section 1752 is clear.  See United States v. Puma, 596 F. Supp. 3d at 109. Other judges in this district have similarly concluded that "the statute is not unconstitutionally vague such that [d]efendant's preferred constriction is necessary.  The text is clear and gives fair notice of the conduct it punishes, and it is not standardless enough to invite arbitrary enforcement." United States v. Nordean, 579 F. Supp. 3d at 60.  With respect to the overbreadth challenge, the Court concludes that the statute is not overbroad because "[a]lthough some 'acts' could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity." United States v. Williams, Crim. No. 21-0618, 2022 WL 2237301, at *6 (D.D.C. June 22, 2022).

Mr. GossJankowski also argues that the phrase "within such proximity to any restricted building or grounds" provides "no clear limit on where exactly the statute applies." Counts Four and Five Mot. at 19-20.  The Court rejected this argument in United States v. Puma because "the statute clearly requires an individual to 'knowingly, and with intent to impede or disrupt . . . engage[] in disorderly or disruptive conduct.'  The 'proximity to' language merely describes the outer bounds of where a violation may take place." United States v. Puma, 596 F. Supp. 3d at 113 n.6 (citation omitted) (quoting 18 U.S.C. § 1752(a)(2)).

In sum, the U.S. Capitol plainly was covered by the definition of "restricted buildings or grounds" under 18 U.S.C. § 1752 during the time of Mr. GossJankowski's alleged criminal conduct, and the superseding indictment adequately states the offenses under Counts Four and Five.

*B.  18 U.S.C. § 1512*

Mr. GossJankowski also moves to dismiss Count Two of the superseding indictment, which charges him pursuant to 18 U.S.C. § 1512(c)(2).  See Superseding Indictment at 2.  That statute provides:

> (c)  Whoever corruptly—
>
>> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>>
>> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).

Mr. GossJankowski asserts that "in order for Count Two to sufficiently allege a violation, it must allege that Mr. GossJankowski took 'some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding,'" and that no such allegation exists in the superseding indictment.  Count Two Mot. at 7-8 (citation omitted).  In addition, Mr. GossJankowski argues that the certification of the electoral vote was not an "official proceeding" within the meaning of Section 1512 because "official proceedings," as defined under Section 1515(a)(1), are tribunal-like proceedings relating to the administration of justice, and the electoral vote certification was a ceremonial event that does not fall under this definition.  See id. at 8, 10.  Finally, Mr. GossJankowski maintains that Section 1512(c)(2) is unconstitutionally vague because the term "corruptly" is vague.  See id. at 12.  The Court rejects these arguments and addresses them in turn.

First, Mr. GossJankowski argues that Section 1512(c)(2) must be "construed in light of [Section] 1512(c) as a whole[] and the broader statutory context for that provision," and that under such a construction, "'the natural and plausible reading of 1512(c)(2)' requires some conduct that impairs the integrity and availability of some <u>evidence</u>." Count Two Mot. at 3, 5. This is contrary to the Court's decision in <u>United States v. Puma</u> and the decisions of many other judges in this district. In <u>United States v. Puma</u>, the Court analyzed the meaning of the phrase "otherwise" in Section 1512(c)(2) in the context of the defendant's vagueness challenge to the statute. <u>See</u> <u>United States v. Puma</u>, 596 F. Supp. 3d at 106-08. That analysis applies equally to Mr. GossJankowski's challenge that Count Two fails to adequately allege a violation of Section 1512(c)(2). As the Court discussed in <u>United States v. Puma</u>:

> The word "otherwise" carries a clear meaning as it is used in Section 1512(c)(2). The first subsection of Section 1512(c) describes how a defendant can violate the statute by "alter[ing], destroy[ing], mutilat[ing], or conceal[ing]" documents for use in an official proceeding. <u>See</u> 18 U.S.C. § 1512(c)(1). The word "otherwise" in the second subsection clarifies that a defendant can violate Section 1512(c)(2) through "obstruction by means <u>other</u> <u>than</u> document destruction."

<u>Id</u>. at 107. Thus, in contrast to Mr. GossJankowski's assertions, an individual can violate Section 1512(c)(2) without taking "some action with respect to a document, record, or other object." Count Two Mot. at 7-8.

Mr. GossJankowski points out that Judge Nichols reached the opposite conclusion in <u>United States v. Miller</u> and contends that "the rationale applied by Judge Nichols applies with equal force to [t]his case." Count Two Mot. at 2; <u>see</u> <u>United States v. Miller</u>, 589 F. Supp. 3d 60, 78 (D.D.C. 2022) (concluding that "[defendant's] alleged conduct falls outside of § 1512(c)(2)"). This Court, however, has previously explained why it does not agree with Judge Nichols on this issue:

> Judge Nichols' analysis in <u>Miller</u> largely revolves around his interpretation of the Supreme Court's decision in <u>Begay v. United States</u>, 553 U.S. 137 (2008), <u>abrogated on other grounds by</u> <u>Johnson v. United States</u>, 576 U.S. 591 (2015), which held that the word "otherwise" in the Armed Career Criminal Act "limit[ed] the scope of the clause to crimes that are similar to the examples" listed before the residual clause.  <u>See</u> <u>United States v. Miller</u>, 2022 U.S. Dist. LEXIS 45696, at *17-25 (discussing <u>Begay v. United States</u>, 553 U.S. at 143) . . . .  This Court disagrees with Judge Nichols' application of <u>Begay</u> to Section 1512, and agrees with Judge Moss who has previously rejected this same argument.  <u>See</u> <u>United States v. Montgomery</u>, 2021 WL 6134591, at *11 ("<u>Begay</u>'s discussion of the word 'otherwise' is remarkably agnostic.  The Supreme Court merely observed that 'the word 'otherwise' can (we do not say must) refer to a crime that is similar to the listed examples in some respects but different in others.'").  Further, the Court disagrees with Judge Nichols' premise that any "genuine ambiguity persist[s]."  <u>United States v. Miller</u>, 2022 U.S. Dist. LEXIS 45696, at *10; <u>see</u> <u>United States v. Montgomery</u>, 2021 WL 6134591, at *23 ("[A]ll of the essential terms of the statute have well-accepted meanings and . . . the Court is not left simply to guess what Congress intended."); <u>see</u> <u>also</u> <u>United States v. Bozell</u>, 2022 WL 474144, at *7.

<u>United States v. Puma</u>, 596 F. Supp. 3d at 107 n.4.[2]

Second, the Court previously rejected the argument that the term "official proceeding" refers to "tribunal-like proceedings relating to adjudication, deliberation, or the administration of justice."  Count Two Mot. at 8.  The Court explained its reasoning in <u>United States v. Puma</u>:

> The language in nearby statutory provisions reinforces the conclusion that if Congress had intended to limit Section 1512(c)(2) to adjudicative or court-like proceedings, it would have used different words to do so.  "Long before Congress enacted Section 1515(a)(1) [defining 'official proceeding'], it had enacted Section 1503, which prohibits obstruction of 'the due administration of justice,' and it had enacted Section 1505, which prohibits the obstruction of 'the due and proper exercise of the power of inquiry

---

[2]    Judge Nichols' opinion in <u>United States v. Miller</u> is currently on appeal.  The case was argued before a three-judge panel on December 12, 2022.  <u>See</u> <u>United States v. Miller</u>, No. 22-3041 (D.C. Cir. Dec. 12, 2022).

> or investigation . . . by either House, or any committee of either
> House or any joint committee of the Congress.'" United States v.
> Montgomery, 2021 WL 6134591, at *6 (internal citations omitted).
> "That Congress decided to incorporate into section 1512(c) an
> existing definition of 'official proceeding' that broadly includes 'a
> proceeding before Congress,' as opposed to one limited to its 'power
> of inquiry,' is therefore consequential," and "means that Congress
> did not intend to limit the congressional proceedings protected under
> section 1512(c) to only those involving its adjudicatory,
> investigative, or legislative functions." United States v.
> Caldwell, 2021 WL 6062718, at *5. "Had it wanted to, Congress
> could have just as easily borrowed language from just a few
> statutory sections away." United States v. Grider, 2022 WL 392307,
> at *4. But it did not choose to do so.

United States v. Puma, 596 F. Supp. 3d at 100-01. And, contrary to Mr. GossJankowski's

arguments, the electoral college certification is not merely "a ceremonial meeting of both houses

of Congress." Count Two Mot. at 12; see United States v. Miller, 589 F. Supp. 3d at 66

(defining "proceeding" as "[t]he business conducted by a court or other official body; a hearing,"

and concluding that "[t]he certification of the Electoral College results by Congress is 'business

conducted by a[n] . . . official body'" (quoting Proceeding, BLACK'S LAW DICTIONARY (11th

ed. 2019))). The Court concludes that Congress' certification of the Electoral College vote is an

"official proceeding" within the meaning of Section 1512(c)(2). "To conclude otherwise would

require a departure from common usage and common sense." United States v. Montgomery, 578

F. Supp. 3d at 69.

Finally, as this Court and other judges in this district have concluded,

Section 1512(c)(2) is not unconstitutionally vague on its face. "[A] criminal statute is not

unconstitutionally vague on its face unless it is 'impermissibly vague in all of its applications.'"

United States v. Sandlin, 575 F. Supp. 3d at 30 (quoting Vill. of Hoffman Ests. v. Flipside,

Hoffman Ests., 455 U.S. 489, 497 (1982)). The Court squarely addressed this issue in United

States v. Puma, concluding that "[t]he text of Section 1512(c), and the inclusion of the term

'corruptly,' 'give[s] fair notice of the conduct it punishes' and does not invite 'arbitrary enforcement.'"  United States v. Puma, 596 F. Supp. 3d at 103 (citing Johnson v. United States, 576 U.S. 591, 596 (2015); United States v. Bronstein, 849 F.3d 1101, 1107 (D.C. Cir. 2017) ("[A] statutory term is not rendered unconstitutionally vague because it does not mean the same thing to all people, all the time, everywhere . . . . Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct . . . at all.") (internal citation and quotation marks omitted))).  As the Court explained:

> Judges in this district have construed "corruptly" to require "a showing of 'dishonesty' or an 'improper purpose,'" United States v. Montgomery, 2021 WL 6134591, at *19 (collecting cases), "consciousness of [] wrongdoing," United States v. Bozell, 2022 WL 474144, at *6; United States v. Caldwell, 2021 WL 6062718, at *11, or conduct that is "independently criminal," "inherently malign, and committed with the intent to obstruct an official proceeding," United States v. Sandlin, 2021 WL 5865006, at *13 (internal citations omitted).    These constructions support a consensus that Section 1512(c) clearly punishes those who "endeavor[] to obstruct" an official proceeding by acting "with a corrupt purpose, or . . . by independently corrupt means, or [] both." United States v. Nordean, 2021 WL 6134595, at *11 (quoting United States v. North, 91[0] F.2d 843, 942-43 (D.C. Cir. 1990) (Silberman, J., concurring in part and dissenting in part), withdrawn and superseded in part on reh'g, 920 F.2d 940 (D.C. Cir. 1990)); see also  United States v. Andries, 2022 WL 768684, at *11 ("['Corruptly'] separates innocent attempts to 'obstruct[], influence[], or impede' an official proceeding from those undertaken with a wrongful purpose.").  Understood in this way, "corruptly" not only clearly identifies the conduct it punishes; it also "acts to shield those who engage in lawful, innocent conduct – even when done with the intent to obstruct, impede, or influence the official proceeding." United States v. Sandlin, 2021 WL 5865006, at *13.

United States v. Puma, 596 F. Supp. 3d at 103.  As discussed in further detail in United States v. Puma, any reliance on United States v. Poindexter, 951 F.2d 369 (D.C. Cir. 1991), to reach the

opposite conclusion is misplaced.  Id. at 103-04.  And because "corruptly" within the meaning of Section 1512(c)(2) is also not ambiguous, the rule of lenity is unavailing.

Furthermore, contrary to Mr. GossJankowski's assertion, the superseding indictment is not required to allege "how it is" Mr. GossJankowski acted "corruptly."  Count Two Mot. at 12.  The Court's analysis of Mr. GossJankowski's motion to dismiss must be limited to "the four corners of the indictment."  United States v. Montgomery, 578 F. Supp. 3d at 59 n.1 (quoting United States v. Safavian, 429 F. Supp. 2d at 161 n.2).  The superseding indictment clearly charges that Mr. GossJankowski "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding . . . specifically, Congress's certification of the Electoral College vote."  Superseding Indictment at 2.

### C.  18 U.S.C. § 231

Mr. GossJankowski also moves to dismiss Count One of the superseding indictment, which charges him with civil disorder in violation of 18 U.S.C. § 231(a)(3).  See Superseding Indictment at 1-2.  The statute provides:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function . . [s]hall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3).

Mr. GossJankowski asserts that Section 231(a)(3) is both unconstitutionally vague and overbroad.  Count One Mot. at 2.  In the alternative, Mr. GossJankowski argues that the superseding indictment did not provide adequate notice.  See id. at 8.  Other judges in this district

have addressed similar challenges to Section 231(a)(3), including Judge Amy Berman Jackson, who considered a nearly identical set of arguments in <u>United States v. Williams</u>.  <u>See</u> <u>United States v. Williams</u>, 2022 WL 2237301, at *2-8.  The Court agrees with her well-reasoned analysis and conclusion that Section 231(a)(3) is not void for vagueness or unconstitutionally overbroad.

### 1.   18 U.S.C. § 231(a)(3) is not Void for Vagueness

Mr. GossJankowski asserts that Section 231(a)(3) contains vague terms that "fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited."  Count One Mot. at 4.  Mr. GossJankowski points to the phrases "any act to obstruct, impede, or interfere with" and "incident to and during the commission of a civil disorder" as illustrative examples.  <u>Id</u>.

A law is unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes" or if it is "so standardless that it invites arbitrary enforcement."  <u>Johnson v. United States</u>, 576 U.S. at 595.  With respect to fair notice, "[w]hen the vagueness doctrine assesses a legal term's meaning to 'ordinary people,' it is assessing meaning with the elementary rule of statutory interpretation:  Words receive their 'plain, obvious and common sense' meaning, 'unless context furnishes some ground to control, qualify, or enlarge it.'"  <u>United States v. Bronstein</u>, 849 F.3d at 1108 (citation omitted).  A statute is not unconstitutionally vague because a word it uses "does not mean the same thing to all people, all the time, everywhere."  <u>Id</u>. at 1107 (brackets omitted).  And with respect to the arbitrariness of enforcement, the Supreme Court has invalidated statutes that tied criminal culpability to whether a defendant's conduct was "annoying" or "indecent" because these are "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings."  <u>United States v. Williams</u>, 553

U.S. 285, 306 (2008) (citations omitted).  Mr. GossJankowski argues that Section 231(a)(3) is vague both because it "fail[s] to provide fair notice" and because it "create[s] significant risk of arbitrary enforcement."  Count One Mot. at 2.

      With respect to Mr. GossJankowski's vagueness challenge to the phrase "any act to obstruct, impede, or interfere," the Court agrees with Judge Jackson's observation that the defendant has lifted these words out of context.  In analyzing Section 231(a)(3), Judge Jackson points out that "[t]he statute prohibits 'any act to obstruct, impede, or interfere <u>with any fireman or law enforcement officer</u> lawfully engaged in the lawful performance of his official duties <u>incident to and during the commission of a civil disorder</u>.'"  <u>See</u> <u>United States v. Williams</u>, 2022 WL 2237301, at *4 (quoting 18 U.S.C. § 231(a)(3)).  And as both Judge Jackson and Judge Bates have concluded, "[a]n ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement."  <u>Id.</u> (quoting <u>United States v. McHugh</u>, 583 F. Supp. 3d at 27).

      Furthermore, Mr. GossJankowski does not "point to any term in the statute that would make it infirm because it requires the officer to make a subjective judgment about the defendant's conduct."  <u>United States v. Williams</u>, 2022 WL 2237301, at *4.  Unlike the words at issue in the Supreme Court's 2008 <u>Williams</u> case, the terms "obstruct," "impede," and "interfere" are not "subject to 'wholly subjective judgments' and therefore, the statute does not on its face authorize or encourage discriminatory enforcement."  <u>Id.</u> at *5 (quoting <u>United States v. Williams</u>, 553 U.S. at 306).

      With respect to the phrase "incident to and during the commission of a civil disorder" in Section 231(a)(3), Mr. GossJankowski argues that the term "civil disorder," as defined under Section 232(1), is "extremely far-reaching."  Count One Mot. at 4 (quoting 18

U.S.C. § 232(1) (defining "civil disorder" as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual")).  Mr. GossJankowski asserts that the meaning of "civil disorder" "could apply to virtually any tumultuous public gathering to which police might be called, not just large-scale protests or riots" and that "there is no indication within the statute whether the defendant is required to have participated in the civil disorder."  Id. at 4-5.

Here, too, the Court agrees with Judge Jackson's analysis that the requirements of the term "civil disorder" "belies [Mr. GossJankowski's] suggestion that the term is devoid of limiting principles to guide its application."  United States v. Williams, 2022 WL 2237301, at *5. As Judge Jackson explained:

> [T]he term "civil disorder" is defined in the statute to be "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."  18 U.S.C. § 232(1).  This series of requirements belies defendant's suggestion that the term is devoid of limiting principles to guide its application; the event at issue must involve a group of three or more persons, acts of violence, and actual, or an immediate danger of, property damage or personal injury.  See McHugh, 2022 WL 296304, at *15.  Further, defendant misreads the statute when she professes to be confused about whether the individual charged must have participated in the civil disorder; the reference to a civil disorder specifies the type of "official duties" the victim officer must be engaged in performing for an assault or interference to be actionable under this particular statute.  It does not characterize the prohibited act of the alleged perpetrator.

Id.  The same reasoning applies with respect to Mr. GossJankowski's identical legal challenges. The Court concludes the Section 231(a)(3) is not void for vagueness.  Because the Court does not find the statute vague, Mr. GossJankowski's argument that "the role of the courts . . . [is] to

treat the [vague] law as a nullity and invite Congress to try again" is unavailing.  Count One Mot. at 8 (quoting United States v. Davis, 139 S. Ct. 2319, 2323 (2019)).

### 2.   18 U.S.C. § 231(a)(3) is not Unconstitutionally Overbroad

Mr. GossJankowski also argues that Section 231(a)(3) is overbroad because "several of the statute's terms are so broad and indefinite as to impose unqualified burdens on a range of protected expression."  Count One Mot. at 2.  "[A] law that is overbroad may be perfectly clear but impermissibly purport to penalize protected First Amendment activity."  Hastings v. Jud. Conf. of the U.S., 829 F.2d 91, 105 (D.C. Cir. 1987).  A statute's overbreadth, however, must be "substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep."  United States v. Williams, 553 U.S. at 292-93.  "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech."  Virginia v. Hicks, 539 U.S. 113, 124 (2003).

Contrary to Mr. GossJankowski's First Amendment argument, the Court agrees with Judge Jackson that this statute governs conduct, not speech:  "[T]he statute plainly covers conduct, not speech, as it criminalizes 'any act to obstruct, impede, or interfere with' a law enforcement officer engaged in the performance of official duties, and the terms 'obstruct, impede, or interfere with' are all plainly understood and must be supported by the facts in any particular case."  United States v. Williams, 2022 WL 2237301, at *6.  Furthermore,

> [a]lthough some "acts" could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity.  Since [S]ection 231(a)(3) does not "make unlawful a

substantial amount of constitutionally protected conduct," it is not
overbroad on its face.

Id. (citation omitted).

### 3.    Scienter

Mr. GossJankowski next argues that Section 231(a)(3) "contains no scienter

requirement, thus creating 'a trap for those who act in good faith.'"  Count One Mot. at 5.

According to Mr. GossJankowski, "[b]ecause the statute omits an express <u>mens rea</u> requirement,

it is left to police, prosecutors, and judges to decide whether the statute requires knowledge or

specific intent or neither," which "weighs in further favor of the statute's unconstitutionality."

Id.  As Mr. GossJankowski points out, <u>see</u> Count One Mot. at 5, "a scienter requirement may

mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant

that his conduct is proscribed."  <u>Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.</u>, 455

U.S. 489, 499 (1982).  The Supreme Court has noted that "[t]he fact that [a] statute does not

specify any required mental state, however, does not mean that none exists" and that criminal

statutes are generally interpreted "to include broadly applicable scienter requirements, even

where the statute by its terms does not contain them."  <u>Elonis v. United States</u>, 575 U.S. 723, 734

(2015) (quoting <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64, 70 (1994)).

The Court disagrees that Section 231(a)(3) lacks a scienter requirement.  As

Judge Jackson explained, the statute "criminalizes only acts performed '<u>to</u> obstruct, impede, or

interfere with' a law enforcement officer" and thus "requires <u>obstructive intent</u>."  <u>United States</u>

<u>v. Williams</u>, 2022 WL 2237301, at *7 (emphasis added) (quoting 18 U.S.C. § 231(a)(3)).

Judge Bates, in reaching the same conclusion, explained that "[Section] 231(a)(3) is a specific

intent statute, criminalizing only acts performed <u>with the intent</u> to obstruct, impede, or interfere

with a law enforcement officer."  United States v. McHugh, 583 F. Supp. 3d at 25.  Moreover, the Seventh and Eighth Circuits have "both held that the statute requires the defendant to have acted with obstructive intent."  Id. at 24-25 (citing Nat'l Mobilization Comm. to End War in Viet. v. Foran, 411 F.2d 934, 937 (7th Cir. 1969); United States v. Mechanic, 454 F.2d 849, 854 (8th Cir. 1971); United States v. Casper, 541 F.2d 1275, 1276 (8th Cir. 1976) (per curiam)).

### 4.    Fifth Amendment Challenge

Mr. GossJankowski argues in the alternative that Count One of the superseding indictment should be dismissed because it "lacks any specifics regarding the alleged acts or circumstances and contains only conclusory allegations," thus failing to fulfill "the notice or [grand jury] presentment requirements of the Fifth and Sixth Amendments."  Count One Mot. at 8, 10.  An indictment "is sufficiently specific where it (1) contains the elements of the offense charged and fairly informs the defendant of those charges so that he may defend against them, and (2) enables him to plead acquittal or conviction in bar of future prosecutions for the same offense.'"  United States v. Safavian, 429 F. Supp. 2d at 158 (quoting Hamling v. United States, 418 U.S. at 117-18); see also United States v. Ballestas, 795 F.3d at 148 (dismissal of an indictment is to be granted "only in unusual circumstances").  Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  FED. R. CRIM. P. 7(c)(1).  And "[i]n most cases, detailed allegations 'surely are not contemplated by Rule 7(c)(1).'"  United States v. Apodaca, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (quoting United States v. Resendiz-Ponce, 549 U.S. 102, 110 (2007)).  Furthermore, as the Supreme Court has stated, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any

uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" <u>Hamling v. United States</u>, 418 U.S. at 117 (quoting <u>United States v. Carll</u>, 105 U.S. 611, 612 (1881)).

Mr. GossJankowski's constitutional challenge is unpersuasive.  Count One of the superseding indictment is sufficient – it sets forth all the elements of Section 231(a)(3), hewing closely to the language of the statute.  <u>See</u> Superseding Indictment at 1-2.  This indictment enables Mr. GossJankowski to "plead acquittal or conviction in bar of future prosecutions for the same offense."  <u>United States v. Safavian</u>, 429 F. Supp. 2d at 158 (quoting <u>Hamling v. United States</u>, 418 U.S. at 117-18).  There is nothing to suggest that the superseding indictment fails to fulfill "the notice or [grand jury] presentment requirements of the Fifth and Sixth Amendments." Count One Mot. at 10.

5.   Failure to State an Offense

Finally, Mr. GossJankowski asserts that Count One fails to state an offense because "federally protected function" under Section 231(a)(3) is defined as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States," and Congress is not a "department, agency, or instrumentality of the United States."  Count One Mot. at 11 (quoting 18 U.S.C. § 232(3)).  The Court agrees with the reasoning of Judge Kelly, who rejected a nearly identical challenge.  While he, of course, agreed that Congress is not a department or agency, Judge Kelly noted that the "United States Secret Service's protection of the Vice President and Vice President-elect on January 6" is a "federally protected function," and explained that

> [u]nlike Congress, the Secret Service is plainly an executive
> department.  It is part of the Department of Homeland Security,
> which is one of the "executive departments enumerated in section 1

of Title 5." 18 U.S.C. § 6; see 5 U.S.C. § 101; 18 U.S.C. § 3056. Further, the Court has no trouble concluding that the Secret Service's statutorily prescribed responsibility to protect the Vice President and Vice President-elect, 18 U.S.C. § 3056(a)(1), both of whom the First Superseding Indictment describes as present at the Joint Session on January 6 . . . counts as a function carried out "under the laws of the United States," 18 U.S.C. § 232(3).

United States v. Nordean, 579 F. Supp. 3d at 54-55.[3]

   For these reasons, it is hereby ORDERED that Mr. GossJankowski's Motion to Dismiss Restricted Area Charges Under 18 U.S.C. § 1752(a) (Counts Four and Five) [Dkt. No. 67]; Motion to Dismiss Obstruction Charge Under 18 U.S.C. § 1512(c)(2) (Count Two) [Dkt. No. 68]; and Motion to Dismiss Civil Disorder Charge Under 18 U.S.C. § 231(a)(3) (Count One) [Dkt. No. 69] are DENIED.

   SO ORDERED.

           /s/
         _____
         PAUL L. FRIEDMAN
         United States District Judge

DATE:  January 9, 2023

---

[3] As this Court noted in United States v. Puma, the government acknowledges that Vice President-Elect Harris was not present at the beginning of the joint session, but it is undisputed that then-Vice President Pence, a Secret Service protectee, was present at the U.S. Capitol throughout the time in question.  See United States v. Puma, 596 F. Supp. 3d at 112 n.5.