UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 21-cr-123 (PLF) |
| | ) | |
| VITALI GOSSJANKOWSKI, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**COMBINED MOTIONS *IN LIMINE* TO PRECLUDE CERTAIN EVIDENCE AT TRIAL**

Vitali GossJankowski, through counsel, respectfully moves this Honorable Court *in limine* to preclude the government from (1) playing the audio portion of any video evidence of the events around the U.S. Capitol presented at trial; (2) introducing particular exhibits that are irrelevant and prejudicial; and (3) using inflammatory summary videos and language related to the events of January 6th. No such evidence is relevant and thus it is inadmissible under Federal Rules of Evidence 401 and 402. Even if the Court deems any of this evidence relevant, such evidence should nonetheless be excluded under Rule 403 because any probative value is substantially outweighed by a significant danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence.

## STATEMENT OF RELEVANT FACTS

Mr. GossJankowski is charged in this case with six counts in relation to the events at the U.S. Capitol on January 6, 2021. He is profoundly Deaf, and he was born without an ability to hear sound. His first language was not English, but rather American Sign Language ("ASL"). As the Court and the government are fully aware, he requires a qualified ASL interpreter to communicate with hearing individuals. Hence, Mr. GossJankowski could not hear sounds, including shouting and verbal communications, at the time of the alleged offenses.

1

Regardless of his status as a non-hearing individual, all individuals present on January 6th have been painted with one broad stroke. The government and the media have portrayed the events of January 6 as an attempt to overthrow the government and an attack on democracy itself.[1] As the Court is aware, a large proportion of D.C. residents either work for the federal government themselves or have friends or family who do. In many January 6th trials, the government has sought to or introduced video footage showing the "attack" on the Capitol, which depicts various individuals in conflict with officers and/or planning to enter the Capitol for nefarious reasons. *See e.g., United States v. Cuoy Griffin*, No. 21-cr-192-TNM, ECF No. 105, Motions hearing transcript. In addition, in several filings, the government has used the terms, "riot," "insurrection," or "attack" and other inflammatory terms to describe the events of January 6th.

## ARGUMENT

Rule 103(d) of the Federal Rules of Evidence directs the courts to shield the jury from any mention of evidence deemed inadmissible, including testimony of a fact witness that is not based upon personal knowledge (Fed. R. Evid. 602), evidence which is not relevant (Fed. R. Evid. 401 and 402), and relevant evidence if the probative value of that evidence is "substantially outweighed" by the danger that it will cause unfair prejudice, confusion of the issues, or mislead the jury (Fed. R. Evid. 403). "Pretrial consideration of evidentiary issues serves to avoid the futile attempt of "unring[ing] the bell" when jurors have seen or heard inadmissible evidence,

---

[1] *See, e.g.,* Kevin McCoy & Kevin Johnson, *Investigators Signal Some Capitol Riot Suspects Could Be Charged with Conspiring to Overthrow U.S. Government*, USA Today, (Feb. 19, 2021), https://www.usatoday.com/story/news/2021/02/19/capitol-riot-did-conspirators-try-overthrow-u-s-government/6750393002/; *see also The January 6 Attack on the U.S. Capitol*, American Oversight (Jan. 5, 2022), https://www.americanoversight.org/investigation/the-january-6-attack-on-the-u-s-capitol. ("Trump supporters having for weeks discussed openly their plans for a violent overthrow.").

even when stricken from the record." *United States v. De Armas Diaz*, No. 2:13-cr-00148-JAD-GWF, 2014 U.S. Dist. LEXIS 51850, at *1-2 (D. Nev. Apr. 14, 2014).

<b><u>Defense Motion in Limine No. 1:</u></b><br><b>The Government Should be Precluded from Playing any Audio Portion of Video Evidence.</b>

Government video evidence includes cacophony: the sounds of individuals making statements, yelling, chanting, breaking property, etc. Proposed exhibits submitted by the government include individuals yelling profanities, statements that are hostile to law enforcement, and statements suggesting an intent to interfere with the proceedings planned inside the Capitol on January 6. Unlike in other cases, where these sounds may bear upon a defendant's mens rea, none of this audio evidence is relevant here because Mr. GossJankowski could not and did not hear any of it. Of course, neither did he make any verbal statements. It is important for the jury to perceive only what he perceived on January 6th, without sound, to determine whether his actions were knowing and willful. The government cannot articulate any reason that this audio evidence has any evidentiary value under these unique circumstances. The only purpose of playing the audio portion of the videos would be to invoke sensory anxiety in jurors and inflame and prejudice the jury.

"Evidence is unfairly prejudicial if it 'makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996) (citations and inner quotations marks omitted). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 650 (1997). Undoubtedly, the audio portion of the videos will invoke an

emotional response and lure jurors into declaring guilt separate from Mr. GossJankowski's actions and mens rea that day despite the fact that the audio evidence is entirely irrelevant because it was not perceived by Mr. GossJankowski. The evidence is irrelevant and would only serve to inflame the jury by exposing them to offensive language used by people other than Mr. GossJankowski that Mr. GossJankowski himself did not hear.

**Defense Motion in Limine No. 2:**
**The Government Should be Precluded from Introducing Particular Irrelevant Exhibits.**

On August 15, 2022, in response to this Court's Order, the government produced 33 exhibits it intends to introduce at trial. The defense here objects to the admission of all or part of several of these exhibits.

- *Exhibit 1:*

Government Exhibit 1 appears to be an Instagram video of individuals seeking to enter the Capitol posted by a user named Geoff_sills. The video contains two subtitles ("Made Some Friends" and "Took a Tour") evidently authored by the user that are irrelevant and prejudicial and must be excised. Further, Mr. GossJankowski is only visible during the first portion of the video. Beginning at minute marker 1:30, footage begins from a different place and time on January 6 and Mr. GossJankowski is not visible. That portion of the proposed exhibit must be excised.

- *Exhibit 6:*

Government Exhibit 6 is one of several proposed government exhibits depicting individuals seeking to enter the Capitol through a tunnel. The government has included at least eight proposed exhibits of these same events from different angles. This exhibit is therefore cumulative and unnecessary. Further, the last five minutes of this seven minute video depict individuals other than Mr. GossJankowski physically pushing against law enforcement officers.

Mr. GossJankowski was not among these individuals and is not depicted in any of this footage. It must be excised.

- *Exhibit 15:*

Government Exhibit 15 appears to be an Instagram Live streamed video from January 6. First, there are live comments from viewers scrolling at the bottom of the screen and tweets from the Governor of California that appear on the screen that must be excised as irrelevant and prejudicial. Further, as with Exhibit 6, Mr. GossJankowski is not visible in any of the video after the third minute. The remaining four minutes must be excised.

- *Exhibits 18 and 19:*

These exhibits appear to be video taken with a GoPro-style camera with the capacity to film a full 360 view. The image is therefore altered in a way that does not accurately reflect distances and angles that are crucial to the jury's determination of what happened and Mr. GossJankowski's intent. Further, Exhibit 19 is the same as Exhibit 18 but has been further altered by adding markings, zooming in at particular points, and repeating particular footage. While a witness may be permitted to focus the jury on particular parts of a video from the witness stand, it is not appropriate to submit an already-altered video with these edits to the jury.

<u>**Defense Motion in Limine No. 3:**</u>
**The Government Should be Precluded from Introducing Inflammatory Summary Videos and Using Inflammatory Labels.**

In several filings, the government has recited a general background on the events of January 6th. In mostly every January 6 trial held thus far, the government has presented a 22 minute video montage capturing surveillance of thousands of other individuals on the Capitol Grounds and inside the Capitol building on January 6, 2021. This video shows breaches that occurred that day, and violence and activities that Mr. GossJankowski was not involved in. It

portrays individuals who are not Mr. GossJankowski engaging in activities in which Mr. GossJankowski did not participate or personally observe.

The video is not probative of any fact with regards to Mr. GossJankowski specifically. The only proposition the video compilation proves is that thousands of people other than Mr. GossJankowski violently broke into the Capitol Building on January 6, 2021 and breached many police lines. However, that fact does not make it more or less probable that Mr. GossJankowski himself did those things because he is clearly not committing those acts in the video. Therefore, this video montage is not relevant for Mr. GossJankowski's trial and should be excluded under Rule 402.

The video's sole purpose is to inflame the passions of the jury. This video's admission would be highly prejudicial given its graphic nature – placing focus on the violence that occurred that day and creating sensory anxiety in jurors. The only purpose this evidence serves is to inflame the jury by stirring up their emotions regarding the overall severity of what happened that day. Therefore, the video should be excluded under Rule 403.

The government should only be permitted to show videos of Mr. GossJankowski and his actions that day. Introductory or summary videos or video montages about the Capitol are not relevant. Any videos showing the conduct of other individuals will be unfairly prejudicial, confuse the issues, and mislead the jury.

Courts have found this type of "background" information inadmissible when it is not relevant for any other purpose. In *United States v. Evans*, 216 F.3d 80, 87 (D.C. Cir. 2000), the government also tried to offer "background" testimony to give the jury a complete picture of the events. However, the court explained that "no matter how important it is for the government to present a complete, morally compelling narrative, it must present that narrative through

6

admissible evidence….." *Id*. at 86.

There are evidentiary alternatives available to the government that tips the balance in favor of excluding this prejudicial evidence. *Old Chief* set forth a methodology in balancing Rule 403 by explaining:

> The court would decide whether a particular item of evidence raised a danger of unfair prejudice. If it did, the judge would go on to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well. *If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it* if its discounted probative value were substantially outweighed by unfairly prejudicial risk.

*Id*. at 182-183. (emphasis added). The government can simply introduce other video surveillance of just Mr. GossJankowski's alleged actions and it has no need to introduce any evidence of other defendants or individuals. Admission of this narrowly tailored evidence will protect Mr. GossJankowski's right to a fair trial, prevent confusion, and will prevent the presentation of cumulative evidence.

In addition, the government should not refer to Mr. GossJankowski or any other individuals from that day as "rioters," "insurrectionists," "attackers," or any other inflammatory terms. A federal district court has both the inherent authority and the duty to ensure that trials are conducted in a manner that protects a defendant's right to a fair trial. *See United States v. Marks*, 530 F.3d 799, 807 (9th Cir. 2008) ("District courts have broad power to ensure that a trial proceeds in a proper manner."). That authority includes preventing the use of language that casts the defendant, or others, in a negative light – particularly when it is irrelevant to the proceeding. *See* 20 Am. Jur. Trials 441 § 20 ("Expressions, names, nicknames, and the like, which are so sensitive that their use would be likely to stir up antagonistic feelings on the part of the jurors, ought to be removed from the case at the earliest opportunity. The damage they can inflict on a

party's legal position may be irreversible even if they are used but once in front of the jury"). The authority also extends to ensuring that the jury is not confused by testimony or arguments that use terms that are misleading, ambiguous, or incomplete. *See United States v. DiVarco*, 484 F.2d 670, 675 (7th Cir. 1973) ("The district judge has a duty to see that the trial does not become confusing or repetitious.").

Mr. GossJankowski is not charged with rioting, conspiracy, sedition, destruction of property, or any other crime that would support the notion that he "attacked" the Capitol or was an "insurrectionist." These terms are highly prejudicial for several reasons. First, such terms serve only the purpose of provoking emotional responses from the jury to lead the jurors to convict instead of judging Mr. GossJankowski for his specific alleged conduct.

Second, as the Court is aware, a large proportion of D.C. residents either work for the federal government themselves or have friends or family who do. The overwhelming majorities of D.C. respondents to polls and studies have already concluded that those who entered the Capitol on January 6 were acting with the intent to overthrow the government. Def. Amended Mot. for Change of Venue, ECF No. 79 at 6. As a result, no jury has acquitted a January 6th defendant.

Third, such terms are inadmissible hearsay and conclusory. Any out-of-court "statement" offered in evidence to prove the truth of the matter asserted is hearsay. Fed. R. Evid. 801(c). There is no hearsay exception applicable to such terms. These terms are clearly the government's opinion and the government cannot provide opinion testimony through lay witnesses or expert witnesses, when jury must determine the facts. *See United States v. Johnson*, 529 F.3d 493, 497-99 (2d Cir. 2008) (finding it impermissible for government witnesses to make "sweeping conclusions about the defendant's activities"); *See also United States v. BenitezAvila*,

8

570 F.3d 364, 368-69 (1st Cir. 2009) (government not permitted to choose "a more seductive narrative structure for the presentation of the evidence of guilt" to convert prejudicial and otherwise inadmissible evidence into admissible evidence); *United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006) ("Expert testimony will also be precluded if would usurp the jury's role as the final arbiter of the facts, such as testimony on witness credibility and state of mind.").

## CONCLUSION

For the foregoing reasons, and for any other reasons set forth at a hearing on this motion or in supplemental pleadings, and that this Court may deem just and proper, the Court should grant these motions.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Ubong E. Akpan
Celia Goetzl
Edward Smock
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500