UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   No. 21-cr-123 (PLF) |
| | ) |
| VITALI GOSSJANKOWSKI, | ) |
| | ) |
| Defendant | ) |
| | ) |

### MOTION TO SUPPRESS PHYSICAL EVIDENCE AND RETURN PROPERTY

Mr. Vitali GossJankowski, through counsel, respectfully moves this Court to suppress at trial his electronic devices and any and all information seized and imaged from those devices. Mr. GossJankowski further moves this Court to order the government to return the devices so that he can adequately consult with defense counsel, review discovery, and prepare for trial. The evidence should be suppressed because the government's search and seizure of the devices was unreasonable and violated the Fourth Amendment. The devices should be returned under Federal Rule of Criminal Procedure 41(g). An evidentiary hearing on this motion is requested.[1]

### STATEMENT OF RELEVANT FACTS

Mr. GossJankowski is charged in this case with six counts in relation to the events at the U.S. Capitol on January 6, 2021. He is the sole defendant charged in this case and there is no allegation that he conspired with any other individual. He is profoundly Deaf. His first language

---

[1] A hearing is currently scheduled on November 21, 2022, at 10:00 a.m., for the Court to hear oral argument on the pending motions. *See* Mem. Op. & Order (Aug. 15, 2022), ECF 63. Mr. GossJankowski respectfully requests that the Court also hear evidence on this motion at that hearing, or schedule a separate evidentiary hearing on this motion.

1

was not English, but rather American Sign Language ("ASL").[2] Thus, he requires qualified certified legal ASL interpretation to communicate effectively with law enforcement officers and his defense attorneys.

On January 18, 2021, the government obtained a warrant to search Mr. GossJankowski's residence and seize, *inter alia*, "[a]ny digital device which is capable of containing and reasonably could contain" electronically-stored information. Ex. 1, Warrant Appl., Attachment B, ¶1(o); Affidavit in Support of Warrant Application ("Aff.") pp. 11–28. The scope of the warrant with respect to electronically-stored information was effectively limitless. *Id*. The warrant contained no particular articulable limitation on the seizure and search of electronic devices and electronically-stored information found anywhere in Mr. GossJankowski's residence.

The same day, the government arrested Mr. GossJankowski and executed the search warrant. The government seized the following electronic devices from Mr. GossJankowski's bedroom:

1) Droid Phone;

2) Tablet;

3) Silver Apple laptop Serial FVFZLQDZJ1WK (believed to be "MacBook Air");

---

[2] ASL is a language that is distinct from English in both syntax and grammar. "ASL is not derived from English; ASL has its own syntax and grammar and utilizes signs made by hand motions, facial expressions, eye gazes, and body postures." *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 275 (D.D.C. 2015) (Brown Jackson, J.).

    4)       Silver Apple laptop Serial CO2C80V6LVDN (believed to be "MacBook Pro");[3]

    5)       Black Lenovo laptop; and

    6)       Red iPhone XR.

Ex. 2, Search Warrant & Return, Property Receipt; Ex. 3, FBI Report dated Jan. 19, 2021. The government also seized an iPhone 11 Pro Max cell phone from Mr. GossJankowski's person upon his arrest. *Id*. The government subsequently returned the iPhone 11 Pro Max cell phone to him on January 20, 2021.[4] The government has retained the other electronic devices since the initial search—now for more than 20 months.

To date, the government has not identified any evidence of the crimes charged found on any of the six electronic devices seized from Mr. GossJankowski's bedroom, which it has retained. Indeed, the government has provided no reason to believe that any evidence of any charged crime exists on any of these devices. Still, the government maintains that all of the electronic devices "are evidence" that it may keep and search at will through the disposition of this case. The government will not return to Mr. GossJankowski any of the six electronic devices seized in the residence search.

Without a laptop computer, it has been incredibly difficult for Mr. GossJankowski to meet

---

[3] Mr. GossJankowski owns two Apple laptops—a MacBook Air and a MacBook Pro—that he used for video communications. Defense counsel believes serial no. FVFZLQDZJ1WK is the MacBook Air and serial no. CO2C80V6LVDN is the MacBook Pro, however, it is not clear from the discovery provided. The government did not provide photographs of any of the seized devices. Defense counsel understands that Mr. GossJankowski uses the MacBook Air primarily and it functions better than the other laptops for video review and communication purposes.

[4] As the government likely realized, without the return of this cell phone, Mr. GossJankowski would not have been able to appear remotely for court hearings or meet remotely with defense counsel during the ongoing pandemic. Nor would he have been able to communicate with Pretrial Services or review any of the electronically-stored discovery provided by the government, which is the vast majority of the discovery in this case. Mr. GossJankowski has had to rely exclusively on his cell phone for all of these purposes.

with defense counsel remotely using an interpreter, review and discuss electronically-stored evidence, and participate in remote court hearings—where there are at least seven participants at each hearing—because Mr. GossJankowski must use his cell phone. His cell phone screen is too small to show all of the participants in court hearings and video meetings and capture sign language communication effectively.

**ARGUMENT**

**I.      The Electronic Devices and Any Evidence Seized and Imaged from Those Devices Should be Excluded Because the Warrant Is an Unconstitutional General Warrant that is Plainly and Clearly Invalid on its Face.**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "The Founding generation crafted the Fourth Amendment as a response to the reviled general warrants and writs of assistance of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (cleaned up). The prohibition against "unreasonable searches" generally means that law enforcement officials must obtain a valid warrant before undertaking a search. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014); *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). To be valid, a warrant must be both (a) supported by "probable cause" that the evidence sought will be found at the location to be searched, and (b) specific in identifying the evidence sought to be seized. *In re Grand Jury Subpoenas*, 926 F.2d 847, 857 (9th Cir. 1991).

"Two distinct constitutional protections [are] served by the warrant requirement":

> First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. . . . The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. . . . The warrant accomplishes this second objective by requiring a 'particular description' of the things to be seized.

*Coolidge v. New Hampshire*, 403 U.S. 443, 467, (1971) (citations omitted).  The warrant here is defective in both ways.  The warrant is an insufficiently particularized, overbroad, "general warrant" and the government's 20-month and continuing retention and indiscriminate review of the vast amount of data accessible via Mr. GossJankowski's digital devices is unreasonable under the circumstances of this single-defendant single-occasion alleged trespassing and assault case.

> **A.    The Warrant Was Not Supported By Probable Cause to Search and Seize Any and All Digital Devices in Mr. GossJankowki's House.**

An application for a search warrant "must establish probable cause to believe . . . that evidence is likely to be found *at the place to be searched*."  *Groh v. Ramirez*, 540 U.S. 551, 568 (2004) (emphasis added).  The application "must articulate *specific* items that can be seized, and a *specific* place to be searched[.]"  *Id*. (emphases added).  "Wholly conclusory" statements that an affiant "has cause to suspect and does believe" that contraband will be found at a location "will not do."  *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

"An application for a search warrant differs" from an application for an arrest warrant "in that it is necessary to establish that *certain items are probably located at the present time in a certain place*."  *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983) (emphasis added).  Thus, "to obtain a warrant to search for and seize a suspect's possessions or property, the government must do more than show probable cause to arrest him."  *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017).  It must show "probable cause to believe that the legitimate

5

object of a search is located in a particular place." *Id*. (quoting *Steagold v. United States*, 451 U.S. 204, 213 (1981)). "Probable cause that a resident of the location has committed a crime is inadequate, in itself, to satisfy th[e] requirement of showing that evidence probably will be found at the locations searched." *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995). Indeed, the D.C. Circuit has expressly rejected the government's invitation to "authoriz[e] a search of a person's home almost anytime there is probable cause to suspect her of a crime." *Griffith*, 867 F.3d at 1275. "Moreover, there must, of course, be a nexus between the item to be seized and criminal behavior." *Id*. at 1271 (cleaned up) (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)). The warrant application must provide a logical nexus between the particular suspect, the particular evidence sought from that suspect, and the particular place to be searched. A "let's look anywhere" approach to policing is exactly what the Fourth Amendment is supposed to prevent.

There was no evidence linking Mr. GossJankowski's house to the suspected criminal activity, and the warrant did not even limit the search to parts of the house occupied only by Mr. GossJankowski, such as his bedroom. Thus, "[t]his case . . . involves the prospect of an especially invasive search of an especially protected place." *Id.* at 1272. The Fourth Amendment does not authorize opportunistic searches of residences merely because an occupant is suspected of having violated a law. The fact that some people may own and use digital devices is "not enough to justify an intrusive search of a place lying at the center of the Fourth Amendment's protections—a home—for any [digital device Mr. GossJankowski] might own." *Id.* at 1268.

Here, other than one cell phone, the warrant application did not articulate any specific digital device sought or provide any specific reason or probable cause to believe that any specific digital device was likely to be found at the residence to be searched. Nothing in the affidavit refers

6

to Mr. GossJankowski using anything other than one cell phone, and a person's cell phone accompanies his person, not his residence.[5] The government had no reason to believe that Mr. GossJankowski possessed or used any laptop or tablet at the U.S. Capitol on January 6, 2021, or in connection with any of his alleged conduct. The affidavit contains no reason to believe that Mr. GossJankowski had access to or used any digital device other than a cell phone before, during, or after the alleged criminal activity took place. The affiant does not allege that the residence ever contained any digital device. *See Griffith*, 867 F.3d at 1272 ("there is no commonsense reason simply to presume that individuals own a computer or tablet"). The police may not obtain authorization to search a suspect's home for a laptop or tablet "without any particularized information that he owned one." *Id*. at 1273.

Similarly, the warrant application did not articulate any specific information sought or provide probable cause to believe that any such information was likely to be found on any digital device in the residence. The affidavit lacks any reason to believe that Mr. GossJankowski would have created or retained any incriminating information on any digital device found in his home. Because digital devices "unlike drugs or other contraband, [are] not inherently illegal, there must be reason to believe that a [specific digital device] may contain evidence of a crime." *Griffith*, 867 F.3d at 1274. Here, the affidavit lacks any reason to believe that any digital device found in Mr. GossJankowski's residence would have been of any evidentiary value, when no ongoing criminal activity was alleged to support the issuance of the warrant.

---

[5] Also, notably, nothing about the alleged criminal conduct has anything to do with a cell phone. "And the warrant gave officers authority to search [Mr. GossJankowski]'s apartment for any cell phones without regard to his presence on the scene." *Griffith*, 867 F.3d at 1273. It also broadly authorized the search and seizure of "*all* cell phones in [his house], so that the officers could later access which (if any) belonged to [Mr. GossJankowski]." *Id*. Therefore, as discussed below, the warrant was also unconstitutionally overbroad.

The only basis in the affidavit for searching and seizing all digital devices in Mr. GossJankowski's residence is:

> In my experience and training, I know that individuals who participate in events such as the January 6, 2021, attack against the U.S. Capitol, communicate via social media sites, emails, and text messages, and must use electronic devices to do so. I also know that individuals who participated in the January 6, 2021, attack recorded activities using digital devices, including mobile phones. GOSSJANKOWSKI acknowledged that he used his mobile phone to record activities, but claimed the resulting files were deleted or lost. I also know that individuals who engage in the criminal conduct for which there is probable cause to believe GOSSJANKOWSKI engaged keep evidence of their criminal conduct, including souvenirs, at their residence. Accordingly, I believe there is probable cause that fruits, evidence, information, contraband, or instrumentalities of GOSSJANKOWSKI's criminal conduct on January 6, 2021, will be located at his residence.

Ex. 1, Aff. pp. 10–11, ¶ 20.

Aside from the assertion that Mr. GossJankowski acknowledged he used his mobile phone to record his activities on January 6, the above statements describe most people. Most people communicate via social media sites, emails, and text messages, and must use electronic devices to do so. Most people knowingly or unknowingly record activities using digital devices. The statement that criminals "keep evidence of their criminal conduct, including souvenirs, at their residence" is nothing if not a textbook example of a warrant lacking in probable cause. It is the sort of "wholly conclusory" statement that the Supreme Court has rejected as a proper basis for probable cause. *Gates*, 462 U.S. at 239. It provides no more probable cause than the recitation the Supreme Court rejected eighty years ago that an officer had "cause to suspect and does believe" that certain items would be found at a residence. *Nathanson v. United States*, 290 U.S. 41, 44 (1933). The nexus between the particular evidence sought and the particular location to be searched requires particular evidence—not society-wide generalities. The Fourth Amendment does not allow the police to search all digital devices in the residence of anyone suspected of criminal activity based on nothing more than a general assertion that criminals likely keep evidence

8

in digital devices.

The government cannot rely on non-existent evidence to rummage around the entirety of a digital device where it has no articulable reason to think such non-existent evidence might be found on the digital device, let alone in any articulable place on the device. Where "the Government has not shown that it ha[s] any prior knowledge of either the existence or the whereabouts of the [items sought,]" *United States v. Hubbell*, 530 U.S. 27, 45 (2000), the government is—by definition— "unable to describe with reasonable particularity[,]" *id*. at 30, the "place to be searched, and the . . . things to be seized[,]" U.S. Const. amend. IV.

In *Riley v. California*, 573 U.S. 373, 399 (2014), the Court explained, "[i]t would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." *Id*. The Court recognized that "[e]ven an individual pulled over for something as basic as speeding might well have locational data dispositive of guilt on his phone. . . . The sources of potential pertinent information are virtually unlimited." *Id*. But police officers simply do not have "unbridled discretion to rummage at will among a person's private effects." *Id*. (quoting *Arizona v. Gant*, 556 U.S. 332, 345 (2009)). Thus, under *Riley*, something more is required; officers cannot search Mr. GossJankowski's digital devices simply because they can "come up with several reasons to suppose evidence" of the crime alleged in this case "could be found" on it. *Id*.

Here, the government had nothing more than the generalized reason rejected by the Court in *Riley* to seize, search, or retain Mr. GossJankowski's digital devices. If the affidavit here is sufficient, then anytime police have reason to identify anyone as someone who committed a crime, they would have probable cause to search any place that person may be staying and seize all electronic devices in that location because "individuals . . . communicate via social medial sites,

9

emails, and text messages, and must use electronic devices to do so" and "individuals who engage in [crimes] keep evidence of their criminal conduct, including souvenirs, at their residence." Aff. ¶ 20. That result is inconsistent with Supreme Court precedent and would sanction exactly the sort of general rummaging the Fourth Amendment prohibits. The Fourth Amendment does not authorize opportunistic searches of residences and any and all digital devices found therein merely because an occupant is suspected of having violated a law. The warrant therefore lacked probable cause to seize and search all digital devices and any evidence seized should be suppressed at trial.

### B. The Warrant is Unconstitutionally Overbroad and Lacks Sufficient Particularity.

The warrant broadly authorizes the search and seizure from Mr. GossJankowski's residence—which he shares with at least two other people—"[a]ny digital device capable of containing . . . information" "related to" a list of seven statutes, including the general conspiracy statute, 18 U.S.C. § 371. Ex. 2, Attachment B. In addition to the complete absence of probable cause to believe that Mr. GossJankowski engaged in any sort of conspiracy, citing the general conspiracy statute purports to broaden an already otherwise overbroad warrant. "Although a warrant's reference to a particular statute may in certain circumstances limit the scope of the warrant sufficiently to satisfy the particularity requirement . . . , it will not do so where, as here, the warrant authorizes seizure of all records and where, as here, the reference is to a broad federal statute[.]" *United States v. Maxwell*, 920 F.2d 1028, 1033 (D.C. Cir. 1990). "References to broad statutes," such as the general conspiracy statute, 18 U.S.C. § 371, "realistically constitute no limitation at all on the scope of an otherwise overbroad warrant and therefore cannot save it." *Maxwell,* 920 F.2d. at 1033.

In addition, thousands of people were implicated and hundreds charged with "violations of 18 U.S.C. § 1752(a)(1)-(2) and (b)(1)(A) (Knowingly Entering or Remaining in any Restricted

10

Building or Grounds without Lawful Authority while Using or Carrying a Dangerous Weapon), 18 U.S.C. § 111 (Assaulting a Federal Agent), 18 U.S.C. § 231 (Civil Disorders), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 930 (Possession of Firearms and Dangerous Weapons in Federal Facilities), 18 U.S.C. § 1512 (Obstruction of Congress), and 40 U.S.C. § 5104(e)(2)(D) (Knowingly Engaging in Disorderly Conduct on Capitol Grounds)." Ex. 2, Attachment B. Any digital device capable of accessing the internet is capable of containing information and records about these charges, about Mr. GossJankowski's conduct on January 6, and about the events on January 6, because information was widely disseminated, circulated, and publicized all over the internet.

Significantly, the list of "items to be seized" is both broad and non-exhaustive: in addition to "any digital device," it includes ten broad categories of "records and information" and is expressly "not limited to" the list provided. Ex. 2, Attachment B. The warrant broadly defines "the terms 'records' and 'information'" to "include[]"

> all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

Ex. 2, Attachment B. And it broadly defines "[t]he term 'digital devices'" to "include[]":

> any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop computers, laptop computers, notebooks, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, USB flash drives, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); security devices; and any other type of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions.

11

Ex. 2, Attachment B.

Where, as here, a warrant fails to limit the search to those digital devices which could contain certain files in question, fails to limit the timeframe of files to be seized, and simply seeks all electronic files and data in a generalized sweep, the warrant is invalid and the evidence should be suppressed. *See, e.g., United States v. Kow*, 58 F.3d 423, 425–27 (9th Cir. 1995); *United States v. Rosa*, 626 F.3d 56, 60 (2d Cir. 2010).

Moreover, the warrant in this case is exactly like the warrant held to be unconstitutionally overbroad in *Griffith*. It "did not stop with any devices owned by [Mr. GossJankowski], which already would have gone too far[:] It broadly authorized seizure of *all* cell phones and electronic devices, without regard to ownership." 867 F.3d at 1276. "Indeed, the terms of the warrant allowed officers unfettered access to any electronic device in the [house] even if police *knew* the device belonged to someone other than [Mr. GossJankowski]." *Id*. Mr. GossJankowski shared his house with two roommates, "and the warrant authorized police to search for and seize all of [their] electronic devices." *Id*. "Yet the police unsurprisingly offered no explanation of why [the roommates'] devices could have been appropriately seized." *Id*. As the D.C. Circuit has emphasized, the search for and seizure of "otherwise lawful objects" "call[s] for special care to assure the search is conducted in a manner that minimizes unwarranted intrusions of privacy." *Id*. (cleaned up) (quoting *Andreson v. Maryland*, 427 U.S. 463, 463 (1976)). "[A] blanket authorization to search for and seize all electronic devices," which the police can neither quantify nor identify with any particularity, like the warrant issued here, is unconstitutional. *Id*.

The Fourth Amendment's particularity requirement is especially important where the property to be seized and searched consists of digital devices and electronically stored information. *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013); *United States v. Wey*, 256 F. Supp. 3d

355, 382–83 (S.D.N.Y. 2017). The seizure and retention of electronic devices and data "give the government possession of a vast trove of personal information about the person to whom the [property] belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure." *United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016) (en banc). "As such, the potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive is enormous—a threat that is compounded by the nature of digital storage." *Wey*, 256 F. Supp. 3d at 383 (cleaned up). "There are just too many secrets on people's computers, most legal, some embarrassing, and some potentially tragic in their implications, for loose liberality in allowing search warrants." *United States v. Gourde*, 440 F.3d 1065, 1077 (9th Cir. 2006) (Kleinfeld, J., dissenting). A digital search captures vast quantities of data; innocent and personal information with no relevance to the asserted claims; access points to other digital devices and data; electronically stored information of which the user is unaware; and destroyed data. *In re Appl. for Search Warrant*, 770 F. Supp. 2d 1138, 1144–46 (W.D. Wash. 2011). Therefore, "a heightened sensitivity to the particularity requirement in the context of digital searches is necessary." *Wey*, 256 F. Supp. 3d at 383 (cleaned up) (quoting *Galpin*, 720 F.3d at 447).

      Here, the scope of the warrant is effectively unbounded by the scope of Mr. GossJankowski's alleged crimes. The warrant does not require a digital device to contain any linkage to Mr. GossJankowski's alleged criminal actions to be subject to seizure and search because a device did not have to be "used" or "part of" the criminal conduct; it need only contain "information" "related to" the ubiquitous events of January 6. In addition, the warrant contains no parameters on the part or parts of a digital device that may be searched and seized. It does not limit the government to photographs and videos, or to GPS data, or to text messages or emails. And the warrant "fail[s] to limit the items subject to seizure by reference to any relevant timeframe

or dates of interest." *Wey*, 256 F. Supp. 3d at 387.  The warrant lists no date range or limitation on the electronic devices or electronically-stored information subject to search and seizure despite the fact that all alleged criminal activity occurred on just one single day.  The lack of a temporal limitation is particularly significant here because the alleged criminal conduct was neither lengthy nor complex.  That the warrant contains no date or time-frame limitation thus underscores its plain and obvious insufficiency.  *See United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) ("Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad.").

Moreover, the warrant provides no minimization procedures or procedural safeguards to limit the amount of data to be seized or provide for the appropriate treatment of non-responsive data seized and imaged (*i.e.*, copied).  It does not require the government to destroy or return non-responsive data.  Indeed, it allows the government to keep replica images of all digital devices seized and search those images indefinitely and at-will.  As a result, even if the government had probable cause to seize and search all digital devices located in Mr. GossJankowski's residence—which it did not—the warrant was nevertheless overbroad and unconstitutional.

In sum, the warrant is not "carefully tailored to its justifications" and, instead, "take[s] on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  "The practical effect" of the warrant in this case is that it "give[s] the government carte blanche to examine the entirety of [Mr. GossJankowski]'s digital presence with impunity," which is a direct "affront to the Fourth Amendment as contemplated by the Founders."  *In re Search of Cellular Telephones*, 2014 WL 7793690, at *6 (D. Kan. 2014).

## C. The Government's Retention of the Electronic Devices and Duplicate Images of the Devices is Unreasonable.

"[T]he manner in which the government executes the warrant must comport with the Fourth Amendment's reasonableness standard." *United States v. Metter*, 860 F. Supp. 2d 205, 212 (E.D.N.Y. 2012). When the government seizes electronic devices and media, "the Fourth Amendment requires the government to complete its review, *i.e.*, execute the warrant, within a 'reasonable' period of time." *Id*. at 215. Seizing and "imaging" *all* electronic devices and retaining those devices and images indefinitely to search at-will undoubtedly constitutes a "general search" prohibited by the Fourth Amendment. *Id.* at 216. That is exactly what the government has done here.

The government seized the electronic devices on January 18, 2021. It imaged Mr. GossJankowski's iPhone 11 Pro Max cell phone and returned it to him on January 20, 2021. The government will not return to Mr. GossJankowski any of the six electronic devices seized in the residence search.

Over a year after seizing the devices, on February 28, 2022, the government produced: (1) approximately 29 image files and 5 video files from the iPhone 11 Pro Max cell phone; (2) approximately 21 image files from the Red iPhone XR (iPhone 7 plus); and (3) approximately 39 image files from the tablet. Many of the same image files were provided from all three devices. None of the images constitute fruits, contraband, or instrumentalities of the charged crimes. It is unclear whether the government's search is complete, but the government nonetheless retains the devices (other than the iPhone 11) as well as complete images of the devices to search at-will indefinitely. The government has not returned or destroyed materials seized that were not covered by the warrant.

To date, the government has not identified or provided any evidence obtained from (1) the

15

Droid phone; (2) the MacBook Air laptop; (3) the MacBook Pro laptop; or (4) the Black Lenovo laptop.  The government has apparently not reviewed any of the laptop computers to determine whether they contain any data falling within the scope of the information sought in the search warrant.  The government may not seize and image electronic data and then retain both the devices and the data "with no plans whatsoever to *begin* review of that data to determine whether any irrelevant, personal information was improperly seized."  *Metter*, 860 F. Supp. 2d at 215.  The government's retention of Mr. GossJankowski's laptops is particularly unreasonable because in other cases, including very high-profile ones, the government has not even seized and retained similar personal computers, but rather simply imaged them on-site and left them at the residence.  *See, e.g.*, *United States v. Manafort*, 314 F. Supp. 3d 258 , 263 (D.D.C. 2018) ("The agents imaged many of the electronic devices, including the two computers [an iMac desktop and MacBook Air laptop], on site and left them there."); *Metter*, 860 F. Supp. 2d at 210 ("With respect to the seized computer hard drives, the government created images of the hard drives, and promptly returned the computer hardware to its appropriate owner.").  *See also In re Sealed Case*, 716 F.3d 603, 604 (D.C. Cir. 2013) ("[w]ithin days" of government seizure of "more than sixty boxes of physical property, as well as computers, hard drives, cell phones, and other devices that contained electronic records," containing "more than twenty-three million pages of documents," "the government had copied and returned . . . the contents of most of the electronic devices").

      In almost two years, the government has not identified any evidence on either MacBook laptop.  Thus, for no discernible reason, Mr. GossJankowski has been denied the right to his property and the ability to effectively review discovery and communicate by video with his attorneys, in violation of fundamental guarantees in the Fourth, Fifth, and Sixth Amendments.

### D. The Good Faith Exception Does Not Apply.

The government is generally barred from introducing evidence in its case-in-chief that was obtained in violation of the Fourth Amendment. *United States v. Weeks*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643 (1961). The exclusionary rule is meant to enforce Fourth Amendment rights primarily by deterring further violations. *United States v. Calandra*, 414 U.S. 338, 348 (1974).

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court announced the "good-faith exception" to the exclusionary rule. Where an officer executes a search warrant in *reasonable*, good-faith reliance on the warrant's validity, but a court later determines that the warrant was invalid, the exclusionary rule will not apply. *Id.* at 922–26. However, if an officer's reliance on a warrant's validity is objectively *unreasonable*—such as where a warrant is "based on an 'affidavit so lacking in probable cause'" or "so facially deficient" that the executing officers cannot reasonably presume it to be valid—then the exclusionary rule still applies. *Id.* at 923. The good faith exception may not apply even where there is no "reason to suppose that officers acted in bad faith in relying on an invalid warrant." *Griffith*, 867 F.3d at 1279.

Here, as discussed above, the search warrant is defective on its face. An objectively reasonable officer reviewing the warrant would recognize that, because it was unsupported by probable cause and is unlimited in scope as to any and all digital devices, it never should have been issued. *See id.* at 1278–79. Even without legal expertise, a reasonable officer would see that the warrant in this case authorizes a general rummaging in search of evidence of criminal activity and is thus invalid. "Nothing in the affidavit supported—or could have supported—probable cause to seize any and all phones, tablets, computers, and other electronic devices in the apartment." *Id.* at 1278. Thus, executing the warrant was objectively unreasonable.

**II.     The Court Should Order The Government to Immediately Return Mr. GossJankowski's Electronic Devices.**

Federal Rule of Criminal Procedure 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Relief under this rule is not limited to cases in which the initial seizure of the property was unlawful. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010) (en banc) (explaining that the language in Rule 41(g) "was designed to expand the rule's coverage to include property lawfully seized" and noting "[t]hat Rule 41(g) is broader than the exclusionary rule"); *In re Sealed Case*, 716 F.3d 603, 605 n. 2 (D.C. Cir. 2013). In a criminal case, this Court "has both the jurisdiction and the duty to ensure the return" "to the defendant [of] that property seized from him in the investigation but which is not alleged to be stolen, contraband, or otherwise forfeitable, and which is not needed, or is no longer needed, as evidence." *United States v. Wilson*, 540 F.2d 1100, 1101 (D.C. Cir. 1976) (discussing Rule 41(e), the predecessor to Rule 41(g)).

Here, regardless of whether Mr. GossJankowski was aggrieved by an unlawful search and seizure of property in this case, he is currently aggrieved by the deprivation of his MacBook laptops.[6] He needs a laptop to communicate with defense counsel, review large amounts of discovery, and assist in his defense and preparation for trial. Computers are expensive, and Mr.

---

[6] Mr. GossJankowski does not concede that any search or seizure in this case was lawful. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) (en banc) (explaining "crucial distinction between a motion to suppress and a motion for return of property: [t]he former is limited by the exclusionary rule, the latter is not").

GossJankowski is an indigent criminal defendant who qualifies for court-appointed counsel. He cannot purchase another laptop to use while this proceeding remains pending, nor should he be required to because there is no legitimate reason for the government to retain Mr. GossJankowski's electronic devices through the conclusion of this case.

Mr. GossJankowski's electronic devices are not probative in any way of his guilt or innocence of the charges in this case. While Mr. GossJankowski possessed a cell phone on his person on January 6, 2021—the government returned that to him. It is clear that he did not have or use a laptop in connection with any of the charges. It is not unlawful or uncommon to possess electronic devices, like laptops, in your residence. In any event, the government has now had over 20 months to search Mr. GossJankowski's electronic devices and seize whatever data the search warrant permits it to seize. There is no reason for the government to continue to hold all of Mr. GossJankowski's electronic devices.

As courts have recognized, the government does not need the physical electronic device "to review its contents" when the government has extracted (or imaged) the contents of the device. *United States v. Dennis*, ___ F. Supp. 3d ___, 2022 WL 3580315, at *2 (S.D.N.Y. Aug. 19, 2022). If the government has not "completed its extraction and/or review . . . despite having had more than [twenty] months to do so," it "would be a flimsy excuse for not allowing Mr. [GossJankowski]'s repossession of his property" and also "invite[] inordinate delay." *Id*.

Nor does the government need Mr. GossJankowski's devices "as evidence" because "the Government can authenticate the contents of the [device] by other means." *Id*. In *Dennis*, the court ordered the government to return the cell phone it seized of a defendant facing cyberstalking charges, explaining:

> [The government] can, for example, call witnesses who can testify that the extracted data was pulled from Mr. Dennis's phone. Additionally, the Government has not

19

explained how presentation at trial of Mr. Dennis's phone will increase the credibility of its assertion that the extracted data did indeed come from Mr. Dennis's phone. Thus, the Government has not established its need for continuing possession of Mr. Dennis's property.

*Id.* (citing cases). As in *Dennis*, the government has no need for continuing possession of Mr. GossJankowski's property, particularly now after more than 20 months. Any negligible interest the government may have in retaining Mr. GossJankowski's devices is fully outweighed by his property interest and his need for the property to meet with his attorneys and aid in his defense at trial. The government's retention of Mr. GossJankowski's electronic devices and complete images of them is unreasonable, unwarranted, and constitutes an unconstitutional deprivation of property without due process of law.

## CONCLUSION

For the foregoing reasons, and for any other reasons set forth at a hearing on this motion or in supplemental pleadings, and that this Court may deem just and proper, Mr. GossJankowski respectfully requests that the Court grant this motion, suppress from the government's case-in-chief his electronic devices and any and all information seized and imaged from those devices, and order the government to promptly return to him the devices it has retained.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Ubong Akpan
Celia Goetzl
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500