UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-123 (PLF) |
| v. : | |
| : | |
| VITALI GOSSJANKOWSKI, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE CERTAIN EVIDENCE AT TRIAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Defendant Vitali Gossjankowski's Motion in Limine to preclude certain evidence at trial. Specifically, Gossjankowski seeks to preclude the Government from: 1) introducing into evidence videos that show the conduct of any individuals other than the defendant, including any montage videos that show the overview of the events on January 6; 2) using terms like "rioters," "insurrectionists," "attackers," or "any other inflammatory terms" to describe the participants of the events that took place on January 6; 3) playing the audio of any video recording capturing the events of January 6; and 4) playing certain videos the defense contends are irrelevant and cumulative. (ECF 107). As set forth below, the motion should be denied.

**FACTUAL BACKGROUND**

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. As early as 12:50 p.m., certain individuals in the crowd forced their way through, up, and over erected

12

barricades. The crowd, having breached police officer lines, advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol. At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

An affidavit supporting the criminal complaint against the defendant partially describes his role in the January 6, 2021, attack on the Capitol. (ECF 1-1). Among other facts, the affidavit describes a video wherein Gossjankowski is seen in restricted areas of the Capitol grounds. In the video, Gossjankowski enters a covered area leading to an entrance to the U.S. Capitol building and then assists rioters by passing ballistic shields away from the entrance to the U.S. Capitol building; holds a black-colored handheld stun gun; activates the stun gun multiple times; and makes his way through the crowd of violent individuals towards the police line that was protecting the entrance to the U.S. Capitol building. Since the complaint and affidavit were filed the government become aware of additional video evidence showing more of Gossjankowksi's conduct on January 6, 2021. This additional video shows Gossjankowski, while on the restricted U.S. Capitol grounds, approaching a police officer that had been accosted by the crowd and assaulting him with the stun gun.

## PROCEDURAL HISTORY

On February 17, 2021, the grand jury returned a six-count indictment charging defendant with Civil Disorder, in violation of § 231(a)(3), Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2, Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b), Entering and Remaining in a

Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A), Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A), and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D). On November 10, 2021, the grand jury returned a second superseding indictment, charging defendant with the same six counts but making technical changes to the wording of some counts.

## Argument and Authority

### I. Legal Standard for Admission of Evidence

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, No. 18-cr-198, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022). Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998). Neither Rule 401 nor 403 supports the defendant's requested relief.

### II. General Evidence of the Events of January 6 and the Actions of Other Rioters at the Capitol is Relevant.

Gossjankowski argues that the government should only be permitted to show videos of the defendant and his actions on January 6 and requests this court exclude "[a]ny videos showing the conduct of other individuals" (ECF 107 at 6.). The defendant's argument ignores the nature of the charged crimes as a collective action. It was the mob's collective action that disrupted Congress, and it was the mob's collective action that created the Civil Disorder. Gossjankowski's knowledge of the collective riot bears on his mens rea for each of the charged offenses. The government does

12

not anticipate focusing its evidentiary presentation on areas of the Capitol grounds where Gossjankowski did not go; however, to show the overall riot, its effects, the context of the defendant's actions, and why the certification of the Electoral College vote was suspended, the government should be allowed to present evidence to show the actions of other rioters in other areas of the Capitol building and grounds.

None of the rioters were authorized to enter the Capitol grounds or building, which were closed to the public and part of a restricted area  Additionally, law enforcement officer witnesses will explain that they could not distinguish between those rioters who were overtly violent and those who were not; thus, while no one was lawfully present on the Capitol grounds, everyone had to leave. This is because law enforcement could not predict who would act violently; any member of the crowd might be a threat to them. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing on a specific individual. But for Gossjankowski's actions alongside so many others, the riot likely would have failed to delay the certification vote. See *United States v. Mazzocco*, No. 21-cr-54, Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan); *United States v. Rivera,* No. 21-cr-0060, Tr. 06/17/22 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption.") (statement of Judge Kollar-Kotelly). While a jury will judge Gossjankowski based on his own actions, the context of his actions will necessarily be placed before them—that context was a riot.

The actions of other rioters at multiple areas of the Capitol and grounds are also relevant to elements of the crimes with which Gossjankowski is charged. First, to prove the charge of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), the government must establish that the defendant committed or attempted to commit an act that obstructed, impeded, or interfered with law enforcement in the performance of their duties during a civil disorder which adversely affected commerce or performance of any federally protected function. 18 U.S.C. § 232(1). As this court has recognized, the term "civil disorder" is defined in the statute to be "any *public* disturbance involving acts of violence by assemblages of *three or more persons*…" (ECF 103 at 21). Evidence of actions of other rioters at all locations of the Capitol building and grounds is not only relevant to prove that a civil disorder was occurring but also that it interfered with a federally protected function.  The actions of others establish an essential element of the crime.

Additionally, as this court has also recognized, to prove the charge of Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2, the government must establish that there was an "official proceeding" and the fact that it was disrupted. (ECF 103 at 13). The official proceeding was the certification of the Electoral College vote, and, as with the Civil Disorder offense, proving this charge includes evidence involving the actions of other rioters throughout  the Capitol building and grounds. Moreover, the § 1512(c)(2) charge includes the alternative theory of aiding and abetting, pursuant to 18 U.S.C. § 2. Therefore, the conduct of other rioters is extremely relevant.

Gossjankowski's reliance on *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 650 (1997) to support his claim of undue prejudice is both unpersuasive and puzzling. In *Old Chief* the defendant offered to stipulate that he previously had been convicted of a felony and argued his prior record of conviction was inadmissible because its probative value was substantially

12

outweighed by the risk of unfair prejudice. But Gossjankowski, as is his right, has refused to enter into any stipulations other than the authenticity of certain CCTV video. Holding the government to its burden of proof on every element of every count, however, requires the showing of a civil disturbance and the disruption of a civil proceeding. *Old Chief* would hold more relevance if it were otherwise.

Furthermore, the government's use of any potential "overview" witnesses or video evidence to this effect would permissibly "help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial." *See United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983). Any such aspects of the government's case would need to be "accurate and nonprejudicial[,]" *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014), and require "a sufficient foundation[,]" *United States v. Mitchell*, 816 F.3d 865, 877 (D.C. Cir. 2016). Gossjankowski cannot substantiate his contention that the government should be precluded from presenting this information. Even if this Court found the actions of other rioters were, in some respects, prejudicial, a limiting instruction would be the appropriate remedy. The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice. *See, e.g.*, *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (same); *United States v. Crowder*, 141 F.3d 1201, 1210 (D.C. Cir. 1998) (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis). Because the actions of other rioters are relevant and not unduly prejudicial and any prejudice can be addressed through an appropriate limiting instruction, admission of such evidence is appropriate.

### III. The Challenged Descriptors Accurately Describe the Events of January 6, and the Federal Rules of Evidence Do Not Preclude Them.

Gossjankowski argues that the Court should bar the government from using terms like "rioters," "insurrectionists," "attackers," or "any other inflammatory terms" to describe the participants of the events that took place on January 6. The defendant asserts that such terms are "highly prejudicial" and "serve only the purpose of provoking emotional responses from the jury." (ECF 107 at 8.) Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (quoting Fed. R. Evid. 403, advisory committee's note).

First, to the extent the defendant's motion seeks to prevent any witness from using certain words, it is premature. As was recognized by Judge Amy Berman Jackson in finding a similar motion in another January 6 case to be overly broad and premature: "[C]ontext will be crucial, [] for determining the probative value of any testimony, as well as how prejudicial it might be" and "prohibiting any witness from using a laundry list of terms before the witnesses have even been identified and the scope of their testimony is known would be inappropriate." *United States v. Deborah Lynn Lee,* No. 21-cr-303, Tr. 07/21/22 at 19-20. (statements of Judge Amy Berman Jackson). To be clear, the government has not prepared its witnesses to purposefully use certain terms in their testimony. But there are innumerable ways in which terms such as "rioters," "insurrectionists," "attackers," or other unspecified yet supposedly "inflammatory" terms could come up during the testimony of witnesses during the trial. As in *Lee*, a blanket order prohibiting the utterance of these words before a witness has even testified is premature, and likely impossible when the defense has not specified what if any words in addition to those listed should be excluded.

12

Secondly, the government should not be barred from using terms such as these in describing the case to the jury. By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—and there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'"). *See also United States v. Moore*, 651 F.3d 30, 51 (D.C.Cir. 2011) ("strong and vivid" language is not prosecutorial misconduct when supported by ample evidence at trial).

Here, the government should not be required to dilute its language and step gingerly around the defendant's crimes. What took place on January 6, 2021, was, in fact, a riot involving rioters, and an attack on the United States Capitol, the government of the United States, and American democracy. After carefully considering the facts of other January 6 cases, many members of this Court have recognized the riot as just such an attack. *See, e.g., United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to

undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors need to use appropriate language—and not euphemisms—to describe the nature and gravity of the defendant's conduct.

Lastly, the defendant's claim that the government's use of such terms is "inadmissible hearsay and conclusory" is meritless. A statement is hearsay if it is *offered in evidence* to prove the truth of the matter asserted. USCS Fed Rules Evid R 801(c). Statements of counsel are not offered into evidence. *See United States v. McGill*, 815 F.3d 846, 922 (D.C. Cir. 2016). *See also, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 541, (1993) ("The District Court admonished the jury that opening and closing arguments are not evidence…. These instructions sufficed to cure any possibility of prejudice.") (cited in *United States v. Watson*, 171 F.3d 695, 706 n. 4 (D.C. Cir. 1999)).

### IV. The Audio of Video Exhibits is Relevant and the Defendant has cited no Authority to Preclude Its Admission.

In an argument void of any applicable legal authority, Gossjankowski argues that "[i]t is important for the jury to perceive only what he perceived on January 6th, without sound, to determine

whether his actions were knowing and willful" and claims the government's sole purpose in seeking to play audio is to "invoke sensory anxiety in jurors and inflame and prejudice the jury". (ECF 107 at 3). The defendant's assertion is without merit.

First, the defendant's motion is premised on the fact that Gossjankowski cannot "hear" sound. (ECF 107 at 1, 3). The government does not dispute that the defendant is deaf and cannot hear in the traditional sense. However, it appears Gossjankowski has the ability to perceive sound and/or volume. In the recent hearing on Gossjankowski's motion to suppress statements (held on January 17, 2023), the government offered into evidence Exhibit 10A - an interview of the defendant with investigators made on January 18, 2021. In that interview, Gossjankowski describes the officers as "yelling" and emphasized that he [the defendant] "could hear him." (Ex 10A at 1:45:51-1:46:05). Additionally, in describing the difference between being at the Ellipse and on Capitol grounds, Gossjankowski makes a distinction about the events' volume, stating that there were two different noise levels and describing the Ellipse as "really loud" and the protest at the Capitol as being less so. (Ex: 10A at 1:57:45). Removing the sound from recordings would render the jury unable to perceive sound or volume, when it appears Gossjankowski, to a degree, had that ability.

More fundamentally, the actions of other rioters and the resulting chaos are relevant to other elements that the government must prove objectively—*i.e.*, not as perceived by the defendant—to prevail at trial. As explained above, the charge of Civil Disorder under 18 U.S.C. § 231(a)(3) requires proof that a "civil disorder" occurred at the U.S. Capitol on January 6, 2021— a phrase that is statutorily defined as a "public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual," 18 U.S.C. § 232(1). The charge of aiding and abetting the Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) and 2

calls for proof that the official proceeding was, in fact, obstructed. These elements, among others, call for the presentation of objective evidence about the events that transpired at the U.S. Capitol on January 6, 2021, including what other rioters said, screamed, and chanted. The sound contained in the videos will have a "tendency to make" certain facts—including the existence of a civil disturbance and disruption of an official proceeding—"more … probable than [they] would be without the evidence," and those facts are "of consequence in determining the action." Fed. R. Evid. 401. The audio therefore easily clears the Federal Rules of Evidence's low bar for relevance.

Nor would the audio be unfairly prejudicial to the defendant. The jury will undoubtedly be aware the Gossjankowski is deaf, and his counsel can ask the jury to consider this fact when weighing the evidence. Nothing in Rule 403 or any other rule of evidence entitles the defendant to more.

## V. The Objections to Specific Exhibits are Premature

Gossjankowski raises objections to five videos that the government has identified as relevant to prove his conduct on January 6. (ECF 107 at 4-5). The government has addressed above the defendant's objections that the videos should be redacted or precluded because they show conduct of someone other than Gossjankowski. The remaining objections are addressed below.

*Exhibit 1 and Exhibit 15*

The defendant claims that Exhibit 1, a third-party video not taken by the defendant, is objectionable because it contains two subtitles ("Made Some Friends" and "Took a Tour") rendering it "irrelevant and prejudicial." Similarly, the defendant claims that Exhibit 15, another third-party video, must be redacted because it contains comments from persons who viewed the video live. The defendant offers no explanation of how these words prejudice him and it stretches credibility to contend they would have "an undue tendency to suggest decision on an improper

basis, commonly, though not necessarily, an emotional one." *U.S. v. Sanford Ltd.*, 878 F. Supp. 2d at 143. There is no claim that Gossjankowski made the subtitles or comments, a point that his counsel can make clear to the jury or, if necessary, the Court can address the defense's concern in a limiting instruction.

*Exhibit 6*

The defendant claims Exhibit 6, a video depicting the defendant in the "tunnel" on the Lower West Terrace of the Capitol, should be precluded because it is "cumulative" of other videos. The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of …undue delay, wasting time, or needlessly presenting needlessly presenting cumulative evidence. Fed Rules Evid R 403. The defendant's motion is premature. A decision on whether the exhibit is cumulative will depend on the factual issues that develop at trial as well as the evidence actually admitted into evidence.[1] As the defendant acknowledges, the various videos from inside the "tunnel" are from different angles. While the government has no intention of offering the same view of the same event on multiple videos, it is possible that as facts develop at trial a certain angle of a video may be more relevant than another. Finally, to the extent that any videos are cumulative, it should fall to the government, not the defendant, to decide what videos to present and in what order.

*Exhibits 18 and 19:*

Gossjankowksi's objections to Exhibits 18 and 19 are also without merit. Exhibit 18 is a video taken with a camera using a what appears to be a "fisheye" lens, i.e., a lens that covers a wider horizontal and landscape view than a standard lens. Although the name of the file containing

---

[1] For example, other than CCTV surveillance footage from the Capitol, the defendant is not stipulating to the authenticity of any recordings the United States may offer as exhibits. Accordingly, the United States may need to offer some videos for comparison in order to demonstrate the authenticity of other videos. *See* F.R.E. 901(b)(3).

the video is titled "Raw360clip in mp4 format" it is apparent from viewing the video that it is *not* a 360° view. To satisfy the requirement of authenticating an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Fed Rules Evid R 901. Exhibit 18 will be offered into evidence for exactly what it is….a video taken from a camera using a fisheye lens. Gossjankowski's complaint that the image had been "altered in a way that does not accurately reflect distances and angles" confuses the weight of the evidence with its admissibility and the defendant will have the opportunity to explore any perceived limitations in the Exhibit through cross-examination. *See, e.g., Kinley v. Bradshaw*, No. 3:03-cv-127, 2011 U.S. Dist. LEXIS 158466, at *111 (S.D. Ohio June 29, 2011) (fact that the photo was only "approximately to scale" goes to the weight of this evidence and not to its admissibility); *Barnett v. Gamboa*, No. 1:05-cv-01022-BAM PC, 2013 U.S. Dist. LEXIS 6784, at *17 (E.D. Cal. Jan. 15, 2013) objection that photograph is dark and distorted goes to the weight of the evidence, not admissibility).

Gossjankowski further complains that Exhibit 19 (which is a clip from Exhibit 18) has been "altered by adding markings, zooming in at particular points, and repeating particular footage." Without support, the defendant asserts that "[w]hile a witness may be permitted to focus the jury on particular parts of a video from the witness stand, it is not appropriate to submit an already-altered video with these edits to the jury." Enlarged videos or photographs extracted from the original are admissible as duplicates under the best evidence rule. FRE 1001(4); *United States v. Cobb*, No. CR-2-07-0186, 2008 WL 2002546, at *3 (S.D. Ohio May 7, 2008), aff'd, 397 F. App'x 128 (6th Cir. 2010). *See also United States v. Beeler*, 62 F. Supp. 2d 136, 149–50 (D. Me. 1999) ("[t]he law in the First Circuit is clear that an audiotape recording is not rendered inadmissible in a criminal case simply because it has been technically enhanced so as to eliminate background

noise and to make the tape easier to understand by the jury." The fact that the video has been enlarged or markings added to it prior to the witnesses taking the stand is does not render Exhibit 19 inadmissible. These enhancements will be fully explained by the witnesses and there is little risk that the jury will be confused.

## **CONCLUSION**

For the reasons set forth above Gossjankowski's motion in limine should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Barry K. Disney*
BARRY K. DISNEY
Trial Attorney – Detailee, Capitol Siege Section
Kansas Bar No. 13284
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Office:  202-305-4367
Email:  Barry.Disney@usdoj.gov
