UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-0123 (PLF) |
| ) | |
| VITALI GOSSJANKOWSKI, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

Defendant Vitali GossJankowski has filed a Motion to Suppress Physical Evidence and Return Property ("Mot.") [Dkt. No. 108].[1] He requests that the Court, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, order the government "to return [his] devices so that he can adequately consult with defense counsel, review discovery, and prepare for trial." Mot. at 1. He also requests that the Court suppress at trial "his electronic devices and any and all information seized and imaged from those devices" because the government's search and seizure of those devices was unreasonable and in violation of the Fourth Amendment. Id. The government filed a response opposing Mr. GossJankowski's motion, see Government's Opposition to Defendant's Motion to Suppress Physical Evidence and Return Property ("Gov't Opp.") [Dkt. No. 84], and Mr. GossJankowski filed a reply in support of his motion. See Reply in Support of Motion to Suppress Physical Evidence and Return Property ("Reply") [Dkt. No. 90]. The parties presented oral argument on the motion on January 17, 2023.

---

[1]   Formerly docket number 72-2.

For the following reasons, the Court concludes that the government must promptly return Mr. GossJankowski's electronic devices pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure and identify with specificity evidence it intends to use in its case-in-chief at trial pursuant to Rule 16(a)(1)(E) of Federal Rules of Criminal Procedure. The Court therefore will grant Mr. GossJankowski's motion in part and order the immediate return of his property.

I. BACKGROUND

The charges against Mr. GossJankowski relate to the events at the U.S. Capitol on January 6, 2021. Those events are summarized in the Court's opinion in United States v. Puma. See United States v. Puma, 596 F. Supp. 3d 90, 93-94 (D.D.C. 2022). The government alleges that Mr. GossJankowski was a member of the crowd that entered the grounds of the Capitol on January 6, 2021 and engaged in certain activities while there. See Superseding Indictment [Dkt. No. 41]. According to the statement of facts accompanying the criminal complaint in this case, a publicly available video depicts Mr. GossJankowski attempting to gain access to the U.S. Capitol building on January 6, 2021. See Statement of Facts [Dkt. No. 1-1] at 2. The video depicts Mr. GossJankowski handling and activating a Taser. See id. On January 14, 2021, Mr. GossJankowski contacted law enforcement regarding an FBI "Be on the Lookout" poster that included a picture of him, and officers of the Metropolitan Police Department interviewed him that same day. See id. at 4. Law enforcement officers interviewed Mr. GossJankowski again on January 17, 2021. See id. at 5. During these interviews, Mr. GossJankowski admitted to possessing a Taser on January 6, 2021 but denied using the Taser on a law enforcement officer. See id. at 4-5.

On January 18, 2021, the United States charged Mr. GossJankowski by criminal complaint with offenses arising out of his conduct in relation to the Capitol riot, see Complaint [Dkt. No. 1], and he was arrested at his residence. That same day, the government executed a warrant to search Mr. GossJankowski's residence and seized an iPhone 11 Pro Max cell phone from Mr. GossJankowski's person, which was subsequently returned to Mr. GossJankowski on January 20, 2021. See Mot. at 3. In addition, the government seized the following electronic devices from Mr. GossJankowski's residence: (1) Droid phone; (2) tablet; (3) silver Apple laptop with the serial number FVFZLQDZJ1WK ("MacBook Air"); (4) silver Apple laptop with the serial number CO2C80V6LVDN ("MacBook Pro"); (5) black Lenovo laptop; and (6) red iPhone XR. See id. at 2-3. These electronic devices have not been returned to Mr. GossJankowski. See id. at 3.

A grand jury returned an indictment on February 17, 2021 and a superseding indictment on November 10, 2021. The superseding indictment charges Mr. GossJankowski with five felony offenses and one misdemeanor offense: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D). See Superseding Indictment.

## II. LEGAL STANDARD

With respect to the government's obligation to return property, Rule 41(g) of the Federal Rules of Criminal Procedure provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . . The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

FED. R. CRIM. P. 41(g).[2] This rule "allows the owner of property the government has seized in a search to seek its return." In re Sealed Case, 716 F.3d 603, 605 (D.C. Cir. 2013). The D.C. Circuit has stated that a "party from whom materials are seized in the course of a criminal investigation retains a protectible property interest in the seized materials." United States v. Hubbard, 650 F.2d 293, 303 (D.C. Cir. 1980); see United States v. Brown, 185 F. Supp. 3d 79, 82 (D.D.C. 2016). Under Rule 41(g), property may be returned to a defendant regardless of whether the initial seizure of the property was lawful or not. See United States v. Hubbard, 650 F.2d at 303 ("Lawful seizure of the property, of itself, may affect the timing of the return, but never the owner's right to eventual return.").

"[I]t is fundamental to the integrity of the criminal justice process that property involved in the proceeding, against which no Government claim lies, be returned promptly to its rightful owner." United States v. Hubbard, 650 F.2d at 303 (citation omitted). Lawfully seized property "may be retained pending exhaustion of its utility in criminal prosecutions," and unlawfully seized property "must on motion be promptly returned unless it be contraband or statutorily forfeit, in which event it need not be returned at all." Id. at 303 n.26 (citations

---

[2] Formerly Rule 41(e) of the Federal Rules of Criminal Procedure.

omitted); see United States v. Brown, 185 F. Supp. 3d at 82. The district court has "both the jurisdiction and the duty to ensure the return" to a defendant of "property seized from him in [an] investigation but which is not alleged to be stolen, contraband, or otherwise forfeitable, and which is not needed, or is no longer needed, as evidence." United States v. Wilson, 540 F.2d 1100, 1101 (D.C. Cir. 1976); see United States v. Brown, 185 F. Supp. 3d at 82.

With respect to the government's discovery obligations, Rule 16 of the Federal Rules of Criminal Procedure provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

FED. R. CRIM. P. 16(a)(1)(E). This rule "is intended to prescribe the minimum amount of discovery to which the parties are entitled" and "is not intended to limit the judge's discretion to order broader discovery in appropriate cases." United States v. Anderson, 416 F. Supp. 2d 110, 113 n.2 (D.D.C. 2006) (quoting FED. R. CRIM. P. 16 advisory committee's note to 1974 amendment).

III. DISCUSSION

*A. Motion to Return Property*

Pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, Mr. GossJankowski has requested the return of the six electronic devices seized from his residence. He asserts that since seizing his electronic devices, the government has downloaded images from the devices and has produced to him "approximately 21 image files from the [r]ed iPhone XR" and "approximately 39 image files from the tablet," in addition to "approximately 29 image files and 5 video files from the iPhone 11 Pro Max cell phone" that was subsequently returned. Mot. at 15. As to the other devices seized, the government has not "identified or provided any evidence obtained from" the Droid phone, the MacBook Air, the MacBook Pro, or the Lenovo laptop. See id. at 15-16. According to Mr. GossJankowski, "the government identifies no evidence of the crimes charged found on any digital device, nor any evidence from any device that it plans to use at trial." Reply at 6; see also Transcript of Motions Hearing, January 17, 2023 ("Tr.") at 25:17-20 ("[T]he government has identified no evidence on any of the laptops, period. It has not said that it's going to use any evidence from his laptops at trial.").[3] Mr. GossJankowski argues that because none of his electronic devices are "needed as evidence," they should be returned. Reply at 6. In addition, Mr. GossJankowski – who is deaf and communicates in American Sign Language – asserts that he is "aggrieved by the deprivation of his MacBook laptops" because he needs them in order to communicate with his counsel and

---

[3] No official transcript of these proceedings has yet been prepared. References are to a rough draft of the transcript generated by the court reporter at the Court's request.

prepare for trial. Mot. at 18; see also Tr. at 26:17-20 ("We need Mr. GossJankowski to have laptops so that we can communicate with him via video. He has been communicating with us from his cell phone screen.").

The government has acknowledged that it has downloaded everything it needs from the devices and has provided images of what it has extracted from every seized device to the defense. See Gov't Opp. at 8 ("[T]he parties communicated and arranged return of digital copies of the information within the electronic devices seized following the January 18, 2021 warrant."); Tr. at 31:18-32:4 ("[T]he images of the disk drive of every device have been given to the defense."). It maintains, however, that it needs to keep Mr. GossJankowski's electronic devices in order to prove authenticity at trial and that maintaining possession of the devices is "[t]he only means by which the United States would be able to stave off a challenge of 'a genuine question [ ] raised about the original's authenticity.'" Gov't Opp. at 8 (quoting FED. R. EVID. 1003). The government asserts that because Mr. GossJankowski has refused to stipulate that the digital copies are authentic, it needs to retain the devices in case the defense raises any issues regarding authenticity. See id.

The Court agrees with Mr. GossJankowski that there is simply no reason for the government to maintain possession over Mr. GossJankowski's six electronic devices. The government has already made copies of the information on the devices that it may need for trial, and it appears that nothing on the remaining devices – three laptops and a Droid phone – is relevant. See Gov't Opp. at 8; Tr. at 27:3-24 ("[W]e're asking the [C]ourt to order the government first and foremost to give us back the devices on which it has identified nothing. And that would be the three laptops [and] . . . a Droid phone."). As for the government's concern about proving authenticity at trial, Mr. GossJankowski correctly points out that under

Rule 1003 of the Federal Rules of Evidence, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." FED. R. EVID. 1003. And if a "genuine question is raised" regarding the authenticity of any evidence from Mr. GossJankowski's electronic devices, the government may authenticate the evidence through means that do not require continuing possession of the devices. As Judge Rakoff has explained, "the Government can authenticate the contents of [a] phone" by means other than retaining the phone, including by "call[ing] witnesses who can testify that the extracted data was pulled from [the] phone." United States v. Dennis, Crim. No. 20-0623, 2022 WL 3580315, at *2 (S.D.N.Y. Aug. 19, 2022). Here, as in Dennis, the government "has not explained how presentation at trial" of the actual devices "will increase the credibility of its assertion that that the extracted data did indeed come from" those devices. Id.

For these reasons, and pursuant to Rule 41(g), the Court concludes that the government must promptly return to Mr. GossJankowski all six of his electronic devices. These devices are not alleged to be "stolen, contraband, or otherwise forfeitable," and Mr. GossJankowski needs to use some of these devices in order to communicate with his counsel. United States v. Wilson, 540 F.2d at 1101.

### B. Government's Disclosure Obligations Under Rule 16(a)(1)(E)

To reiterate, the government has to date produced to Mr. GossJankowski the following materials from his electronic devices: "approximately 21 image files from the [r]ed iPhone XR," "approximately 39 image files from the tablet," and "approximately 29 image files and 5 video files from the iPhone 11 Pro Max cell phone" that was subsequently returned. Mot. at 15. As the Court understands it, the government has also provided Mr. GossJankowski with digital copies of the contents of all the seized electronic devices. See Gov't Opp. at 8; Tr.

8

at 31:18-32:4 ("[T]he images of the disk drive of every device have been given to the defense."); see also id. at 37:7-13 ("In terms of the images that they're talking about of the devices, the government has given [the defense] a digital image of the entire laptop. . . . And they've done that for the three laptop computers."). The government represented that by doing so, it has complied fully with its obligations under both Brady v. Maryland, 373 U.S. 83 (1963), and Rule 16 of the Federal Rules of Criminal Procedure. See Tr. at 34:18-35:1.

The government has not identified any evidence it may use at trial from four of Mr. GossJankowski's electronic devices: the Droid phone, the MacBook Air laptop, the MacBook Pro laptop, and the Lenovo laptop. See Mot. at 15-16; see also Tr. at 25:17-20 ("[T]he government has identified no evidence on any of the laptops, period. It has not said that it's going to use any evidence from his laptops at trial."). Instead, the government has provided digital copies of "every single thing" on the laptop computers. Tr. at 37:7-11 ("[T]he government has given us a digital image of the entire laptop. . . . [T]hey disclosed in duplicate copy . . . every single thing on the laptop."). Mr. GossJankowski argues that providing digital copies of everything on the electronic devices without identifying the specific evidence the government intends to use at trial is the equivalent of "giving [him] five hundred bankers boxes and saying we might use something in there." Id. at 37:7-13.

This Court has previously considered the scope and manner of the government's disclosure obligations under Rule 16(a)(1)(E) and concluded that under this rule, it is not enough to dump a large volume of undifferentiated material on a defendant; rather, the government must identify with specificity the materials it intends to use in its case-in-chief at trial. In United States v. Anderson, the government produced thousands of items to the defendant by "allow[ing] defendant's counsel to inspect and copy all the items in the government's possession that [were]

9

material to the defense, that the government intend[ed] to use in its case-in-chief, or that were obtained from or belong[ed] to the defendant." United States v. Anderson, 416 F. Supp. 2d at 113. But in that case, as here, the government failed to identify with specificity which of the items it was producing under Rule 16(a)(1)(E)(ii) – "that is, those materials the government intends to use in its case-in-chief – as opposed to those it . . . produced under Rule 16(a)(1)(E)(i) [items material to preparing the defense] and (iii) [items obtained from or belonging to the defendant]." Id. The discovery production, in this form, placed a huge burden on the defendant, who persuasively argued that he was unable to prepare an adequate defense unless the government specified which of the "thousands of items produced" it planned to use at trial. Id.

        Given the volume of undifferentiated material produced to Mr. GossJankowski in this case and his limited resources, it is apparent that "requiring [his] counsel to peruse each page of the materials at issue here . . . would materially impede [his] counsel's ability to prepare an adequate defense." United States v. Anderson, 416 F. Supp. 2d at 114; see also FED. R. CRIM. P. 16 advisory committee's note to 1974 amendment (broad discovery and disclosures under Rule 16 "provid[e] the defendant with enough information to make an informed decision as to plea[] [and] minimize[e] the undesirable effect of surprise at the trial."). A party cannot satisfy its obligation under Rule 16 simply "by providing the [other party] with . . . thousands of pages of discovery" and "stating that the documents upon which she intends to rely are found somewhere therein." United States v. Hsia, Crim. No. 98-0057, 2000 WL 195067, at *1 (D.D.C. Jan. 21, 2000). It is in both Mr. GossJankowski's and the government's interest that Mr. GossJankowski be able to mount an adequate defense and receive a fair trial, and the government's identification of information will help to ensure that he can do so. Accordingly, pursuant to Rule 16(a)(1)(E), and in accordance with the Court's opinion in Anderson, the Court

10

will direct the government to identify with specificity from the materials that it has produced to Mr. GossJankowski those items it intends to offer in its case-in-chief at trial. See United States v. Anderson, 416 F. Supp. 2d at 115-16.

For the foregoing reasons, it is hereby ORDERED that Mr. GossJankowski's Motion to Suppress Physical Evidence and Return Property [Dkt. No. 108] is GRANTED in part; and it is

FURTHER ORDERED that on or before February 8, 2023, the government shall return to Mr. GossJankowski the (1) Droid phone; (2) tablet; (3) MacBook Air laptop; (4) MacBook Pro laptop; (5) Lenovo laptop; and (6) iPhone XR; and it is

FURTHER ORDERED that on or before February 15, 2023, the government shall identify with specificity from the materials that it has produced to Mr. GossJankowski those items it intends to offer in its case-in-chief at trial; and it is

FURTHER ORDERED that Mr. GossJankowski's request to suppress at trial information seized and imaged from his electronic devices is held in abeyance.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 2/1/23