UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-123-PLF |
| v. | : | |
| | : | |
| VITALI GOSSJANKOWSKI, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO EXCLUDE THE PROPOSED EXPERT TESTIMONY
OF MARK KROLL AND JUDY SHEPARD-KEGL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby replies to the Defendant's Opposition to the Government's Motion to Exclude the Proposed Testimony of Mark Kroll and Judy Shepard-Kegl.

ARGUMENT

I. Dr. Kroll's Testimony Should Be Excluded.

a. There Is No Dispute Over The Use Of A Trademarked Taser®

Defendant misconstrues the Government's position related to the distinction between "Taser®" and "Taser." *See* ECF 119 p 7. One of Dr. Kroll's conclusions is that the device held by GossJankowski during the events of January 6, 2021 is not a Taser® brand device. That is not a disputed fact. Although "Taser" colloquially describes nearly all "conducted electrical weapons," as evidenced by Defense citations to "#taserguy" as well as defense's own use of "Taser" to describe the device at hearings, ultimately there is no allegation that the defendant used a brand-name trademarked Taser.[1]

---

[1] To end any potential for confusion and to remove any argument about the use of the trademarked Taser® brand, the United States anticipates replacing the term "Taser" in the superseding indictment with a term that does not invoke associations with a branded device.

Presenting an opinion on what this device is *not* is no more relevant than opining on the many other things this device is not. Although it is the defendant's burden, as the proponent of the expert testimony, to demonstrate its admissibility, his opposition offers no authority to support admission of expert testimony about an uncontested fact. In the absence of any dispute, an expert's testimony is irrelevant and a waste of time. *See* F.R.E. 403. In other words, the issue at trial is not whether this device was a "Taser®," but instead whether it was dangerous.

Identifying that this device *is not* a Taser® is not relevant because it is not disputed. Dr. Kroll's testimony on this point should be excluded.

### b. The Purported Identification of the Defendant's Weapon Fails to Meet the *Daubert* Standard Because It Did Not Involve Scientific Knowledge

Defendant's second and third contentions relate to Dr. Kroll's inability to identify devices outside of his training or experience. *See* ECF 119 p 8-9. Much like judging a book by its cover, Dr. Kroll presents an opinion on the *internal* capabilities of devices readily (but not necessarily exclusively) available from Amazon.com, based on the *external* characteristics of devices. Although Dr. Kroll's expert report dives into his expertise relating to the effects of electricity on the human body, the Government's objection is more nuanced than that.

Dr. Kroll's education, training, and experience were presented to the Government as limited to electrical medical devices, and devices manufactured by the Taser® company—Axon. There was nothing *scientific* about Dr. Kroll identifying the device.

If the use of a Taser® was at issue, then Dr. Kroll's experience as a board member at Axon would be helpful to the jury in describe *which* Taser® device was used. But a *general knowledge* of conducted energy weapons outside of those produced by Axon has not been shown by the qualifications of Dr. Kroll. Instead, in each previous case that Dr. Kroll has testified, he opines on the electrical effects from an already *known source* of electricity.

The previous rulings from other District Courts cited by the defense to the specific tests performed by Dr. Kroll in prior cases fail to show that Dr. Kroll has expertise in identification of electrical weapons, which may explain the absence of expertise or scientific knowledge in his attempt to identify the defendant's weapon.  For example, in *Rowan v Sunflower Elec. Power Corp.*, No. 15-9227-JWL, 2017 WL 3593223, at *1 (D. Kan. Aug. 21, 2017), at issue was "an overhead power transmission line during a utility line construction project." In *Estate of Carlock v Williamson*, No. 08-3075-SEM, 2012 WL 75765, at *4 (C.D. Ill. Jan. 10, 2012), a case involving a Taser®, Dr. Kroll's testimony related to "his opinion regarding capillary refill as a factor in determining whether the cardiac arrest occurred.". And in *Silva v Chung*, No. 15-00436 HG-KJM, 2019 WL 2195201 (D. Haw. May 21, 2019), his testimony related to a known Taser® brand device's effects on a body.  None of these civil actions required identification of a weapon or the source of electricity.  Kroll's prior testimony involved the effects of electricity in a body, not the identification of *what* was the source of electricity.  Moreover, none of these cases support the use of expert testimony to compare items in photographs or explain how expertise is involved in such a comparison.

His testimony in prior cases His testimony related to identification of the device should be excluded, and the opinions the defense invokes provide no basis for the admission of a non-scientific identification in the guise of expertise.

In its opposition, the defense misconstrues the deficiencies that appear in Dr. Kroll's report, claiming without logic or support that expertise is necessary to identify a weapon.  *See* ECF 119 at 8. The government's objection is not "that any lay person can identify a weapon," *id*., (although that may be true), but that Dr. Kroll did no more than any layman in his attempt to make an identification. Dr. Kroll has no greater expertise than a jury in comparing pictures of a stun gun.

Because his attempted identification of a weapon does not differ from what a jury can do on its own, and because the attempted identification involved no identifiable expertise, Dr. Kroll's proffered testimony on identification involves no scientific or specialized knowledge and fails to meet the standard that *Daubert* requires. For that reason alone, Kroll's non-scientific testimony should not be presented under the guise of expertise and should be excluded.

Additionally, the defense has not responded to the government's argument that Kroll's identification is speculative, because Kroll has not established, and apparently cannot establish, the absence of other devices with the same housing or appearance. In other words, his report fails to establish the representative nature of the small number of weapons he sampled, and the defense offers no response to this flaw which reduces his conclusion to mere speculation. For this reason as well, the Court should not admit his non-expert testimony regarding identification.

### c. Dr. Kroll Cannot Testify to a Legal Conclusion

In its Opposition to Government's Motion to Exclude Defense Experts and for a *Daubert* Hearing, the defense outlines for the first time that Dr. Kroll will "testify that the 'weapon' that Mr. GossJankowski is alleged to have carried and used is not deadly or dangerous *when used in its intended manner*." ECF 119 p. 10 (emphasis added). Dr. Kroll's conclusion, based on his report, was not limited in such a manner. This Court should order a *Daubert* hearing and require the defense to pin down specifically *what* Dr. Kroll's testimony will be so the Court can exercise its role as gate-keeper in an informed way.

Perhaps more importantly, even without the its-intended-manner limitation, Dr. Kroll is unable to provide the jury with a legal conclusion about whether this device *is* a deadly or dangerous weapon. As this Court correctly reasoned in *United States v Sutton*, ___F.Supp.3d___, 2022 WL 16960338 (D.D.C. 2022), "an expert's legal opinions are inadmissible because these

4

opinions 'cannot properly assist the trier of fact' in 'understand[ing] the evidence or . . . determine[ing] a fact in issue." *Sutton*, ___ F.Supp.3d at ___, *9 (quoting *Burkhart v Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997).

Without or without the new limitation about the manner of the stun gun's use, the defendant's opposition confirms that Dr. Kroll will testify to a definition of a deadly or dangerous weapon and opine on whether the weapon in this case meets that definition.  *See* ECF 112-2 at 7 (items 6 and 7); ECF 119 at 10 (stating that Kroll will testify that the weapon the defendant carried is not deadly or dangerous when used in its intended manner).  Whether a weapon is deadly or dangerous is a matter of law.  *See, e.g., United States v. Wallace*, 800 F.2d 1509, 1513 (9th Cir. 1986)(finding for various reasons that as a matter of law, a stun gun was a dangerous weapon, including because display of the stun gun could provoke a violent response) (quoting *McLauglin v. United States*, 476 U.S. 16 (1986)).  Accordingly, this Court should preclude testimony defining or premised on Kroll's own definition of a deadly or dangerous weapon, and should further preclude expert testimony stating whether or not any particular weapon is deadly or dangerous, because such pronouncements concern matters of law which are not the proper subjects of expert testimony.

**II.     Dr. Judy Shepard-Kegl's Testimony is Not Relevant**

GossJankowski's undisputed inability to speak is not relevant.. An individual can commit an assault or any of the other offenses charged here in silence.  Further, the defendant's knowledge of what was going on around him is not limited to what he was told.

Quite simply, whether GossJankowski could speak English, or lipread others who are speaking English at the Capitol (both rioters or officers) does not lead to the conclusion that he is unable to communicate with others at the Capitol. At trial, the Government will likely present 'pats

5

on the shoulder,' facial expressions, flashing lights, various hand movements, and other forms on non-verbal communication. But what will not be presented is GossJankowski's communication in spoken English.

Dr. Shepard-Kegl's conclusion is not that GossJankowski could not communicate at all. In fact, GossJankowski communicates with others daily. Dr. Shepard-Kegl's opinion relates to whether GossJankowski can communicate *to a hearing individual through spoken English*. That point is not going to be at issue.

Because Dr. Judy Shepard-Kegl's opinion is not going to be relevant to the issues presented at trial, this Court should exclude her testimony.

### III. A *Daubert* Hearing is Necessary.

Because the challenge to Dr. Judy Shepard-Kegl's testimony is to the relevance of her testimony, the Government agrees that a decision on her testimony could occur pre-trial without need of her testimony. However, given the scientific deficiencies of Dr. Mark Kroll's methodology, and the ambiguity to what his opinion *actually is*, the Government requests that an in-person *Daubert* hearing be scheduled.

## CONCLUSION

This Court should exclude the testimony of Defendant's experts; or in the alternative, provide an evidentiary hearing to challenge the bases of these opinions more fully.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
MI Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov