UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   No. 21-cr-123 (PLF) |
| | ) |
| VITALI GOSSJANKOWSKI, | ) |
| | ) |
| **Defendant** | ) |
| | ) |

## DEFENSE SURREPLY REGARDING GOVERNMENT'S MOTION TO EXCLUDE DEFENSE EXPERTS AND FOR A *DAUBERT* HEARING

Mr. Vitali GossJankowski, through counsel, hereby submits this brief surreply in response to arguments raised in the government's reply brief (ECF 125) regarding its Motion to Exclude Defense Experts and for a *Daubert* Hearing (ECF 112). The Court should deny the government's motion in full on the papers. No *Daubert* hearing is necessary or warranted.

Three of the six counts in this case charge Mr. GossJankwoski with possession and/or use of a "deadly or dangerous weapon." Some objects qualify as "deadly or dangerous weapons" and some do not. Therefore, whether the electrical device possessed by Mr. GossJankowski was actually capable of causing death or serious bodily injury will be a significant issue at trial. The government appears content to simply argue to the jury that the electrical device was a "dangerous or deadly weapon" based upon the visible electrical arc and loud noise it produced. Jurors with no expertise in the field of electrical weapons may well assume that this device would be capable of causing death or serious bodily injury because it produces an electrical current and makes a frightening noise. Dr. Kroll's testing shows that this assumption is entirely baseless and that the device produced a charge that was not even as strong as a medical muscle stimulator. The government's objections to Dr. Kroll's testimony amount to an effort to keep

1

from the jury key evidence about the actual characteristics of a device that is the focus of three of the six charges in this case.

I.   **Testimony Regarding Use of a Taser**

To be clear, the defense has not elected to call Dr. Kroll for the sole purpose of explaining to the jury that the object held by Mr. GossJankowski was not a Taser. However, the indictment repeatedly alleges that Mr. GossJankowski possessed and used a Taser, witnesses will likely describe the object as a Taser, and jurors may assume that the object possessed by Mr. GossJankowski was a Taser. Many jurors will likely be familiar with Tasers and their touted ability to incapacitate a person. Accordingly, it is important for the jury to understand as an initial matter that the object was not in fact a Taser and did not have the same characteristics or power as a Taser. This will be established quickly and will not be a central focus of Dr. Kroll's testimony.

II.   **Identification of the Electrical Device Possessed by Mr. GossJankowski**

The main focus of Dr. Kroll's testimony will be the results of his testing of devices he determined to be the same as the device possessed by Mr. GossJankowski on January 6. Dr. Kroll located the devices by performing internet research and viewing all objects available for sale to the general public that matched the appearance of the device possessed by Mr. GossJankowski on January 6. Dr. Kroll possesses significant expertise in the field of electrical weapons, so he is more familiar with the types of electrical weapons and devices available for sale than a layperson would be. His education, training, and experience is not "limited to electrical medical devices and devices manufactured by [Axon,]" nor was it "presented to the Government" as limited to such. ECF 125 at 2. His curriculum vitae speaks for itself on this point. Nevertheless, at an absolute minimum, Dr. Kroll can testify about his identification of the

device as a layperson pursuant to Rule 701 because his opinion regarding identifying the device is rationally based upon his perception and helpful to determining a fact in issue. Fed. R. Evid. 701.

Moreover, the government will be free to cross examine Dr. Kroll about his identification of the device and challenge his conclusions on that issue. If the government has identified a different electrical device that it believes is a more likely match to the one Mr. GossJankowski possessed, it can affirmatively present that evidence in its case-in-chief or use that information to cross Dr. Kroll. It will also be free to argue to the jury that Dr. Kroll cannot be certain that the device possessed by Mr. GossJankowski did not have the same internal capabilities as the devices he identified. All of this goes to the weight of his testimony. But the government's objection is not a basis to exclude Dr. Kroll's explanation as to how he determined what the device possessed by Mr. GossJankowski was.

### III. Dr. Kroll Will Testify About Whether the Device is Capable of Producing Death or Serious Bodily Injury

The government objects to Dr. Kroll's expected testimony to the extent he provides a legal conclusion that the electrical device was not a "deadly or dangerous weapon." The jury will be instructed on what qualifies as a "deadly or dangerous weapon," and that instruction will require that the device be capable of causing death or serious bodily injury. *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002) (citing federal jury instructions). The government for the first time in its reply brief appears to argue that whether a weapon qualifies as "deadly or dangerous" is a matter of law. This is clearly incorrect. It is also inconsistent with the position the government has taken in other January 6 cases. Several January 6 defendants have been charged with offenses involving deadly or dangerous weapons and the defense is not aware of a single case in which the Court has been asked to determine whether the charged weapon

3

qualified as a deadly or dangerous weapon as a matter of law.  The issue has properly been left to the jury.  *See, e.g., United States v. Webster*, No. 21-cr-208 (APM); *United States v. McCaughey*, No. 21-cr-40 (TNM).  In support of its position the government cites a single case from the Ninth Circuit, *United States v. Wallace*, 800 F.2d 1509, 1513 (9th Cir. 1986).  In that case, the Ninth Circuit upheld, in two paragraphs, a finding by a trial court that the stun gun possessed by the defendant qualified as a dangerous weapon under a different statute, 49 U.S.C. § 1472(l).  The case is entirely distinguishable.  First, the brief discussion of the issue makes clear that evidence was presented at trial about the capacity of the stun gun at issue in that case, including that it actually qualified as a stun gun.  As set forth in the defense's opposition brief, Dr. Kroll has concluded based upon his testing that the device possessed by Mr. GossJankowski was far less powerful than a stun gun and does not meet standards to qualify as a stun gun.  Second, the court's analysis of the issue hinged to a significant extent on the fact that the statute at issue involved bringing weapons onto airplanes and that a stun gun's capacity to incapacitate airplane personnel posed a unique danger in that context.

     Whether the device possessed by Mr. GossJankowski in this case qualified as a deadly or dangerous weapon is an issue of fact for the jury to decide. While a layperson is qualified to determine whether a firearm or knife is capable of causing death or serious bodily injury, electrical devices are entirely different.  Whether an electrical device can cause death or serious bodily injury depends upon the charge it emits.  Dr. Kroll will testify based upon his testing of the devices and his expertise in the field that the charge emitted from the devices he tested—which look identical to the device Mr. GossJankowski was holding—was insufficient to cause serious bodily injury or death.  This is not an impermissible legal conclusion.  It is a conclusion that fits squarely within his area of expertise and is based upon his scientific testing of electrical

devices, his experience with electrical weapons generally, and accepted standards in the field of electrical devices. The government has been provided a detailed report documenting Dr. Kroll's testing, the applicable standards, and the bases for his conclusions. The government has presented no argument that his testing of these devices or opinions based upon that testing are unreliable or fail to meet the requirements of Rule 702. There is no need for a *Daubert* hearing to clarify this straightforward issue.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Ubong Akpan
Celia Goetzl
Edward Smock
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500