UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VITALI GOSSJANKOWSKI | No. 1:21-cr-123 (PLF) |

## **MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in response to the Court's order directing the parties to file memoranda listing and discussing the meaning of "deadly or dangerous weapon" in 18 U.S.C. §§ 111(b) and 1752 and the meaning of "uses" in 18 U.S.C. § 111(b).

**I.      Meaning of "Deadly or Dangerous Weapon" and "Uses" in 18 U.S.C. § 111(b)**

Section 111(a)(1) makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with any" protected federal officer, which includes U.S. Capitol Police officers.  Section 111(b), in turn, imposes an "[e]nhanced penalty" when the defendant—"in the commission of any acts described in subsection (a)" (that is, in the commission of  "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfere[ing] with" the officer-victim)—"uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury."  18 U.S.C. § 111(b).  As relevant here, then, the question is what the government must show to prove that GossJankowski, in the course of forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with Capitol Police officer M.M., "use[d] a deadly or dangerous weapon."

Section 111 does not expressly define the phrase "deadly or dangerous weapon" or the verb "uses," which introduces that phrase.  But courts interpreting Section 111(b) have identified two

1

distinct and independently sufficient paths to satisfying the use-of-a-deadly-or-dangerous-weapon requirement. *See, e.g.*, *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002); *United States v. Anchrum*, 590 F.3d 795, 802 (9th Cir. 2009). *First*, the element is satisfied if the government proves that the defendant "used," in any way, a weapon that is "inherently dangerous." *Anchrum*, 590 F.3d at 802; *accord Arrington*, 309 F.3d at 45. "Inherently dangerous weapons, or 'dangerous weapons per se,' are obviously dangerous objects such as guns, knives, and the like." *United States v. Smith*, 561 F.3d 934, 939 (9th Cir. 2009) (interpreting 18 U.S.C. § 113; holding extended to 18 U.S.C. § 111(b) in *Anchrum*); *see also Arrington*, 309 F.3d at 45 (term "deadly or dangerous weapon" incudes "inherently deadly" weapons, "like a gun"); *cf. United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) (per curiam) ("[T]he term 'dangerous weapon'" includes "such obviously dangerous weapons as guns, knives, and the like").

*Second*, courts have commonly held that "a deadly or dangerous weapon includes 'any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person.'" *E.g.*, *United States v. Sanchez*, 914 F.2d 1355, 1358-1359 (9th Cir. 1990) (citing *United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987) (per curiam) (automobile); *United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir. 1988) (mouth and teeth); *United States v. Bey*, 667 F.2d 7, 11 (5th Cir. 1982) (mop handle, albeit not under the circumstances); *United States v. Loman*, 551 F.2d 164, 169 (7th Cir.) (walking stick)); *Thornton v. United States*, 268 F.2d 583 (1959) (wine bottle).[1] Indeed, in *Arrington*, the D.C. Circuit cited with approval the government's

---

[1] Although Section 111(b) does not define the term "great bodily harm," Section 113 of Title 18, which criminalizes assaultive conduct within the maritime and territorial jurisdiction of the United States, cross-references the definition of "serious bodily injury" in 18 U.S.C. § 1365. *See* 18 U.S.C. § 113(b)(2). Section 1365 defines "serious bodily injury" as "bodily injury which involves … (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or

view that an object that is not inherently dangerous qualifies as a "deadly or dangerous weapon" so long as it is "capable of causing serious bodily injury or death to another person and the defendant … use[s] it in that manner." 309 F.3d at 45; *see also United States v. Anchrum*, 590 F.3d 795, 802 (9th Cir. 2009) ("This definition implicitly encompasses both inherently dangerous weapons—such as guns or knives—and seemingly innocuous objects—such as belts and shoes used in a dangerous manner"). In other words, under this second prong, "the object's latent capability … coupled with the manner of its use, is determinative." *United States v. Loman*, 551 F.2d 164, 169 (7th Cir. 1977) (citation omitted); *United States v. Bullock*, 970 F.3d 210, 215 (3d Cir. 2020); *see also United States v. Klein*, 533 F.Supp.3d 1, 10-11 (D.D.C. 2021) (Bates, J.) ("[A] 'deadly or dangerous weapon' means 'any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person.'" (citing *Bullock*, 970 F.3d at 215)); *cf. United States v. Chansely*, 525 F. Supp. 3d 151, 162 (D.D.C. 2021) (Lamberth, J.) (explaining, in a case arising under the Bail Reform Act, that "courts have consistently defined 'dangerous weapon' as an object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict great bodily harm").

This two-prong understanding of Section 111(b)'s requirement is, of course, faithful to the text of Section 111(b). When an assailant employs an inherently dangerous weapon in *any* manner in the course of committing his offense, he has plainly "used [that] deadly or dangerous weapon." *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/use (defining "use" as "to put into action or service"; "avail oneself of"; or "employ"). And the same is true when, in the course of committing the offense proscribed in Section 111(a), the defendant deploys

---

mental faculty." 18 U.S.C. § 1365(h)(3). Thus, any object that is "capable" of creating a substantial risk of death or causing any of the injuries identified in (B) through (D) above, is a deadly or dangerous weapon.

3

an otherwise innocuous object that is capable of inflicting great bodily harm in a manner that can, in fact, cause such harm.

This understanding of Section 111(b) is also consistent with the Sentencing Commission's approach in the Guideline governing Section 111 offenses. Specifically, Guidelines § 2A2.2(b)(2) requires a four-level enhancement if "a dangerous weapon" is "used" in committing the offense. The implementing commentary, in turn, defines "dangerous weapon" to include "any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." U.S.S.G. § 2A2.2 cmt. n.1; *see also* U.S.S.G. § 1B1.1 cmt. n.1. Applying the Guidelines' nearly identical framework, the Tenth Circuit has expressly affirmed a district court's finding that "a Taser—even in drive-stun mode—is a dangerous weapon."[2] *United States v. Quiver*, 805 F.3d 1269, 1272 (10th Cir. 2015) (finding that, "[i]n either drive-stun or probe mode, a Taser is 'capable of inflicting … serious bodily injury,' which is defined [under the Guidelines] as 'injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation.'" (quoting U.S.S.G. § 1B1.1 cmt. n.1 (D), (L)).

---

[2] As the *Quiver* court explained, "Tasers can operate in either probe mode or drive-stun mode. In probe mode, a cartridge attached to the front propels two metal probes, which are attached to the Taser by wires. The wires deliver an electrical current to incapacitate the person targeted. In drive-stun mode, the Taser emits the same charge as in probe mode, but the electrical current can be delivered only by physical contact." 805 F.3d at 1271 n.1. In *Quiver*, it was undisputed that the prong-mode cartridge of the Taser had been removed prior to the assault, meaning that it could function only in drive-stun mode (i.e., as a stun gun).

4

## II.     Meaning of "Deadly or Dangerous Weapon" in 18 U.S.C. § 1752(b)(1)

Section 1752(b) imposes enhanced penalties for defendants who (i) commit one of the activities prohibited under 18 U.S.C. § 1752(a) and (ii) "during and in relation to the offense, use[] or carr[y] a deadly or dangerous weapon or firearm."  18 U.S.C. § 1752(b)(1)(A).

Like Section 111, Section 1752 does not provide a statutory definition of the phrase "deadly or dangerous weapon."  To our knowledge, moreover, no decision in this district or by any other court has attempted to define the meets and bounds of the phrase under 18 U.S.C. § 1752.  In one case (*United States v. Robertson*, 2022 WL 2438546 (D.D.C. July 5, 2022)), Judge Cooper rejected a January 6 defendant's claim that the following jury instruction was too broad:

> In order for you to find that the stick is a deadly or dangerous weapon, you must find that (1) it is capable of causing serious bodily injury, and (2) the defendant carried it with the intent to use it in a manner capable of causing serious injury. The defendant need not have actually used the stick in that manner.

*Id.* at *6.  The defendant's claim, however, did not require the court to explore the outer contours of the statutory phrase.  In another case (which also arose out of the events of January 6), Judge Lamberth found that a six-foot pole with a metal spearhead fixed to the top was "undoubtedly" a dangerous weapon because, "[l]ike a knife, it is inherently dangerous.  Both objects have a sharpened point designed to inflict harm by piercing or puncturing."  *United States v. Chansley*, 525 F. Supp. 3d 151, 162 (D.D.C. 2021).  *Chansley*, however, was interpreting the definition of "dangerous weapon" under the Bail Reform Act, not Section 1752.  *Id.* at 161.

The upshot of the statutory text and *Robertson* is that the "deadly or dangerous weapon" element of Section 1752 is similar in scope to—but somewhat broader than—its counterpart under Section 111(b).  First, as under Section 111(b), Section 1752's deadly-or-dangerous-weapon element is satisfied if the weapon is "inherently dangerous."  Second, as under Section 111(b), the

5

element is satisfied if the object is capable of causing serious bodily injury *and* the defendant uses it in that manner.  Third, differently from Section 111(b), the element is also satisfied if "(1) [the object] is capable of causing serious bodily injury, and (2) the defendant carried it with the intent to use it in a manner capable of causing serious injury," regardless of whether the weapon was actually used.  *Robertson*, 2022 WL 2438546, at *6.  This last path properly gives effect to a meaningful textual distinction between Section 111(b) and Section 1752(b)(1)(A): while the former requires proof of "use" of the weapon, the latter is satisfied so long as the defendant "carries" the weapon "during and in relation to the offense."  *Id.*

> III.   Implications of Judge Moss's Opinion in *United States v. Cua*

In *United States v. Cua*, No. 21-cr-107, 2023 WL 2162719 (D.D.C. Feb. 22, 2023), Judge Moss carefully considered—and correctly rejected—a January 6 defendant's argument that "an 'assault'" is an essential element of every § 111(a) charge." *Id.* at *1.  After examining the statute's text, structure, and legislative history, Judge Moss concluded that Section 111 means what it says: Section 111(a) enumerates six grounds for liability—"assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing]"—and a jury can base a guilty verdict, in appropriate cases, on any one of those grounds, regardless of whether it finds that the defendant's conduct satisfies the first of those verbs (*i.e.*, "assault[]").  *Id.* at *4.  Specifically, Judge Moss found that proof of an assault is *not* required for (i) the deadly-or-dangerous-weapon enhanced offense in Section 111(b); or (ii) the intent-to-commit-another-felony version of Section 111(a).  *Id.*  For those violations of Section 111, the statute's reference to "such acts" merely incorporates the six independently sufficient grounds for liability set forth in Section 111(a)(1): "assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], *or* interfer[ing]." (Emphasis added).  On the other hand, though not necessary to the *Cua* court's denial of the defendant's motion to dismiss,

Judge Moss observed that proof of a common-law assault was required for (i) the misdemeanor version of Section 111(a) (which references "simple assault"); and (ii) the physical-contact version of Section 111(a) (which references the "victim of that assault"). *Id.* at *5.

Judge Moss's construction of Section 111, if adopted, would be significant in this case for two reasons. First, and foremost, *Cua*'s core holding puts to rest any misconception that, to find GossJankowski guilty of violating Section 111, the jury must first find that the defendant committed a common-law assault. GossJankowski is charged with violating Section 111(b), as well as both felony versions of Section 111(a). As noted, in its core holding, *Cua* held that proof of an actual assault is not required to establish guilt under Section 111(b) or under the intent-to-commit-another-felony prong of Section 111(a). *Cua*'s core holding therefore confirms the point made by the government at the February 24 pretrial conference: GossJankowski may be found guilty of violating Section 111(b) and/or Section 111(a) (the intent-to-commit-another-felony version) based on a finding that he "resist[ed], oppos[ed], imped[ed], intimidat[ed], *or* interfer[ed] with" Capitol Police officer M.M.—regardless of whether GossJankowski committed an assault in the common-law understanding of the term. 18 U.S.C. § 111(a)(1) (emphasis added).

Second, *Cua* observed in passing that proof of common-law "assault" *is* required to establish the physical-contact version of Section 111(a). 2023 WL 2162719, at *4. Because GossJankowski is also charged under this theory of Section 111(a), *Cua*'s observation, if adopted, could potentially affect the way in which the jury should be instructed with respect to the physical-contact prong of Section 111(a). In this limited respect, however, *Cua* appears to overread Congress's use of the phrase "victim of that assault" in the physical-contact prong of Section 111(a). In the government's view, that phrase is best construed not as implicitly adding an "assault" element to the physical-contact prong of the offense, but rather as a shorthand reference

7

to any of the six prohibited verbs in Section 111(a)(1). Under the government's interpretation, no amendment to the government's proposed jury instructions would be needed or warranted.

February 24, 2023                          Respectfully submitted,

                                                 */s/ Francesco Valentini*
FRANCESCO VALENTINI
D.C. Bar No. 986769
Trial Attorney
U.S. Dept. of Justice, Criminal Division
Detailed to the D.C. U.S. Attorney's Office
601 D Street NW
Washington, D.C. 20530
(202) 598-2337
francesco.valentini@usdoj.gov

*/s/ Karen E. Rochlin*
KAREN E. ROCHLIN
DC Bar No. 394447
Assistant United States Attorney
Detailed to the D.C. U.S. Attorney's Office
9 Northeast 4th Street
Miami, Florida 33132
(305) 961-9234
karen.rochlin@usdoj.gov

*/s/ Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
MI Bar No. P79246
601 D Street NW
Washington, D.C. 20530
(202) 252-1702
adam.dreher@usa.usdoj.gov