1           IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA,
                                      Criminal Action
4              Plaintiff,            No. 1:21-cr-00123

5          vs.
                                      Washington, D.C.
6    VITALI GOSSJANKOWSKI,           January 17, 2023
                                      10:00 a.m.
7              Defendant.
     ----------------------------------------------------------

8

9           TRANSCRIPT OF THE EVIDENTIARY HEARING
          BEFORE THE HONORABLE PAUL L. FRIEDMAN
10             UNITED STATES DISTRICT JUDGE

11

12

13   **APPEARANCES**:

14   **For the Plaintiff:**     **BARRY K. DISNEY, ESQUIRE**
                              DOJ-CRM
15                            1331 F Street, NW
                              Washington, D.C. 20006
16
                              **ADAM MICHAEL DREHER, ESQUIRE**
17                            DOJ-USAO
                              Capitol Siege
18                            601 D Street, NW
                              Washington, D.C. 20530
19

20   **For the Defendant:**     **UBONG E. AKPAN, ESQUIRE**
                              OFFICE OF THE FEDERAL PUBLIC DEFENDER
21                            District of Columbia
                              625 Indiana Avenue, NW, Suite 550
22                            Washington, D.C. 20004

23

24

25

1   (APPEARANCES CONTINUED:)

2

3                              **EDWARD SMOCK, ESQUIRE**
                               OFFICE OF THE FEDERAL PUBLIC DEFENDER
4                              District of Columbia
                               625 Indiana Avenue, NW, Suite 550
5                              Washington, D.C. 20004

6

7                              **CELIA GOETZL, ESQUIRE**
                               OFFICE OF THE FEDERAL PUBLIC DEFENDER
8                              District of Columbia
                               625 Indiana Avenue, NW, Suite 550
9                              Washington, D.C. 20004
                               (Via Zoom)
10

11
    **Court Reporter:**            **STACY HEAVENRIDGE, RPR**
12                             Official Court Reporter
                               U.S. District & Bankruptcy Courts
13                             333 Constitution Avenue, NW
                               Room 4700-A
14                             Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25

## P R O C E E D I N G S

1                            

2   The following proceeding began at 11:05 a.m.:

3         DEPUTY CLERK:  This is Criminal Action 21:123 United

4   States versus Vitali Gossjankowski.  For the United States, I

5   have Barry Disney and Adam Dreher.  For the defendant, I have

6   Ubong Akpan, Edward Smock, and Celia Goetzl.

7         Our interpreters, again, are Sara Blattberg and Shannon

8   Shakely.

9         All parties are present.

10        THE COURT:  Ms. Goetzl looks healthy.  I'm glad to

11   hear that.

12         So we were here on January 11th for most of the day and

13   heard testimony from a number of witnesses with respect to the

14   motion to suppress statements.  As I understand what we're

15   going to do today, and you-all can correct me if I'm wrong or

16   if I've forgotten anything, is we're going to have argument in

17   whatever order you want to do it, and the motion to suppress

18   statements, argument on the motion to possibly -- a brief

19   argument on the motion for change of venue, and a motion with

20   respect to physical property seized pursuant to a search

21   warrant, particularly various electronic devices seized from

22   Mr. Gossjankowski's home.

23         So that's what I understand we are going to do, and

24   correct me if I'm wrong.  But if I'm right, what order do we

25   want to proceed in?

1          MS. AKPAN:  Good morning, Your Honor.  Because the

2     venue motion was pretty short, we thought we'd start with that.

3     And I believe my colleague, Ms. Goetzl, will address the Court

4     for motion for venue.

5          THE COURT:  Okay.  Thank you.

6          MS. GOETZL:  Good morning, Your Honor.

7          THE COURT:  Good morning, Ms. Goetzl.

8          MS. GOETZL:  Just a few brief words on the venue

9     motion to add to our pleadings.  I just want to point out that

10    in our motion, which is docketed -- our amended motion,

11    docketed ECF 79 on Page 2, we added a footnote that says

12    they're not relevant to the instant motion.

13         The Supreme Court identified a fourth factor for

14    consideration upon appellate review following trial in a

15    contested venue, and that's whether the jury convicted the

16    defendant on all counts or only on a subset of counts.

17         We just want to note for the record that every jury

18    trial in this district has resulted in convictions on all

19    counts, except for my understanding is a hung jury on a

20    possible one or two counts.  No jury has acquitted on any

21    counts.  Any acquittals have come only from bench trials on

22    certain counts.

23         And thus far, as of January 12th, "The Washington Post"

24    article, from what I understand, there had been 20 trials in

25    front of a jury.  So the Government is 20 and 0 right now.  And

1    that just reinforces our argument and conviction that

2    Mr. Gossjankowski cannot have a fair and impartial jury.

3         I'll also just note that the pool of D.C. jurors in

4    relation to the number of defendants charged -- and from what I

5    understand, there are more defendants being charged -- just

6    makes the pool of D.C. jurors could even be considered smaller

7    and smaller.

8         And as Your Honor knows, there are a number of trials

9    scheduled for this year.  There have been 20 jury trials.  The

10   D.C. jury pool is simply too small.  So this case is just --

11   this case, in relation to the other 900 cases that have been

12   brought in this district, is just different from other cases

13   where venue has been challenged.

14        We would also just note that because of

15   Mr. Gossjankowski's connection to Gallaudet, Gallaudet also has

16   a large portion of jurors who may be tainted and unable to be

17   impartial.  And that is also a large portion of the population

18   of the D.C. jury pool.  And that's all we wanted to say about

19   the venue motion, unless the Court has any questions for us.

20        THE COURT:  Do you know whether any -- in any of the

21   cases where the juries have been selected, have people come up

22   in the jury pool who've already sat on another January 6th

23   case, and has that been a ground for either striking for cause

24   or striking for peremptorily, to your knowledge?

25        MS. GOETZL:  I just don't know the answer to that, I'm

1   sorry.  I can try to find out.

2          THE COURT:  The reason I ask that, and I'll ask the

3   Government too, is, just off the top of my head without

4   rendering an opinion, if we always tell jurors they have to

5   limit their knowledge to the evidence they hear in this

6   particular trial, in this case, wouldn't anybody who sat on

7   another January 6th case have to say, I can't -- they might be

8   able to say I can do that, but they would have to say, I know a

9   lot about January 6th based on what I heard in another trial.

10         MS. GOETZL:  Your Honor, we would respectfully submit

11  in that situation that even if the juror said they could do

12  that, that there's really no possible way that a juror can

13  un-hear an entire trial and not apply knowledge, especially --

14  and not apply facts from or information gleaned from a prior

15  trial, especially because the -- you know, the videos that the

16  Government shows and the evidence is so inflammatory, and there

17  are so many participants, that I think it would be very easy

18  for any individual to get confused as to where the information

19  that they have heard and seen actually came from, which is

20  another problem with the media.

21         It goes to the media prong of our argument where the

22  media in D.C. has just been so constant, and these cases have

23  been so hyper-violent, the coverage in the media has been so

24  incessant, that it would be impossible for any juror to

25  separate what they've seen in the media and actually judge the

1   facts of this individual case.

2          THE COURT:  Based on that experience in lots of cases,

3   you'd be surprised at how many people don't watch the news or

4   read the news, and -- anyway.  Or read a sufficiently broad

5   range of news that you might not succeed.

6          I get the argument, but if we got to individual voir

7   dire, you might find that certain people would be qualified who

8   on the surface you don't think would be.  But in any event.

9          MS. GOETZL:  In any event, we would submit, as Your

10  Honor suggested and indicated, that someone who has sat on a

11  previous jury could not be impartial as to this particular

12  defendant if called in this case, and that the juror pool is

13  just simply too small in relation to the proportion of

14  defendants being tried in this district.

15         THE COURT:  Thank you.

16         MS. GOETZL:  Thank you.

17         THE COURT:  Mr. Disney, if you're going to speak from

18  the microphone, make sure the green light is on.

19         MR. DISNEY:  Thank you, Your Honor.  Barry Disney for

20  the Government.

21         To answer your question, Your Honor, I don't know of

22  any case that a juror has repeated as a potential juror in a

23  case.  If we're talking about 20 jury trials, that's, what, 240

24  jurors that have served.  That seems like a relatively small

25  number for this jurisdiction.

1           The defense has not cited any case that I know of

2    where -- or our venue related to Mr. Gossjankowski, and

3    certainly there hasn't been the drumbeat of press leading up to

4    the trial that is present in a lot of cases.  I am confident

5    that in this case, as in all the other January 6th cases that

6    have gone to trial, that we'll have no problem picking a jury,

7    and I guess the jury selection will tell, because you always

8    have the option of saying, no, we're going to have to change

9    venue.

10          But the courts have made it clear that the venue

11   selection process or the voir dire process is the best route to

12   take, rather than changing venue.

13          Unless you have any other questions, Judge.

14           THE COURT:  I don't have any other question on that.

15   I do have a question which we don't have to discuss today,

16   maybe we can wait until after I rule on this.  But the defense

17   also raised a question of -- if I were to deny the motion, a

18   jury questionnaire as a possibility and a larger-than-normal

19   voir dire panel.

20          Have counsel on both sides discussed that at all or

21   does the Government have a view on that yet?

22           MR. DISNEY:  On jury questionnaires?

23           THE COURT:  On whether there should be a jury

24   questionnaire, a written questionnaire, in advance, and I don't

25   know whether -- maybe Ms. Goetzl knows -- whether that's

1    happened in any of the other 26 cases.  And if -- and more, a

2    larger-than-normal panel to be brought in in this case.  If we

3    would normally have --

4        Ms. Johnson, what we would normally have for a criminal

5    case for 12 jurors and two alternates?  What would our normal

6    pool be?  Tanya, what would our normal group be that we would

7    bring into the courtroom for a normal criminal trial with 12

8    jurors and two alternates?  How many people would we ask the

9    jury office to send us in a normal criminal trial?

10       DEPUTY CLERK:  Fifty.

11       THE COURT:  Fifty, which accounts for 10 peremptories

12   from the defense and 6 from the Government and for cause.  So

13   the question is whether we would need more than 50, and if so,

14   about how many?  And a separate question, whether we want a

15   written jury questionnaire in advance of bringing people into

16   the courtroom.

17       And my question is:  Do you have a view on that or have

18   counsel for both sides had that discussion yet?

19       MR. DISNEY:  Your Honor, in my other job I deal with

20   jury questionnaires all the time.  I just don't see the need

21   for it in this particular case.  Also, if we're sticking with

22   the trial date we have now, I really don't know that we could

23   get those out in time.

24       THE COURT:  Good point.

25       MR. DISNEY:  The Court -- if the Court is bringing in

```
1    a larger-than-normal panel, certainly would not be difficult to
2    do.  So that might be a consideration.  Although, I just
3    haven't seen the publicity in this case that gives me any
4    qualms or any worries that we're going to have a problem
5    selecting a jury.
6              THE COURT:  Okay.
7              MR. DISNEY:  Thank you.
8              THE COURT:  Ms. Goetzl, do you want to comment on the
9    discussion I just had with Mr. Disney?
10             MS. GOETZL:  Your Honor, we will find out from a
11   colleague who has been following all these cases whether that
12   has been done in another case that we know of, and we will
13   confer and get back to the Court on that issue of the written
14   jury questionnaire.
15             THE COURT:  And, also, have you thought about what --
16   let's assume -- if you have a questionnaire, you have a larger
17   group, they fill it out, we eliminate some people.  But if we
18   were just to go straight to, you know, voir dire without a
19   written questionnaire, have you-all thought about what number
20   of people -- how large a pool you would like in the courtroom
21   to start with, rather more than 50, or not?
22             MS. GOETZL:  We have not thought about that but we
23   will --
24             THE COURT:  Talk to your colleagues, and talk to
25   Mr. Disney as well, if I deny the motion.
```

```
 1        When are you supposed to start this trial?

 2             MS. GOETZL:  February 27th.

 3             THE COURT:  So we need to let the jury office know

 4   very soon what the number is going to be.

 5             DEPUTY CLERK:  If you plan on doing a questionnaire,

 6   we've passed that deadline.

 7             THE COURT:  If we plan a questionnaire, we've passed

 8   the deadline.  "Deadline" meaning not deadline as a matter of

 9   law or even as a matter of my discretion but what the jury

10   office wants to make the logistical side of it possible.  So

11   I'm not rejecting your request yet.  The number of jurors is

12   easier but we still want to let them know sooner rather than

13   later.

14        So what I should probably try to do is to resolve the

15   venue motion, and what you can do is talk to each other and to

16   counsel on the other side about a number of jurors you would

17   propose, and let Ms. Johnson know, if you agree on a number.

18   If you disagree, then I'll just decide.

19        I don't have any objection to a larger number.  We're

20   imposing on more people's time, but on the other hand, even if

21   I deny your motion, media, January 6th, and your point about

22   Gallaudet, and we may have people that have some connection

23   with Gallaudet or have some, I don't know what, but you will

24   have questions you will want to ask them ask and it may mean

25   that we should have a slightly larger pool or more than a
```

1    slightly larger pool.

2              MS. GOETZL:  Thank you.

3              THE COURT:  Thank you.

4         All right.  Ms. Akpan, you seem to be the conductor of

5    this orchestra.  Which motion are we going to hear next and

6    who's going to argue it?

7              MS. AKPAN:  Your Honor, I'm going to address the

8    motion to suppress the statements.  And I don't have a whole

9    lot of points, but I will address the motion based on each

10   statement for each date.

11        So I'll first take on the statements on January 14th.

12   I think it's -- from the testimony last week, our argument is

13   that in addition to what we filed, that Mr. Gossjankowski's

14   statements on that date were not voluntary.  He was definitely

15   in custody at the time.

16        Just taking the Court back to what Mr. Matthews

17   testified to was that he was encouraging Mr. Gossjankowski to

18   speak to MPD Officer Ulrich, at the same time he was

19   communicating with that MPD officer as well.  And at the same

20   time, Mr. Gossjankowski was desperately communicating with him

21   about not being suspended from school.

22        And what led to that was the fact that there were

23   two -- not one, but two Be On The Lookouts from the FBI that

24   Mr. Gossjankowski had come across, and those Be On The Lookouts

25   directing the public to contact them because Mr. Gossjankowski

1   was suspected of assaulting a federal officer.  The Be On The

2   Lookouts, in red letters at the very top, stated:  Assault on a

3   federal officer and violence at the Capitol.  Which was

4   essentially encouraging the community to reach out to the FBI,

5   and Mr. Gossjankowski, seeing that, compelled that he needed to

6   take -- to be in custody.  And what happened was --

7           THE COURT:  Say that again.

8           MS. AKPAN:  The Be On The Lookouts were essentially

9   FBI Wanted posters.  You can turn yourself in.

10          THE COURT:  Did Mr. Gossjankowski see the BOLO posters

11  before January 14th?

12          MS. AKPAN:  Yes, Your Honor.  Ms. Ulrich testified, if

13  I remember correctly -- Mr. Matthews and Ms. Ulrich both

14  testified that Mr. Gossjankowski had seen the Be On The

15  Lookouts.  Mr. Ulrich testified that she -- that

16  Mr. Gossjankowski showed the Be On The Lookouts to her on his

17  phone when she had arrived.

18          THE COURT:  So Mr. Gossjankowski, having seen the BOLO

19  posters, reached out the law enforcement and said he wanted to

20  talk to them.

21          MS. AKPAN:  He wanted to turn himself in.  The 9-1-1

22  calls -- he made not just one 9-1-1 call, but three 9-1-1

23  calls.  At the urging of Mr. Matthews to -- he had said speak

24  to the officers, he needs to speak to Ms. Ulrich, and the

25  urgency at which he contacted, again, 9-1-1 wasn't just one

1     time but three times that evening.

2          And so in the backdrop -- with that as a backdrop, the

3     Be On The Lookouts, Mr. Matthews directing him to speak to

4     Officer Ulrich, argument is that his statements that day were

5     not voluntary.

6          When Ms. Ulrich arrived, as she testified, she's not a

7     certified ALS -- excuse me, ASL interpreter.  She had arrived

8     on the scene with three other officers, who also had body-worn

9     camera at the time.  While she did testify that he was not

10    under arrest, he was being interviewed outside of his residence

11    with -- in front of these MPD officers.

12         Two FBI officers also came on the scene.  So we know at

13    this point we have not one or two or three but five or more

14    officers who arrived on the scene at the time.  So our argument

15    is he was indeed in custody at that time, and his statements

16    that day were not voluntary.

17         The other issue, of course, is we would be asking for

18    these statements to be suppressed because they were not

19    preserved.  I don't think that the Government can really point

20    to any reliable evidence of what exactly he said on that date.

21    I quoted for the Court the Government's filing where they

22    stated that --

23         THE COURT:  The body-worn camera was not preserved.

24    So before we had body-worn cameras, police officers testified

25    at supression hearings and judges decided whether they were

1  credible or not, and we decided whether to suppress evidence or

2  not suppress evidence.  So, you know, I don't understand why

3  that's a problem.

4          MS. AKPAN:  Your Honor, I think before body-worn

5  cameras officers were trained to take notes about what

6  individuals said, and they also have training about taking down

7  statements of individuals who are suspected of crimes.  And

8  what we don't have is an actual accurate statement of what the

9  officers say that he said.

10          I don't want to belabor a point that we did address

11  kind of at the time, but the fact is that Ms. Ulrich had her

12  body-worn camera on at the time Mr. Gossjankowski was arrested

13  four days later.  She had docketed the incident -- the stop as

14  an incident, which is how she explained it disappearing within

15  30 days, but in that 30 days, they had an individual who was

16  being interviewed or had been interviewed for being -- as a

17  suspect for a federal felony offense.

18          THE COURT:  Not only that.  He had been arrested.

19          MS. AKPAN:  Thank you, Your Honor.  He had been

20  arrested for that.

21          And so there's nothing to indicate that there was no

22  way to go back and save the body-worn camera, Your Honor, and

23  what's also -- I think should be troubling for the Court is

24  that Ms. Ulrich wasn't the only one who had a body-worn camera

25  on at that time.  There were three other people that she had

1    identified who also -- a sergeant and two other officers, who

2    also had body-worn camera on at that time.

3         So it's hard to accept that every one of them docketed

4    this incident as a stop or an incident, and then the body-worn

5    camera just disappeared, but the Government wants to use

6    whatever he said at that time against him.

7         Now I'll move on to the January 17th statement.  So,

8    Your Honor, just before, obviously, Mr. Gossjankowski's

9    interview at his house on January 17th, but the day before that

10   on January 16th is a text message with FBI Agent Mr. Brown,

11   where he asked the question or he stated:  I don't have a

12   lawyer right now.  Do you want me to have a lawyer present with

13   me?

14        I'm sorry, Your Honor, I did not bring --

15         THE COURT:  The text message said what?

16         MS. AKPAN:  I'm sorry, Your Honor.

17        Sorry, Your Honor.  The text message Mr. Gossjankowski

18   sent to Scott Brown, after Scott Brown set up another meeting

19   was: "I don't have an attorney with me.  Do I need to bring an

20   attorney to present with me?"

21         THE COURT:  I'm sorry.  Let me see.  What exhibit

22   number are you talking about?

23         MS. AKPAN:  I'm sorry, one moment, Your Honor.

24         MR. DISNEY:  8, Your Honor.

25         THE COURT:  8?

```
1              MR. DISNEY:  Yes, sir.

2              THE COURT:  All right.

3              MS. AKPAN:  Your Honor, it was Exhibit 8, Page 2,

4    towards the bottom of Page 2.

5              THE COURT:  Okay.  So we have January 16th.

6    January 16th at 9:00 a.m. -- 9:00 p.m.

7              MS. AKPAN:  Yes.

8              THE COURT:  Mr. Gossjankowski texts Agent Brown -- or

9    Detective Brown:  I don't have an attorney with me.  Do I need

10   to bring an attorney to present with me?

11             And the next text from Brown says:  Just text me -- no,

12   there is no response.

13             MS. AKPAN:  He does not answer that question, Your

14   Honor.  Again, just to put this -- that statement in context,

15   they had just spoken to Mr. Gossjankowski on the 14th.  On the

16   16th, there are messages back and forth with Mr. Brown to set

17   up another interview.  Again -- and there's this statement

18   about an attorney.

19             And I think Your Honor can be aware of the fact that,

20   again, the BOLO is out there, and he had shown the BOLO to

21   Ms. Ulrich before.  And just to highlight the Be On The

22   Lookouts, Your Honor, there are numbers that show -- there's

23   one BOLO, Be On The Lookout, has Mr. Gossjankowski as

24   Photograph Number 81, and it has dash AFO, assault on a federal

25   officer.
```

1          Another Be On The Lookout has Mr. Gossjankowski as

2     Photograph Number 98, dash assault on federal officer, or AFO.

3     As I interpret that, Your Honor, he's obviously in the top 100

4     people that the Government is looking for not too long after

5     January 6th, approximately January 14th or so, at least, that

6     the Government -- that the FBI is looking for.

7          Now, with that as a backdrop, we have the interview on

8     January 17th.  He's in a -- what the video shows to be a small

9     room, not a very big room, in his apartment.  His back -- he's

10    seated at a table.  His back is against the wall.  There are

11    five individuals in the room interviewing him.  Five of them

12    are employed by the FBI.  Three of them are interpreters, but,

13    indeed, FBI employees.  Aside from the window on one side,

14    there's no indication that Mr. Gossjankowski can just get up

15    and leave.

16         I recognize the cases that the Government cited, but

17    the argument is that those cases are very distinguishable from

18    this case, considering the fact that there are five people in a

19    small room talking to our client, and with video cameras on

20    him, and, granted, also on the interpreter, obviously, but our

21    argument, again, is that he was in custody at that time.

22         Now I would move on to the January 18th interview,

23    which is where we spent a significant or notable amount of

24    time, Your Honor, not lengthwise, Your Honor, but as far as

25    importance.  Our argument there, again, is that

1  Mr. Gossjankowski did invoke his right to an attorney at that

2  time.

3          THE COURT:  On January 10th, he's arrested.

4          MS. AKPAN:  Yes, Your Honor.  He's arrested.  He has

5  been handcuffed.  He had been booked, I believe.  The officer

6  who testified that -- explained the room and the layout and the

7  handcuffing and the bench.  But it's clear, again, there, there

8  are several officers -- let me say, there are two MPD officers,

9  including the FBI officer, and then three interpreters in that

10  room at that time.

11          And it's a statement that is addressed there, just at

12  the very beginning of that interview, you know, about to go

13  into the Miranda warnings, again, Mr. Gossjankowski states

14  that:  I get a public attorney, right?

15          Our argument, Your Honor, I believe my colleague

16  Mr. Smock laid it out, but I'm going to try to be short but

17  also clear, our argument is that he is making a statement, not

18  asking a question but making a statement:  I get a public

19  attorney.

20          It's notable when that statement comes in, just as

21  they're about to start this interview and they're going into

22  the issue of the advisement of his rights, and he's saying, I

23  get an attorney.  And we can't look at that statement, Your

24  Honor, in a vacuum because the days before there's a question,

25  again, about an attorney.

1         And so I'm sure it's going to come up and argue it's a

2    question, but what we were trying to address at the hearing is

3    that it is a clear invocation of his right to an attorney.  So

4    the question is -- or the statement is "I get a public

5    attorney," as a declaration, an assertion, of the right to

6    counsel and asking the officers to confirm what he understands

7    his right to be.

8         And what was said immediately thereafter was:  You

9    would not for the purpose of this interview, which was not

10   correct.  I'm sure that the argument will then be, well, they

11   went over his rights, but that was all addressing a later time

12   frame, as opposed to the interview at this time.  I'm going to

13   be interviewed by the police.  I want to have an attorney.  And

14   he had been told no, which was not correct.  And that's what

15   the statement was.

16        And because of that -- and, again, put it in context

17   with the fact that going back a few days, the Government's

18   looking for him.  They have interviewed him.  He felt compelled

19   to turn himself in with this understanding that -- it's not as

20   if he could just flee the country or anything.  The FBI is

21   looking for him.  And then this question --

22        THE COURT:  You keep saying he was compelled to turn

23   himself in.  I have a problem with that.  Now you're talking

24   about January 14th.

25        MS. AKPAN:  Yes, Your Honor.  What I'm trying to do is

1    just to lay out for the Court that while I'm addressing each

2    interview, they can't be seen -- they have to be seen together.

3           THE COURT:  I have a problem with your argument that

4    he was compelled to turn himself in on the 14th.  He would

5    have -- someone would have located him, obviously, but he

6    didn't have to call 9-1-1 three times and say, I want to talk

7    to somebody.

8           And I understand your argument about McNeal or Neal,

9    but I think -- I understand we'll put them all in a context,

10   but I think the January 16th, January 17th point, viewing the

11   text and that interaction together, and the January 18th point

12   are your stronger arguments.

13          MS. AKPAN:  Thank you, Your Honor.

14          THE COURT:  You don't have to agree with me.

15          MS. AKPAN:  Thank you, Your Honor.

16          MR. DISNEY:  Your Honor, I'll start and answer any

17   questions the Court has.  I wanted to start with the Supreme

18   Court case of Davis versus U.S., which -- where the Supreme

19   Court said that, you know, this is real stuff that's happening

20   out on the street, and that there needs to be a bright line of

21   an unequivocal assertion in order for a suspect to invoke

22   Miranda.

23          That was a 5-4 decision.  All of the justices, all nine

24   of them, said that it has to be unequivocal.  Really, the split

25   in the decision was what happens if it's ambiguous.  Five of

1    the justices said that if it's ambiguous, there's no need to

2    follow up.  Four of the justices said that they would prefer,

3    if it was ambiguous, that there is follow-up.  But the opinion

4    as it stands now, Davis versus U.S., says you have to be

5    unequivocal to invoke, and if you're ambiguous, there's no need

6    to follow up.

7         Of course, in this case, if you go to the January 18th

8    interview, our argument is that there was no assertion.  He did

9    not ask for an attorney.  At the very best, the defense can

10   argue -- I think it's a stretch even to argue this, but at the

11   very best it's an ambiguous statement.  And the police did

12   exactly what the four justices in U.S.-Davis asked for, which

13   is he followed up and said --

14        THE COURT:  You said the four justices.  You mean the

15   five justices?

16        MR. DISNEY:  The five justices said you don't have to

17   follow up, and the four justices said we would prefer it.  So

18   the officers in this case did follow up.  So they -- they

19   didn't even have to follow up, which is -- the Davis case says

20   that's the better practice, but that's what the officer did

21   here, is he followed up.

22        And I think that the -- what I would like to stress to

23   the Court is if we take away the interpretation and the fact

24   that the defendant was deaf, this is a fairly routine

25   statement.  This is the type of thing that happens all the

1    time, and I don't think there's anything so unique about it.

2    Obviously, we do have the deaf interpretation that comes in,

3    but when you just take a step back, this is all a fairly

4    routine statement.

5         I don't see any way that the defendant is in custody on

6    January 14th.  You have he's friends with a cop.  He's friends

7    with Matthews.  Matthews is encouraging the defendant to

8    contact law enforcement.  That doesn't make him in custody.

9    The fact that there was three phone calls to 9-1-1 doesn't make

10   him in custody.  It shows the defendant wants to contact the

11   defendant -- I mean, the law enforcement.

12        I want to talk a minute about the no preservation of

13   the body-worn camera.  And, of course, you heard Officer Ulrich

14   tell you what happened, that this was when she docked it and it

15   was just labeled as a contact or a stop.  She didn't tag it as

16   a felony; so it got deleted.  There's no bad faith on the

17   officer, which I believe it would be required.

18        But the fact that the officer only tagged this as a

19   contact should tell you something about what was in her mind,

20   that it wasn't an arrest, it wasn't a felony.

21        THE COURT:  Well, the other officers' minds as well,

22   because even though they didn't testify, I think we did hear

23   testimony that all of the body-worn cameras that anybody had on

24   that evening were docked at the end of the shift, and none of

25   them exist, because if they existed you would have produced

1    them in discovery, right?

2         MR. DISNEY:  Yes, sir.  And that's -- my good-faith

3    belief is they don't exist and that's what we've been told.

4         So I think the fact that it wasn't tagged as a felony

5    is -- the Court can put some significance on that.  And the

6    fact is the defendant, he walked away on the 14th.  He wasn't

7    under arrest.  He walked away.  I think that's also a

8    compelling --

9         The January 17th, it's clear from the text messages

10   that the defendant agreed to meet with the police, that he

11   wanted to meet two of the police.  He asked them to come out to

12   their house.  He did make this -- he did do the text message

13   about an attorney, asking if he would be provided an attorney,

14   or however it's written in the Exhibit 8, but it wasn't a

15   request for an attorney and there was no response from the

16   officer.

17        One thing I want to -- one thing where the sign

18   language does come into play here is that, you know, we've

19   heard about how the deaf community is a small community.  The

20   defendant, where he lived was near Gallaudet University.

21        You know, one thing, if you're doing sign language out

22   on the street, everybody who knows sign language is going to be

23   able to hear your conversations, even if they're in a house

24   across the street watching, because it's not verbal language.

25   So if you whisper, it doesn't matter.  However you're doing

 1    your hands or doing your motions, other people can hear.

 2         So there is -- I would ask the Court to consider that

 3    when you look at the practical reasons as to why the interview

 4    took place in the house.  People on the street couldn't

 5    overhear or oversee the conversation.

 6         But the defendant agreed to do this in his house.  He

 7    was not frisked.  He wasn't handcuffed.  They make a big deal

 8    about the defendant's back being to the wall.  You know, it was

 9    the interpreters who helped set up the positioning of

10    everybody.  I don't believe the Court can set any malice in how

11    that was set up.

12         So we would just ask the Court to consider the entire

13    circumstance.  This is, in my view, just a fairly routine

14    statement.  He's given Miranda.  I think the officer did a very

15    good job on the 18th.  They went over the Miranda three

16    different times.  But there is no reason to suppress the

17    statement, in the Government's view, and we ask that you not do

18    that.

19         Thank you, Your Honor.

20          THE COURT:  Okay.  Ms. Akpan.

21          MS. AKPAN:  Thank you, Your Honor.

22         Going back to the January 14th interview, when I kept

23    addressing the fact that he was compelled to turn himself in.

24    I want to, again, kind of pin a different context for the

25    Court.  The Be On The Lookout, in effect, is you are being

1   arrested.  You are going to be found by the Government.  I

2   don't think that --

3        THE COURT:  He would be arrested at some point, that's

4   true.  That's probably true.  But he hadn't been formally

5   arrested.  He arranged this meeting and he was specifically

6   told, we're not arresting you today, which may have implied we

7   may arrest you or we will arrest you in the future, but that's

8   what he was told.  And it appears that he chose to talk to them

9   on January 14th, without any compulsion.

10       MS. AKPAN:  Your Honor, I want to also -- the

11   Government has said that he was allowed to walk away on

12   January 14th, but by this time the Government had his phone

13   number.  They met him at the front of his house.  They know

14   exactly where he lives.  They have a way to reach him.  This is

15   the federal government, so I don't think there's any doubt that

16   if he even had a thought to flee, that he would definitely be

17   found.

18       In response to the Government's argument that

19   Mr. Gossjankowski was speaking to a friend, obviously

20   Mr. Matthews laid out for the Court that he was operating -- he

21   was a law enforcement officer.  He came in dressed as a law

22   enforcement officer, and was also in contact at the same time

23   simultaneously with MPD Officer Ulrich.

24       As to the statements that Mr. Gossjankowski made,

25   again, I just want to be clear and make sure it was on the

1    record that Officer Ulrich could not even remember exactly what

2    Mr. Gossjankowski said on the 14th.  And so, it's inherently

3    reliable to be able to say what he said on the 14th, because

4    she didn't --

5              THE COURT:  Why do you need to know that?

6              MS. AKPAN:  Well, I think it would be problematic,

7    Your Honor, for her to come in and testify that on January 14th

8    he said certain things, but she has no notes of it.  Obviously,

9    there's no recording of it.

10             THE COURT:  Why does that lead to supression of any

11   statement?  We're going to have a trial and at trial she may

12   testify, there may be other officers who were on the scene who

13   testified.  And it's fruitful ground for cross-examination:

14   You didn't take any notes, did you?

15             Why didn't you take any notes?

16             Well, we didn't take any notes because we had body-worn

17   cameras.

18             Where are you body-worn cameras?

19             All of that is appropriate for questioning for the jury

20   to consider whether the statement was voluntary, because that's

21   a jury question as well as a Court question, under 18 USC 3501

22   or -02 and it's a credibility question.

23             And the jury may conclude that the Government hasn't

24   proved beyond a reasonable doubt that certain things were said

25   on January 14th because the testimony's just not credible or

1   reliable.  It seems to me that's a jury question.  It's not a

2   supression question.  The fact that they didn't preserve -- in

3   the absence of bad faith, that they didn't preserve the

4   body-worn cameras it seems to me that's a jury question.

5        You're doing two things.  You're trying to persuade me

6   and you're making your record for the Court of Appeals if

7   there's a conviction in this case.

8        MS. AKPAN:  Thank you, Your Honor.

9        I did want to quickly respond also to the Government's

10  assertion that with interviewing Mr. Gossjankowski in his

11  residence, that you can't hear sign language.

12       Addressing that point, obviously, I think it was made

13  very clear at the hearing that sign language is more than just

14  hand movements.  It's the facial gestures.  It requires a lot

15  of interpretation.

16       And then I did want to just briefly state, again, just

17  so that I was clear, and I don't know if I made this very clear

18  about the January 18th interview.

19       THE COURT:  Which one?

20       MS. AKPAN:  January 18th.  That our position, again,

21  is it was an unequivocal assertion in the fact that he said

22  "right" at the end and did not change that.

23       Thank you, Your Honor.

24       THE COURT:  Thank you.  Anything else?

25       Does anybody -- we started at 11:00.  Does anybody need

 1  a break before we move on to the next motion?  Either of the

 2  interpreters?  Are we okay to go forward?

 3          Okay.  So why don't we move on to the motion to -- with

 4  respect to physical property under Rule 481.

 5          Ms. Goetzl, you're back.

 6           MS. GOETZL:  Yes.  Thank you.

 7          Our papers are very comprehensive, and I hope I can

 8  answer whatever questions the Court has, but I would just point

 9  out at the outset that the Government has six electronic

10  devices of Mr. Gossjankowski's.  It seized six pursuant to the

11  very overbroad, on its face, warrant, and it seized his cell

12  phone, his iPhone 11, from his person on his arrest.

13          THE COURT:  Say that again.

14          MS. GOETZL:  The Government seized his iPhone 11 from

15  his person when he was arrested.  So that wasn't seized

16  pursuant to the search warrant.  It was seized incident to

17  arrest.  And then gave that cell phone back to him.

18          Specifically, it has of his two cell phones, a tablet

19  and three laptops.  It has -- the Government has identified no

20  evidence on any of the laptops, period.  It has not said that

21  it's going to use any evidence from his laptops at trial.  It

22  has given us no disclosure from any of the laptops.  It has had

23  the laptops for two years now.  It's almost exactly two years.

24          THE COURT:  Let me ask you, if I'm reading everything

25  correctly, the Government has gone into these devices and

1  downloaded certain things or taken certain things from the

2  devices; is that correct?

3          MS. GOETZL:  We don't know.

4          THE COURT:  We don't know that.

5          MS. GOETZL:  The Government has disclosed nothing.

6          THE COURT:  So if the Government has any evidence from

7  the devices, they would have -- if it was exculpatory they

8  would have had to disclose it under Brady.  But if it is

9  material to their case in chief, they would have had to

10 disclose it under Rule 16, right?

11         MS. GOETZL:  That's correct, Your Honor.  It's also

12 correct that they were supposed to identify, pursuant to the

13 warrant, what is responsive and nonresponsive.  The problem

14 with the warrant is that it allows them an indefinite period of

15 time to do that, which is why the ruling itself is not

16 sufficiently particular and overbroad.

17         And also, their behavior, their conduct with respect to

18 executing the warrant is unreasonable.  They've now kept

19 devices for two years without identifying anything on them.

20 We've repeatedly requested the devices back.  We need

21 Mr. Gossjankowski to have laptops, so that we can communicate

22 with him via video.  He has been communicating with us from his

23 cell phone screen.

24         THE COURT:  Let me ask you a question.  As I was

25 reading your papers, there's -- the motion is labeled a motion

 1   to suppress physical evidence, and also a motion to return

 2   property.

 3       What physical evidence do you want suppressed?

 4           MS. GOETZL:  Your Honor, we can't even identify --

 5           THE COURT:  That's what -- based on what you're saying

 6   this morning and the...

 7           MS. GOETZL:  The Government has failed to identify the

 8   evidence that it claims it has on the devices that it needs for

 9   trial, yet it will not give the property back.  So the

10   Government -- so, I mean, we would just ask the Court to order

11   the Government -- at this point, we would ask the Court -- it's

12   a month before trial.  They've identified nothing on any of the

13   devices.

14       I believe they've identified some -- and it's in my

15   motion -- some pictures from the iPhone 7, the iPad and the

16   iPad that are completely redundant.  So they're obviously

17   synced.  They're on both devices.  They've disclosed that.

18   Fine.

19       We've asked them to destroy the rest of the evidence,

20   meaning if they took an exact digital copy of the devices and

21   only those, I don't know, 20 or 30 pictures and videos that

22   were responsive, we ask the Court to order them to delete and

23   destroy the rest of the personal information that it has about

24   Mr. Gossjankowski from all of those devices.

25       So we're asking the Court to order the Government,

1    first and foremost, to give us back the devices on which it has

2    identified nothing.  And that would be the three laptops.  And

3    I believe the -- there's a Droid phone.

4            THE COURT:  You said, I think, there are six devices.

5    So the three laptops, they've identified nothing relevant.

6        What are the other devices?

7            MS. GOETZL:  The other devices are a Droid phone, a

8    tablet, and a red iPhone XR.

9            THE COURT:  So the red iPhone is not the phone on

10   which -- that Mr. Gossjankowski had with him on January 6th?

11           MS. GOETZL:  The red iPhone is the phone that was

12   seized pursuant to the warrant that was not -- it was not the

13   iPhone 7 -- I'm sorry, the iPhone 11 that he had on his person

14   when he was arrested.  So he had an iPhone 11 on his person

15   when he was arrested.

16           THE COURT:  Okay.  What I'm interested in knowing

17   is -- and you may either not be able to answer this or don't

18   want to answer this, but when he was present on January 6th,

19   and there are statements of facts about what he did and what he

20   had in his possession, as I recall it.  He obviously didn't

21   have laptops with him.  He had a phone with him.

22           And my question as you list these items is whether

23   anybody -- whether the following question -- the January 6th

24   phone is the phone they seized from his person at the time of

25   his arrest, you say not pursuant to a warrant, or could it have

 1    been the red iPhone or the Droid phone?  And I guess the

 2    Government either has told you that or will tell me that this

 3    morning.

 4             MS. GOETZL:  So the iPhone 11 he had on his person.

 5             THE COURT:  At the time of his arrest?

 6             MS. GOETZL:  At the time of his arrest.  The

 7    Government has not -- and it is alleged that -- and that is

 8    also the phone from which he communicated with Scott Brown,

 9    which I believe was somewhere buried in the statement of facts.

10    Somewhere in the statement of facts they identified a phone

11    number, and then that phone number is connected to the

12    iPhone 11 that was taken from his person.

13             The Government has not one shred of evidence that any

14    of the other six devices were on his person at the Capitol.  If

15    they do, they have not proffered any such evidence or

16    alleged -- made any allegations that any of these other devices

17    were with him.

18             THE COURT:  Okay.

19             MS. GOETZL:  And I also just want to point out that if

20    the Government just completely fails to address the

21    Judge Rakoff --

22             THE COURT:  Yeah, I mean, you've got Judge Rakoff and

23    you've got Judge Nathan's opinion.  You know, neither of them

24    are stupid, by the way.  I mean, they're like two of the

25    smartest judges in the country.  I wouldn't want Judge Rakoff

1    to hear me say that about him because it will go to his head.

2         But Allison Nathan is one of the smartest now-appellate

3    judges.  It doesn't mean she's always right.  But I don't

4    understand in light of the Wey decision, W-E-Y, and the Dennis

5    decision, why the government's holding onto these items.

6         MS. GOETZL:  And just two more things.  One, I want to

7    point out that in the Manafort case, they gave back all the

8    devices.

9         THE COURT:  In which case?

10        MS. GOETZL:  In the Manafort case, the Government took

11   the devices, made a copy of them and gave them all back.  They

12   did not keep his computers or devices.  I don't understand why

13   the Government has insisted in January 6th cases that it keep

14   the devices, but it does seem very much like a depravation of

15   property.  And Mr. Gossjankowski has been deprived of -- he's

16   an indigent defendant and he's been deprived of laptop

17   computers that he needs to communicate with people.

18        The last thing I'll mention is that I found out

19   recently, this morning, that a colleague has received a 302 in

20   another case that says:  We searched the client's laptop.  We

21   found nothing of import.

22        I have not received any 302 about any searches done on

23   any of the devices.  So it's just completely unreasonable.  The

24   Government's actions are unreasonable.  And so the Court

25   should, at a minimum, order the Government to return the

1    property.

2            MR. DREHER:  Good afternoon, Your Honor.  I did wish

3    for the Court to focus on three big items when it's considering

4    this motion.  The first is the timeline with which the warrant

5    was executed.  The second is the scope of the investigation

6    being -- the second --

7            THE COURT:  Why don't you take off your mask?

8            MR. DREHER:  I apologize, Your Honor.

9             The scope of the investigation that was subject to the

10   warrant, and finally the uniqueness of the digital evidence.

11           THE COURT:  What's it evidence of?

12           MR. DREHER:  The digital evidence?

13           THE COURT:  Yeah.  What do you use it for at trial?

14           MR. DREHER:  There are photographs as well as videos

15   taken from the cell phone that Mr. Gossjankowski, while he

16   was --

17           THE COURT:  What devices are they on?

18           MR. DREHER:  So the devices that we've currently

19   identified this evidence upon is the cell phone, as mentioned,

20   the iPad, as well as --

21           THE COURT:  Have you downloaded everything and taken

22   it out?

23           MR. DREHER:  We have, Your Honor.

24           THE COURT:  Why haven't you given it to the defense?

25           MR. DREHER:  So the process that we followed --

1        THE COURT:  Why haven't you given it to the defense a

2   month before trial?

3        MR. DREHER:  Your Honor, the images of the disk drive

4   of every device have been given to the defense.  The process of

5   which this evidence is seized from items is that a complete

6   image of everything on the device is taken first.  Then any

7   subsequent searches of the information stems from that image as

8   opposed to the original device.

9        Now, the images, the initial extraction of each and

10  every device has been provided to defense, or at least the

11  opportunity to obtain these images have been provided to

12  defense.  And I hope that answers the Court's question.

13       But, ultimately, what is still in possession are the

14  devices themselves, based on the defense's refusal to

15  stipulate --

16       THE COURT:  Why do you need that?

17       MR. DREHER:  So the original device of any electronic

18  device not only can store additional information but, more

19  importantly, can change.  And it would --

20       THE COURT:  If it changes anything after you return it

21  to them, what difference does it make?  You want to take

22  photographs of the devices?  You can show the photographs at

23  trial.  You've got a chain of custody from the time it was

24  seized.  You've got the seizing officer.  You've got the

25  devices in your custody for two years.  You've taken

1   photographs.  You've taken everything out of the device you

2   want.  Give it back to him.

3              MR. DREHER:  Certainly, if that's the Court's --

4              THE COURT:  That will be the Court's order unless you

5   have better arguments than the one you've given me so far.

6              MR. DREHER:  I do just want to point out for the

7   record, Your Honor, that what happens with the storage of

8   digital information is it's not just a piece of paper that can

9   then be compared to the original.  These devices will continue

10  to overwrite itself and it would make it difficult when taking

11  an original and to the copy that was made and being able to

12  compare the two to authenticate it.

13     Now, that's the issue that we have in these cases in that

14  it would become difficult to then show --

15             THE COURT:  Well, I have a question as to why you even

16  had probable cause to seize them in the first place.  So if you

17  want me to get into the warrant and tell you why I think it's

18  an overbroad warrant, I can do that.  But it might be simpler

19  just to avoid that question, because you've now told me you've

20  extracted everything that you need from the devices and, you

21  know, if it's an overbroad warrant, then I could suppress the

22  stuff that you've already extracted.  But if you return the

23  property, maybe the whole matter is moot and we don't have to

24  go down that road.

25             Just because magistrate judges have bought into this

1   argument that every single device in everybody's home is -- you

2   know, all devices, we need all devices.  You know, I've read

3   the Griffith case.  I've read Wey.  I've read Dennis.  This may

4   be what they're doing in all these January 6th cases, but I

5   have real problems with it.

6          Now, I would also have to overcome the presumption of

7   regularity, the fact that there's a warrant, and all those good

8   things.  But this is -- you know...

9          MR. DREHER:  I think it then becomes important for the

10  Court to consider the scope of the investigation for which the

11  search warrant was drafted and approved by a magistrate judge.

12  I think being here in this case, the United States v.

13  Gossjankowski, sometimes we may lose focus on that this is the

14  largest federal prosecution --

15         THE COURT:  Why do you need his devices to prosecute

16  him?  Do you need them to prosecute other people?

17         MR. DREHER:  Certainly these images do depict other

18  individuals who are also --

19         THE COURT:  But you've got those.  You've got the

20  images now.

21         MR. DREHER:  I understand, Your Honor.  But what this

22  does is it goes to the probable cause of the warrant, which --

23         THE COURT:  Do you want me to now explore, which I

24  told you I'm willing to pass over that if you return the

25  property for now.  But if you want me to explore the probable

1   cause of the warrant and take a look at whether or not I agree

2   with the magistrate judge, I'm happy to do that, because I've

3   got real problems with this kind of overbroad warrant.

4        I don't know whether I have to decide it in this case

5   because as long as you're telling me that you've downloaded

6   everything you need, that you've provided it to the defense

7   under Rule 16 in Brady -- is that what you're telling me?

8        MR. DREHER:  I'm saying that the original digital

9   images of the devices have been made available to the defense,

10  yes, Your Honor.

11       THE COURT:  Under Rule 16?

12       MR. DREHER:  Yes.

13       THE COURT:  Why don't you go ahead.  I won't interrupt

14  you.

15       MR. DREHER:  If I may just have a moment, Your Honor?

16       THE COURT:  Yes.

17       MR. DREHER:  Your Honor, the only thing that I would

18  add, then, about the authenticity issue would just be to remind

19  the Court that in prior hearings there has been a preference, I

20  suppose, specifically with this case, that the defense agree to

21  the admissibility of these devices.  And that's really the only

22  concern when it comes to returning the devices themselves.

23       However, outside of that, if the Court is going to

24  issue an order, I certainly will just have a seat.

25       THE COURT:  You said the admissibility of the devices.

1    Why do you need -- do you intend to offer them in evidence?

2    What are they relevant to?

3              MR. DREHER:  There are images that depict

4    Mr. Gossjankowski at the Capitol.  There are also videos of --

5    excuse me, there is at least one video to where he can be heard

6    as a row of officers walks by.

7              THE COURT:  On one of these devices?

8              MR. DREHER:  Yes, Your Honor.  So the digital evidence

9    obtained from the singular cell phone, given the uniqueness of

10   digital evidence, is very easily transferred to other digital

11   devices.  So because of that, we see these same images on

12   multiple devices owned or possessed by Mr. Gossjankowski.

13             And so that evidence will likely be presented at his

14   trial.  And outside of the obligations that we have under

15   Rule 16, as well as Brady, the issue -- or I should say the

16   concern that we've had is being to then able to authenticate

17   that what we have is what we say it has.

18             So without some sort of challenge to the authenticity

19   of these storage devices, we have no issue returning it.

20             THE COURT:  Okay.

21             MR. DREHER:  I thank you for the Court's time.

22             THE COURT:  Thank you.

23             MS. GOETZL:  I just want to highlight for the Court on

24   Page 15 of our motion, which is docketed ECF 72-2.

25             THE COURT:  Hold on one second.  What page?

1          MS. GOETZL:  Page 15.  This is the third paragraph.

2          This is the only evidence from any of the devices

3     seized that the Government has disclosed to us.  So --

4          THE COURT:  It says over a year after seizing the

5     devices on February 28th, 2022, which is now almost a year ago,

6     the Government produced, one, approximately 29 images files and

7     five video files from the iPhone 11 Pro Max cell phone; two,

8     approximately 21 image files from the red iPhone XR phone; and,

9     three, approximately 39 images from the tablet.  Many of the

10    same images were provided on all three devices.

11         MS. GOETZL:  So that is what I believe the Government

12    to be saying that they intend to use at trial, because they

13    have not identified anything else.  Most importantly, they've

14    identified nothing on four of the seven devices that they

15    confiscated.

16         And so our argument is that the Court should suppress

17    this evidence to the extent they want to use it for the reasons

18    in the motion, but should order the return back of all of the

19    devices, regardless.

20         In terms of the images that they're talking about of

21    the devices, the Government has given us a digital image of the

22    entire laptop.  So for -- they disclosed in duplicate copy of

23    every single thing on the laptop, and they've done that for the

24    three laptop computers.  That's like giving us 500 bankers

25    boxes and saying we might use something in there.

 1          THE COURT:  That's not sufficient.  They have to tell

 2    you under Rule 16 specifically, specifically, what items, what

 3    images they intend to use in their case in chief.  I have

 4    written opinions on that.  They cannot dump all this stuff on

 5    you.

 6          And if they don't comply with my opinions interpreting

 7    Rule 16 -- I can't remember the names of them.  You have to

 8    identify specifically what items you intend to use in your case

 9    in chief, and you can't dump a bankers box or several bankers

10    boxes.

11          What about the video that he referred to?

12          MS. GOETZL:  The five video files that they provided

13    are from the iPhone 11, and -- Your Honor, I can't remember if

14    I made an argument in here about the admissibility of the

15    photographs --

16          THE COURT:  He said there was a video of him on one of

17    the devices.

18          MS. GOETZL:  I believe that the video that the

19    Government is talking about is one of the five video files from

20    the iPhone 11, which has been seized from his person and has

21    been returned to him.  So we would simply, at this point,

22    challenge the evidence on the devices that have not been

23    returned.

24          THE COURT:  Say that again.

25          MS. GOETZL:  We would ask the Court to suppress any

1    evidence on the devices that have not been returned.  So that

2    would be the six devices seized pursuant to the overbroad

3    warrant.

4            THE COURT:  Including the three items listed on

5    Page 15 you just alluded to?

6            MS. GOETZL:  Not including the iPhone 11, which would

7    be Number 1 on Page 15.

8            THE COURT:  I see what you're saying.  Okay.  I hear

9    you.

10           MS. GOETZL:  Thank you.

11           THE COURT:  Would you like to respond?

12           MR. DREHER:  No, Your Honor.  Thank you.

13           THE COURT:  Okay.

14           MR. DISNEY:  Your Honor, before we conclude --

15           THE COURT:  I'm not ready to conclude, but go ahead.

16   No, go ahead.

17           MR. DISNEY:  Your Honor, I just wanted to touch base

18   that we're all on the same page moving forward.  There were a

19   couple motions filed last week that may need hearing dates

20   before the trial.  I just wanted to touch on that before we

21   left.

22           THE COURT:  To find a date?

23           MR. DISNEY:  Yes.

24           THE COURT:  Okay.  What I would like to do is take

25   about a 10-minute break, after which I will give you an oral

1  opinion on the statements, and then I will soon give you an

2  oral opinion on the venue.  And I want to think a little

3  further the Rule 41 motion.

4         So why don't we take maybe 10 minutes or so.

5         (A recess was taken at 12:15 p.m.)

6         THE COURT:  Okay.  As I suggested before, I'm going to

7  issue a written opinion on the venue issue and focus more about

8  the Rule 41 issue that we heard argument on last this morning.

9         You wanted to say, Ms. Goetzl.

10        MS. GOETZL:  Your Honor, I apologize.  If I could just

11  make one more statement because I misspoke with respect to the

12  Rule 41 motion and the iPhone 11.

13        THE COURT:  Say that again.

14        MS. GOETZL:  I misspoke with respect to the iPhone 11

15  that's part of the Rule 41 motion.  Our position is that the

16  warrant application for the seizure of property in his house

17  appears to also apply to the iPhone 11 that was seized from his

18  person.  There doesn't -- we haven't received any other warrant

19  application for that particular phone.

20        So with the presumption that the warrant application

21  for his house applies to the iPhone 11, our arguments are that

22  it's overbroad.  So there wasn't a date range with respect to

23  what they could search.  There wasn't a limitation on the

24  phone.  So our argument is that the Court should also suppress

25  that evidence because of the overbroad warrant.

1          THE COURT:  It may have been included within the

2     warrant, but if it was on his person at the time of his arrest,

3     I think it's a harder argument.  I suppose there's an argument

4     about -- never mind.  I don't need to say more.

5          So I will issue a written opinion on venue and I will

6     think some more about the Rule 41 argument.

7          So with respect to the motion to suppress statements,

8     I'm going to give you an oral opinion now, and there will be no

9     written opinion.  So if anybody wants a record of this, you can

10    order a transcript at some point.

11         We heard evidence, testimony, on January 11th, and

12    actually spent most of the day hearing from witnesses with

13    respect to the three statements that were made by

14    Mr. Gossjankowski, one on January 14th, one on January 17th,

15    and one on January 18th.

16         There was also admitted in evidence a number of

17    exhibits.  Exhibits 1A through C, which were three 9-1-1 calls

18    from Mr. Gossjankowski.  Exhibit 2, a Facebook conversation.

19    Exhibits 3 and 4, Be On The Lookout posters.  I think Exhibit 5

20    or 5A, an identification that Mr. Gossjankowski provided the

21    police.  Exhibit 6, a photo of Mr. Gossjankowski.  Exhibit 7A

22    and 7B were text messages between Officer Ulrich and

23    Officer Matthews.  Exhibit 8, which we also talked about

24    further this morning, were printouts of texts between

25    Mr. Gossjankowski and Officer Detective Scott Brown.

1          Exhibit 9A and B, I think, were both recordings of the

2     January 17th interview, and Exhibit 10A, B, and, C -- or A, B,

3     C and D -- A, B, C and D?  I'm looking at my notes.

4          9A and 9B were video recordings of the interview on

5     January 17th.  Exhibits 10A through D, recordings of the

6     interview conducted on January 18th.  Exhibit 11, Miranda

7     rights waiver.  Exhibit 12, Facebook conversation between

8     Mr. Gossjankowski and various people.  That's 12 and 13.  And

9     Exhibit 14 was the search warrant and, I guess, the affidavit

10    in support of the search warrant as well.

11         I'm going to deny the motion to suppress statements for

12    the following reasons:

13         The statement on January 14th was wholly voluntary and

14    there was no necessity for arrest -- there was no arrest or

15    custody.  It is true that Lieutenant Neal Matthews of the

16    Gallaudet Police Department was speaking to Mr. Gossjankowski

17    in his capacity as a long-time friend and acquaintance of

18    Mr. Gossjankowski, and also as a campus police officer at

19    Gallaudet.

20         And he basically said in his testimony and the text

21    messages to Officer Ulrich suggested that he was somewhat

22    conflicted.  He felt as a friend of Mr. Gossjankowski he wanted

23    to help him.  He wanted to get him in touch with Officer Ulrich

24    so that he could -- if he was going to go talk to the police,

25    he could do so with someone who could help him, because she

1    knew American Sign Language.

2           They had been family friends from way back and he knew

3    him socially, but, also, he felt that he had seen videos of

4    some of the violence -- that's Matthews -- had seen videos of

5    some of the violence and thought the people involved in

6    January 6th riots should be accountable.

7           He urged Mr. Gossjankowski to turn himself in and to

8    talk to the police.  Mr. Gossjankowski was aware of the BOLO,

9    that he was -- his picture was out there and that law

10   enforcement was interested in him.  And he had several

11   conversations with Mr. Gossjankowski and urged him to turn

12   himself in.

13          Mr. Gossjankowski, the evidence showed, made three

14   9-1-1 calls in saying that he wanted to talk to someone.  And

15   the police arrived, and it is true that Mr. Matthews told

16   Mr. Gossjankowski that he could trust Officer Ulrich and he --

17   Officer Ulrich showed up with other officers after

18   Mr. Gossjankowski reached out to law enforcement, after he

19   called 9-1-1, after he said he wanted to talk.

20          And Officer Ulrich testified and the defense has made

21   the point that she's not a certified ASL interpreter, but she

22   is the daughter of two deaf parents.  She's a child of deaf

23   parents.  And she's affiliated with the hearing -- deaf and

24   hearing unit of the Metropolitan Police Department, and she

25   testified she's fluent in ASL and she often assists with

1    translation and that ASL, was, in fact, her first language.

2         It was about 7:00 at night when the officers met with

3    Mr. Gossjankowski outside his residence, and they talked to him

4    on the street at the corner, not in his home, not directly in

5    front of his residence.

6         And there were two or three officers and a sergeant

7    present.  Ulrich introduced herself and Mr. Gossjankowski said

8    he wanted to talk about what happened.  Officer Ulrich

9    testified that the officers were not angry or emotional.  They

10   were calm, cool, collected.  And that Mr. Gossjankowski was not

11   angry or emotional.  Normal demeanor.

12        And everyone there, including Scott Brown, who

13   arrived -- Detective Brown on detail to -- MPD Detective Brown,

14   also on detail to the FBI, and according to Officer Ulrich

15   everyone communicated with Mr. Gossjankowski through

16   Officer Ulrich.

17        Mr. Gossjankowski was not handcuffed.  He was not

18   placed in custody.  He was never told he couldn't leave.  And

19   he was using his phone to communicate with others while they

20   were there.

21        The interview was recorded on body-worn camera.

22   Officer Ulrich's body-worn camera would have been the most

23   relevant because she was facing him in order to communicate

24   with him.  But I think the testimony was that others also had

25   their body-worn camera on.  It was Officer Myler, M-Y-L-E-R,

1   and Osman, O-S-M-A-N, I believe, and Ulrich, along with a

2   sergeant, who showed up later, and then Detective Brown.

3        There were two marked cruisers in which the officers

4   arrived.  The sirens were not on.  The officers were in full

5   uniform.  Mr. Gossjankowski knew that they were police

6   officers.  They identified themselves as such.  They also did

7   not take him into custody.  He was told he was not under

8   arrest, and they told him specifically, multiple times, that he

9   was free to go.

10       Detective Brown, and I believe one other from the FBI,

11  were in plainclothes.  They did not pat Mr. Gossjankowski down

12  and it was -- Ulrich said it was just a conversation and that

13  they made a stop for a conversation.

14       The officers view this as what is in police parlance

15  known as a contact, and therefore filed an incident report.

16  There was no arrest.  There was no charge.  And Officer Ulrich

17  testified that it was given a CCN number, reported as an

18  incident or a stop.  And, typically, when someone is arrested

19  later, there would be a separate and different CCN number.

20       She also testified that officers at the end of their

21  shifts dock their body-worn cameras, and unless they take steps

22  to upgrade them, if they are for minor matters, and an incident

23  is such a minor matter, it would be maintained for no more than

24  30 days.  And that's apparently what happened here.  So the

25  body-worn camera does not exist, from any of the officers who

1    were on the scene.

2         Detective Brown said that he had a call saying there

3    was someone who was pictured on a BOLO who wanted to turn

4    himself in, and he went to the scene with Special

5    Agent Mulvihill.  They were in casual clothes, 9th and Florida.

6    Officer Ulrich briefed them, according to Detective Brown.

7         She told them there was no arrest warrant for him --

8    rather, that Detective Brown told her that there was no arrest

9    warrant for him.  And Detective Brown introduced himself to

10   Mr. Gossjankowski and said who he was.  He showed him the BOLO.

11   Mr. Gossjankowski showed them his ID.

12        Detective Brown said that Mr. Gossjankowski was not

13   under arrest.  He was not handcuffed.  He was not patted down.

14   It was a 10- to 15-minute conversation.  It was a very casual

15   conversation.  And the purpose was to get enough information to

16   decide whether to investigate further and whether to arrest

17   later.  Mr. Brown and Mr. Gossjankowski exchanged phone

18   numbers, and Detective Brown said we would be in touch later.

19        The argument that the defense makes is that because

20   Mr. Matthews was in law enforcement at Gallaudet, by

21   encouraging him to talk to the MPD, and because there was a

22   BOLO out there, that somehow this was un-custodial and not

23   voluntary, that because of the encouragement by a Gallaudet law

24   enforcement officer and because there were five or more law

25   enforcement officers present, it was not voluntary and he was,

1    in fact, in custody.

2           And I just reject that argument.  Based on the

3    uncontested testimony that we heard in court from

4    Officer Ulrich and from Detective Brown, he was not in custody.

5    He was free to leave.  He was treated with respect.  It was a

6    casual conversation.  He wasn't handcuffed.  He wasn't patted

7    down.  He wasn't arrested.

8           And with respect to the failure to preserve the

9    body-worn camera, I don't think that changes anything in terms

10   of whether the statement was voluntary or not.  It may be as I

11   said earlier, that that's fruitful ground -- basis for

12   cross-examination of Detective Brown and other officers at the

13   time of trial, and Officer Ulrich, more importantly than

14   Detective Brown, MPD officers, why didn't you preserve your

15   body-worn camera?  Why didn't you take any notes?

16          But that goes to the reliability and the credibility of

17   their recollection of what the statements were that

18   Mr. Gossjankowski made on January 14th.  It's got nothing to do

19   with the voluntariness of the statements made on that date.

20          So then we move to January 17th.  There were text

21   message between Detective Brown and Mr. Gossjankowski after

22   January 14th and the next meeting on January 17th.  And we

23   think there were some messages between Mr. Gossjankowski and

24   Mr. Matthews as well.

25          Mr. Gossjankowski said in some of these text messages

1    he was worried.  He asked Detective Brown:  What's the status

2    of my situation?

3            Brown said:  No change.

4            Mr. Gossjankowski responded:  I'm constantly worried.

5            On the 16th, Detective Brown asked Mr. Gossjankowski if

6    he would meet for further questions, and at some point in those

7    interchanges Mr. Gossjankowski agreed to meet and said:  Please

8    bring an interpreter.

9            Now, what Exhibit 8, which is the list of text

10   messages, shows is that at about 9:00 p.m. on January 16th,

11   Mr. Gossjankowski texts to Detective Brown:  I don't have an

12   attorney with me.

13           And this is in preparation for that meeting on the

14   17th:  I don't have an attorney with me.  Do I need to bring an

15   attorney?

16           And Detective Brown does not respond to that question.

17           Five minutes later Mr. Gossjankowski texts again:  Just

18   text me when you're on your way.

19           He says nothing further about a lawyer at that point.

20   He does at some point ask about -- to bring an interpreter.

21   And, to me, that interchange is not a request for counsel.  And

22   I will explain more when I get to a discussion of the case law

23   in a couple of minutes.

24           January 17th -- oh, and with respect to why he didn't

25   respond, Detective Brown said:  I did not want to provide legal

1   advice.

2          That's what he told us in court.

3          There was also a text saying:  We are not coming to

4   arrest you.

5          Later, before they arrived.  They arrived at his

6   home -- Detective Brown and Special Agent Mulvihill arrived at

7   his home with three interpreters, and we heard testimony about

8   how they -- and Mr. Gossjankowski agreed to talk with them.

9          And there was testimony from Detective Brown and also

10  from, I believe, two of the interpreters at our hearing about

11  how they -- how the FBI conduct interviews with people who are

12  deaf.

13         And they typically bring three people, the testimony

14  showed, two who can hear, and therefore can interact with other

15  hearing participants in the interview, and one who is deaf.

16  And they monitor each other and they switch off every 20 or

17  30 minutes.

18         One of them, and I believe it's the deaf person, sits

19  facing the person being interviewed, and one of the hearing

20  interpreters stands behind the person being interviewed, so

21  that he or she is facing the interviewer.  And the third person

22  is monitoring what's going on and is another set of eyes and

23  ears.  And then they switch off every 20 or 30 minutes, the two

24  hearing interpreters.

25         All three are certified in ASL interpretation, and one

1    of the interpreters told us she has a master's from Gallaudet

2    in ASL interpretation.  She also testified what I've just

3    summarized, and what she testified in detail about are what is

4    considered by the FBI and maybe by the certifying authorities

5    as best practices for such interviews.

6         And the interpreter told us that she participated -- I

7    think it was the same three interpreters who participated both

8    in the January 17th interview and in the January 18th

9    interview.  We also heard testimony from the deaf interpreter

10   who was present on both of those occasions.

11        And so Detective Brown described that they interviewed

12   Mr. Gossjankowski in his dining area in his home, and he

13   described the protocol that was used and how they set things up

14   in the dining area.

15        It is true, as defense counsel points out, and we saw

16   it on the video -- I viewed the videos after the hearing last

17   week, and we saw some of it during the hearing -- that

18   Mr. Gossjankowski was sitting at one end of the room with his

19   back to the wall.  There was a window on his right, I believe,

20   but it was a close space with all those people around and

21   nearby.  And, you know, it is true he could not have gotten up

22   and left without asking somebody to move and get out of the way

23   so he could walk around the table.

24        Nevertheless, he was not handcuffed.  He was not patted

25   down.  He was told he was not under arrest.  He was told he

could stop the interview at any time.  That testimony is
uncontested.

The interview lasted a little over an hour.
Detective Brown said it was very casual.  Detective Mulvihill
took notes and the interview on January 17th was recorded -- I
think recorded by two different cameras.

After this January 17th interview, there were some more
texts between Detective Brown and Mr. Gossjankowski, in which
Mr. Brown told him we would be in touch.  Then on January 18th,
Detective Brown asked if they could meet again, and
Mr. Gossjankowski agreed and suggested they meet at his home
again.

Between January 17th and January 18th, Detective Brown
testified that a final decision was made to place him under
arrest.  When they texted him on January 18th to set up the
meeting, they did not tell him he was going to be arrested.
They went to his home.  They placed him under arrest.  They
placed him in custody and they executed a search warrant.

He was then taken in handcuffs and in custody --
there's no dispute he was in custody and under arrest on
January 18th -- to the Washington field office of the FBI.  He
was handcuffed to -- he was in a cell or a holding cell.  He
was handcuffed to a bar in the cell for perhaps as much as an
hour and a half, although he was taken out at times for booking
and to be processed.

1    And then at some point, the handcuff was removed from

2    the bar in the cell and they reconfigured things in the cell

3    and set up a table and chairs to conduct an interview in the

4    same holding cell.  This is all testimony that I'm referring to

5    now from Agent Mulvihill, which is really uncontradicted

6    testimony.

7    And Mulvihill was there and two other detectives were

8    there, and I think Detective Brown was there, and then the same

9    three interpreters, two hearing interpreters, ASL certified,

10   and one deaf interpreter, ASL certified.

11   Mr. Gossjankowski was not handcuffed during the

12   interview.  They were all sitting around the desk, and

13   everybody's seen excerpts from the video and I assume by now

14   everyone's seen the entirety of the interview.

15   And the video shows that there was a Miranda rights

16   form, and one of the officers said -- I think Mr. Mulvihill

17   said:  I'll read it to you now.  But he placed the form down,

18   and the interpreter told Detective Mulvihill or

19   Agent Mulvihill:  He can't both be reading it and looking at

20   me, the interpreter.  So why don't you let him read it himself

21   first and then you can talk to him.

22   And that's what happened.  And the video shows

23   Mr. Gossjankowski looking down and reading the Miranda form.

24   It's a sheet of paper.  It's in evidence.  And then

25   Agent Mulvihill read his rights to him with the aid of an

1   interpreter, read it line by line, and after each line,

2   Mr. Gossjankowski put an initial next to the line.

3        And so the Miranda form -- and I'll come back to this

4   in a minute.  The Miranda form, which is Exhibit 11, it's one

5   page, the title of it says "Advice of Rights."  We see in the

6   video that the place, date, and time are written in, I think by

7   Mulvihill, but by one of the officers.  And it begins:  Before

8   we ask any questions, you must understand your rights.  That's

9   read to him.  Mr. Gossjankowski initials it.

10        The next line:  You have the right to remain silent.

11   That's read to him.  Mr. Gossjankowski initials it.  And it

12   goes on.  The last one is:  If you decide to answer questions

13   now without a lawyer present, you have the right to stop

14   answering at any time.  He initialed that.

15        At the end it says:  I've read the statement of my

16   rights and understand what my rights are.  At this time I'm

17   willing to answer questions without a lawyer present.

18   Mr. Gossjankowski signs it and it's witnessed by

19   Agent Mulvihill and an MPD officer.

20        And then there's an interview, which lasts about an

21   hour.  At no point during the interview did Mr. Gossjankowski

22   say he wanted to stop.

23        I have reviewed the videos of the January 17th

24   interview in his dining room, and with respect to the

25   January 18th interview at the Washington field office of the

1   FBI, while he was in custody and had been arrested, the video

2   shows at one point he is told:  If you have any questions for

3   us, just stop us and ask.  Just be truthful.  If you don't

4   know, tell us you don't know.

5          He is told:  Since you are under arrest, we will now

6   warn you of your rights.

7          That's when the interpreter suggests giving him a

8   chance to read the form first, and then go through it line by

9   line.  Then, while reading what is now Exhibit 11,

10  Mr. Gossjankowski looks up and says, "So I don't have a

11  lawyer."

12         I'm quoting the ASL interpreter's interpretation of

13  what he said, obviously, which is, "So I don't have a lawyer.

14  So I guess I'll get a public attorney; is that right?"

15         The officer responds, You would but -- quote, "You

16  would but not for the purposes of this interview right now in

17  here.  If you want to speak to us now without an attorney, you

18  can.  You don't have to.  If you want to wait until an attorney

19  is present, you can do that as well."

20         At some point, the MPD detective asked whether

21  Mr. Gossjankowski agreed to answer questions without an

22  attorney present, and through the interpreters he indicated

23  that he did.  And as I said, he initialed each line of the

24  form.

25         So the argument that the defense makes is that, what I

1   just read, which is the ASL interpreter's interpretation of

2   what Mr. Gossjankowski said about an attorney, is not a

3   question.  It was a statement that he, in fact, wants an

4   attorney and a clear invocation of his rights.

5         The Government responds to that and says it was

6   ambiguous, and that if we didn't have the interpreter issue

7   here, this would be a fairly routine Miranda scenario.  And

8   under the case law you have to be unequivocal in asking for a

9   lawyer, and that didn't happen here.  Even though there was

10  follow-up by the lawyers and -- by the officers.

11        So what I want to say about the law is the following:

12        First of all, I've already expressed my view about why

13  the body-worn camera issue isn't an issue.  It's a matter for

14  cross-examination.

15        Secondly, despite defense counsel's best efforts, the

16  facts as shown on the videos with respect to January 17th and

17  through the testimony we heard with respect to January 14th and

18  January 17th, it's very clear that Mr. Gossjankowski was not in

19  custody on either occasion, and he had a right to leave any

20  time he wanted to.

21        And if you look at what constitutes custody, I think

22  our circuit has been very clear, and, in fact, a case called

23  the United States versus Cooper, 949 F.3d, Page 744 is somewhat

24  close in the facts to this case, actually, where the agents

25  question the defendant in her living room.  And there were no

1   indicia of custody in that case and there are no indicia of

2   custody here.

3          Another case, also from the D.C. Circuit, is United

4   States versus Hallford, H-A-L-L-F-O-R-D, 816 F.3d 850, at

5   Pages 859 and 860.  And an opinion of mine in -- hang on a

6   minute.  United States versus Clemmons, 201 F. Supp. 2d,

7   Page 142.

8          So he was not in custody in either of those situations

9   and his statements were voluntary, and the failure to preserve

10  the body-worn camera is not a basis to suppress the statements.

11         Now, with respect to January 18th, he had been

12  arrested.  He clearly was in custody.  And with respect to the

13  text message of January 16th, that the question is whether his

14  text message was an unambiguous request for counsel to be

15  appointed and whether his statements -- and I read and quoted

16  as the ASL interpreter interpreted them on January 18th -- was

17  an unambiguous request for counsel.

18         The reason I say unambiguous as a modifier is because,

19  as Mr. Disney pointed out, the Supreme Court says that's the

20  test.  The Supreme Court in Davis, Justice O'Connor, said,

21  look, Miranda was a prophylactic rule.  It's -- it was intended

22  to provide some level of protection but it's not going to be

23  extended and it hasn't been extended.

24         The case law, Miranda and Edwards, which she refers to,

25  and other cases, and then the Davis case itself, at 512

1   U.S. 460, say the rationale of the case law is the police must

2   respect -- so must respect a suspect's wishes regarding his

3   right to have an attorney present during custodial

4   interrogation.

5           So, first, it has to be custodial; and, secondly, there

6   has to be a request.  But when officers conducting the

7   questioning reasonably do not know whether or not the suspect

8   wants a lawyer, the rule requiring the immediate cessation of

9   questioning would transform the Miranda safeguards into wholly

10  irrational obstacles to legitimate police investigative

11  activity.

12          The law is that a suspect must be told of his right to

13  have an attorney present and that he may not be questioned

14  after invoking the right.  But if a suspect is indecisive in

15  his request for counsel, the officers need not cease

16  questioning.  The primary protection for the Miranda is the

17  warnings themselves.

18          If a suspect requests an attorney, questioning must

19  cease, but it must be a right affirmatively invoked by the

20  suspect.  But if we were to require questioning to cease if a

21  suspect makes a statement that might be a request for an

22  attorney, she wrote, the ease of application of Miranda would

23  be lost.  We, therefore, hold that after a knowing and

24  voluntary waiver of the Miranda rights, law enforcement

25  officers may continue questioning until and unless the suspect

1    clearly requests an attorney.

2         If the suspect's statement is not an unambiguous or

3    unequivocal request for counsel, the officers have no

4    obligation to stop questioning him.  That's what the Supreme

5    Court said in Davis.

6         In a case called United States versus Allegra, 187

7    F. Supp. 3d 918, in the Northern District of Illinois,

8    Judge Elaine Bucklo has a long list of examples from other

9    cases of cases that are of clear and unambiguous requests

10   versus statements or questions that are too ambiguous or

11   equivocal to constitute an invocation of one's Miranda rights

12   to counsel.

13        If you look at those examples on 187 F. Supp 3d,

14   Page 923 through 924, the facts and circumstances of this case,

15   as described by the witnesses at the January 18th interrogation

16   and in my review of the entirety of that video, the

17   January 18th interrogation, are just too ambiguous to

18   constitute an invocation of his Miranda right to counsel.  And

19   the same is true of the texts on January 16th.

20        So those are my views and for those reasons I'm going

21   to deny the motion to suppress statements.  Unless anybody has

22   anything further they want to say on that issue, that's my

23   ruling and those are my reasons.  And if not, we can talk about

24   next steps in this case.

25        Anything else?

1          MR. DISNEY:  Your Honor, I know it was set for trial

2     on February 27th.  I think it was last week that motion in

3     limines were due.  The defense has filed one.  And then, also,

4     it might have been earlier last week or even the week before

5     that the motion to disclose witnesses are due.  The defense did

6     disclose --

7          THE COURT:  Can you talk a little more into the

8     microphone?

9          MR. DISNEY:  Yeah.

10         The defense did disclose two witnesses.  We anticipate

11    filing a motion on the expert witnesses, and I just want to

12    make sure that we have dates if the Court wants a hearing.  I

13    just kind of want to make sure that we all are on the same page

14    as far as what's going to take place between now and the trial

15    date.

16         THE COURT:  Well, if we're supposed to begin jury

17    selection on February 27th, we better have some time for the

18    motions.  I don't know whether any of the motions are going to

19    be evidentiary in nature.  We've got February 23rd set aside

20    for a final pretrial conference and motions hearing.

21         Is that sufficient for everything we need to do?

22         MR. DISNEY:  How long do we have set for that?

23         THE COURT:  I've got all day, if necessary, beginning

24    at 10:00 a.m. on February 23rd.

25         MR. DISNEY:  I think that would be sufficient.  That's

```
 1   just my opinion.
 2             THE COURT:  Is that going to work for everybody?
 3             MS. AKPAN:  Yes, Your Honor.  That's fine for the
 4   defense.
 5             THE COURT:  I assume we've already, through
 6   Ms. Salazar, made sure we have interpreters for that day,
 7   February 23rd?
 8             THE INTREPRETER:  Yes, Your Honor.
 9             THE COURT:  And for the trial?
10             THE INTREPRETER:  Yes.
11             THE COURT:  And the only thing I would like to ask --
12   is there anything else you want to raise or Ms. Goetzl or
13   Ms. Akpan want to raise?
14             MS. AKPAN:  No, Your Honor.
15             MR. DISNEY:  No, Your Honor.
16             THE COURT:  The only other thing is when can you
17   advise Ms. Johnson -- or you can do it in writing if you want
18   to -- of your views on the jury questionnaire?  I think we're
19   too late for a jury questionnaire, frankly.  And I don't know
20   whether it's been done in any of the other January 6th cases,
21   except maybe Oath Keepers and Proud Boys, and I don't know
22   whether it's been done in any single defendant case.  But we do
23   want to get a number to tell the jury office of how many jurors
24   we want.
25             Yes, sir, Mr. Smock?
```

1          MR. SMOCK:  I just wanted to say something today, Your

2     Honor.  I made an inquiry while court was going on.  I know

3     that in at least one case, the case is offered in front of

4     Judge Chutkan, there was a questionnaire that was handed out

5     and filled out by the jurors on the day of jury selection.  I

6     assume that was done in the jury assembly room.

7          I think what I'd propose is that we communicate with

8     the Government, perhaps come up with a proposal and give you

9     more details, obviously, about how that was done and how we

10    propose to do it.  I recognize that it's likely too late to

11    send something out now.  We could propose to do that probably

12    by the end of this week, if that's all right.

13         THE COURT:  Okay.  And so you'll look into what

14    Judge Chutkan did.

15         MR. SMOCK:  Yes.

16         THE COURT:  And you'll talk with the Government and

17    you'll also talk about the number we would want, with or

18    without a questionnaire.

19         Let me tell you how I normally do jury selection, and

20    Ms. Goetzl may know this.  But what I typically would do is the

21    jury office will send "X" number of jurors up to the courtroom.

22    The numbers are scrambled in the jury office and they're not in

23    any alphabetical and not in the order of lowest number first.

24    It's all scrambled.

25         And they sit in the gallery and they sit in an order

1    such that if, hypothetically, everybody agreed and had no

2    challenges for any purpose, the first 12 people would be the

3    jurors.  That's when we do the strike thing.

4         Then what I do is I pass out 5-by-7 cards and I ask

5    questions, and I tell them if they have an affirmative response

6    or, to coin a phrase, an ambiguous response or a concern or

7    something they think we should know about, they should write

8    down the number of the question.  So I'll say question number 1

9    is such and such, question number 2, question number 13, you

10   know, do you have any relatives in law enforcement.  They write

11   down 13.

12        We collect all the cards and we send some of them away

13   for a couple hours and we put some of them in the jury room,

14   and then I bring them in one at a time and put them in the

15   witness box.  I do that for two reasons.  This is even before

16   COVID.  A lot of judges just bring everybody to the bench.  I

17   don't like to do that for two reasons.  One, I've got a bad

18   back and I don't like to lean over the bench and do all this.

19   And, secondly, I think the court reporter actually likes it

20   better if they're sitting in the witness box and are talking

21   into the microphone.

22        And so after we finish with the one -- and I will ask

23   questions and then counsel has some limited follow-up

24   questions.  And then we can exercise your strikes for cause or

25   announce if you have a for-cause thing.  And then later we do

1   the perempts after we see who's left.

2          So that's what I would normally do.  Having said that,

3   I have been told that Judge Cooper may also have used a

4   questionnaire in a January 6th case.  You mentioned

5   Judge Chutkan, but he might also have used it in U.S. versus

6   Barnett.  So if --

7          DEPUTY CLERK:  That was a special panel for Barnett.

8   That was weeks ago.

9          THE COURT:  Oh, that was a big questionnaire on a

10  special extra-large panel.  So that wasn't a questionnaire that

11  was done on the day of jury selection.  So maybe

12  Judge Chutkan's is more relevant for the suggestion that

13  Mr. Smock is suggesting we investigate.

14         But you're suggesting that by the end of this week

15  counsel can -- why don't we call it file a joint report in

16  writing, what your agreed views are on jury selection, voir

17  dire, or your separate views.  But do it in a single document,

18  so I can see that you've consulted with each other and tried to

19  work things out, if you can.

20         And if you need another hearing in advance of the 23rd,

21  we'll try to schedule something.

22         You know, the last thing I want to say, and I know

23  we've had this discussion before, and I don't know whether

24  there's any way at all if this is feasible, as we've already

25  seen, this trial is going to be more time consuming than some

1    others, both because Mr. Gossjankowski is deaf and everything

2    will be done through ASL interpreters and also because his

3    lawyers are litigious.  And I say that with all due respect.

4           They have a lot of issues that they think should be

5    raised, can be raised, will be raised in this case.  And there

6    may be experts and there may be other people, and there are

7    going to be a lot of witnesses, and it's all got to be done

8    through interpreters.

9           And if there were any way in the world that you-all

10   could agree on a disposition without a trial, I think it would

11   be -- I know we've had this discussion before but a lot has

12   happened since then.  It would certainly save everybody a lot

13   of time and effort.  And I know there are a lot of (c)(1)(C)

14   pleas, there are Alford pleas, there are agreements and

15   range-of-sentencing pleas, and if Mr. Gossjankowski is willing

16   to have his lawyers engage in those discussions, I would hope

17   that the Government would think about that.  This is going to

18   be a hard, complicated case.

19          And, you know, are the videos that you're relying on

20   and testimony as unequivocal as the Government thinks they are

21   such that you're that confident that 12 jurors will decide

22   unanimously beyond a reasonable doubt that the assault charge

23   is proved.

24          MR. DISNEY:  Thank you, Your Honor.

25          THE COURT:  Okay.  So we'll see you on the 27th, if

1   not before, and I look forward to reading everything and

2   hearing.

3             (The proceedings concluded at 1:28 p.m.)

C E R T I F I C A T E


    I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.

    Please note: This hearing occurred during the

COVID-19 pandemic and is therefore subject to the technological

limitations of reporting remotely.


                    Stacy Heavenridge, RPR
                    Official Court Reporter
                    for the District of Columbia
                    333 Constitution Avenue NW
                    Washington, D.C. 20001
                    Stacy_Heavenridge@dcd.uscourts.gov

**DEPUTY CLERK: [4]** 3/3 9/10 11/5 67/7
**MR. DISNEY: [19]** 7/19 8/22 9/19 9/25 10/7 16/24 17/1 21/16 22/16 24/2 43/14 43/17 43/23 63/1 63/9 63/22 63/25 64/15 68/24
**MR. DREHER: [22]** 35/2 35/8 35/12 35/14 35/18 35/23 35/25 36/3 36/17 37/3 37/6 38/9 38/17 38/21 39/8 39/12 39/15 39/17 40/3 40/8 40/21 43/12
**MR. SMOCK: [2]** 65/1 65/15
**MS. AKPAN: [23]** 4/1 12/7 13/8 13/12 13/21 15/4 15/19 16/16 16/23 17/3 17/7 17/13 19/4 20/25 21/13 21/15 25/21 26/10 27/6 28/8 28/20 64/3 64/14
**MS. GOETZL: [34]** 4/6 4/8 5/25 6/10 7/9 7/16 10/10 10/22 11/2 12/2 29/6 29/14 30/3 30/5 30/11 31/4 31/7 32/7 32/11 33/4 33/6 33/19 34/6 34/10 40/23 41/1 41/11 42/12 42/18 42/25 43/6 43/10 44/10 44/14
**THE COURT: [103]**
**THE INTREPRETER: [2]** 64/8 64/10

**-**

**-02 [1]** 27/22

**0**

**00123 [1]** 1/4
**02 [1]** 27/22

**1**

**10 [2]** 9/11 50/14
**10 minutes [1]** 44/4
**10-minute [1]** 43/25
**100 [1]** 18/3
**10:00 [1]** 1/6
**10:00 a.m [1]** 63/24
**10A [2]** 46/2 46/5
**10th [1]** 19/3
**11 [17]** 29/12 29/14 32/13 32/14 33/4 33/12 41/7 42/13

42/20 43/6 44/12 44/14 44/12 44/21 46/6 57/4 58/9
**11:00 [1]** 28/25
**11:05 [1]** 3/2
**11th [2]** 3/12 45/11
**12 [5]** 9/5 9/7 46/7 46/8 66/2
**12 jurors [1]** 68/21
**12:15 [1]** 44/5
**12th [1]** 4/23
**13 [3]** 46/8 66/9 66/11
**1331 [1]** 1/14
**14 [1]** 46/9
**142 [1]** 60/7
**14th [20]** 12/11 13/11 17/15 18/5 20/24 21/4 23/6 24/6 25/22 26/9 26/12 27/2 27/3 27/7 27/25 45/14 46/13 51/18 51/22 59/17
**15 [4]** 40/24 41/1 43/5 43/7
**15-minute [1]** 50/14
**16 [6]** 30/10 39/7 39/11 40/15 42/2 42/7
**16th [9]** 16/10 17/5 17/6 17/16 21/10 52/5 52/10 60/13 62/19
**17 [1]** 1/6
**17th [17]** 16/9 18/8 21/10 24/9 45/14 46/5 51/20 51/22 52/14 52/24 54/8 55/5 55/7 55/13 57/23 59/16 59/18
**18 [1]** 27/21
**187 [2]** 62/6 62/13
**18th [17]** 18/22 21/11 22/7 25/15 28/20 45/15 46/6 54/8 55/9 55/13 55/15 55/21 57/25 60/11 60/16 62/15 62/17
**19 [1]** 70/8
**1:21-cr-00123 [1]** 1/4
**1:28 [1]** 69/3
**1A [1]** 45/17

**2**

**20 [7]** 4/24 4/25 5/9 7/23 31/21 53/16 53/23
**20001 [2]** 2/14 70/13
**20004 [3]** 1/22 2/5 2/9
**20006 [1]** 1/15
**201 [1]** 60/6
**2022 [1]** 41/5
**2023 [1]** 1/6
**20530 [1]** 1/18

**21 [1]** 41/8
**21:123 [1]** 3/3
**23rd [4]** 63/19 63/24 64/7 67/20
**240 [1]** 7/23
**26 [1]** 9/1
**27th [4]** 11/2 63/2 63/17 68/25
**28th [1]** 41/5
**29 [1]** 41/6
**2d [1]** 60/6

**3**

**30 days [3]** 15/15 15/15 49/24
**30 minutes [2]** 53/17 53/23
**30 pictures [1]** 31/21
**302 [2]** 34/19 34/22
**333 [2]** 2/13 70/12
**3501 [1]** 27/21
**39 [1]** 41/9
**3d [2]** 62/7 62/13

**4**

**41 [5]** 44/3 44/8 44/12 44/15 45/6
**460 [1]** 61/1
**4700-A [1]** 2/13
**481 [1]** 29/4

**5**

**5-4 [1]** 21/23
**50 [2]** 9/13 10/21
**500 [1]** 41/24
**512 [1]** 60/25
**550 [3]** 1/21 2/4 2/8
**5A [1]** 45/20

**6**

**601 [1]** 1/17
**625 [3]** 1/21 2/4 2/8
**6th [14]** 5/22 6/7 6/9 8/5 11/21 18/5 32/10 32/18 32/21 34/13 38/4 47/6 64/20 67/4

**7**

**72-2 [1]** 40/24
**744 [1]** 59/23
**79 [1]** 4/11
**7:00 at [1]** 48/2
**7A [1]** 45/21
**7B [1]** 45/22

**81** [1] 17/24

**9**

**816** [1] 60/4
**850** [1] 60/4
**859** [1] 60/5
**860** [1] 60/5

**9-1-1** [9] 13/21 13/22 13/22
13/25 21/6 23/9 45/17 47/14
47/19
**900** [1] 5/11
**918** [1] 62/7
**923** [1] 62/14
**924** [1] 62/14
**949** [1] 59/23
**98** [1] 18/2
**9:00 a.m** [1] 17/6
**9:00 p.m** [2] 17/6 52/10
**9A** [2] 46/1 46/4
**9B** [1] 46/4
**9th and** [1] 50/5

**A**

**a.m** [4] 1/6 3/2 17/6 63/24
**able** [6] 6/8 24/23 27/3 32/17
37/11 40/16
**about** [57] 5/18 6/9 7/23 9/14
10/15 10/19 10/22 11/16
11/21 12/21 15/5 15/6 16/22
17/18 19/12 19/21 19/21 19/25
20/24 21/8 23/1 23/12 23/19
24/13 24/19 25/8 28/18 31/23
32/19 34/1 34/22 39/18 41/20
42/11 42/14 42/19 43/25 44/7
45/4 45/6 45/23 48/2 48/8
52/10 52/19 52/20 53/7 53/10
54/3 57/20 59/2 59/11 59/12
62/23 65/9 65/17 66/7 68/17
**above** [1] 70/6
**above-entitled** [1] 70/6
**absence** [1] 28/3
**accept** [1] 16/3
**according** [2] 48/14 50/6
**accountable** [1] 47/6
**accounts** [1] 9/11
**accurate** [2] 15/8 70/5
**acquaintance** [1] 46/17
**acquittals** [1] 4/21
**acquitted** [1] 4/20
**across** [2] 12/24 24/24

**Action** [2] 1/3 3/3
**actions** [1] 34/24
**activity** [1] 61/11
**actual** [1] 15/8
**actually** [5] 6/19 6/25 45/12
59/24 66/19
**ADAM** [2] 1/16 3/5
**add** [2] 4/9 39/18
**added** [1] 4/11
**addition** [1] 12/13
**additional** [1] 36/18
**address** [6] 4/3 12/7 12/9
15/10 20/2 33/20
**addressed** [1] 19/11
**addressing** [4] 20/11 21/1
25/23 28/12
**admissibility** [3] 39/21 39/25
42/14
**admitted** [1] 45/16
**advance** [3] 8/24 9/15 67/20
**advice** [2] 53/1 57/5
**advise** [1] 64/17
**advisement** [1] 19/22
**affidavit** [1] 46/9
**affiliated** [1] 47/23
**affirmative** [1] 66/5
**affirmatively** [1] 61/19
**AFO** [2] 17/24 18/2
**after** [17] 8/16 16/18 18/4
36/20 41/4 43/25 47/17 47/18
47/19 51/21 54/16 55/7 57/1
61/14 61/23 66/22 67/1
**afternoon** [1] 35/2
**again** [22] 3/7 13/7 13/25
17/14 17/17 17/20 18/21
18/25 19/7 19/13 19/25 20/16
25/24 26/25 28/16 28/20
29/13 42/24 44/13 52/17
55/10 55/12
**against** [2] 16/6 18/10
**Agent** [8] 16/10 17/8 50/5
53/6 56/5 56/19 56/25 57/19
**Agent Brown** [1] 17/8
**Agent Mr. Brown** [1] 16/10
**Agent Mulvihill** [6] 50/5 53/6
56/5 56/19 56/25 57/19
**agents** [1] 59/24
**ago** [2] 41/5 67/8
**agree** [5] 11/17 21/14 39/1
39/20 68/10
**agreed** [8] 24/10 25/6 52/7

53/8 55/11 58/21 66/1 67/16
**agreements** [1] 68/14
**ahead** [3] 39/13 43/15 43/16
**aid** [1] 56/25
**AKPAN** [5] 1/20 3/6 12/4
25/20 64/13
**Alford** [1] 68/14
**all** [46] 3/9 3/15 4/16 4/18
5/18 8/5 8/20 9/20 10/11
10/19 12/4 17/2 20/11 21/9
21/23 21/23 22/25 23/3 23/23
27/19 31/24 34/7 34/11 38/2
38/2 38/4 38/7 41/10 41/18
42/4 43/18 53/25 54/20 56/4
56/12 59/12 63/13 63/23
65/12 65/24 66/12 66/18
67/24 68/3 68/7 68/9
**allegations** [1] 33/16
**alleged** [2] 33/7 33/16
**Allegra** [1] 62/6
**Allison** [1] 34/2
**allowed** [1] 26/11
**allows** [1] 30/14
**alluded** [1] 43/5
**almost** [2] 29/23 41/5
**along** [1] 49/1
**alphabetical** [1] 65/23
**already** [5] 5/22 37/22 59/12
64/5 67/24
**ALS** [1] 14/7
**also** [47] 5/3 5/14 5/15 5/17
8/17 9/21 10/15 14/8 14/12
15/6 15/23 16/1 16/2 18/20
19/17 24/7 26/10 26/22 28/9
30/11 30/17 31/1 33/8 33/19
38/6 38/18 40/4 44/17 44/24
45/16 45/23 46/18 47/3 48/14
48/24 49/6 49/20 53/3 53/9
54/2 54/9 60/3 63/3 65/17
67/3 67/5 68/2
**alternates** [2] 9/5 9/8
**although** [2] 10/2 55/24
**always** [3] 6/4 8/7 34/3
**am** [1] 8/4
**ambiguous** [9] 21/25 22/1
22/3 22/5 22/11 59/6 62/10
62/17 66/6
**amended** [1] 4/10
**AMERICA** [1] 1/3
**American** [1] 47/1
**amount** [1] 18/23

# A

**angry [2]** 48/9 48/11
**announce [1]** 66/25
**another [12]** 5/22 6/7 6/9 6/20 10/12 16/18 17/17 18/1 34/20 53/22 60/3 67/20
**answer [10]** 5/25 7/21 17/13 21/16 29/8 32/17 32/18 57/12 57/17 58/21
**answering [1]** 57/14
**answers [1]** 36/12
**anticipate [1]** 63/10
**any [59]** 4/20 4/21 5/19 5/20 5/20 6/18 6/24 7/8 7/9 7/22 8/1 8/13 8/14 9/1 10/3 10/4 11/19 14/20 21/16 23/5 25/10 26/9 26/15 27/10 27/14 27/15 27/16 29/20 29/21 29/22 30/6 31/12 33/13 33/15 33/16 33/16 34/22 34/22 34/23 36/6 36/17 41/2 42/25 44/18 49/25 51/15 55/1 57/8 57/14 58/2 59/19 63/18 64/20 64/22 65/23 66/2 66/10 67/24 68/9
**anybody [7]** 6/6 23/23 28/25 28/25 32/23 45/9 62/21
**anything [11]** 3/16 20/20 23/1 28/24 30/19 36/20 41/13 51/9 62/22 62/25 64/12
**anyway [1]** 7/4
**apartment [1]** 18/9
**apologize [2]** 35/8 44/10
**apparently [1]** 49/24
**Appeals [1]** 28/6
**APPEARANCES [2]** 1/12 2/1
**appears [2]** 26/8 44/17
**appellate [2]** 4/14 34/2
**application [4]** 44/16 44/19 44/20 61/22
**applies [1]** 44/21
**apply [3]** 6/13 6/14 44/17
**appointed [1]** 60/15
**appropriate [1]** 27/19
**approved [1]** 38/11
**approximately [4]** 18/5 41/6 41/8 41/9
**are [68]** 3/7 3/9 3/23 5/5 5/8 6/17 11/1 12/5 15/7 16/22 17/16 17/22 18/10 18/12 18/12 18/17 18/18 19/8 19/8 21/12 25/25 26/1 27/18 29/2

29/7 31/16 32/4 32/6 32/7 32/19 33/24 34/24 35/14 35/17 36/13 38/18 40/2 40/3 40/4 42/13 44/21 49/22 53/3 53/11 53/25 54/3 57/6 57/16 58/5 60/1 62/9 62/10 62/17 62/20 62/23 63/5 63/13 63/18 65/22 66/20 67/16 68/3 68/6 68/13 68/14 68/14 68/19 68/20
**area [2]** 54/12 54/14
**argue [4]** 12/6 20/1 22/10 22/10
**argument [30]** 3/16 3/18 3/19 5/1 6/21 7/6 12/12 14/4 14/14 18/17 18/21 18/25 19/15 19/17 20/10 21/3 21/8 22/8 26/18 38/1 41/16 42/14 44/8 44/24 45/3 45/3 45/6 50/19 51/2 58/25
**arguments [3]** 21/12 37/5 44/21
**around [3]** 54/20 54/23 56/12
**arranged [1]** 26/5
**arrest [25]** 14/10 23/20 24/7 26/7 26/7 29/12 29/17 32/25 33/5 33/6 45/2 46/14 46/14 49/8 49/16 50/7 50/8 50/13 50/16 53/4 54/25 55/15 55/17 55/20 58/5
**arrested [16]** 15/12 15/18 15/20 19/3 19/4 26/1 26/3 26/5 29/15 32/14 32/15 49/18 51/7 55/16 58/1 60/12
**arresting [1]** 26/6
**arrived [10]** 13/17 14/6 14/7 14/14 47/15 48/13 49/4 53/5 53/5 53/6
**article [1]** 4/24
**as [81]**
**aside [2]** 18/13 63/19
**ask [21]** 6/2 6/2 9/8 11/24 11/24 22/9 25/2 25/12 25/17 29/24 30/24 31/10 31/11 31/22 42/25 52/20 57/8 58/3 64/11 66/4 66/22
**asked [8]** 16/11 22/12 24/11 31/19 52/1 52/5 55/10 58/20
**asking [7]** 14/17 19/18 20/6 24/13 31/25 54/22 59/8
**ASL [12]** 14/7 47/21 47/25

48/1 53/25 54/2 56/9 56/10 58/12 59/1 60/16 68/2
**assault [4]** 13/2 17/24 18/2 68/22
**assaulting [1]** 13/1
**assembly [1]** 65/6
**assertion [5]** 20/5 21/21 22/8 28/10 28/21
**assists [1]** 47/25
**assume [4]** 10/16 56/13 64/5 65/6
**attorney [31]** 16/19 16/20 17/9 17/10 17/18 19/1 19/14 19/19 19/23 19/25 20/3 20/5 20/13 22/9 24/13 24/13 24/15 52/12 52/14 52/15 58/14 58/17 58/18 58/22 59/2 59/4 61/3 61/13 61/18 61/22 62/1
**authenticate [2]** 37/12 40/16
**authenticity [2]** 39/18 40/18
**authorities [1]** 54/4
**available [1]** 39/9
**Avenue [5]** 1/21 2/4 2/8 2/13 70/12
**avoid [1]** 37/19
**aware [2]** 17/19 47/8
**away [5]** 22/23 24/6 24/7 26/11 66/12

# B

**back [23]** 10/13 12/16 15/22 17/16 18/9 18/10 20/17 23/3 25/8 25/22 29/5 29/17 30/20 31/9 32/1 34/7 34/11 37/2 41/18 47/2 54/19 57/3 66/18
**backdrop [3]** 14/2 14/2 18/7
**bad [3]** 23/16 28/3 66/17
**bankers [3]** 41/24 42/9 42/9
**Bankruptcy [1]** 2/12
**bar [2]** 55/23 56/2
**Barnett [2]** 67/6 67/7
**BARRY [3]** 1/13 3/5 7/19
**base [1]** 43/17
**based [6]** 6/9 7/2 12/9 31/5 36/14 51/2
**basically [1]** 46/20
**basis [2]** 51/11 60/10
**be [103]**
**because [33]** 4/1 5/14 6/15 8/7 12/25 14/18 19/24 20/16 23/22 23/25 24/24 27/3 27/16

**because...** [20] 27/20 27/25 34/1 37/19 37/25 39/2 39/5 40/11 41/12 44/11 44/25 46/25 48/23 50/19 50/21 50/23 50/24 60/18 68/1 68/2
**become** [1] 37/14
**becomes** [1] 38/9
**been** [44] 4/24 5/9 5/11 5/13 5/21 5/23 6/22 6/23 6/23 8/3 10/11 10/12 15/16 15/18 15/19 19/5 19/5 20/14 24/3 26/4 30/22 33/1 34/15 34/16 36/4 36/10 36/11 39/9 39/19 42/20 42/21 42/22 43/1 45/1 47/2 48/22 58/1 59/22 60/11 60/23 63/4 64/20 64/22 67/3
**before** [22] 1/9 13/11 14/24 15/4 16/8 16/9 17/21 19/24 29/1 31/12 36/2 43/14 43/20 43/20 44/6 53/5 57/7 63/4 66/15 67/23 68/11 69/1
**began** [1] 3/2
**begin** [1] 63/16
**beginning** [2] 19/12 63/23
**begins** [1] 57/7
**behavior** [1] 30/17
**behind** [1] 53/20
**being** [14] 5/5 7/14 12/21 14/10 15/16 15/16 25/8 25/25 35/6 37/11 38/12 40/16 53/19 53/20
**belabor** [1] 15/10
**belief** [1] 24/3
**believe** [15] 4/3 19/5 19/15 23/17 25/10 31/14 32/3 33/9 41/11 42/18 49/1 49/10 53/10 53/18 54/19
**bench** [4] 4/21 19/7 66/16 66/18
**best** [5] 8/11 22/9 22/11 54/5 59/15
**better** [4] 22/20 37/5 63/17 66/20
**between** [8] 45/22 45/24 46/7 51/21 51/23 55/8 55/13 63/14
**beyond** [2] 27/24 68/22
**big** [4] 18/9 25/7 35/3 67/9
**Blattberg** [1] 3/7
**body** [23] 14/8 14/23 14/24

15/4 15/12 15/22 15/24 16/2 16/4 23/13 23/23 27/16 27/18 28/4 48/21 48/22 48/25 49/21 49/25 51/9 51/15 59/13 60/10
**body-worn** [23] 14/8 14/23 14/24 15/4 15/12 15/22 15/24 16/2 16/4 23/13 23/23 27/16 27/18 28/4 48/21 48/22 48/25 49/21 49/25 51/9 51/15 59/13 60/10
**BOLO** [9] 13/10 13/18 17/20 17/20 17/23 47/8 50/3 50/10 50/22
**booked** [1] 19/5
**booking** [1] 55/24
**both** [9] 8/20 9/18 13/13 31/11 46/1 54/7 54/10 56/19 68/1
**bottom** [1] 17/4
**bought** [1] 37/25
**box** [3] 42/9 66/15 66/20
**boxes** [2] 41/25 42/10
**Boys** [1] 64/21
**Brady** [3] 30/8 39/7 40/15
**break** [2] 29/1 43/25
**brief** [2] 3/18 4/8
**briefed** [1] 50/6
**briefly** [1] 28/16
**bright** [1] 21/20
**bring** [10] 9/7 16/14 16/19 17/10 52/8 52/14 52/20 53/13 66/14 66/16
**bringing** [2] 9/15 9/25
**broad** [1] 7/4
**brought** [2] 5/12 9/2
**Brown** [40] 16/10 16/18 16/18 17/8 17/9 17/11 17/16 33/8 45/25 48/12 48/13 48/13 49/2 49/10 50/2 50/6 50/8 50/9 50/12 50/17 50/18 51/4 51/12 51/14 51/21 52/1 52/3 52/5 52/11 52/16 52/25 53/6 53/9 54/11 55/4 55/8 55/9 55/10 55/13 56/8
**Bucklo** [1] 62/8
**buried** [1] 33/9

**C**
**call** [4] 13/22 21/6 50/2 67/15
**called** [4] 7/12 47/19 59/22 62/6

**calls** [5] 13/22 13/23 23/9 45/17 47/14
**calm** [1] 48/10
**came** [3] 6/19 14/12 26/21
**camera** [16] 14/9 14/23 15/12 15/22 15/24 16/2 16/5 23/13 48/21 48/22 48/25 49/25 51/9 51/15 59/13 60/10
**cameras** [9] 14/24 15/5 18/19 23/23 27/17 27/18 28/4 49/21 55/6
**campus** [1] 46/18
**can** [37] 3/15 6/1 6/8 6/12 8/16 11/15 13/9 14/19 17/19 18/14 22/9 24/5 25/1 25/10 29/7 30/21 36/18 36/19 36/22 37/8 37/18 40/5 45/9 53/14 53/14 56/21 58/18 58/19 62/23 63/7 64/16 64/17 66/24 67/15 67/18 67/19 68/5
**can't** [9] 6/7 19/23 21/2 28/11 31/4 42/7 42/9 42/13 56/19
**cannot** [2] 5/2 42/4
**capacity** [1] 46/17
**Capitol** [4] 1/17 13/3 33/14 40/4
**cards** [2] 66/4 66/12
**case** [51] 5/10 5/11 5/23 6/6 6/7 7/1 7/12 7/22 7/23 8/1 8/5 9/2 9/5 9/21 10/3 10/12 18/18 21/18 22/7 22/18 22/19 28/7 30/19 34/7 34/9 34/10 34/20 38/3 38/12 39/4 39/20 42/3 42/8 52/22 59/8 59/22 59/24 60/1 60/3 60/24 60/25 61/1 62/6 62/14 62/24 64/22 65/3 65/3 67/4 68/5 68/18
**cases** [18] 5/11 5/12 5/21 6/22 7/2 8/4 8/5 9/1 10/11 18/16 18/17 34/13 37/13 38/4 60/25 62/9 62/9 64/20
**casual** [4] 50/5 50/14 51/6 55/4
**cause** [7] 5/23 9/12 37/16 38/22 39/1 66/24 66/25
**CCN** [2] 49/17 49/19
**cease** [3] 61/15 61/19 61/20
**CELIA** [2] 2/7 3/6
**cell** [14] 29/11 29/17 29/18 30/23 35/15 35/19 40/9 41/7

**cell...** [6] 55/22 55/22 55/22 56/2 56/2 56/4
**certain** [6] 4/22 7/7 27/8 27/24 30/1 30/1
**certainly** [6] 8/3 10/1 37/3 38/17 39/24 68/12
**certified** [5] 14/7 47/21 53/25 56/9 56/10
**certify** [1] 70/4
**certifying** [1] 54/4
**cessation** [1] 61/8
**chain** [1] 36/23
**chairs** [1] 56/3
**challenge** [2] 40/18 42/22
**challenged** [1] 5/13
**challenges** [1] 66/2
**chance** [1] 58/8
**change** [5] 3/19 8/8 28/22 36/19 52/3
**changes** [2] 36/20 51/9
**changing** [1] 8/12
**charge** [2] 49/16 68/22
**charged** [2] 5/4 5/5
**chief** [3] 30/9 42/3 42/9
**child** [1] 47/22
**chose** [1] 26/8
**Chutkan** [3] 65/4 65/14 67/5
**Chutkan's** [1] 67/12
**circuit** [2] 59/22 60/3
**circumstance** [1] 25/13
**circumstances** [1] 62/14
**cited** [2] 8/1 18/16
**claims** [1] 31/8
**clear** [13] 8/10 19/7 19/17 20/3 24/9 26/25 28/13 28/17 28/17 59/4 59/18 59/22 62/9
**clearly** [2] 60/12 62/1
**Clemmons** [1] 60/6
**client** [1] 18/19
**client's** [1] 34/20
**close** [2] 54/20 59/24
**clothes** [1] 50/5
**coin** [1] 66/6
**colleague** [4] 4/3 10/11 19/15 34/19
**colleagues** [1] 10/24
**collect** [1] 66/12
**collected** [1] 48/10
**COLUMBIA** [5] 1/1 1/21 2/4 2/8 70/12

**come** [9] 4/21 5/21 12/24 20/1 24/11 24/18 27/7 57/3 65/8
**comes** [3] 19/20 23/2 39/22
**coming** [1] 53/3
**comment** [1] 10/8
**communicate** [5] 30/21 34/17 48/19 48/23 65/7
**communicated** [2] 33/8 48/15
**communicating** [3] 12/19 12/20 30/22
**community** [3] 13/4 24/19 24/19
**compare** [1] 37/12
**compared** [1] 37/9
**compelled** [5] 13/5 20/18 20/22 21/4 25/23
**compelling** [1] 24/8
**complete** [1] 36/5
**completely** [3] 31/16 33/20 34/23
**complicated** [1] 68/18
**comply** [1] 42/6
**comprehensive** [1] 29/7
**compulsion** [1] 26/9
**computers** [3] 34/12 34/17 41/24
**concern** [3] 39/22 40/16 66/6
**conclude** [3] 27/23 43/14 43/15
**concluded** [1] 69/3
**conduct** [3] 30/17 53/11 56/3
**conducted** [1] 46/6
**conducting** [1] 61/6
**conductor** [1] 12/4
**confer** [1] 10/13
**conference** [1] 63/20
**confident** [2] 8/4 68/21
**confirm** [1] 20/6
**confiscated** [1] 41/15
**conflicted** [1] 46/22
**confused** [1] 6/18
**connected** [1] 33/11
**connection** [2] 5/15 11/22
**consider** [4] 25/2 25/12 27/20 38/10
**consideration** [2] 4/14 10/2
**considered** [2] 5/6 54/4
**considering** [2] 18/18 35/3
**constant** [1] 6/22

**constantly** [1] 52/4
**constitute** [2] 62/11 62/18
**constitutes** [1] 59/21
**Constitution** [2] 2/13 70/12
**consulted** [1] 67/18
**consuming** [1] 67/25
**contact** [7] 12/25 23/8 23/10 23/15 23/19 26/22 49/15
**contacted** [1] 13/25
**contested** [1] 4/15
**context** [4] 17/14 20/16 21/9 25/24
**continue** [2] 37/9 61/25
**CONTINUED** [1] 2/1
**conversation** [8] 25/5 45/18 46/7 49/12 49/13 50/14 50/15 51/6
**conversations** [2] 24/23 47/11
**convicted** [1] 4/15
**conviction** [2] 5/1 28/7
**convictions** [1] 4/18
**cool** [1] 48/10
**Cooper** [2] 59/23 67/3
**cop** [1] 23/6
**copy** [4] 31/20 34/11 37/11 41/22
**corner** [1] 48/4
**correct** [7] 3/15 3/24 20/10 20/14 30/2 30/11 30/12
**correctly** [2] 13/13 29/25
**could** [20] 5/6 6/11 7/11 9/22 20/20 27/1 32/25 37/21 44/10 44/23 46/24 46/25 46/25 47/16 54/21 54/23 55/1 55/10 65/11 68/10
**couldn't** [2] 25/4 48/18
**counsel** [14] 8/20 9/18 11/16 20/6 52/21 54/15 60/14 60/17 61/15 62/3 62/12 62/18 66/23 67/15
**counsel's** [1] 59/15
**country** [2] 20/20 33/25
**counts** [6] 4/16 4/16 4/19 4/20 4/21 4/22
**couple** [3] 43/19 52/23 66/13
**course** [3] 14/17 22/7 23/13
**court** [48] 1/1 2/11 2/12 4/3 4/13 5/19 9/25 9/25 10/13 12/16 14/21 15/23 21/1 21/17 21/18 21/19 22/23 24/5 25/2

**court... [29]** 25/10 25/12 25/25 26/20 27/21 28/6 29/8 31/10 31/11 31/22 31/25 34/24 35/3 38/10 39/19 39/23 40/23 41/16 42/25 44/24 51/3 53/2 60/19 60/20 62/5 63/12 65/2 66/19 70/11

**Court's [4]** 36/12 37/3 37/4 40/21

**courtroom [4]** 9/7 9/16 10/20 65/21

**courts [2]** 2/12 8/10

**coverage [1]** 6/23

**COVID [2]** 66/16 70/8

**COVID-19 [1]** 70/8

**cr [1]** 1/4

**credibility [2]** 27/22 51/16

**credible [2]** 15/1 27/25

**crimes [1]** 15/7

**criminal [5]** 1/3 3/3 9/4 9/7 9/9

**CRM [1]** 1/14

**cross [3]** 27/13 51/12 59/14

**cross-examination [3]** 27/13 51/12 59/14

**cruisers [1]** 49/3

**currently [1]** 35/18

**custodial [3]** 50/22 61/3 61/5

**custody [24]** 12/15 13/6 14/15 18/21 23/5 23/8 23/10 36/23 36/25 46/15 48/18 49/7 51/1 51/4 55/18 55/19 55/20 58/1 59/19 59/21 60/1 60/2 60/8 60/12

**D**

**D.C [14]** 1/5 1/15 1/18 1/22 2/5 2/9 2/14 5/3 5/6 5/10 5/18 6/22 60/3 70/13

**dash [2]** 17/24 18/2

**date [9]** 9/22 12/10 12/14 14/20 43/22 44/22 51/6 57/6 63/15

**dates [2]** 43/19 63/12

**daughter [1]** 47/22

**Davis [7]** 21/18 22/4 22/12 22/19 60/20 60/25 62/5

**day [9]** 3/12 14/4 14/16 16/9 45/12 63/23 64/6 65/5 67/11

**days [6]** 15/13 15/15 15/15

**dcd.uscourts.gov [1]** 70/13

**deadline [4]** 11/6 11/8 11/8 11/8

**deaf [12]** 22/24 23/2 24/19 47/22 47/22 47/23 53/12 53/15 53/18 54/9 56/10 68/1

**deal [2]** 9/19 25/7

**decide [5]** 11/18 39/4 50/16 57/12 68/21

**decided [2]** 14/25 15/1

**decision [5]** 21/23 21/25 34/4 34/5 55/14

**declaration [1]** 20/5

**defendant [17]** 1/7 1/20 3/5 4/16 7/12 22/24 23/5 23/7 23/10 23/11 24/6 24/10 24/20 25/6 34/16 59/25 64/22

**defendant's [1]** 25/8

**defendants [3]** 5/4 5/5 7/14

**DEFENDER [3]** 1/20 2/3 2/7

**defense [21]** 8/1 8/16 9/12 22/9 35/24 36/1 36/4 36/10 36/12 39/6 39/9 39/20 47/20 50/19 54/15 58/25 59/15 63/3 63/5 63/10 64/4

**defense's [1]** 36/14

**definitely [2]** 12/14 26/16

**delete [1]** 31/22

**deleted [1]** 23/16

**demeanor [1]** 48/11

**Dennis [2]** 34/4 38/3

**deny [5]** 8/17 10/25 11/21 46/11 62/21

**Department [2]** 46/16 47/24

**depict [2]** 38/17 40/3

**depravation [1]** 34/14

**deprived [2]** 34/15 34/16

**described [3]** 54/11 54/13 62/15

**desk [1]** 56/12

**desperately [1]** 12/20

**despite [1]** 59/15

**destroy [2]** 31/19 31/23

**detail [3]** 48/13 48/14 54/3

**details [1]** 65/9

**detective [32]** 17/9 45/25 48/13 48/13 49/2 49/10 50/2 50/6 50/8 50/9 50/12 50/18 51/4 51/12 51/14 51/21 52/1 52/5 52/11 52/16 52/25 53/6

55/10 55/13 56/8 56/18 58/20

**Detective Brown [28]** 17/9 48/13 48/13 49/2 49/10 50/2 50/6 50/8 50/9 50/12 50/18 51/4 51/12 51/14 51/21 52/1 52/5 52/11 52/16 52/25 53/6 53/9 54/11 55/4 55/8 55/10 55/13 56/8

**Detective Mulvihill [2]** 55/4 56/18

**Detective Scott [1]** 45/25

**detectives [1]** 56/7

**device [8]** 36/4 36/6 36/8 36/10 36/17 36/18 37/1 38/1

**devices [51]** 3/21 29/10 29/25 30/2 30/7 30/19 30/20 31/8 31/13 31/17 31/20 31/24 32/1 32/4 32/6 32/7 33/14 33/16 34/8 34/11 34/12 34/14 34/23 35/17 35/18 36/14 36/22 36/25 37/9 37/20 38/2 38/2 38/15 39/9 39/21 39/22 39/25 40/7 40/11 40/12 40/19 41/2 41/5 41/10 41/14 41/19 41/21 42/17 42/22 43/1 43/2

**did [29]** 13/10 14/9 15/10 16/14 19/1 22/8 22/11 22/18 22/20 23/22 24/12 24/12 25/14 27/14 28/9 28/16 28/22 32/19 34/12 35/2 49/6 49/11 52/25 55/16 57/21 58/23 63/5 63/10 65/14

**didn't [16]** 21/6 22/19 23/15 23/22 27/4 27/14 27/15 27/16 28/2 28/3 32/20 51/14 51/15 52/24 59/6 59/9

**difference [1]** 36/21

**different [5]** 5/12 25/16 25/24 49/19 55/6

**difficult [3]** 10/1 37/10 37/14

**digital [9]** 31/20 35/10 35/12 37/8 39/8 40/8 40/10 40/10 41/21

**dining [3]** 54/12 54/14 57/24

**dire [5]** 7/7 8/11 8/19 10/18 67/17

**directing [2]** 12/25 14/3

**directly [1]** 48/4

**disagree [1]** 11/18

**disappeared [1]** 16/5

**D**

**disappearing [1]** 15/14
**disclose [5]** 30/8 30/10 63/5 63/6 63/10
**disclosed [4]** 30/5 31/17 41/3 41/22
**disclosure [1]** 29/22
**discovery [1]** 24/1
**discretion [1]** 11/9
**discuss [1]** 8/15
**discussed [1]** 8/20
**discussion [5]** 9/18 10/9 52/22 67/23 68/11
**discussions [1]** 68/16
**disk [1]** 36/3
**DISNEY [7]** 1/13 3/5 7/17 7/19 10/9 10/25 60/19
**disposition [1]** 68/10
**dispute [1]** 55/20
**distinguishable [1]** 18/17
**district [12]** 1/1 1/1 1/10 1/21 2/4 2/8 2/12 4/18 5/12 7/14 62/7 70/12
**do [59]** 3/15 3/17 3/23 3/24 5/20 6/8 6/11 8/15 9/17 10/2 10/8 11/14 11/15 16/12 16/19 17/9 20/25 23/2 24/12 25/6 25/17 27/5 30/15 31/3 33/15 35/13 36/16 37/6 37/18 38/15 38/16 38/17 38/23 39/2 40/1 40/1 43/24 46/25 51/18 52/14 58/19 61/7 63/21 63/22 64/17 64/22 65/10 65/11 65/19 65/20 66/3 66/4 66/10 66/15 66/17 66/18 66/25 67/2 67/17
**dock [1]** 49/21
**docked [2]** 23/14 23/24
**docketed [5]** 4/10 4/11 15/13 16/3 40/24
**document [1]** 67/17
**does [12]** 8/21 17/13 24/18 27/10 28/25 28/25 34/14 36/21 38/22 49/25 52/16 52/20
**doesn't [5]** 23/8 23/9 24/25 34/3 44/18
**doing [6]** 11/5 24/21 24/25 25/1 28/5 38/4
**DOJ [2]** 1/14 1/16
**DOJ-CRM [1]** 1/14
**DOJ-USAO [1]** 1/16

**don't [58]** 5/25 7/3 7/8 7/21 8/14 8/15 8/24 9/20 9/22 11/19 11/23 12/8 14/19 15/2 15/8 15/10 16/11 16/19 17/9 21/14 22/16 23/1 23/5 24/3 25/10 26/2 26/15 28/17 29/3 30/3 30/4 31/21 32/17 34/3 34/12 35/7 37/23 39/4 39/13 42/6 44/4 45/4 51/9 52/11 52/14 56/20 58/3 58/4 58/10 58/13 58/18 63/18 64/19 64/21 66/17 66/18 67/15 67/23
**done [10]** 10/12 34/22 41/23 64/20 64/22 65/6 65/9 67/11 68/2 68/7
**doubt [3]** 26/15 27/24 68/22
**down [10]** 15/6 37/24 49/11 50/13 51/7 54/25 56/17 56/23 66/8 66/11
**downloaded [3]** 30/1 35/21 39/5
**drafted [1]** 38/11
**DREHER [2]** 1/16 3/5
**dressed [1]** 26/21
**drive [1]** 36/3
**Droid [3]** 32/3 32/7 33/1
**drumbeat [1]** 8/3
**due [3]** 63/3 63/5 68/3
**dump [2]** 42/4 42/9
**duplicate [1]** 41/22
**during [5]** 54/17 56/11 57/21 61/3 70/7

**E**

**each [9]** 11/15 12/9 12/10 21/1 36/9 53/16 57/1 58/23 67/18
**earlier [2]** 51/11 63/4
**ears [1]** 53/23
**ease [1]** 61/22
**easier [1]** 11/12
**easily [1]** 40/10
**easy [1]** 6/17
**ECF [2]** 4/11 40/24
**ECF 79 [1]** 4/11
**EDWARD [2]** 2/3 3/6
**Edwards [1]** 60/24
**effect [1]** 25/25
**effort [1]** 68/13
**efforts [1]** 59/15

**either [6]** 5/23 29/1 32/17 33/2 59/19 60/8
**Elaine [1]** 62/8
**electronic [3]** 3/21 29/9 36/17
**eliminate [1]** 10/17
**else [4]** 28/24 41/13 62/25 64/12
**emotional [2]** 48/9 48/11
**employed [1]** 18/12
**employees [1]** 18/13
**encouragement [1]** 50/23
**encouraging [4]** 12/17 13/4 23/7 50/21
**end [7]** 23/24 28/22 49/20 54/18 57/15 65/12 67/14
**enforcement [12]** 13/19 23/8 23/11 26/21 26/22 47/10 47/18 50/20 50/24 50/25 61/24 66/10
**engage [1]** 68/16
**enough [1]** 50/15
**entire [3]** 6/13 25/12 41/22
**entirety [2]** 56/14 62/16
**entitled [1]** 70/6
**equivocal [1]** 62/11
**especially [2]** 6/13 6/15
**ESQUIRE [5]** 1/13 1/16 1/20 2/3 2/7
**essentially [2]** 13/4 13/8
**even [15]** 5/6 6/11 11/9 11/20 22/10 22/19 23/22 24/23 26/16 27/1 31/4 37/15 59/9 63/4 66/15
**evening [2]** 14/1 23/24
**event [2]** 7/8 7/9
**every [8]** 4/17 16/3 36/4 36/10 38/1 41/23 53/16 53/23
**everybody [6]** 24/22 25/10 64/2 66/1 66/16 68/12
**everybody's [2]** 38/1 56/13
**everyone [2]** 48/12 48/15
**everyone's [1]** 56/14
**everything [9]** 29/24 35/21 36/6 37/1 37/20 39/6 63/21 68/1 69/1
**evidence [32]** 6/5 6/16 14/20 15/1 15/2 29/20 29/21 30/6 31/1 31/3 31/8 31/19 33/13 33/15 35/10 35/11 35/12 35/19 36/5 40/1 40/8 40/10

**E**

**evidence... [10]** 40/13 41/2 41/17 42/22 43/1 44/25 45/11 45/16 47/13 56/24
**evidentiary [2]** 1/9 63/19
**exact [1]** 31/20
**exactly [5]** 14/20 22/12 26/14 27/1 29/23
**examination [3]** 27/13 51/12 59/14
**examples [2]** 62/8 62/13
**except [2]** 4/19 64/21
**excerpts [1]** 56/13
**exchanged [1]** 50/17
**exculpatory [1]** 30/7
**excuse [2]** 14/7 40/5
**executed [2]** 35/5 55/18
**executing [1]** 30/18
**exercise [1]** 66/24
**exhibit [16]** 16/21 17/3 24/14 45/18 45/19 45/21 45/21 45/23 46/1 46/2 46/6 46/7 46/9 52/9 57/4 58/9
**Exhibit 10A [1]** 46/2
**Exhibit 11 [3]** 46/6 57/4 58/9
**Exhibit 12 [1]** 46/7
**Exhibit 14 [1]** 46/9
**Exhibit 2 [1]** 45/18
**Exhibit 5 [1]** 45/19
**Exhibit 6 [1]** 45/21
**Exhibit 7A [1]** 45/21
**Exhibit 8 [4]** 17/3 24/14 45/23 52/9
**Exhibit 9A [1]** 46/1
**exhibits [4]** 45/17 45/17 45/19 46/5
**Exhibits 10A [1]** 46/5
**Exhibits 3 [1]** 45/19
**exist [3]** 23/25 24/3 49/25
**existed [1]** 23/25
**experience [1]** 7/2
**expert [1]** 63/11
**experts [1]** 68/6
**explain [1]** 52/22
**explained [2]** 15/14 19/6
**explore [2]** 38/23 38/25
**expressed [1]** 59/12
**extended [2]** 60/23 60/23
**extent [1]** 41/17
**extra [1]** 67/10
**extra-large [1]** 67/10

**extracted [2]** 37/20 37/22
**extraction [1]** 36/9
**eyes [1]** 53/22

**F**

**F. [1]** 62/7
**F. Supp [1]** 62/7
**F.3d [2]** 59/23 60/4
**face [1]** 29/11
**Facebook [2]** 45/18 46/7
**facial [1]** 28/14
**facing [3]** 48/23 53/19 53/21
**fact [18]** 12/22 15/11 17/19 18/18 20/17 22/23 23/9 23/18 24/4 24/6 25/23 28/2 28/21 38/7 48/1 51/1 59/3 59/22
**factor [1]** 4/13
**facts [8]** 6/14 7/1 32/19 33/9 33/10 59/16 59/24 62/14
**failed [1]** 31/7
**fails [1]** 33/20
**failure [2]** 51/8 60/9
**fair [1]** 5/2
**fairly [4]** 22/24 23/3 25/13 59/7
**faith [3]** 23/16 24/2 28/3
**family [1]** 47/2
**far [4]** 4/23 18/24 37/5 63/14
**FBI [16]** 12/23 13/4 13/9 14/12 16/10 18/6 18/12 18/13 19/9 20/20 48/14 49/10 53/11 54/4 55/21 58/1
**feasible [1]** 67/24
**February [7]** 11/2 41/5 63/2 63/17 63/19 63/24 64/7
**February 23rd [3]** 63/19 63/24 64/7
**February 27th [3]** 11/2 63/2 63/17
**February 28th [1]** 41/5
**federal [10]** 1/20 2/3 2/7 13/1 13/3 15/17 17/24 18/2 26/15 38/14
**felony [4]** 15/17 23/16 23/20 24/4
**felt [3]** 20/18 46/22 47/3
**few [2]** 4/8 20/17
**field [2]** 55/21 57/25
**Fifty [2]** 9/10 9/11
**file [1]** 67/15
**filed [4]** 12/13 43/19 49/15

63/3
**files [5]** 41/6 41/7 41/8 42/12 42/19
**filing [2]** 14/21 63/11
**fill [1]** 10/17
**filled [1]** 65/5
**final [2]** 55/14 63/20
**finally [1]** 35/10
**find [4]** 6/1 7/7 10/10 43/22
**fine [2]** 31/18 64/3
**finish [1]** 66/22
**first [12]** 12/11 32/1 35/4 36/6 37/16 48/1 56/21 58/8 59/12 61/5 65/23 66/2
**five [12]** 14/13 18/11 18/11 18/18 21/25 22/15 22/16 41/7 42/12 42/19 50/24 52/17
**Five minutes [1]** 52/17
**flee [2]** 20/20 26/16
**Florida [1]** 50/5
**fluent [1]** 47/25
**focus [3]** 35/3 38/13 44/7
**follow [8]** 22/2 22/3 22/6 22/17 22/18 22/19 59/10 66/23
**follow-up [3]** 22/3 59/10 66/23
**followed [3]** 22/13 22/21 35/25
**following [6]** 3/2 4/14 10/11 32/23 46/12 59/11
**footnote [1]** 4/11
**foregoing [1]** 70/4
**foremost [1]** 32/1
**forgotten [1]** 3/16
**form [7]** 56/16 56/17 56/23 57/3 57/4 58/8 58/24
**formally [1]** 26/4
**forth [1]** 17/16
**forward [3]** 29/2 43/18 69/1
**found [4]** 26/1 26/17 34/18 34/21
**four [6]** 15/13 22/2 22/12 22/14 22/17 41/14
**four days [1]** 15/13
**fourth [1]** 4/13
**frame [1]** 20/12
**frankly [1]** 64/19
**free [2]** 49/9 51/5
**FRIEDMAN [1]** 1/9
**friend [3]** 26/19 46/17 46/22

**F**

**friends [3]** 23/6 23/6 47/2
**frisked [1]** 25/7
**front [5]** 4/25 14/11 26/13 48/5 65/3
**fruitful [2]** 27/13 51/11
**full [1]** 49/4
**further [6]** 44/3 45/24 50/16 52/6 52/19 62/22
**future [1]** 26/7

**G**

**Gallaudet [10]** 5/15 5/15 11/22 11/23 24/20 46/16 46/19 50/20 50/23 54/1
**gallery [1]** 65/25
**gave [3]** 29/17 34/7 34/11
**gestures [1]** 28/14
**get [16]** 6/18 7/6 9/23 10/13 18/14 19/14 19/18 19/23 20/4 37/17 46/23 50/15 52/22 54/22 58/14 64/23
**give [7]** 31/9 32/1 37/2 43/25 44/1 45/8 65/8
**given [9]** 25/14 29/22 35/24 36/1 36/4 37/5 40/9 41/21 49/17
**gives [1]** 10/3
**giving [2]** 41/24 58/7
**glad [1]** 3/10
**gleaned [1]** 6/14
**go [13]** 10/18 15/22 19/12 22/7 29/2 34/1 37/24 39/13 43/15 43/16 46/24 49/9 58/8
**goes [4]** 6/21 38/22 51/16 57/12
**GOETZL [11]** 2/7 3/6 3/10 4/3 4/7 8/25 10/8 29/5 44/9 64/12 65/20
**going [36]** 3/15 3/16 3/23 7/17 8/8 10/4 11/4 12/5 12/6 12/7 19/16 19/21 20/1 20/12 20/17 24/22 25/22 26/1 27/11 29/21 39/23 44/6 45/8 46/11 46/24 53/22 55/16 60/22 62/20 63/14 63/18 64/2 65/2 67/25 68/7 68/17
**gone [2]** 8/6 29/25
**good [8]** 4/1 4/6 4/7 9/24 24/2 25/15 35/2 38/7
**good-faith [1]** 24/2

**GOSSJANKOWSKI [87]**
**Gossjankowski's [5]** 3/22 5/15 12/13 16/8 29/10
**got [15]** 7/6 23/16 33/22 33/23 36/23 36/24 36/24 38/19 38/19 39/3 51/18 63/19 63/23 66/17 68/7
**gotten [1]** 54/21
**government [43]** 4/25 6/3 6/16 7/20 8/21 9/12 14/19 16/5 18/4 18/6 18/16 26/1 26/11 26/12 26/15 27/23 29/9 29/14 29/19 29/25 30/5 30/6 31/7 31/10 31/11 31/25 33/2 33/7 33/13 33/20 34/10 34/13 34/25 41/3 41/6 41/11 41/21 42/19 59/5 65/8 65/16 68/17 68/20
**government's [7]** 14/21 20/17 25/17 26/18 28/9 34/5 34/24
**granted [1]** 18/20
**green [1]** 7/18
**Griffith [1]** 38/3
**ground [3]** 5/23 27/13 51/11
**group [2]** 9/6 10/17
**guess [4]** 8/7 33/1 46/9 58/14

**H**

**H-A-L-L-F-O-R-D [1]** 60/4
**had [50]** 4/24 9/18 10/9 12/24 13/14 13/17 13/23 14/7 14/8 14/24 15/11 15/13 15/15 15/16 15/18 15/19 15/24 15/25 16/2 17/15 17/20 19/5 20/14 23/23 26/12 26/16 27/16 29/22 30/8 30/9 32/10 32/13 32/14 32/20 32/21 33/4 37/16 40/16 47/2 47/3 47/4 47/10 48/24 50/2 58/1 59/19 60/11 66/1 67/23 68/11
**hadn't [1]** 26/4
**half [1]** 55/24
**Hallford [1]** 60/4
**hand [2]** 11/20 28/14
**handcuff [1]** 56/1
**handcuffed [9]** 19/5 25/7 48/17 50/13 51/6 54/24 55/22 55/23 56/11
**handcuffing [1]** 19/7

**handcuffs [1]** 55/19
**handed [1]** 65/4
**hands [1]** 25/1
**hang [1]** 60/5
**happen [1]** 59/9
**happened [7]** 9/1 13/6 23/14 48/8 49/24 56/22 68/12
**happening [1]** 21/19
**happens [3]** 21/25 22/25 37/7
**happy [1]** 39/2
**hard [2]** 16/3 68/18
**harder [1]** 45/3
**has [60]** 4/18 4/20 5/13 5/15 5/19 5/23 6/22 6/23 7/10 7/22 8/1 10/11 10/12 17/23 17/24 18/1 19/4 21/17 21/24 26/11 27/8 29/8 29/9 29/18 29/19 29/19 29/20 29/22 29/22 29/25 30/5 30/6 30/22 31/7 31/8 31/23 32/1 33/2 33/7 33/13 34/13 34/15 34/19 36/10 39/19 40/17 41/3 41/21 42/20 42/20 47/20 54/1 59/22 61/5 61/6 62/8 62/21 63/3 66/23 68/11
**hasn't [3]** 8/3 27/23 60/23
**have [133]**
**haven't [4]** 10/3 35/24 36/1 44/18
**having [2]** 13/18 67/2
**he [167]**
**he's [11]** 18/3 18/8 18/9 19/3 19/4 19/22 23/6 23/6 25/14 34/15 34/16
**head [2]** 6/3 34/1
**healthy [1]** 3/10
**hear [11]** 3/11 6/5 6/13 12/5 23/22 24/23 25/1 28/11 34/1 43/8 53/14
**heard [12]** 3/13 6/9 6/19 23/13 24/19 40/5 44/8 45/11 51/3 53/7 54/9 59/17
**hearing [19]** 1/9 20/2 28/13 43/19 45/12 47/23 47/24 53/10 53/15 53/19 53/24 54/16 54/17 56/9 63/12 63/20 67/20 69/2 70/7
**hearings [2]** 14/25 39/19
**HEAVENRIDGE [3]** 2/11 70/11 70/13

**help [2]** 46/23 46/25
**helped [1]** 25/9
**her [7]** 13/16 15/11 23/19 27/7 48/1 50/8 59/25
**here [10]** 3/12 22/21 24/18 38/12 42/14 49/24 58/17 59/7 59/9 60/2
**hereby [1]** 70/4
**herself [1]** 48/7
**highlight [2]** 17/21 40/23
**him [52]** 12/20 14/3 16/6 18/11 18/20 20/18 20/18 20/21 21/5 23/8 23/10 26/13 26/14 29/17 30/22 32/10 32/21 32/21 33/17 34/1 37/2 38/16 42/16 42/21 46/23 46/23 46/25 47/3 47/10 47/11 48/3 48/23 48/24 49/7 49/8 50/7 50/9 50/10 50/21 55/9 55/14 55/15 55/16 55/17 55/18 56/20 56/21 56/25 57/9 57/11 58/7 62/4
**himself [10]** 13/21 20/19 20/23 21/4 25/23 47/7 47/12 50/4 50/9 56/20
**his [74]**
**hold [2]** 40/25 61/23
**holding [3]** 34/5 55/22 56/4
**home [8]** 3/22 38/1 48/4 53/6 53/7 54/12 55/11 55/17
**Honor [64]** 4/1 4/6 5/8 6/10 7/10 7/19 7/21 9/19 10/10 12/7 13/12 15/4 15/19 15/22 16/8 16/14 16/16 16/17 16/23 16/24 17/3 17/14 17/19 17/22 18/3 18/24 18/24 19/4 19/15 19/24 20/25 21/13 21/15 21/16 25/19 25/21 26/10 27/7 28/8 28/23 30/11 31/4 35/2 35/8 35/23 36/3 37/7 38/21 39/10 39/15 39/17 40/8 42/13 43/12 43/14 43/17 44/10 63/1 64/3 64/8 64/14 64/15 65/2 68/24
**HONORABLE [1]** 1/9
**hope [3]** 29/7 36/12 68/16
**hour [3]** 55/3 55/24 57/21
**hours [1]** 66/13
**house [8]** 16/9 24/12 24/23 25/4 25/6 26/13 44/16 44/21

**how [16]** 7/3 9/8 9/14 10/20 15/14 24/19 25/10 53/8 53/11 53/11 54/13 63/22 64/23 65/9 65/9 65/19
**however [3]** 24/14 24/25 39/23
**hung [1]** 4/19
**hyper [1]** 6/23
**hyper-violent [1]** 6/23
**hypothetically [1]** 66/1

**I**
**I'd [1]** 65/7
**I'll [11]** 5/3 6/2 11/18 12/11 16/7 21/16 34/18 56/17 57/3 58/14 66/8
**I'm [33]** 3/10 3/15 3/24 3/24 5/25 11/11 12/7 16/14 16/16 16/21 16/23 19/16 20/1 20/10 20/12 20/25 21/1 29/24 32/13 32/16 38/24 39/2 39/8 43/15 44/6 45/8 46/3 46/11 52/4 56/4 57/16 58/12 62/20
**I've [10]** 3/16 38/2 38/3 38/3 39/2 54/2 57/15 59/12 63/23 66/17
**ID [1]** 50/11
**identification [1]** 45/20
**identified [12]** 4/13 16/1 29/19 31/12 31/14 32/2 32/5 33/10 35/19 41/13 41/14 49/6
**identify [4]** 30/12 31/4 31/7 42/8
**identifying [1]** 30/19
**Illinois [1]** 62/7
**image [4]** 36/6 36/7 41/8 41/21
**images [13]** 36/3 36/9 36/11 38/17 38/20 39/9 40/3 40/11 41/6 41/9 41/10 41/20 42/3
**immediate [1]** 61/8
**immediately [1]** 20/8
**impartial [3]** 5/2 5/17 7/11
**implied [1]** 26/6
**import [1]** 34/21
**importance [1]** 18/25
**important [1]** 38/9
**importantly [3]** 36/19 41/13 51/13
**imposing [1]** 11/20
**impossible [1]** 6/24

**incessant [1]** 6/24
**incident [8]** 15/13 15/14 16/4 16/4 29/16 49/15 49/18 49/22
**included [1]** 45/1
**including [4]** 19/9 43/4 43/6 48/12
**indecisive [1]** 61/14
**indeed [2]** 14/15 18/13
**indefinite [1]** 30/14
**Indiana [3]** 1/21 2/4 2/8
**indicate [1]** 15/21
**indicated [2]** 7/10 58/22
**indication [1]** 18/14
**indicia [2]** 60/1 60/1
**indigent [1]** 34/16
**individual [4]** 6/18 7/1 7/6 15/15
**individuals [4]** 15/6 15/7 18/11 38/18
**inflammatory [1]** 6/16
**information [7]** 6/14 6/18 31/23 36/7 36/18 37/8 50/15
**inherently [1]** 27/2
**initial [2]** 36/9 57/2
**initialed [1]** 57/14 58/23
**initials [2]** 57/9 57/11
**inquiry [1]** 65/2
**insisted [1]** 34/13
**instant [1]** 4/12
**intend [4]** 40/1 41/12 42/3 42/8
**intended [1]** 60/21
**interact [1]** 53/14
**interaction [1]** 21/11
**interchange [1]** 52/21
**interchanges [1]** 52/7
**interested [2]** 32/16 47/10
**interpret [1]** 18/3
**interpretation [7]** 22/23 23/2 28/15 53/25 54/2 58/12 59/1
**interpreted [1]** 60/16
**interpreter [14]** 14/7 18/20 47/21 52/8 52/20 54/6 54/9 56/10 56/18 56/20 57/1 58/7 59/6 60/16
**interpreter's [2]** 58/12 59/1
**interpreters [17]** 3/7 18/12 19/9 25/9 29/2 53/7 53/10 53/20 53/24 54/1 54/7 56/9 56/9 58/22 64/6 68/2 68/8
**interpreting [1]** 42/6

**I**

**interrogation [3]** 61/4 62/15 62/17
**interrupt [1]** 39/13
**interview [32]** 16/9 17/17 18/7 18/22 19/12 19/21 20/9 20/12 21/2 22/8 25/3 25/22 28/18 46/2 46/4 46/6 48/21 53/15 54/8 54/9 55/1 55/3 55/5 55/7 56/3 56/12 56/14 57/20 57/21 57/24 57/25 58/16
**interviewed [8]** 14/10 15/16 15/16 20/13 20/18 53/19 53/20 54/11
**interviewer [1]** 53/21
**interviewing [2]** 18/11 28/10
**interviews [2]** 53/11 54/5
**introduced [2]** 48/7 50/9
**investigate [2]** 50/16 67/13
**investigation [3]** 35/5 35/9 38/10
**investigative [1]** 61/10
**invocation [4]** 20/3 59/4 62/11 62/18
**invoke [3]** 19/1 21/21 22/5
**invoked [1]** 61/19
**invoking [1]** 61/14
**involved [1]** 47/5
**iPad [3]** 31/15 31/16 35/20
**iPhone [21]** 29/12 29/14 31/15 32/8 32/9 32/11 32/13 32/13 32/14 33/1 33/4 33/12 41/7 41/8 42/13 42/20 43/6 44/12 44/14 44/17 44/21
**iPhone 11 [6]** 29/12 29/14 32/13 32/14 33/4 33/12
**iPhone 7 [2]** 31/15 32/13
**iPhone XR [1]** 32/8
**irrational [1]** 61/10
**is [188]**
**isn't [1]** 59/13
**issue [16]** 10/13 14/17 19/22 37/13 39/18 39/24 40/15 40/19 44/7 44/7 44/8 45/5 59/6 59/13 59/13 62/22
**issues [1]** 68/4
**it [147]**
**it's [47]** 12/12 16/3 19/7 19/11 19/20 20/1 20/1 20/19 21/25 22/1 22/10 22/11 24/9

24/14 24/24 27/2 27/13 27/22 28/1 28/14 29/21 29/23 30/11 31/11 31/14 34/23 35/3 37/8 37/17 37/21 44/22 45/3 51/18 53/18 56/24 56/24 57/4 57/18 59/13 59/18 60/21 60/22 64/20 64/22 65/10 65/24 68/7
**items [7]** 32/22 34/5 35/3 36/5 42/2 42/8 43/4
**its [1]** 29/11
**itself [3]** 30/15 37/10 60/25

**J**

**January [76]**
**January 10th [1]** 19/3
**January 11th [2]** 3/12 45/11
**January 12th [1]** 4/23
**January 14th [15]** 12/11 13/11 18/5 20/24 23/6 25/22 26/9 26/12 27/7 27/25 45/14 46/13 51/18 51/22 59/17
**January 16th [7]** 16/10 17/5 17/6 21/10 52/10 60/13 62/19
**January 17th [16]** 16/9 18/8 21/10 24/9 45/14 46/5 51/20 51/22 52/24 54/8 55/5 55/7 55/13 57/23 59/16 59/18
**January 17th interview [1]** 46/2
**January 17th statement [1]** 16/7
**January 18th [16]** 18/22 21/11 22/7 28/20 45/15 46/6 54/8 55/9 55/13 55/15 55/21 57/25 60/11 60/16 62/15 62/17
**January 18th interview [1]** 28/18
**January 6th [14]** 5/22 6/7 6/9 8/5 11/21 18/5 32/10 32/18 32/23 34/13 38/4 47/6 64/20 67/4
**job [2]** 9/19 25/15
**Johnson [3]** 9/4 11/17 64/17
**joint [1]** 67/15
**judge [15]** 1/10 6/25 8/13 33/21 33/22 33/23 33/25 38/11 39/2 62/8 65/4 65/14 67/3 67/5 67/12
**Judge Chutkan [3]** 65/4 65/14 67/5

**Judge Chutkan's [1]** 67/12
**Judge Cooper [1]** 67/3
**Judge Elaine [1]** 62/8
**Judge Nathan's [1]** 33/23
**Judge Rakoff [3]** 33/21 33/22 33/25
**judges [5]** 14/25 33/25 34/3 37/25 65/16 66/16
**juries [1]** 5/21
**jurisdiction [1]** 7/25
**juror [6]** 6/11 6/12 6/24 7/12 7/22 7/22
**jurors [14]** 5/3 5/6 5/16 6/4 7/24 9/5 9/8 11/11 11/16 64/23 65/5 65/21 66/3 68/21
**jury [41]** 4/15 4/17 4/19 4/20 4/25 5/2 5/9 5/10 5/18 5/22 7/11 7/23 8/6 8/7 8/18 8/22 8/23 9/9 9/15 9/20 10/5 10/14 11/3 11/9 27/19 27/21 27/23 28/1 28/4 63/16 64/18 64/19 64/23 65/5 65/6 65/19 65/21 65/22 66/13 67/11 67/16
**just [72]**
**Justice [1]** 60/20
**justices [8]** 21/23 22/1 22/2 22/12 22/14 22/15 22/16 22/17

**K**

**keep [3]** 20/22 34/12 34/13
**Keepers [1]** 64/21
**kept [2]** 25/22 30/18
**kind [4]** 15/11 25/24 39/3 63/13
**knew [3]** 47/1 47/2 49/5
**know [51]** 5/20 5/25 6/8 6/15 7/21 8/1 8/25 9/22 10/12 10/18 11/3 11/12 11/17 11/23 14/12 15/2 19/12 21/19 24/18 24/21 25/8 26/13 27/5 28/17 30/3 30/4 31/21 33/23 37/21 38/2 38/2 38/8 39/4 54/21 58/4 58/4 61/7 63/1 63/18 64/19 64/21 65/2 65/20 66/7 66/10 67/22 67/22 67/23 68/11 68/13 68/19
**knowing [2]** 32/16 61/23
**knowledge [3]** 5/24 6/5 6/13
**known [1]** 49/15
**knows [3]** 5/8 8/25 24/22

# L

**labeled [2]** 23/15 30/25
**laid [2]** 19/16 26/20
**language [8]** 24/18 24/21 24/22 24/24 28/11 28/13 47/1 48/1
**laptop [5]** 34/16 34/20 41/22 41/23 41/24
**laptops [9]** 29/19 29/20 29/21 29/22 29/23 30/21 32/2 32/5 32/21
**large [4]** 5/16 5/17 10/20 67/10
**larger [7]** 8/18 9/2 10/1 10/16 11/19 11/25 12/1
**larger-than-normal [3]** 8/18 9/2 10/1
**largest [1]** 38/14
**last [9]** 12/12 34/18 43/19 44/8 54/16 57/12 63/2 63/4 67/22
**lasted [1]** 55/3
**lasts [1]** 57/20
**late [2]** 64/19 65/10
**later [10]** 11/13 15/13 20/11 49/2 49/19 50/17 50/18 52/17 53/5 66/25
**law [19]** 11/9 13/19 23/8 23/11 26/21 26/21 47/9 47/18 50/20 50/23 50/24 52/22 59/8 59/11 60/24 61/1 61/12 61/24 66/10
**lawyer [9]** 16/12 16/12 52/19 57/13 57/17 58/11 58/13 59/9 61/8
**lawyers [3]** 59/10 68/3 68/16
**lay [1]** 21/1
**layout [1]** 19/6
**lead [1]** 27/10
**leading [1]** 8/3
**lean [1]** 66/18
**least [4]** 18/5 36/10 40/5 65/3
**leave [4]** 18/15 48/18 51/5 59/19
**led [1]** 12/22
**left [3]** 43/21 54/22 67/1
**legal [1]** 52/25
**legitimate [1]** 61/10
**lengthwise [1]** 18/24
**let [9]** 11/3 11/12 11/17 16/21 19/8 29/24 30/24 56/20 65/19

**let's [1]** 10/16
**letters [1]** 13/2
**level [1]** 60/22
**Lieutenant [1]** 46/15
**light [2]** 7/18 34/4
**like [11]** 7/24 10/20 22/22 33/24 34/14 41/24 43/11 43/24 64/11 66/17 66/18
**likely [2]** 40/13 65/10
**likes [1]** 66/19
**limines [1]** 63/3
**limit [1]** 6/5
**limitation [1]** 44/23
**limitations [1]** 70/9
**limited [1]** 66/23
**line [9]** 21/20 57/1 57/1 57/1 57/2 57/10 58/8 58/9 58/23
**list [3]** 32/22 52/9 62/8
**listed [1]** 43/4
**litigious [1]** 68/3
**little [3]** 44/2 55/3 63/7
**lived [1]** 24/20
**lives [1]** 26/14
**living [1]** 59/25
**located [1]** 21/5
**logistical [1]** 11/10
**long [5]** 18/4 39/5 46/17 62/8 63/22
**long-time [1]** 46/17
**look [8]** 19/23 25/3 39/1 59/21 60/21 62/13 65/13 69/1
**looking [7]** 18/4 18/6 20/18 20/21 46/3 56/19 56/23
**Lookout [4]** 17/23 18/1 25/25 45/19
**Lookouts [8]** 12/23 12/24 13/2 13/8 13/15 13/16 14/3 17/22
**looks [2]** 3/10 58/10
**lose [1]** 38/13
**lost [1]** 61/23
**lot [10]** 6/9 8/4 12/9 28/14 66/16 68/4 68/7 68/11 68/12 68/13
**lots [1]** 7/2
**lowest [1]** 65/23

# M

**M-Y-L-E-R [1]** 48/25
**made [19]** 8/10 13/22 26/24 28/12 28/17 33/16 34/11

37/11 39/9 42/14 45/13 47/13 47/20 49/13 51/18 51/19 55/14 64/6 65/2
**magistrate [3]** 37/25 38/11 39/2
**maintained [1]** 49/23
**make [12]** 7/18 11/10 23/8 23/9 24/12 25/7 26/25 36/21 37/10 44/11 63/12 63/13
**makes [4]** 5/6 50/19 58/25 61/21
**making [3]** 19/17 19/18 28/6
**malice [1]** 25/10
**Manafort [2]** 34/7 34/10
**many [6]** 6/17 7/3 9/8 9/14 41/9 64/23
**marked [1]** 49/3
**mask [1]** 35/7
**master's [1]** 54/1
**material [1]** 30/9
**matter [7]** 11/8 11/9 24/25 37/23 49/23 59/13 70/6
**matters [1]** 49/22
**Matthews [13]** 12/16 13/13 13/23 14/3 23/7 23/7 26/20 45/23 46/15 47/4 47/15 50/20 51/24
**Max [1]** 41/7
**may [21]** 5/16 11/22 11/24 26/6 26/7 27/11 27/12 27/23 32/17 38/3 38/13 39/15 43/19 45/1 51/10 61/13 61/25 65/20 67/3 68/6 68/6
**maybe [7]** 8/16 8/25 37/23 44/4 54/4 64/21 67/11
**McNeal [1]** 21/8
**me [35]** 3/15 3/24 10/3 14/7 16/12 16/13 16/19 16/20 16/21 17/9 17/10 17/11 19/8 21/14 28/1 28/4 28/5 29/24 30/24 33/2 34/1 37/5 37/17 37/19 38/23 38/25 39/5 39/7 40/5 52/12 52/14 52/18 52/21 56/20 65/19
**mean [7]** 11/24 22/14 23/11 31/10 33/22 33/24 34/3
**meaning [2]** 11/8 31/20
**media [6]** 6/20 6/21 6/22 6/23 6/25 11/21
**meet [6]** 24/10 24/11 52/6 52/7 55/10 55/11

# M

**meeting [5]** 16/18 26/5 51/22 52/13 55/16
**mention [1]** 34/18
**mentioned [2]** 35/19 67/4
**message [7]** 16/10 16/15 16/17 24/12 51/21 60/13 60/14
**messages [7]** 17/16 24/9 45/22 46/21 51/23 51/25 52/10
**met [2]** 26/13 48/2
**Metropolitan [1]** 47/24
**MICHAEL [1]** 1/16
**microphone [3]** 7/18 63/8 66/21
**might [9]** 6/7 7/5 7/7 10/2 37/18 41/25 61/21 63/4 67/5
**mind [2]** 23/19 45/4
**minds [1]** 23/21
**mine [1]** 60/5
**minimum [1]** 34/25
**minor [2]** 49/22 49/23
**minute [5]** 23/12 43/25 50/14 57/4 60/6
**minutes [5]** 44/4 52/17 52/23 53/17 53/23
**Miranda [18]** 19/13 21/22 25/14 25/15 46/6 56/15 56/23 57/3 57/4 59/7 60/21 60/24 61/9 61/16 61/22 61/24 62/11 62/18
**misspoke [2]** 44/11 44/14
**modifier [1]** 60/18
**moment [2]** 16/23 39/15
**monitor [1]** 53/16
**monitoring [1]** 53/22
**month [2]** 31/12 36/2
**moot [1]** 37/23
**more [23]** 5/5 9/1 9/13 10/21 11/20 11/25 14/13 28/13 34/6 36/18 44/7 44/11 45/4 45/6 49/23 50/24 51/13 52/22 55/7 63/7 65/9 67/12 67/25
**morning [8]** 4/1 4/6 4/7 31/6 33/3 34/19 44/8 45/24
**most [4]** 3/12 41/13 45/12 48/22
**motion [37]** 3/14 3/17 3/18 3/19 3/19 4/2 4/4 4/9 4/10 4/10 4/12 5/19 8/17 10/25 11/15 11/21 12/5 12/8 12/9 29/1 29/3 30/25 30/25 31/1 31/15 35/4 40/24 41/18 44/3 44/12 44/15 45/7 46/11 62/21 63/2 63/5 63/11
**motions [5]** 25/1 43/19 63/18 63/18 63/20
**move [6]** 16/7 18/22 29/1 29/3 51/20 54/22
**movements [1]** 28/14
**moving [1]** 43/18
**MPD [10]** 12/18 12/19 14/11 19/8 26/23 48/13 50/21 51/4 57/19 58/20
**Mr. [110]**
**Mr. Brown [3]** 17/16 50/17 55/9
**Mr. Disney [4]** 7/17 10/9 10/25 60/19
**Mr. Gossjankowski [84]**
**Mr. Gossjankowski's [5]** 3/22 5/15 12/13 16/8 29/10
**Mr. Matthews [8]** 12/16 13/13 13/23 14/3 26/20 47/15 50/20 51/24
**Mr. Mulvihill [1]** 56/16
**Mr. Smock [3]** 19/16 64/25 67/13
**Mr. Ulrich [1]** 13/15
**Ms. [23]** 3/10 4/3 4/7 8/25 9/4 10/8 11/17 12/4 13/12 13/13 13/24 14/6 15/11 15/24 17/21 25/20 29/5 44/9 64/6 64/12 64/13 64/17 65/20
**Ms. Akpan [3]** 12/4 25/20 64/13
**Ms. Goetzl [9]** 3/10 4/3 4/7 8/25 10/8 29/5 44/9 64/12 65/20
**Ms. Johnson [3]** 9/4 11/17 64/17
**Ms. Salazar [1]** 64/6
**Ms. Ulrich [7]** 13/12 13/13 13/24 14/6 15/11 15/24 17/21
**much [2]** 34/14 55/23
**multiple [2]** 40/12 49/8
**Mulvihill [11]** 50/5 53/6 55/4 56/5 56/7 56/16 56/18 56/19 56/25 57/7 57/19
**must [6]** 57/8 61/1 61/2 61/12 61/18 61/19
**my [22]** 4/3 4/19 6/3 9/17 9/19 11/9 19/15 24/2 25/13 31/14 32/22 42/6 46/3 52/2 57/15 57/16 59/12 62/16 62/20 62/22 62/23 64/1
**Myler [1]** 48/25

# N

**names [1]** 42/7
**Nathan [1]** 34/2
**Nathan's [1]** 33/23
**nature [1]** 63/19
**Neal [2]** 21/8 46/15
**near [1]** 24/20
**nearby [1]** 54/21
**necessary [1]** 63/23
**necessity [1]** 46/14
**need [23]** 9/13 9/20 11/3 16/19 17/9 22/1 22/5 27/5 28/25 30/20 36/16 37/20 38/2 38/15 38/16 39/6 40/1 43/19 45/4 52/14 61/15 63/21 67/20
**needed [1]** 13/5
**needs [4]** 13/24 21/20 31/8 34/17
**neither [1]** 33/23
**never [2]** 45/4 48/18
**Nevertheless [1]** 54/24
**news [3]** 7/3 7/4 7/5
**next [7]** 12/5 17/11 29/1 51/22 57/2 57/10 62/24
**night [1]** 48/2
**nine [1]** 21/23
**no [41]** 1/4 4/20 6/12 8/6 8/8 15/21 17/11 17/12 18/14 20/14 22/1 22/5 22/8 23/12 23/16 24/15 25/16 27/8 27/9 29/19 29/22 40/19 43/12 43/16 45/8 46/14 46/14 49/16 49/16 49/23 50/7 50/8 52/3 55/20 57/21 59/25 60/1 62/3 64/14 64/15 66/1
**none [1]** 23/24
**nonresponsive [1]** 30/13
**normal [8]** 8/18 9/2 9/5 9/6 9/7 9/9 10/1 48/11
**normally [4]** 9/3 9/4 65/19 67/2
**Northern [1]** 62/7
**not [110]**
**notable [2]** 18/23 19/20

**N**

**note [4]**  4/17 5/3 5/14 70/7
**notes [8]**  15/5 27/8 27/14 27/15 27/16 46/3 51/15 55/5
**nothing [9]**  15/21 30/5 31/12 32/2 32/5 34/21 41/14 51/18 52/19
**now [32]**  4/25 9/22 16/7 16/12 18/7 18/22 20/23 22/4 29/23 30/18 34/2 36/9 37/13 37/19 38/6 38/20 38/23 38/25 41/5 45/8 52/9 56/5 56/13 56/17 57/13 58/5 58/9 58/16 58/17 60/11 63/14 65/11
**now-appellate [1]**  34/2
**number [28]**  3/13 5/4 5/8 7/25 10/19 11/4 11/11 11/16 11/17 11/19 16/22 17/24 18/2 26/13 33/11 33/11 43/7 45/16 49/17 49/19 64/23 65/17 65/21 65/23 66/8 66/8 66/9 66/9
**Number 1 [1]**  43/7
**Number 81 [1]**  17/24
**Number 98 [1]**  18/2
**numbers [3]**  17/22 50/18 65/22
**NW [7]**  1/14 1/17 1/21 2/4 2/8 2/13 70/12

**O**

**O'Connor [1]**  60/20
**Oath [1]**  64/21
**objection [1]**  11/19
**obligation [1]**  62/4
**obligations [1]**  40/14
**obstacles [1]**  61/10
**obtain [1]**  36/11
**obtained [1]**  40/9
**obviously [12]**  16/8 18/3 18/20 21/5 23/2 26/19 27/8 28/12 31/16 32/20 58/13 65/9
**occasion [1]**  59/19
**occasions [1]**  54/10
**occurred [1]**  70/7
**off [4]**  6/3 35/7 53/16 53/23
**offense [1]**  15/17
**offer [1]**  40/1
**offered [1]**  65/3
**office [11]**  1/20 2/3 2/7 9/9 11/3 11/10 55/21 57/25 64/23

**officer [41]**  12/18 12/19 13/1 13/3 14/4 17/25 18/2 19/5 19/9 22/20 23/13 23/17 23/18 24/16 25/14 26/21 26/22 26/23 27/1 36/24 45/22 45/23 45/25 46/18 46/21 46/23 47/16 47/17 47/20 48/8 48/14 48/16 48/22 48/25 49/16 50/6 50/24 51/4 51/13 57/19 58/15
**Officer Matthews [1]**  45/23
**Officer Myler [1]**  48/25
**Officer Ulrich [18]**  12/18 14/4 23/13 26/23 27/1 45/22 46/21 46/23 47/16 47/17 47/20 48/8 48/14 48/16 49/16 50/6 51/4 51/13
**Officer Ulrich's [1]**  48/22
**officers [35]**  13/24 14/8 14/11 14/12 14/14 14/24 15/5 15/9 16/1 19/8 19/8 20/6 22/18 27/12 40/6 47/17 48/2 48/6 48/9 49/3 49/4 49/6 49/14 49/20 49/25 50/25 51/12 51/14 56/16 57/7 59/10 61/6 61/15 61/25 62/3
**officers' [1]**  23/21
**Official [2]**  2/12 70/11
**often [1]**  47/25
**oh [2]**  52/24 67/9
**okay [15]**  4/5 10/6 17/5 25/20 29/2 29/3 32/16 33/18 40/20 43/8 43/13 43/24 44/6 65/13 68/25
**one [45]**  4/20 12/23 13/22 13/25 14/13 15/24 16/3 16/23 17/23 18/13 24/17 24/17 24/21 28/19 33/13 34/2 34/6 37/5 40/5 40/7 40/25 41/6 42/16 42/19 44/11 45/14 45/14 45/15 49/10 53/15 53/18 53/19 53/25 54/18 56/10 56/16 57/4 57/7 57/12 58/2 63/3 65/3 66/14 66/17 66/22
**one's [1]**  62/11
**only [12]**  4/16 4/21 15/18 15/24 23/18 31/21 36/18 39/17 39/21 41/2 64/11 64/16
**operating [1]**  26/20
**opinion [11]**  6/4 22/3 33/23

**opinions [2]**  42/4 42/6
**opportunity [1]**  36/11
**opposed [2]**  20/12 36/8
**option [1]**  8/8
**oral [3]**  43/25 44/2 45/8
**orchestra [1]**  12/5
**order [14]**  3/17 3/24 21/21 31/10 31/25 31/25 34/25 37/4 39/24 41/18 45/10 48/23 65/23 65/25
**original [5]**  36/8 36/17 37/9 37/11 39/8
**Osman [1]**  49/1
**other [37]**  5/11 5/12 8/5 8/13 8/14 9/1 9/19 11/15 11/16 11/20 14/8 14/17 15/25 16/1 23/21 25/1 27/12 32/6 32/7 33/14 33/16 38/16 38/17 40/10 44/18 47/17 49/10 51/12 53/14 53/16 56/7 60/25 62/8 64/16 64/20 67/18 68/6
**others [3]**  48/19 48/24 68/1
**our [26]**  3/7 4/9 4/10 4/10 5/1 6/21 8/2 9/5 9/6 12/12 14/14 18/19 18/20 18/25 19/15 19/17 22/8 28/20 29/7 40/24 41/16 44/15 44/21 44/24 53/10 59/22
**out [33]**  4/9 6/1 9/23 10/10 10/17 13/4 13/19 17/20 19/16 21/1 21/20 24/11 24/21 26/20 29/9 33/19 34/7 34/18 35/22 37/1 37/6 47/9 47/18 50/22 54/15 54/22 55/24 60/19 65/4 65/5 65/11 66/4 67/19
**outset [1]**  29/9
**outside [4]**  14/10 39/23 40/14 48/3
**over [6]**  20/11 25/15 38/24 41/4 55/3 66/18
**overbroad [8]**  29/11 30/16 37/18 37/21 39/3 43/2 44/22 44/25
**overcome [1]**  38/6
**overhear [1]**  25/5
**oversee [1]**  25/5
**overwrite [1]**  37/10
**owned [1]**  40/12

**P**

**page [14]** 4/11 17/3 17/4 40/24 40/25 41/1 43/5 43/7 43/18 57/5 59/23 60/7 62/14 63/13
**Page 142 [1]** 60/7
**Page 15 [4]** 40/24 41/1 43/5 43/7
**Page 2 [3]** 4/11 17/3 17/4
**Page 744 [1]** 59/23
**Page 923 [1]** 62/14
**Pages [1]** 60/5
**Pages 859 [1]** 60/5
**pandemic [1]** 70/8
**panel [5]** 8/19 9/2 10/1 67/7 67/10
**paper [2]** 37/8 56/24
**papers [2]** 29/7 30/25
**paragraph [1]** 41/1
**parents [2]** 47/22 47/23
**parlance [1]** 49/14
**part [1]** 44/15
**participants [2]** 6/17 53/15
**participated [2]** 54/6 54/7
**particular [5]** 6/6 7/11 9/21 30/16 44/19
**particularly [1]** 3/21
**parties [1]** 3/9
**pass [2]** 38/24 66/4
**passed [2]** 11/6 11/7
**pat [1]** 49/11
**patted [3]** 50/13 51/6 54/24
**PAUL [1]** 1/9
**people [22]** 5/21 7/3 7/7 9/8 9/15 10/17 10/20 11/22 15/25 18/4 18/18 25/1 25/4 34/17 38/16 46/8 47/5 53/11 53/13 54/20 66/2 68/6
**people's [1]** 11/20
**peremptories [1]** 9/11
**peremptorily [1]** 5/24
**perempts [1]** 67/1
**perhaps [2]** 55/23 65/8
**period [2]** 29/20 30/14
**person [15]** 29/12 29/15 32/13 32/14 32/24 33/4 33/12 33/14 42/20 44/18 45/2 53/18 53/19 53/20 53/21
**personal [1]** 31/23
**persuade [1]** 28/5
**phone [26]** 13/17 23/9 26/12

29/12 29/17 30/23 32/3 32/7 32/9 32/11 32/21 32/24 32/24 33/1 33/8 33/10 33/11 35/15 35/19 40/9 41/7 41/8 44/19 44/24 48/19 50/17
**phones [1]** 29/18
**photo [1]** 45/21
**Photograph [2]** 17/24 18/2
**photographs [5]** 35/14 36/22 36/22 37/1 42/15
**phrase [1]** 66/6
**physical [4]** 3/20 29/4 31/1 31/3
**picking [1]** 8/6
**picture [1]** 47/9
**pictured [1]** 50/3
**pictures [2]** 31/15 31/21
**piece [1]** 37/8
**pin [1]** 25/24
**place [5]** 25/4 37/16 55/14 57/6 63/14
**placed [4]** 48/18 55/17 55/18 56/17
**plainclothes [1]** 49/11
**Plaintiff [2]** 1/4 1/13
**plan [2]** 11/5 11/7
**play [1]** 24/18
**pleadings [1]** 4/9
**pleas [3]** 68/14 68/14 68/15
**Please [2]** 52/7 70/7
**point [25]** 4/9 9/24 11/21 14/13 14/19 15/10 21/10 21/11 26/3 28/12 29/8 31/11 33/19 34/7 37/6 42/21 45/10 47/21 52/6 52/19 52/20 56/1 57/21 58/2 58/20
**pointed [1]** 60/19
**points [2]** 12/9 54/15
**police [16]** 14/24 20/13 22/11 24/10 24/11 45/21 46/16 46/18 46/24 47/8 47/15 47/24 49/5 49/14 61/1 61/10
**pool [10]** 5/3 5/6 5/10 5/18 5/22 7/12 9/6 10/20 11/25 12/1
**population [1]** 5/17
**portion [2]** 5/16 5/17
**position [2]** 28/20 44/15
**positioning [1]** 25/9
**possessed [1]** 40/12
**possession [2]** 32/20 36/13

**possibility [1]** 8/18
**possible [3]** 4/20 6/12 11/10
**possibly [1]** 3/18
**Post [1]** 4/23
**posters [4]** 13/9 13/10 13/19 45/19
**potential [1]** 7/22
**practical [1]** 25/3
**practice [1]** 22/20
**practices [1]** 54/5
**prefer [2]** 22/2 22/17
**preference [1]** 39/19
**preparation [1]** 52/13
**present [15]** 3/9 8/4 16/12 16/20 17/10 32/18 48/7 50/25 54/10 57/13 57/17 58/19 58/22 61/3 61/13
**presented [1]** 40/13
**preservation [1]** 23/12
**preserve [5]** 28/2 28/3 51/8 51/14 60/9
**preserved [2]** 14/19 14/23
**press [1]** 8/3
**presumption [2]** 38/6 44/20
**pretrial [1]** 63/20
**pretty [1]** 4/2
**previous [1]** 7/11
**primary [1]** 61/16
**printouts [1]** 45/24
**prior [2]** 6/14 39/19
**Pro [1]** 41/7
**probable [3]** 37/16 38/22 38/25
**probably [3]** 11/14 26/4 65/11
**problem [7]** 6/20 8/6 10/4 15/3 20/23 21/3 30/13
**problematic [1]** 27/6
**problems [2]** 38/5 39/3
**proceed [1]** 3/25
**proceeding [1]** 3/2
**proceedings [2]** 69/3 70/5
**process [4]** 8/11 8/11 35/25 36/4
**processed [1]** 55/25
**produced [2]** 23/25 41/6
**proffered [1]** 33/15
**prong [1]** 6/21
**property [9]** 3/20 29/4 31/2 31/9 34/15 35/1 37/23 38/25 44/16

# P

prophylactic [1] 60/21
proportion [1] 7/13
proposal [1] 65/8
propose [4] 11/17 65/7 65/10
65/11
prosecute [2] 38/15 38/16
prosecution [1] 38/14
protection [2] 60/22 61/16
protocol [1] 54/13
Proud [1] 64/21
proved [2] 27/24 68/23
provide [2] 52/25 60/22
provided [7] 24/13 36/10
36/11 39/6 41/10 42/12 45/20
public [8] 1/20 2/3 2/7 12/25
19/14 19/18 20/4 58/14
publicity [1] 10/3
purpose [3] 20/9 50/15 66/2
purposes [1] 58/16
pursuant [7] 3/20 29/10
29/16 30/12 32/12 32/25 43/2
put [7] 17/14 20/16 21/9 24/5
57/2 66/13 66/14

# Q

qualified [1] 7/7
qualms [1] 10/4
question [34] 7/21 8/14 8/15
8/17 9/13 9/14 9/17 16/11
17/13 19/18 19/24 20/2 20/4
20/21 27/21 27/21 27/22 28/1
28/2 28/4 30/24 32/22 32/23
36/12 37/15 37/19 52/16 59/3
59/25 60/13 66/8 66/8 66/9
66/9
questioned [1] 61/13
questioning [8] 27/19 61/7
61/9 61/16 61/18 61/20 61/25
62/4
questionnaire [16] 8/18 8/24
8/24 9/15 10/14 10/16 10/19
11/5 11/7 64/18 64/19 65/4
65/18 67/4 67/9 67/10
questionnaires [2] 8/22 9/20
questions [15] 5/19 8/13
11/24 21/17 29/8 52/6 57/8
57/12 57/17 58/2 58/21 62/10
66/5 66/23 66/24
quickly [1] 28/9
quote [1] 58/15

quoted [2] 14/21 60/15
quoting [1] 58/12

# R

raise [2] 64/12 64/13
raised [4] 8/17 68/5 68/5
68/5
Rakoff [3] 33/21 33/22 33/25
range [3] 7/5 44/22 68/15
rather [4] 8/12 10/21 11/12
50/8
rationale [1] 61/1
reach [2] 13/4 26/14
reached [2] 13/19 47/18
read [15] 7/4 7/4 38/2 38/3
38/3 56/17 56/20 56/25 57/1
57/9 57/11 57/15 58/8 59/1
60/15
reading [6] 29/24 30/25
56/19 56/23 58/9 69/1
ready [1] 43/15
real [3] 21/19 38/5 39/3
really [6] 6/12 9/22 14/19
21/24 39/21 56/5
reason [3] 6/2 25/16 60/18
reasonable [2] 27/24 68/22
reasonably [1] 61/7
reasons [7] 25/3 41/17 46/12
62/20 62/23 66/15 66/17
recall [1] 32/20
received [3] 34/19 34/22
44/18
recently [1] 34/19
recess [1] 44/5
recognize [2] 18/16 65/10
recollection [1] 51/17
reconfigured [1] 56/2
record [5] 4/17 27/1 28/6
37/7 45/9
recorded [3] 48/21 55/5 55/6
recording [1] 27/9
recordings [3] 46/1 46/4
46/5
red [6] 13/2 32/8 32/9 32/11
33/1 41/8
redundant [1] 31/16
referred [1] 42/11
referring [1] 56/4
refers [1] 60/24
refusal [1] 36/14
regarding [1] 61/2

regardless [1] 41/19
regularity [1] 38/7
reinforces [1] 5/1
reject [1] 51/2
rejecting [1] 11/11
related [1] 8/2
relation [3] 5/4 5/11 7/13
relatively [1] 7/24
relatives [1] 66/10
relevant [5] 4/12 32/5 40/2
48/23 67/12
reliability [1] 51/16
reliable [3] 14/20 27/3 28/1
relying [1] 68/19
remain [1] 57/10
remember [4] 13/13 27/1
42/7 42/13
remind [1] 39/18
remotely [1] 70/9
removed [1] 56/1
rendering [1] 6/4
repeated [1] 7/22
repeatedly [1] 30/20
report [2] 49/15 67/15
reported [1] 49/17
reporter [4] 2/11 2/12 66/19
70/11
reporting [1] 70/9
request [9] 11/11 24/15
52/21 60/14 60/17 61/6 61/15
61/21 62/3
requested [1] 30/20
requests [3] 61/18 62/1 62/9
require [1] 61/20
required [1] 23/17
requires [1] 28/14
requiring [1] 61/8
residence [4] 14/10 28/11
48/3 48/5
resolve [1] 11/14
respect [20] 3/13 3/20 29/4
30/17 44/11 44/14 44/22 45/7
45/13 51/5 51/8 52/24 57/24
59/16 59/17 60/11 60/12 61/2
61/2 68/3
respectfully [1] 6/10
respond [4] 28/9 43/11 52/16
52/25
responded [1] 52/4
responds [2] 58/15 59/5
response [5] 17/12 24/15

# R

**response... [3]** 26/18 66/5 66/6
**responsive [2]** 30/13 31/22
**rest [2]** 31/19 31/23
**resulted [1]** 4/18
**return [6]** 31/1 34/25 36/20 37/22 38/24 41/18
**returned [3]** 42/21 42/23 43/1
**returning [2]** 39/22 40/19
**review [2]** 4/14 62/16
**reviewed [1]** 57/23
**right [26]** 3/24 4/25 12/4 16/12 17/2 19/1 19/14 20/3 20/5 20/7 24/1 28/22 30/10 34/3 54/19 57/10 57/13 58/14 58/16 59/19 61/3 61/12 61/14 61/19 62/18 65/12
**rights [13]** 19/22 20/11 46/7 56/15 56/25 57/5 57/8 57/16 57/16 58/6 59/4 61/24 62/11
**riots [1]** 47/6
**road [1]** 37/24
**room [12]** 2/13 18/9 18/9 18/11 18/19 19/6 19/10 54/18 57/24 59/25 65/6 66/13
**route [1]** 8/11
**routine [4]** 22/24 23/4 25/13 59/7
**row [1]** 40/6
**RPR [2]** 2/11 70/11
**rule [15]** 8/16 29/4 30/10 39/7 39/11 40/15 42/2 42/7 44/3 44/8 44/12 44/15 45/6 60/21 61/8
**Rule 16 [6]** 30/10 39/7 39/11 40/15 42/2 42/7
**Rule 41 [5]** 44/3 44/8 44/12 44/15 45/6
**Rule 481 [1]** 29/4
**ruling [2]** 30/15 62/23

# S

**safeguards [1]** 61/9
**said [49]** 6/11 13/19 13/23 14/20 15/6 15/9 16/6 16/15 20/8 21/19 21/24 22/1 22/2 22/13 22/14 22/16 22/17 26/11 27/2 27/3 27/8 27/24 28/21 29/20 32/4 39/25 42/16

46/20 47/19 48/7 49/12 50/2 50/10 50/12 50/18 51/11 51/25 52/3 52/7 52/25 55/4 56/16 56/17 58/13 58/23 59/2 60/20 62/5 67/2
**Salazar [1]** 64/6
**same [11]** 12/18 12/19 26/22 40/11 41/10 43/18 54/7 56/4 56/8 62/19 63/13
**Sara [1]** 3/7
**sat [3]** 5/22 6/6 7/10
**save [2]** 15/22 68/12
**saw [2]** 54/15 54/17
**say [27]** 5/18 6/7 6/8 6/8 13/7 15/9 19/8 21/6 27/3 29/13 32/25 34/1 40/15 40/17 42/24 44/9 44/13 45/4 57/22 59/11 60/18 61/1 62/22 65/1 66/8 67/22 68/3
**saying [11]** 8/8 19/22 20/22 31/5 39/8 41/12 41/25 43/8 47/14 50/2 53/3
**says [12]** 4/11 17/11 22/4 22/19 34/20 41/4 52/19 57/5 57/15 58/10 59/5 60/19
**scenario [1]** 59/7
**scene [6]** 14/8 14/12 14/14 27/12 50/1 50/4
**schedule [1]** 67/21
**scheduled [1]** 5/9
**school [1]** 12/21
**scope [3]** 35/5 35/9 38/10
**Scott [5]** 16/18 16/18 33/8 45/25 48/12
**scrambled [2]** 65/22 65/24
**screen [1]** 30/23
**search [7]** 3/20 29/16 38/11 44/23 46/9 46/10 55/18
**searched [1]** 34/20
**searches [2]** 34/22 36/7
**seat [1]** 39/24
**seated [1]** 18/10
**second [3]** 35/5 35/6 40/25
**secondly [3]** 59/15 61/5 66/19
**see [10]** 9/20 13/10 16/21 23/5 40/11 43/8 57/5 67/1 67/18 68/25
**seeing [1]** 13/5
**seem [2]** 12/4 34/14
**seems [3]** 7/24 28/1 28/4

**seen [12]** 4/16 6/25 10/3 13/14 13/18 21/2 21/2 47/3 47/4 56/13 56/14 67/25
**seize [1]** 37/16
**seized [15]** 3/20 3/21 29/10 29/11 29/14 29/15 29/16 32/12 32/24 36/5 36/24 41/3 42/20 43/2 44/17
**seizing [2]** 36/24 41/4
**seizure [1]** 44/16
**selected [1]** 5/21
**selecting [1]** 10/5
**selection [7]** 8/7 8/11 63/17 65/5 65/19 67/11 67/16
**send [4]** 9/9 65/11 65/21 66/12
**sent [1]** 16/18
**sentencing [1]** 68/15
**separate [4]** 6/25 9/14 49/19 67/17
**sergeant [3]** 16/1 48/6 49/2
**served [1]** 7/24
**set [12]** 16/18 17/16 25/9 25/10 25/11 53/22 54/13 55/15 56/3 63/1 63/19 63/22
**seven [1]** 41/14
**several [3]** 19/8 42/9 47/10
**Shakely [1]** 3/8
**Shannon [1]** 3/7
**she [27]** 13/15 13/17 14/6 14/7 14/9 15/13 15/14 15/25 23/14 23/15 27/4 27/8 27/11 46/25 47/21 47/24 47/25 48/23 49/20 50/7 53/21 54/1 54/2 54/3 54/6 60/24 61/22
**she's [6]** 14/6 34/3 47/21 47/22 47/23 47/25
**sheet [1]** 56/24
**shift [1]** 23/24
**shifts [1]** 49/21
**short [2]** 4/2 19/16
**should [14]** 8/23 11/14 11/25 15/23 23/19 34/25 40/15 41/16 41/18 44/24 47/6 66/7 66/7 68/4
**show [3]** 17/22 36/22 37/14
**showed [7]** 13/16 47/13 47/17 49/2 50/10 50/11 53/14
**shown [2]** 17/20 59/16
**shows [7]** 6/16 18/8 23/10 52/10 56/15 56/22 58/2

**shred [1]** 33/13
**side [3]** 11/10 11/16 18/13
**sides [2]** 8/20 9/18
**Siege [1]** 1/17
**sign [6]** 24/17 24/21 24/22 28/11 28/13 47/1
**significance [1]** 24/5
**significant [1]** 18/23
**signs [1]** 57/18
**silent [1]** 57/10
**simpler [1]** 37/18
**simply [3]** 5/10 7/13 42/21
**simultaneously [1]** 26/23
**since [2]** 58/5 68/12
**single [4]** 38/1 41/23 64/22 67/17
**singular [1]** 40/9
**sir [3]** 17/1 24/2 64/25
**sirens [1]** 49/4
**sit [2]** 65/25 65/25
**sits [1]** 53/18
**sitting [3]** 54/18 56/12 66/20
**situation [2]** 6/11 52/2
**situations [1]** 60/8
**six [5]** 29/9 29/10 32/4 33/14 43/2
**slightly [1]** 11/25 12/1
**small [6]** 5/10 7/13 7/24 18/8 18/19 24/19
**smaller [2]** 5/6 5/7
**smartest [2]** 33/25 34/2
**SMOCK [5]** 2/3 3/6 19/16 64/25 67/13
**so [104]**
**socially [1]** 47/3
**some [26]** 10/17 11/22 11/23 24/5 26/3 31/14 31/15 40/18 45/6 45/10 47/4 47/5 51/23 51/25 52/6 52/20 54/17 55/7 56/1 58/20 60/22 63/17 66/12 66/13 66/23 67/25
**somebody [2]** 21/7 54/22
**somehow [1]** 50/22
**someone [6]** 7/10 21/5 46/25 47/14 49/18 50/3
**something [6]** 23/19 41/25 65/1 65/11 66/7 67/21
**sometimes [1]** 38/13
**somewhat [2]** 46/21 59/23
**somewhere [2]** 33/9 33/10

**soon [2]** 11/4 44/1
**sooner [1]** 11/12
**sorry [7]** 6/1 16/14 16/16 16/17 16/21 16/23 32/13
**sort [1]** 40/18
**space [1]** 54/20
**speak [6]** 7/17 12/18 13/23 13/24 14/3 58/17
**speaking [2]** 26/19 46/16
**special [4]** 50/4 53/6 67/7 67/10
**specifically [7]** 26/5 29/18 39/20 42/2 42/2 42/8 49/8
**spent [2]** 18/23 45/12
**split [1]** 21/24
**spoken [1]** 17/15
**STACY [3]** 2/11 70/11 70/13
**stands [2]** 22/4 53/20
**start [6]** 4/2 10/21 11/1 19/21 21/16 21/17
**started [1]** 28/25
**state [1]** 28/16
**stated [3]** 13/2 14/22 16/11
**statement [28]** 12/10 15/8 16/7 17/14 17/17 19/11 19/17 19/18 19/20 19/23 20/4 20/15 22/11 22/25 23/4 25/14 25/17 27/11 27/20 33/9 33/10 44/11 46/13 51/10 57/15 59/3 61/21 62/2
**statements [22]** 3/14 3/18 12/8 12/11 12/14 14/4 14/15 14/18 15/7 26/24 32/19 44/1 45/7 45/13 46/11 51/17 51/19 60/9 60/10 60/15 62/10 62/21
**states [11]** 1/1 1/3 1/10 3/4 3/4 19/13 38/12 59/23 60/4 60/6 62/6
**status [1]** 52/1
**stems [1]** 36/7
**step [1]** 23/3
**steps [2]** 49/21 62/24
**sticking [1]** 9/21
**still [2]** 11/12 36/13
**stipulate [1]** 36/15
**stop [10]** 15/13 16/4 23/15 49/13 49/18 55/1 57/13 57/22 58/3 62/4
**storage [2]** 37/7 40/19
**store [1]** 36/18
**straight [1]** 10/18

**street [7]** 1/14 1/17 21/20 24/22 24/24 25/4 48/4
**stress [1]** 22/22
**stretch [2]** 22/10
**strike [1]** 66/3
**strikes [1]** 66/24
**striking [2]** 5/23 5/24
**stronger [1]** 21/12
**stuff [3]** 21/19 37/22 42/4
**stupid [1]** 33/24
**subject [2]** 35/9 70/8
**submit [2]** 6/10 7/9
**subsequent [1]** 36/7
**subset [1]** 4/16
**succeed [1]** 7/5
**such [8]** 33/15 49/6 49/23 54/5 66/1 66/9 66/9 68/21
**sufficient [3]** 42/1 63/21 63/25
**sufficiently [2]** 7/4 30/16
**suggested [4]** 7/10 44/6 46/21 55/11
**suggesting [2]** 67/13 67/14
**suggestion [1]** 67/12
**suggests [1]** 58/7
**Suite [3]** 1/21 2/4 2/8
**summarized [1]** 54/3
**Supp [3]** 60/6 62/7 62/13
**support [1]** 46/10
**suppose [2]** 39/20 45/3
**supposed [3]** 11/1 30/12 63/16
**suppress [15]** 3/14 3/17 12/8 15/1 15/2 25/16 31/1 37/21 41/16 42/25 44/24 45/7 46/11 60/10 62/21
**suppressed [2]** 14/18 31/3
**Supreme [6]** 4/13 21/17 21/18 60/19 60/20 62/4
**supression [3]** 14/25 27/10 28/2
**sure [7]** 7/18 20/1 20/10 26/25 63/12 63/13 64/6
**surface [1]** 7/8
**surprised [1]** 7/3
**suspect [9]** 15/17 21/21 61/7 61/12 61/14 61/18 61/20 61/21 61/25
**suspect's [2]** 61/2 62/2
**suspected [2]** 13/1 15/7
**suspended [1]** 12/21

**S**

switch [2]  53/16 53/23
synced [1]  31/17

**T**

table [3]  18/10 54/23 56/3
tablet [3]  29/18 32/8 41/9
tag [1]  23/15
tagged [2]  23/18 24/4
tainted [1]  5/16
take [18]  8/12 12/11 13/6
 15/5 22/23 23/3 27/14 27/15
 27/16 35/7 36/21 39/1 43/24
 44/4 49/7 49/21 51/15 63/14
taken [10]  30/1 33/12 35/15
 35/21 36/6 36/25 37/1 44/5
 55/19 55/24
taking [3]  12/16 15/6 37/10
talk [19]  10/24 10/24 11/15
 13/20 21/6 23/12 26/8 46/24
 47/8 47/14 47/19 48/8 50/21
 53/8 56/21 62/23 63/7 65/16
 65/17
talked [2]  45/23 48/3
talking [7]  7/23 16/22 18/19
 20/23 41/20 42/19 66/20
Tanya [1]  9/6
technological [1]  70/8
tell [12]  6/4 8/7 23/14 23/19
 33/2 37/17 42/1 55/16 58/4
 64/23 65/19 66/5
telling [2]  39/5 39/7
terms [2]  41/20 51/9
test [1]  60/20
testified [16]  12/17 13/12
 13/14 13/15 14/6 14/24 19/6
 27/13 47/20 47/25 48/9 49/17
 49/20 54/2 54/3 55/14
testify [4]  14/9 23/22 27/7
 27/12
testimony [16]  3/13 12/12
 23/23 45/11 46/20 48/24 51/3
 53/7 53/9 53/13 54/9 55/1
 56/4 56/6 59/17 68/20
testimony's [1]  27/25
text [17]  16/10 16/15 16/17
 17/11 17/11 21/11 24/9 24/12
 45/22 46/20 51/20 51/25 52/9
 52/18 53/3 60/13 60/14
texted [1]  55/15
texts [6]  17/8 45/24 52/11

52/17 55/8 62/19
than [13]  8/12 8/18 9/2 9/13
 10/1 10/21 11/12 11/25 28/13
 37/5 49/23 51/13 67/25
thank [21]  4/5 7/15 7/16 7/19
 10/7 12/2 12/3 15/19 21/13
 21/15 25/19 25/21 28/8 28/23
 28/24 29/6 40/21 40/22 43/10
 43/12 68/24
that [401]
that's [44]  3/23 4/15 5/18
 7/23 8/25 15/3 20/14 21/19
 22/20 22/20 24/2 24/3 24/7
 26/3 26/4 26/7 27/20 28/1
 28/4 30/11 31/5 37/3 37/13
 39/21 41/24 42/1 44/15 46/8
 47/4 49/24 51/1 53/2 56/22
 57/8 57/11 58/7 60/19 62/4
 62/22 63/25 64/3 65/2 66/3
 67/2
their [10]  6/5 24/12 30/9
 30/17 30/17 42/3 48/25 49/20
 49/21 51/17
them [37]  11/12 11/24 12/25
 13/20 16/3 18/11 18/12 21/9
 21/24 23/25 24/1 24/11 26/8
 30/14 30/19 31/19 31/22
 33/23 34/11 34/11 36/21
 37/16 38/16 40/1 42/7 49/22
 50/6 50/7 50/11 53/8 53/18
 60/16 66/5 66/12 66/13 66/14
 66/14
themselves [4]  36/14 39/22
 49/6 61/17
then [36]  11/18 16/4 19/9
 20/10 20/21 28/16 29/17
 33/11 36/6 37/9 37/14 37/21
 38/9 39/18 40/16 44/1 49/2
 51/20 53/23 55/9 55/19 56/1
 56/8 56/21 56/24 57/20 58/8
 58/9 60/25 63/3 66/4 66/14
 66/23 66/24 66/25 68/12
there [83]
there's [20]  6/12 15/21 17/17
 17/22 18/14 19/24 22/1 22/5
 23/1 23/16 26/15 27/9 28/7
 30/25 32/3 38/7 45/3 55/20
 57/20 67/24
thereafter [1]  20/8
therefore [4]  49/15 53/14
 61/23 70/8

these [18]  6/22 10/11 14/11
 14/18 29/25 32/22 33/16 34/5
 36/11 37/9 37/13 38/4 38/17
 39/21 40/7 40/11 40/19 51/25
they [97]
they're [11]  4/12 19/21 19/21
 24/23 31/16 31/17 33/24 38/4
 41/20 65/22 66/20
they've [8]  6/25 30/18 31/12
 31/14 31/17 32/5 41/13 41/23
thing [12]  22/25 24/17 24/17
 24/21 34/18 39/17 41/23
 64/11 64/16 66/3 66/25 67/22
things [10]  27/8 27/24 28/5
 30/1 30/1 34/6 38/8 54/13
 56/2 67/19
think [47]  6/17 7/8 12/12
 14/19 15/4 15/23 17/19 21/9
 21/10 22/10 22/22 23/1 23/22
 24/4 24/7 25/14 26/2 26/15
 27/6 28/12 32/4 37/17 38/9
 38/12 44/2 45/3 45/6 45/19
 46/1 48/24 51/9 51/23 54/7
 55/6 56/8 56/16 57/7 59/21
 63/2 63/25 64/18 65/7 66/7
 66/19 68/4 68/10 68/17
thinks [1]  68/20
third [2]  41/1 53/21
this [97]
those [16]  9/23 12/24 18/17
 31/21 31/24 38/7 38/19 52/6
 54/10 54/20 60/8 62/13 62/20
 62/20 62/23 68/16
though [2]  23/22 59/9
thought [6]  4/2 10/15 10/19
 10/22 26/16 47/5
three [27]  13/22 14/1 14/8
 14/13 15/25 18/12 19/9 21/6
 23/9 25/15 29/19 32/2 32/5
 35/3 41/9 41/10 41/24 43/4
 45/13 45/17 47/13 48/6 53/7
 53/13 53/25 54/7 56/9
through [10]  45/17 46/5
 48/15 58/8 58/22 59/17 62/14
 64/5 68/2 68/8
thus [1]  4/23
time [42]  9/20 9/23 11/20
 12/15 12/18 12/20 14/1 14/9
 14/14 14/15 15/11 15/12
 15/25 16/2 16/6 18/21 18/24
 19/2 19/10 20/11 20/12 23/1

## T

**time... [20]** 26/12 26/22 30/15 32/24 33/5 33/6 36/23 40/21 45/2 46/17 51/13 55/1 57/6 57/14 57/16 59/20 63/17 66/14 67/25 68/13
**timeline [1]** 35/4
**times [5]** 14/1 21/6 25/16 49/8 55/24
**title [1]** 57/5
**today [4]** 3/15 8/15 26/6 65/1
**together [2]** 21/2 21/11
**told [24]** 20/14 24/3 26/6 26/8 33/2 37/19 38/24 47/15 48/18 49/7 49/8 50/7 50/8 53/2 54/1 54/6 54/25 54/25 55/9 56/18 58/2 58/5 61/12 67/3
**too [8]** 5/10 6/3 7/13 18/4 62/10 62/17 64/19 65/10
**took [4]** 25/4 31/20 34/10 55/5
**top [3]** 6/3 13/2 18/3
**touch [5]** 43/17 43/20 46/23 50/18 55/9
**towards [1]** 17/4
**trained [1]** 15/5
**training [1]** 15/6
**transcript [2]** 1/9 45/10
**transcription [1]** 70/5
**transferred [1]** 40/10
**transform [1]** 61/9
**translation [1]** 48/1
**treated [1]** 51/5
**trial [29]** 4/14 4/18 6/6 6/9 6/13 6/15 8/4 8/6 9/7 9/9 9/22 11/1 27/11 27/11 29/21 31/9 31/12 35/13 36/2 36/23 40/14 41/12 43/20 51/13 63/1 63/14 64/9 67/25 68/10
**trials [5]** 4/21 4/24 5/8 5/9 7/23
**tried [2]** 7/14 67/18
**troubling [1]** 15/23
**true [7]** 26/4 26/4 46/15 47/15 54/15 54/21 62/19
**trust [1]** 47/16
**truthful [1]** 58/3
**try [4]** 6/1 11/14 19/16 67/21
**trying [3]** 20/2 20/25 28/5
**turn [9]** 13/9 13/21 20/19

29/22 21/4 25/23 47/7 47/11 50/3
**two [32]** 4/20 9/5 9/8 12/23 12/23 14/12 14/13 16/1 19/8 24/11 28/5 29/18 29/23 29/23 30/19 33/24 34/6 36/25 37/12 41/7 47/22 48/6 49/3 53/10 53/14 53/23 55/6 56/7 56/9 63/10 66/15 66/17
**two years [4]** 29/23 29/23 30/19 36/25
**type [1]** 22/25
**typically [3]** 49/18 53/13 65/20

## U

**U.S [4]** 2/12 21/18 22/4 67/5
**U.S. [2]** 22/12 61/1
**U.S. 460 [1]** 61/1
**U.S.-Davis [1]** 22/12
**UBONG [2]** 1/20 3/6
**Ulrich [29]** 12/18 13/12 13/13 13/15 13/24 14/4 14/6 15/11 15/24 17/21 23/13 26/23 27/1 45/22 46/21 46/23 47/16 47/17 47/20 48/7 48/8 48/14 48/16 49/1 49/12 49/16 50/6 51/4 51/13
**Ulrich's [1]** 48/22
**ultimately [1]** 36/13
**un [2]** 6/13 50/22
**un-custodial [1]** 50/22
**un-hear [1]** 6/13
**unable [1]** 5/16
**unambiguous [5]** 60/14 60/17 60/18 62/2 62/9
**unanimously [1]** 68/22
**uncontested [2]** 51/3 55/2
**uncontradicted [1]** 56/5
**under [18]** 14/10 24/7 27/21 29/4 30/8 30/10 39/7 39/11 40/14 42/2 49/7 50/13 54/25 55/14 55/17 55/20 58/5 59/8
**understand [12]** 3/14 3/23 4/24 5/5 15/2 21/8 21/9 34/4 34/12 38/21 57/8 57/16
**understanding [2]** 4/19 20/19
**understands [1]** 20/6
**unequivocal [7]** 21/21 21/24 22/5 28/21 59/8 62/3 68/20

**uniform [1]** 49/5
**unique [1]** 23/1
**uniqueness [2]** 35/10 40/9
**unit [1]** 47/24
**UNITED [10]** 1/1 1/3 1/10 3/3 3/4 38/12 59/23 60/3 60/6 62/6
**University [1]** 24/20
**unless [6]** 5/19 8/13 37/4 49/21 61/25 62/21
**unreasonable [3]** 30/18 34/23 34/24
**until [3]** 8/16 58/18 61/25
**up [27]** 5/21 8/3 16/18 17/17 18/14 20/1 22/2 22/3 22/6 22/13 22/17 22/18 22/19 22/21 25/9 25/11 47/17 49/2 54/13 54/21 55/15 56/3 58/10 59/10 65/8 65/21 66/23
**upgrade [1]** 49/22
**upon [2]** 4/14 35/19
**urged [2]** 47/7 47/11
**urgency [1]** 13/25
**urging [1]** 13/23
**us [15]** 5/19 9/9 29/22 30/22 32/1 41/3 41/21 41/24 53/2 54/1 54/6 58/3 58/3 58/4 58/17
**USAO [1]** 1/16
**USC [1]** 27/21
**use [8]** 16/5 29/21 35/13 41/12 41/17 41/25 42/3 42/8
**used [3]** 54/13 67/3 67/5
**using [1]** 48/19

## V

**vacuum [1]** 19/24
**various [2]** 3/21 46/8
**venue [15]** 3/19 4/2 4/4 4/8 4/15 5/13 5/19 8/2 8/9 8/10 8/12 11/15 44/2 44/7 45/5
**verbal [1]** 24/24
**versus [9]** 3/4 21/18 22/4 59/23 60/4 60/6 62/6 62/10 67/5
**very [19]** 6/17 11/4 13/2 18/9 18/17 19/12 22/9 22/11 25/14 28/13 28/17 29/7 29/11 34/14 40/10 50/14 55/4 59/18 59/22
**via [2]** 2/9 30/22
**video [18]** 18/8 18/19 30/22

**V**

video... **[15]** 40/5 41/7 42/11 42/12 42/16 42/18 42/19 46/4 54/16 56/13 56/15 56/22 57/6 58/1 62/16
videos **[10]** 6/15 31/21 35/14 40/4 47/3 47/4 54/16 57/23 59/16 68/19
view **[6]** 8/21 9/17 25/13 25/17 49/14 59/12
viewed **[1]** 54/16
viewing **[1]** 21/10
views **[4]** 62/20 64/18 67/16 67/17
violence **[3]** 13/3 47/4 47/5
violent **[1]** 6/23
VITALI **[2]** 1/6 3/4
voir **[5]** 7/6 8/11 8/19 10/18 67/16
voluntariness **[1]** 51/19
voluntary **[10]** 12/14 14/5 14/16 27/20 46/13 50/23 50/25 51/10 60/9 61/24
vs **[1]** 1/5

**W**

W-E-Y **[1]** 34/4
wait **[2]** 8/16 58/18
waiver **[2]** 46/7 61/24
walk **[2]** 26/11 54/23
walked **[2]** 24/6 24/7
walks **[1]** 40/6
wall **[3]** 18/10 25/8 54/19
want **[47]** 3/17 3/25 4/9 4/17 9/14 10/8 11/12 11/24 15/10 16/12 20/13 21/6 23/12 24/17 25/24 26/10 26/25 28/9 28/16 31/3 32/18 33/19 33/25 34/6 36/21 37/2 37/6 37/17 38/23 38/25 40/23 41/17 44/2 52/25 58/17 58/18 59/11 62/22 63/11 63/13 64/12 64/13 64/17 64/23 64/24 65/17 67/22
wanted **[18]** 5/18 13/9 13/19 13/21 21/17 24/11 43/17 43/20 44/9 46/22 46/23 47/14 47/19 48/8 50/3 57/22 59/20 65/1
wants **[7]** 11/10 16/5 23/10 45/9 59/3 61/8 63/12

warn **[1]** 58/6
warnings **[2]** 19/13 61/17
warrant **[29]** 3/21 29/11 29/16 30/13 30/14 30/18 32/12 32/25 35/4 35/10 37/17 37/18 37/21 38/7 38/11 38/22 39/1 39/3 43/3 44/16 44/18 44/20 44/25 45/2 46/9 46/10 50/7 50/9 55/18
was **[180]**
Washington **[11]** 1/5 1/15 1/18 1/22 2/5 2/9 2/14 4/23 55/21 57/25 70/13
wasn't **[15]** 13/25 15/24 23/20 23/20 24/4 24/6 24/14 25/7 29/15 44/22 44/23 51/6 51/6 51/7 67/10
watch **[1]** 7/3
watching **[1]** 24/24
way **[10]** 6/12 15/22 23/5 26/14 33/24 47/2 52/18 54/22 67/24 68/9
we **[135]**
we'd **[1]** 4/2
we'll **[4]** 8/6 21/9 67/21 68/25
we're **[13]** 3/14 3/16 7/23 8/8 9/21 10/4 11/19 26/6 27/11 31/25 43/18 63/16 64/18
we've **[13]** 11/6 11/7 24/3 24/18 30/20 31/19 35/18 40/16 63/19 64/5 67/23 67/24 68/11
week **[8]** 12/12 43/19 54/17 63/2 63/4 63/4 65/12 67/14
weeks **[1]** 67/8
well **[16]** 10/25 12/19 20/10 23/21 23/21 27/6 27/16 27/21 35/14 35/20 37/15 40/15 46/10 51/24 58/19 63/16
went **[4]** 20/11 25/15 50/4 55/17
were **[51]** 3/12 8/17 10/18 12/14 12/22 13/8 14/4 14/16 14/18 14/25 15/5 15/25 20/2 23/24 27/12 27/24 30/12 31/22 33/14 33/17 41/10 43/18 45/13 45/17 45/22 45/24 46/1 46/4 48/6 48/9 48/10 48/20 49/3 49/4 49/4 49/5 49/11 50/1 50/5 50/24 51/17 51/20 51/23 55/7 56/7

56/12 59/25 60/9 61/20 63/3 68/9
Wey **[2]** 34/4 38/3
what **[96]**
what's **[5]** 15/23 35/11 52/1 53/22 63/14
whatever **[3]** 3/17 16/6 29/8
when **[24]** 11/1 13/17 14/6 19/20 23/3 23/14 25/3 25/22 29/15 32/14 32/15 32/18 35/3 37/10 39/22 48/2 49/18 52/18 52/22 55/15 58/7 61/6 64/16 66/3
where **[15]** 5/13 5/21 6/18 6/21 8/2 14/21 16/11 18/23 21/18 24/17 24/20 26/14 27/18 40/5 59/24
whether **[26]** 4/15 5/20 8/23 8/25 8/25 9/13 9/14 10/11 14/25 15/1 27/20 32/22 32/23 39/1 39/4 50/16 50/16 51/10 58/20 60/13 60/15 61/7 63/18 64/20 64/22 67/23
which **[44]** 4/10 6/19 8/15 9/11 12/5 13/3 13/25 15/14 18/23 20/9 20/14 21/18 22/12 22/19 23/17 26/6 28/19 30/15 32/1 32/10 33/8 33/9 34/9 35/4 36/5 38/10 38/22 38/23 40/24 41/5 42/20 43/6 43/25 45/17 45/23 49/3 52/9 55/8 56/5 57/4 57/20 58/13 59/1 60/24
while **[7]** 14/9 21/1 35/15 48/19 58/1 58/9 65/2
whisper **[1]** 24/25
who **[30]** 5/16 6/6 7/7 7/10 10/11 14/8 14/14 15/7 15/15 15/24 16/1 16/1 19/6 24/22 25/9 27/12 27/12 38/18 46/25 48/12 49/2 49/25 50/3 50/3 50/10 53/11 53/14 53/15 54/7 54/10
who's **[2]** 12/6 67/1
who've **[1]** 5/22
whole **[2]** 12/8 37/23
wholly **[2]** 46/13 61/9
why **[25]** 15/2 25/3 27/5 27/10 27/15 29/3 30/15 34/5 34/12 35/7 35/24 36/1 36/16 37/15 37/17 38/15 39/13 40/1

# W

**why... [7]**  44/4 51/14 51/15
52/24 56/20 59/12 67/15
**will [29]**  4/3 8/7 10/10 10/12
10/23 11/23 11/24 12/9 20/10
26/7 31/9 33/2 34/1 37/4 37/9
39/24 40/13 43/25 44/1 45/5
45/5 45/8 52/22 58/5 65/21
66/22 68/2 68/5 68/21
**willing [3]**  38/24 57/17 68/15
**window [2]**  18/13 54/19
**wish [1]**  35/2
**wishes [1]**  61/2
**within [2]**  15/14 45/1
**without [12]**  6/3 10/18 26/9
30/19 40/18 54/22 57/13
57/17 58/17 58/21 65/18
68/10
**witness [2]**  66/15 66/20
**witnessed [1]**  57/18
**witnesses [7]**  3/13 45/12
62/15 63/5 63/10 63/11 68/7
**won't [1]**  39/13
**words [1]**  4/8
**work [2]**  64/2 67/19
**world [1]**  68/9
**worn [23]**  14/8 14/23 14/24
15/4 15/12 15/22 15/24 16/2
16/4 23/13 23/23 27/16 27/18
28/4 48/21 48/22 48/25 49/21
49/25 51/9 51/15 59/13 60/10
**worried [2]**  52/1 52/4
**worries [1]**  10/4
**would [74]**
**wouldn't [2]**  6/6 33/25
**write [2]**  66/7 66/10
**writing [2]**  64/17 67/16
**written [10]**  8/24 9/15 10/13
10/19 24/14 42/4 44/7 45/5
45/9 57/6
**wrong [2]**  3/15 3/24
**wrote [1]**  61/22

# X

**XR [2]**  32/8 41/8

# Y

**Yeah [3]**  33/22 35/13 63/9
**year [3]**  5/9 41/4 41/5
**years [4]**  29/23 29/23 30/19
36/25

**yes [17]**  13/12 17/1 17/7 19/4
20/25 24/2 29/6 39/10 39/12
39/16 40/8 43/23 64/3 64/8
64/10 64/25 65/15
**yet [4]**  8/21 9/18 11/11 31/9
**you [181]**
**you'd [1]**  7/3
**you'll [3]**  65/13 65/16 65/17
**you're [17]**  7/17 20/23 22/5
24/21 24/25 28/5 28/5 28/6
29/5 31/5 39/5 39/7 43/8
52/18 67/14 68/19 68/21
**you've [16]**  33/22 33/23
36/23 36/24 36/24 36/25 37/1
37/5 37/19 37/19 37/22 38/19
38/19 39/5 39/6 67/18
**you-all [3]**  3/15 10/19 68/9
**your [89]**
**yourself [1]**  13/9

# Z

**Zoom [1]**  2/9