BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,              .
                                       .  Case Number 21-cr-123
          Plaintiff,                   .
                                       .
     vs.                               .
                                       .  Washington, D.C.
VITALI GOSSJANKOWSKI,                  .  March 16, 2023
                                       .  9:22 a.m.
          Defendant.                   .
- - - - - - - - - - - - - - - - -

          TRANSCRIPT OF JURY TRIAL, VOLUME XI, MORNING SESSION
               BEFORE THE HONORABLE PAUL L. FRIEDMAN
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the United States:          FRANCESCO VALENTINI, ESQ.
                                United States Department of Justice
                                950 Pennsylvania Avenue Northwest
                                Washington, D.C. 20530

                                ADAM DREHER, AUSA
                                United States Attorney's Office
                                601 D Street Northwest
                                Washington, D.C. 20579

                                KAREN ROCHLIN, AUSA
                                United States Attorney's Office
                                99 Northeast Fourth Street
                                Miami, Florida 33132

For the Defendant:              EDWARD SMOCK, AFPD
                                CELIA GOETZL, AFPD
                                Federal Public Defender's Office
                                625 Indiana Avenue Northwest
                                Suite 550
                                Washington, D.C. 20004

Official Court Reporter:        SARA A. WICK, RPR, CRR
                                333 Constitution Avenue Northwest
                                Room 4704-B
                                Washington, D.C. 20001
                                202-354-3284

```
 1                    P R O C E E D I N G S

 2        (Call to order of the court.)

 3        (Jury not present.)

 4        COURTROOM DEPUTY:  This is Criminal Action 21-123,

 5   United States versus Vitali GossJankowski.

 6        For the United States, I have Francesco Valentini, Adam

 7   Dreher, and Karen Rochlin.  For defendants, I have Edward Smock.

 8   Our ASL interpreter this morning is Carla Mathers.  And our

 9   court reporter is Sara Wick.

10        All parties are present.

11        THE COURT:  All right.  Good morning, everybody.

12        So yesterday afternoon, while the jury -- after the jury

13   began deliberating, we got three notes from the jury in kind of

14   rapid succession.  And we met here in court, the lawyers and I,

15   obviously not with the jury, and Mr. GossJankowski was here as

16   well.  And meanwhile, we sent the jury home, told them we would

17   answer the questions today.

18        I think we agreed that even though there were three notes,

19   they basically had two categories of issues; there were two

20   issues.  And we had some preliminary discussions of it yesterday

21   afternoon, and it was agreed that counsel would communicate with

22   each other in the evening last night and see if they could reach

23   a meeting of the minds, or if they had alternative suggestions,

24   we could discuss those.

25        And Ms. Rochlin said she would also find some instructions
```

1    used by other circuits.  We couldn't find one here in our Red

2    Book instructions in terms of the use of a conjunctive in

3    statutes versus a need to only find one of the acts listed in

4    statutes, which is the conjunctive.

5        There was an e-mail we received this morning from

6    Ms. Rochlin saying that the parties think they've reached an

7    agreement.  So I would like to hear exactly what you're

8    proposing, and we can talk about it.  I mean, I've read it,

9    but -- good morning, Mr. Smock.

10       MR. SMOCK:  Good morning, Your Honor.

11       I don't want to take credit for Ms. Rochlin's drafting of

12   this.  She did it largely.  I think -- our position is, and I

13   believe the government is in agreement about this, that having

14   digested now with a little time all of the questions together,

15   that really the main gist of it is this question of whether the

16   verdict form or the jury instructions control, and obviously,

17   the jury instructions do.

18       And I think the answer to the question crafted by the

19   government with our input addresses that in a way that sort of

20   cleanly covers the full scope of all of these questions.  I

21   think the only added sentence that we put at the end was with

22   respect to that one typo in one subsection of Count 5, I think

23   it was, where we just tell them you can substitute "defendant"

24   for "government."

25       So our view is that this answer provides an answer to all

1    their questions in a clean, succinct way, refers them back to

2    the jury instructions that we've all negotiated over a fairly

3    significant amount of time.  It should answer all their

4    questions, and if they have others, we can address those at that

5    time.

6            THE COURT:  What about and/or?

7            MR. SMOCK:  I think the answer to the question and or

8    or is really contained in the jury instructions.  It's not

9    totally clear to me, having looked at it again, that their

10   question was so specifically about we don't understand and or

11   or.  It's really should the counts on the verdict form match the

12   counts on the jury instruction and then gives an example.

13           THE COURT:  Where are you reading from?

14           MR. SMOCK:  So I'm looking at the 3:56 note.  And

15   frankly, I think just about every one of the questions addresses

16   this question of and or or.

17           THE COURT:  What's the answer to the question?

18           MR. SMOCK:  The answer to the question is the jury

19   instructions tell you the answer.

20           THE COURT:  That doesn't answer the question.

21           MR. SMOCK:  Your Honor, the question --

22           THE COURT:  We will be back again and again with that

23   kind of an answer.  We have to give one of the pattern jury

24   instructions from another circuit.

25           MR. SMOCK:  Your Honor, I don't think --

1          THE COURT:  I'm going to give one.  All right?  Over

2     your objection if you want to object.

3          Remember, the verdict form is filed in the record.  Right?

4     Court of Appeals is going to look at it.  And what are you going

5     to tell them?  Oh, we got three jury notes, and we agreed on an

6     answer that was amorphous and didn't really answer the question,

7     but we're happy.

8          And some judge on the Court of Appeals who has never tried

9     a case in his life is going to either -- it's either going to

10    inure to your benefit or not, or I'm going to get a remand

11    saying it's not clear what the jury did or why.

12         I'm going to do my own verdict form.  I'm going to give

13    them an amended verdict form, and I'm going to read the best of

14    these instructions on and/or over your objection.  And if the

15    government wants to interpose an objection, they can, too.

16         Your solution doesn't solve the problem.

17         MR. SMOCK:  Your Honor, the reason that I think the

18    parties came up with this is having looked at the questions, the

19    questions really address whether they should rely on the

20    language of the verdict form or the language in the jury

21    instruction.

22         THE COURT:  I will answer that question, but then I

23    will give them a revised verdict form and one of these

24    instructions.  That's my ruling.

25         Which one should I give, Ms. Rochlin?

1      I don't understand the two of you.

2              MS. ROCHLIN:  Your Honor, if I may.

3              THE COURT:  Would you turn on the microphone?

4              MS. ROCHLIN:  Yes, Your Honor.  Thank you.

5      Your Honor, maybe it's my home court, but if I were to

6      propose one of the three jury instructions in the government's

7      e-mail as a starting place for the Court, I would propose the

8      Eleventh Circuit instruction for two reasons.

9          One, it's, I believe, the briefest.  Additionally, most of

10     the instructions, I suspect, because like the Eleventh Circuit

11     these are jurisdictions where indictments are provided to juries

12     with the jury instructions --

13             THE COURT:  True.

14             MS. ROCHLIN:  And that is not the issue here, which is

15     one of the things that motivated the government to back off a

16     bit from simply utilizing a pattern instruction.

17         I think the Eleventh Circuit instruction is easiest to

18     tweak if there was an inclination to avoid any reference to an

19     indictment, which this jury without objection does not have.

20             THE COURT:  They don't have the indictment, you're

21     right.

22         Can I ask you, just so I understand your e-mail, after the

23     Eleventh Circuit instruction, then there's another paragraph in

24     your e-mail.  Is that another pattern instruction?

25             MS. ROCHLIN:  There would be a Sixth Circuit

1    instruction that follows and an Eighth Circuit instruction which

2    in fact is not one that I found online as a part of the pattern,

3    but it is one that is standard when it is used in that

4    jurisdiction.

5              THE COURT:  So the instructions that we've already

6    given them do say that -- I can't find it, but it's near the

7    end.  It says the verdict form is not evidence in the case and

8    nothing should be taken to suggest or convey any opinion by me

9    and nothing on the form replaces the instructions.

10    Okay.  So that's Mr. Smock's point and your point, too,

11    that I've already told them that.

12    But I am concerned about the -- I'm just concerned that

13    there are people there that are not going to understand the

14    answer that you want us to give.  I can't read the signature,

15    but it may be that the foreperson is the one lawyer on the jury.

16    I can't tell.

17    But I am concerned that the -- basically, your proposal is

18    the instructions control, not the verdict form.  And it seems to

19    me that your paragraph at the top of your e-mail tells them that

20    the verdict form is unimportant and they should look at the

21    instructions, and that answers the question as to the

22    inconsistency between the verdict form and the instructions.

23    In my mind, it does not answer the questions, and we are

24    going to have question after question after question from this

25    jury.  They didn't go to law school.  They're not going to read

1    with a fine tooth comb every and/or in every place in the

2    indictment -- in the instructions.  And they may be back again

3    and again, and I'm concerned about that.

4        I think it would be better to give them clearer advice so

5    that they can move on to consider the evidence and apply the law

6    to the evidence.  Now, that doesn't deal with the question of

7    whether we need an amended verdict form.  It deals with the

8    question of whether we should say more about and/or than you

9    propose.

10           MS. ROCHLIN:  Your Honor, the government's original

11    proposal was slightly different to the one that resulted from

12    the conferring and the negotiations, if you will, between the

13    parties.

14        The United States is not opposed to providing the jury with

15    a revised verdict form that can conform to the indictment.  We

16    originally included a sentence at the end to the effect that the

17    jury would also be receiving a revised verdict form.  So we're

18    inclined to defer to the Court as to that.

19        If the verdict form conforms to the jury instructions, I

20    guess my practical and, perhaps, simplistic conclusion is that

21    then any discrepancy would be resolved, and the jury would be

22    able to understand that the instructions control, and they

23    wouldn't have anything else to look at for a different approach,

24    if you will.

25        I don't know if that satisfies the Court's concerns, but

1  that approach would certainly be acceptable to the United

2  States.

3          THE COURT:  Now, I will say this about

4  conjunctive/disjunctive.  There are other parts of the statutes

5  and the instructions where the word "and" is used where we

6  mean "and."  So for example, they have to find both knowledge

7  and intent, and they have to find corrupt intent.

8      But the pattern instructions that you found from the other

9  circuits say that -- refer to "act," not to -- they effectively

10 refer to what we lawyers call actus reus, not any of the mens

11 rea part of it.

12     They specifically say, "Although the indictment charges

13 that the statute was violated by acts that are connected by the

14 word 'and,' it is sufficient that it establishes a violation by

15 any one of the acts charged.  Some counts of the indictment may

16 accuse the defendant of violating the same statute in more than

17 one way."  This is the Sixth Circuit one, I think.  "In other

18 words, the indictment may allege that the statue in question was

19 violated by various acts which are in the indictment joined by

20 the conjunctive 'and.'"

21     I think this one is a little more confusing.

22         MR. SMOCK:  I don't want to draw ire from the Court,

23 but I think that's --

24         THE COURT:  You're not going to draw my ire.  I

25 sometimes yell when I'm -- I don't know.  I just had one sip of

1    coffee when you got up to speak, and it's my first cup.

2          MR. SMOCK:  I think the Court raises precisely the

3    concern we have, which is, number 1, having looked at this, I

4    don't think that these questions are getting into the weeds as

5    much as we think they are.  I really think that the questions

6    all relate to this question that they've -- they've got the

7    verdict form, and they've got the jury instructions, and for

8    some -- well, for obvious reasons, they're comparing them in a

9    way that is appropriate.  And every question is simply saying

10    should the counts on the verdict form match the counts on the

11    jury instructions.

12        And I think that's -- the answer that we provided is look

13    at the jury instructions, and the jury instructions are

14    something that the parties have discussed at length and should

15    control.

16        I think giving them an instruction about conjunctive and

17    disjunctive is going beyond really their question, might confuse

18    matters, and just as the Court said, there are uses of the words

19    "and" or "or" that we don't want to give them a misleading

20    impression about.

21        I think the instructions control.  The answer addresses all

22    of their questions.  And giving them an answer to a question

23    that is, I think, probably beyond what they're wondering at this

24    point poses a risk of giving them a misleading impression that

25    is contrary to the instructions.  I'm concerned about their

1    ability to distinguish between acts and mental state, et cetera,

2    and that they would read this as somehow any time you see "and"

3    it means "or."

4         If the jury has further questions after understanding that

5    the jury instructions control and that they shouldn't rely on

6    wording -- specific wording in the verdict form, they can come

7    back to us, and I suspect they will.  I mean, they're going to

8    come back to us with other questions.  They don't seem shy about

9    it.

10        So I think our answer should be a response to their

11   question, which is specifically just about comparing the

12   language of the two documents.

13        MS. ROCHLIN:  And, Your Honor, I don't think there's

14   really all that much daylight between Mr. Smock and myself.  I

15   do think maybe the best position, in the government's view, that

16   addresses the Court's concerns is to instruct the jury as we've

17   proposed but to provide them -- unfortunately, do the work and

18   provide them with a revised verdict form.

19        I'm inclined to agree with Mr. Smock's interpretation that

20   the issue here is one of comparison between the two documents

21   rather than an expression of confusion with the language of

22   "and" and "or."

23        What I might take from these notes is that the jury will

24   follow what the Court tells them to follow, which in this case

25   would be the jury instructions.  And if we're wrong and they

1    follow up with a further question, hopefully we can resolve it

2    with just one more response.

3          THE COURT:  I'm just looking at some of the

4    instructions.  You're both right, that if you actually look at

5    what we say here, for example in Count 3, "In order to find the

6    defendant guilty of forcibly assaulting, resisting, imposing,

7    impeding," et cetera, et cetera, "or interfering," and we used

8    the word "or" in the instruction.  And we say, "The first

9    element is that you must find the defendant forcibly assaulted,

10   resisted, opposed, impeded, intimidated, or interfered with."

11         And I think that in his closing Mr. Valentini made that

12   point, that you don't have to find all of these things, you can

13   find any one of these things, and certainly, that wasn't

14   disputed in the defense closing, because it's accurate as a

15   matter of law.

16         So I think you're right that if they go back and look at

17   the substantive instructions, that they will have their

18   questions answered.

19         And that's generally true, but if you look at Count 2, for

20   example, the heading of the instruction says "Obstruction of an

21   Official Proceeding and Aiding and Abetting" -- the verdict form

22   in some ways is -- well, for one thing, the header in Count 2

23   says "Obstruction of an Official Proceeding and Aiding and

24   Abetting," but maybe the instruction itself corrects my concern.

25         And it doesn't -- the heading makes no reference to

attempt.  In other words, when you get into the instruction in Count 2, we've got obstruction, we've got attempt, we've got aiding and abetting.  The heading in Count 2 talks about obstruction and aiding and abetting but not about attempt.

I guess the jury -- the verdict form does, too, but that's all right, I suppose.  If they read the full instruction, they will sort it out.

What else does anybody want to say?

MS. ROCHLIN:  Nothing further from the United States, Your Honor.

THE COURT:  So basically, to review, I'll read the first or the second paragraph of your e-mail, and I will tell them I will give them a revised verdict form later this morning. And I won't say anything more than what you've said here about -- I won't say anything about conjunctive/disjunctive.

Is that the government's view and the defense view at this point?

MR. SMOCK:  Yes, Your Honor.

MS. ROCHLIN:  Yes, Your Honor, and we're hoping we won't have to say anything further on that point.

THE COURT:  Okay.  Mr. Smock, I know you don't want me to give a revised verdict form, but with respect to the and/or, if I just give this paragraph, that should suffice?

MR. SMOCK:  Yes, Your Honor.

THE COURT:  And then a revised verdict form.  We'll

1   see if that works.

2        All right.  So anything else?  Because if not, I think we

3   should probably just bring the jury in and --

4            MS. ROCHLIN:  If I can have one quick moment, Your

5   Honor.

6            THE COURT:  Take your time.

7        (Counsel conferred.)

8            MS. ROCHLIN:  Nothing further, Your Honor.

9            MR. SMOCK:  Just so I understand for sure, the revised

10  verdict form, is that something that the Court is going to work

11  on, or is that something the Court wants --

12           THE COURT:  We'll do it, but we will send it to you

13  before we send it back to the jury, and try to look at it

14  quickly.  But I will have at least two people proofread it,

15  maybe more.  The bad one was finding the government guilty.

16           MR. SMOCK:  I didn't think that was too bad.

17           THE COURT:  You want us to change all of the counts;

18  right?

19           MS. ROCHLIN:  We're hoping that wasn't a Freudian

20  slip, Your Honor.

21           THE COURT:  Let's go off the record a minute.

22       (Discussion off the record.)

23       (Jury entered courtroom.)

24           THE COURT:  Good morning, everybody.

25       So you were busy yesterday afternoon.  We got three notes

from you, one at 3:53, one at 3:56, and one at 4:18 p.m., and
the lawyers and I discussed your notes both yesterday, and then
they talked to each other last night, and we talked again this
morning.

So I think that -- your notes raised several questions, but
they fall into two primary categories.  There's several
questions concerning the use of the word "and" in the verdict
form, the description of the offense charges where for
corresponding counts the jury instructions use the word "or."

Your note also raises a question concerning differences in
formulations used in the verdict form, the way things were
stated there when compared to the corresponding jury
instructions.

The verdict form was written as kind of a shorthand for the
instructions, but I will remind you that in my instructions, I
think it's Instruction 2.407, nothing in the verdict form
replaces the instructions on the law that I gave you yesterday.
Nothing in the verdict form replaces or modifies the
instructions about the elements which the government must prove
beyond a reasonable doubt.  The form is only meant to assist you
in recording your verdict.

And if you go back to the elements of the instructions on
each count, I think that will further clarify and answer some of
your questions.  It's the instructions which matter.  The
instructions were my explanation to you of what the law is on

1    each of the charges; the verdict form is not.  It's a shorthand.

2        And so you've noted a typographical error in the form

3    addressing Count 5.  The word should have been "defendant,"

4    not "government."  That was a mistake.

5        So I hope that that clarifies and answers your questions,

6    but I think that what we will do within the next hour or so

7    is -- it may be a little longer, is provide you with a revised

8    verdict form.  But again, it's only a guide for how you report

9    your verdict, and maybe it will help you in how you consider

10   your -- how you structure your discussion.  But it's always the

11   instructions which control.  And if you have questions about

12   what any element of any charge is, I suggest you go back to the

13   specific instruction and read what I said.

14       Anything else that counsel wants me to say?

15           MR. VALENTINI:  No, Your Honor.

16           MR. SMOCK:  No, Your Honor.  Thank you.

17           THE COURT:  Okay.  So you can go back and continue

18   deliberating.  We'll get you a revised verdict form as soon as

19   we can.  We will get you a thumb drive or whatever it is so you

20   can watch the videos as soon as we can.  The lawyers are working

21   on it with the IT people.

22       So thank you, and we look forward to hearing from you.  If

23   you've got any more questions, we will all be available.

24       Do you have a question?

25           COURTROOM DEPUTY:  They want to see the devices.

1        THE COURT:  Do you want to see those now?

2        JUROR:  Yes.

3        THE COURT:  So those are those two exhibits which came

4   in Amazon boxes?

5        JUROR:  (Nodded head.)

6        THE COURT:  Okay.  We will have them brought back to

7   you shortly.

8      (Jury exited courtroom.)

9        THE COURT:  Why don't you all wait around until

10  Ms. Johnson confirms that the videos are working now with the

11  device that Mr. Dreher provided just now, and also wait for her

12  to give her Exhibits 1001 and 1002 which she can then take back

13  to the jury under the terms I said we would do it and the

14  instruction I gave them about those two exhibits.

15        MS. ROCHLIN:  Yes, Your Honor.

16     Your Honor, I prefer to be an optimist about the

17  technology, but in an abundance of caution, would it be helpful

18  for the government to secure a jury laptop as an alternative to

19  the television if the devices remain incompatible, or would the

20  Court prefer not to use that laptop under any circumstances?

21        THE COURT:  You're asking the wrong person.

22        MS. ROCHLIN:  Yes, Your Honor.  I appreciate --

23        THE COURT:  But here's what I suggest is if the

24  defense has no reason to object to that, when Ms. Johnson comes

25  back, you all can discuss that with her, and if we need

1    Mr. Cramer, fine.  But I don't see any reason not to, if the

2    defense has no objection, if there's a problem.

3              MS. ROCHLIN:  Thank you, Your Honor.  We will discuss.

4              THE COURT:  I defer to Ms. Johnson and Mr. Cramer on

5    those kinds of questions.  So why don't you wait for her to see

6    whether it's working and to give her the exhibits as well, and

7    we will proceed, and Erica and I will work on the verdict form.

8              MS. ROCHLIN:  Yes, Your Honor.

9              THE COURT:  All right.  I'm glad you're an optimist.

10             MS. ROCHLIN:  A cautious one.

11             THE COURT:  Me, too.

12        (Recess taken at 9:51 a.m.)

13        (Afternoon session bound under separate cover.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Sara A. Wick, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/s/ Sara A. Wick_____          June 16, 2023_____
SIGNATURE OF COURT REPORTER                DATE