BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      )      Case Number 1:21CR123
                               )
            Plaintiff,         )
                               )
vs.                            )
                               )      Washington, D.C.
VITALI GOSSJANKOWSKI,          )      March 10, 2023
                               )      9:37 a.m.
            Defendant.         )


VOLUME IX
TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE PAUL L. FRIEDMAN
UNITED STATES SENIOR DISTRICT JUDGE

COURT REPORTER:                Ms. Lisa Grimminger, RDR, CRR, CRC
                               100 Centennial Mall North
                               Room 587
                               Lincoln, NE 68508
                               (402) 437-1908


Proceedings recorded by stenotype shorthand.
Transcript produced by computer-aided transcription.

```
 1    watch anything, listen to anything, go on social media, and let

 2    Ms. Johnson know if there are any issues.

 3         Anything I forgot?

 4         Okay, okay.  Thank you very much, and have a nice weekend.

 5         (Jury out at 4:00 p.m.)

 6              THE COURT:  Do you have a prognosis as to how long

 7    your Rule 29 argument is going to be, Mr. Smock or Ms. Goetzl,

 8    whosoever making it?

 9              MS. GOETZL:  Definitely less than half an hour.

10              THE COURT:  Less than half an hour?

11              MS. GOETZL:  Yes.

12              THE COURT:  I was hoping --

13              MS. GOETZL:  I can try to make it --

14              THE COURT:  Okay.  Do your best.  I mean, that's all

15    we can ask.  Because I do think it would be useful to get the

16    Rule 29 done so we can spend all Monday morning on

17    instructions.

18         And I'll tell the reporter that now, if nobody orders a

19    transcript of this, I may want at least a rough version of it

20    at some point at your convenience.

21              MS. GOETZL:  Okay.  Thank you.  Mr. GossJankowski

22    hereby moves under Rule 29 --

23              THE COURT:  Move the microphone a little closer.

24              MS. GOETZL:  -- moves under Rule 29 for judgment on

25    acquittal on every count of the indictment because the evidence
```

1     is insufficient to sustain a conviction on each of those

2     counts, and I'm just going to walk through each of the counts.

3          For Count I, which is obstructing, impeding, and

4     interfering with the officers during a civil proceeding or

5     attempt to do that, our argument is that the statute requires

6     Mr. GossJankowski's conduct to have interfered with commerce or

7     a federally protected function, and there is no evidence of

8     that here that his conduct affected commerce, obstructed

9     commerce actually, or obstructed a federally protected

10    function, which in this case the government's only evidence of

11    that is through the -- they presented evidence that the Secret

12    Service was affected.

13         Mr. GossJankowski did not have any interaction with Secret

14    Service officers, and his conduct did not affect Secret

15    Service.  Even if the Court rejects my argument that -- our

16    argument that his conduct does not have to have interfered with

17    commerce or affected a federally protected function and just

18    the civil disorder more generally must affect commerce or

19    interfere with a federally protected function, the same thing.

20    There is no -- that basically the -- civil disorder's

21    connection to commerce is too attenuated, and the civil

22    disorder's connection to impacting or delaying a federally

23    protected function is similarly too attenuated.

24         There is no evidence that it impacted commerce.

25    Mr. Tippett's testimony, some of which was consistent and some

 1    of which was inconsistent, basically showed that commerce was

 2    not affected.  Business bounced back the next day so -- and our

 3    argument also related to our motion to dismiss was that to the

 4    extent that there is only a de minimis connection required

 5    under the statute, Congress does not have the authority to

 6    punish that conduct under *Morrison* and *Lopez*.

 7             THE COURT:  Under what?

 8             MS. GOETZL:  Under *Morrison* and *Lopez* there must be a

 9    substantial impact on commerce.

10        For Count II we reiterate our argument that the Joint

11    Session of Congress is not an official proceeding within the

12    meaning of the statute.  The evidence was very clear when

13    Mr. Schwager and Officer Hawa testified that it's a procession,

14    it's a ceremonial proceeding, it's a ceremony.  It's not a

15    proceeding -- it's not a proceeding, quote, before the

16    Congress.  It is a ceremony in the Congress.  It is not the

17    Congress deciding anything, and so that's our argument with

18    respect to that.

19        There's no evidence here that Mr. GossJankowski interfered

20    with any type of documentary evidence, which is our argument

21    that's currently on appeal in *United States vs. Miller* and

22    *United States vs. Fischer*.  More than that --

23             THE COURT:  *Miller* is Judge Nichols' case that's on

24    appeal; correct?

25             MS. GOETZL:  Correct.

1    THE COURT:  What's *Fischer?*

2    MS. GOETZL:  I believe that's another Judge Nichols

3    case that's either --

4    THE COURT:  At the moment he's in a minority of one,

5    but if there are two other Article III judges in this building

6    that agree with him, then we'll be in a different ball game.

7    MS. GOETZL:  Yes, and there's no knowing when that

8    decision will be issued.  I understand it's already been

9    argued, but we make that argument to preserve the record out

10   there.

11   THE COURT:  For the record, but again, if there's a

12   decision from the circuit after there's a verdict in this case,

13   you've preserved that point to a -- they'll already have

14   decided it one way or the other.

15   MS. GOETZL:  Yes.

16   Further, with respect to the 1512 count, which is

17   Count II, there's just no evidence at all that

18   Mr. GossJankowski intended to obstruct the Electoral College

19   vote count.  There's no evidence of any preplanning.  There's

20   no evidence that he didn't even -- there's not even any

21   evidence that he didn't accept the results of the election as

22   there are in other cases.  He was not wearing -- he clearly did

23   not show up that day intending to, you know, obstruct the

24   electoral count.  He's not wearing any military gear, tactical

25   gear, anything like that.  He's wearing a bright blue jacket.

1    He was very easy to identify.  He's identified by every single

2    witness who came in here, and he turned himself in, and, you

3    know, there's really no issue about that.

4        There's also no evidence that he knew that his actions

5    were likely to affect the proceeding.  For all he knew, the

6    proceeding was continuing.  He was just on this western part of

7    the Capitol.  He was nowhere near where the votes were counted

8    or ultimately decided.  He did not go into the Capitol, and so

9    there's just no evidence of his intent to or knowledge of

10   disrupting specifically the Electoral College vote count.

11       Furthermore, there's just no evidence that he acted

12   corruptly.  That's really the distinguishing feature between

13   Count II and, like, perhaps Count I or Count VI.  I mean,

14   there's just no evidence that he acted with a corrupt intent,

15   and Judge Jackson recently decided that it's not an objective

16   test of whether he should have known that what he was doing was

17   wrong or unlawful.  It's a subjective test of what is inside

18   his head, and there just is insufficient evidence of what is --

19   what was inside his head, and there's also plainly insufficient

20   evidence of aiding and abetting because --

21           THE COURT:  Insufficient evidence of what?

22           MS. GOETZL:  Of aiding and abetting, to the extent

23   he's been charged with aiding and abetting others who intended

24   to obstruct the electoral count certification of the election

25   results.  There's just no evidence that he had any joint motive

1   with them, that he -- that -- you know, and he arrived at the

2   Capitol grounds after people had already broken into the

3   Capitol Building and proceedings had already stopped.  He had

4   no advance notice that people were going into the Senate or

5   House Chambers or breaching the building, and none of his

6   actions, while some of them might have been offensive, rise to

7   the level of aiding and abetting people who intended to stop

8   Congress from certifying the electoral vote.

9        For Count III --

10       THE COURT:  Before you move on, I have a question for

11  you.  You mentioned something, an opinion by Judge Jackson.  Do

12  you have the cite to that?

13       MS. GOETZL:  Sorry.  It's not an opinion.  It was

14  actually a bench trial, and it was in *United States vs. Joshua*

15  *Matthew Black*.  The case number is 21-127.  The decision was --

16  her decision was orally read into the record on January 13th,

17  2023, and so that objective versus subjective test comes from

18  that transcript at page 34, and there she found the defendant

19  not guilty of 1512 for the same reason we think the government

20  has just not presented any evidence of intent in this case.  We

21  think this case is actually much stronger than that case.  In

22  that case Mr. Black was in the Senate building.  He was clearly

23  politically motivated.  There's a bunch of things that he said

24  on Facebook posts and social media, things that he said

25  afterwards.  It's just not comparable at all to this case.

1    For Count III, which is the assault charge, our argument

2    is that there's just literally no evidence to meet any elements

3    of that offense.  First, there's no evidence that

4    Mr. GossJankowski acted forcibly, so there's just no force at

5    all, evidence of any force.  There's no evidence of intent to

6    assault or intent to interfere with Officer Moore.  There's no

7    evidence -- and also for the forcibly, I mean, that also goes

8    for the purported physical contact prong of the offense.  So

9    Mr. GossJankowski, to be clear, has been charged with three

10   separate types of assault.

11   First, involving -- felony assault involving physical

12   contact; second, felony assault with the intent to commit

13   another felony; and then third is the felony assault with a

14   deadly or dangerous weapon.  First, there is just no evidence

15   of any forcible contact with Officer Moore, none whatsoever.

16   With respect to the intent to commit another felony, the

17   government has put it in their jury instructions as assault

18   with intent to commit interfering with a law enforcement

19   officer during a civil disorder.

20   Okay.  So that's also one of the reasons why -- this is

21   just an aside -- we believe the government needs to identify

22   the law enforcement officer, because it would literally make no

23   sense to have a charge that he intended to assault Officer

24   Moore with the intent to impede Officer Moore, I mean, or did

25   he --

1      THE COURT:  So this was the other felony cited in the

2    jury instructions is count -- Count I?

3      MS. GOETZL:  Yes.  And so then it becomes, well, did

4    he attempt to assault -- or sorry, assault Officer Moore with

5    the intent to impede Officer Beaver when Officer Beaver was in

6    a totally different location at a totally different time?  So

7    as an initial matter I just think that the government's assault

8    charge with the intent to commit another felony prong is just

9    completely unsupported by the record.  And there is no evidence

10   that establishes that he assaulted Officer Moore, but even if

11   he did assault Officer Moore, that it was with the intent to

12   impede another officer or Officer Moore.  And to the extent

13   that it's to impede Officer Moore, then it is literally the

14   same charge, so it should merge in that sense.

15      THE COURT:  You said the third -- so we got forcible

16   contact with Morris, number one.  The other felony is

17   number two.

18      MS. GOETZL:  And then the third one is the deadly or

19   dangerous weapon, and the Court knows our argument very well on

20   that.  The evidence is insufficient to establish that the

21   device was inherently dangerous, insufficient to establish the

22   device was capable of causing serious bodily injury or death,

23   and definitely insufficient to establish that Mr. GossJankowski

24   intended to use it in any manner that was capable of causing

25   serious bodily injury or death.  The government really has just

1    no evidence at all of -- of the device being capable of causing

2    serious injury or death or Mr. GossJankowski intending to use

3    it in that manner.

4         For Counts IV and --

5              THE COURT:  Wait.

6              MS. GOETZL:  Sorry.

7              THE COURT:  Is it also a part of your argument that

8    the government must prove beyond a reasonable doubt that it was

9    a stun gun and they haven't done that?

10             MS. GOETZL:  That is also part of our argument.

11   Thank you for bringing that to my attention.  Our argument is

12   also that the government must prove that the device he was

13   using was a stun gun because that is what is charged in the

14   indictment and that the government did not prove that the

15   device was a stun gun.  In fact, it presented no evidence at

16   all of what the device was at all.

17        For Counts IV and V, which are the 1752 charges, our

18   argument is that there was insufficient evidence that the --

19   first our argument is that the government has to prove that the

20   Vice President was temporarily visiting the Capitol and not

21   that his wife or his daughter were temporarily visiting the

22   Capitol, and that is because his wife and his daughter --

23             THE COURT:  Is there something in their instructions

24   that suggests to the jury that if they find that the Vice

25   President's wife and daughter was in the Capitol, that's

1     enough?

2              MS. GOETZL:  Yes, because the instructions just say

3     Secret Service protectee.  The statute just says Secret Service

4     protectee, so we will be asking for a limiting instruction that

5     the Secret Service protectee, you know, restricted building or

6     grounds is defined as posted, cordoned off, otherwise

7     restricted area of a building or grounds where the President or

8     other person protected by the Secret Service is or will be

9     temporarily visiting.

10         And so because of the government's case in chief and the

11    evidence it presented about Charlotte Bond Pence and

12    Mrs. Pence, we will be asking the Court for a limited

13    instruction to instruct the jury that it cannot find that

14    Mrs. Pence or Charlotte Bond Pence were the other persons

15    protected by the Secret Service for the purposes of that count,

16    but aside from the -- so our argument to the Court on that

17    count is that President *[sic]* Pence was not temporarily

18    visiting the Capitol.

19         I mean, in our -- our position is that it's just a

20    misapplication of that statute.  That statute was not intended

21    to protect the Capitol from trespassing.  There is a Capitol

22    trespassing statute that was not charged in this case, and so

23    we also will request the lesser included charge on -- lesser

24    included offense for 1752(a)(1) and (a)(2), which are Counts IV

25    and V.

1        THE COURT:  Give me a second.  So you request a

2    lesser included offense instruction for Counts IV and V?

3        MS. GOETZL:  Because both of those counts charge

4    Mr. GossJankowski with carrying a deadly or dangerous weapon

5    so --

6        THE COURT:  So a lesser included offense would be

7    doing the acts required but without a deadly or dangerous

8    weapon.

9        MS. GOETZL:  That's correct.

10       THE COURT:  So the last phrase is in relation to the

11   offense that he used or carried a deadly or dangerous weapon,

12   that is, a stun gun.  The lesser included offense would be

13   basically the preceding language of Counts IV and V.

14       MS. GOETZL:  Correct.  So it would be the language

15   from subsection (a)(1) for Count IV and (a)(2) for Count V and

16   so -- but another reason why he's not guilty of Counts IV and V

17   as they are charged is because there is no evidence --

18       THE COURT:  And your proposed verdict form has a

19   couple of places where it says if you find him guilty, fine,

20   but if not, move on and consider.

21       MS. GOETZL:  Yes.  And I don't remember if our

22   proposed verdict form specifically asks for the lesser included

23   on those charges but I --

24       THE COURT:  One of the things you could both do over

25   the weekend is take another look at your verdict forms.  One of

1    the things I will say about verdict forms -- I don't mean to

2    interrupt your argument -- is, just so the government knows

3    what I've been doing probably for the last ten years or so, is

4    saying "not guilty" first and "guilty" second, not before.

5              MS. GOETZL:  Thank you, Your Honor.  We appreciate

6    that.  We did request that in our verdict form.

7              THE COURT:  I know.

8              MS. GOETZL:  So for Count V -- I guess, sorry, to go

9    back to the 1752 counts, which are Counts IV and V, the

10   evidence is insufficient to show that Mr. GossJankowski carried

11   a stun gun and that the thing he carried was a deadly or

12   dangerous weapon, so we'd move for judgment of acquittal on

13   those counts on that basis as well.

14         And for Count V it's similar to the argument we made for

15   Counts I and II.  For Count V there also has to be evidence

16   that he intended to impede or disrupt government functions, and

17   there's just no evidence at all of what Mr. GossJankowski

18   intended to do in this case.

19         And that argument is also the same for Count VI, which is

20   disorderly conduct in the Capitol Building requires intent to

21   impede, disrupt, or disturb the orderly conduct of a session of

22   Congress or either House of Congress, and again, there's just

23   no evidence of what he intended to do.

24         And with that I would just confer with Mr. Smock to make

25   sure I haven't missed anything and then --

1          THE COURT:  You did it in less than a half hour, I

2   think.  So you may confer, see if there's anything else.

3          MS. GOETZL:  Okay.  We are done.  Thank you.

4          THE COURT:  Listening to you reminded me that the

5   defense, now that all the evidence is in, needs to draft a

6   defense theory of the case instruction.

7          MS. GOETZL:  We do, Your Honor.  We can submit that

8   to you this weekend.

9          THE COURT:  Yeah, and to opposing counsel.

10          MS. GOETZL:  Yes.

11          THE COURT:  So it's ready for us to have a debate on

12   that as well Monday morning.

13          MS. GOETZL:  Yes.  Thank you.

14          THE COURT:  Mr. Valentini.

15          MR. VALENTINI:  Thank you, Your Honor.  I'm mindful

16   that I believe we have a hard stop at 4:30 today.

17          THE COURT:  It's not a hard stop.  I hoped for a

18   stop.  I'm supposed to be someplace.  If I'm a little late,

19   I'll be a little late.

20          MR. VALENTINI:  Well, we'll try to be brief

21   nonetheless, and we'll respond to defense counsel's arguments

22   in turn.

23      With respect to Count I, that's a 231 count.  The first

24   argument is that the conduct itself must interfere with

25   commerce, except that is a legal argument that every judge on

1    this court has rejected.  That is contrary to the language of

2    the statute.  The relevant phrase "which may in any way or

3    degree obstruct, delay, or adversely affect commerce or the

4    movement of any article or commodity in commerce" modifies not

5    the conduct but the civil disorder.  That is a commonly

6    accepted interpretation.  It is consistent with every

7    applicable canon of statutory interpretation.

8         THE COURT:  And her argument that it must be

9    substantial seems to be undermined by the language "in any way

10   and degree."  A degree could be less than substantial.

11        MR. VALENTINI:  That was going to be my second point.

12        THE COURT:  It can't be zero.

13        MR. VALENTINI:  No.  I mean, there has to be an

14   effect.  That's why we called Mr. Tippett, who was -- I think

15   his testimony aptly and cheerfully supported the finding that

16   there was an effect on commerce.  Because of the events of

17   January 6, the civil disorder caused the curfew, which in turn

18   resulted in the closing of the Safeway stores.  The events of

19   January 6, the civil disorder, also impacted a federally

20   protected function, specifically the certification of the

21   Electoral College vote.  So on that ground -- alternative

22   ground to the federal nexus element is satisfied.

23        With respect to Count II, I'm not going to rehash all of

24   the legal arguments that have been presented before trial in

25   this case and other cases and that all judges on this court

1   except for one have accepted, so I'm not going to get into

2   whether the certification or the Electoral College was an

3   official proceeding.  I think Your Honor so ruled in *Puma*, and

4   other judges have reached the same conclusion.

5        Defense counsel also made the argument that there's no

6   evidence that Mr. GossJankowski intended to obstruct the vote,

7   but in fact the evidence shows that Mr. GossJankowski -- we

8   just saw it today, actually -- was clearly aware that the role

9   of Congress on January 6 was going to be the certification of

10  the Electoral College.

11       I would direct Your Honor's attention to Exhibit 303.

12  There were also in Exhibit 305 other statements by the

13  defendant to the effect of preparatory work the night before

14  January 6, and so we think that in terms of his awareness,

15  knowledge, and intent with respect to -- specifically to the

16  certification of the Electoral College, there's ample evidence

17  in the record.  The jury will have ample evidence to find the

18  defendant guilty, but certainly under the permissive Rule 29

19  standard, it's not even close, in our view.

20       There was also a point that was made about whether the

21  corruptly element was satisfied.  Again, many courts, including

22  Your Honor in *Puma,* I believe, passed on the correct -- on the

23  meaning of "corruptly."  In the context of the statute, it

24  requires only a cognizance of wrongdoing, and here what speaks

25  louder than anything else is Mr. GossJankowski's conduct.  We

1    have seen video after video of what Mr. GossJankowski did in

2    that tunnel.

3         I'll expand on that in closing argument, I'm sure, but I

4    think that for now I can just refer the Court back to what he

5    did in the tunnel, what he did on the inaugural stage, the fact

6    that he beckoned the crowd forward, you know.  There was some

7    reference today that he did not aid and abet, did not try to

8    coordinate with others, but we saw him time and again come out

9    of that tunnel, look out on that inaugural stage, and try to

10   beckon more and more people forward.  Why?  Because they needed

11   the numbers to continue stopping the certification of the

12   Electoral College.

13        On to Count III.  So with respect to forcibly, there's --

14   I think defense counsel stated that they don't see any element

15   of force in the conduct of the defendant vis-a-vis Officer

16   Moore, except Exhibit 144.2 makes clear that there was force.

17   It makes clear that Mr. GossJankowski advanced towards Officer

18   Moore, he grabbed that helmet with his right hand, and then he

19   bore down with his left hand with a stun gun in hand.  That is

20   forcible conduct.  It is surely more than sufficient to satisfy

21   the Rule 29 standard to get the case to the jury.

22        There was also some reference in my colleague's argument

23   about the intent to commit another felony, and I think there

24   was some suggestion that maybe the two felonies should merge

25   somehow.  No.  Mr. GossJankowski --

1          THE COURT:  She was talking about attempt.  I think

2     she was talking about how attempt should merge.  Is that what

3     you're talking about?

4          MR. VALENTINI:  I thought the suggestion -- you know,

5     I'll be corrected, I'm sure, if I'm getting this wrong.  I

6     think the suggestion was that, one, that we could not charge

7     Mr. GossJankowski with committing an assault, and I'm using

8     that in sort of an informal sense.  He could not be charged

9     with assaulting Officer Moore with the intent to commit another

10    felony where the other felony is a civil disorder, but of

11    course that's exactly what happened in this case.  The assault

12    was part and parcel of a plan to further the civil disorder,

13    which is a separate offense with separate elements which is

14    charged in Count I.

15         So both as a legal matter and as a factual matter, there

16    is ample evidence here for the jury to conclude that the

17    defendant violated 111 with the intent to commit another

18    felony, specifically the 231, also the 1512(c)(2), but the 231

19    is the one that I think was referred to in argument.  Now we

20    get to the element I was --

21         THE COURT:  It was referred to in argument because

22    she said that's what you included in the jury instructions.

23         MR. VALENTINI:  No.  I understand.  I appreciate

24    that.  Now, with respect to the deadly and dangerous weapon

25    issue, we have had a lot of evidence come in in this case.  We

1    have heard from Captain Ortega what he understood that device

2    to be, what he would have done if he had seen that device on

3    Capitol -- in the Capitol Building, and how he -- and why he

4    would have confiscated it had he not been in the midst of a

5    riot, because it posed a risk of harm to the officers.  But

6    even beyond that, Mr. GossJankowski himself in his Facebook

7    postings -- we saw it today -- referred to the device he had as

8    a Taser.

9         And let's not forget we heard from Dr. Kroll in this

10   courtroom.  Dr. Kroll's testimony at the end of the day favors

11   the government.  It supports our position.  Dr. Kroll is the

12   gentleman who was unwilling to zap that device in his eyeball.

13   And why is that?  I don't think -- I think the jury will bring

14   its common sense into the jury room, and I think that the same

15   common sense all the more satisfies the Rule 29 standard in

16   this case.  Now, whether it was proved it's a stun gun, there's

17   no legal definition of a stun gun, and I think what --

18             THE COURT:  A what?

19             MR. VALENTINI:  There's no legal definition of a stun

20   gun.  It's an allegation in the indictment which informs the

21   defense of what it is that we are alleging was used as a

22   dan- -- a lethal and dangerous weapon, and Dr. Kroll has got a

23   view about what counts as a stun gun, what doesn't, what counts

24   as an Amazon toy and other things like that, and he's free to

25   tell the jury we have a different view.  And in any event, that

1    is not a Rule 29 matter.

2              THE COURT:  Well, I think that the jury on that issue

3    has Dr. Kroll's opinion.

4              MR. VALENTINI:  I'm sorry?

5              THE COURT:  The jury on that issue has Dr. Kroll's

6    opinion.  They can accept or reject it --

7              MR. VALENTINI:  Yeah.

8              THE COURT:  -- or any portions of it, and they have

9    lay testimony from experienced law enforcement officers and as

10   well as, you know, the Facebook posts you mentioned which,

11   yeah, for what it's worth, and their job is to consider all

12   that and decide whether they think you've proven it beyond a

13   reasonable doubt.  And, you know, I must say that I thought

14   Kroll's report, conclusions, and testimony were pretty strong

15   before cross.

16       And frankly, what you all saw in the stuff from the other

17   two cases and his testimony about them I think might -- might,

18   I say might -- undermine his credibility with the jury, and

19   that's what I think that it might do so -- and it's hard for me

20   to say that no reasonable jury could conclude that it's a stun

21   gun beyond a reasonable doubt.

22             MR. VALENTINI:  Yes, Your Honor, and I'll add this.

23   A lot of expert reports may look, as you mentioned, stronger

24   until cross.  It's just the nature of the adversary process.

25       So I think this leaves us with Count IV and V.  I think

1    there was some reference to a potential limiting instruction as

2    to which protectees the jury can find, and that's a matter for

3    Monday.  I don't think -- I don't think that has anything to do

4    with a Rule 29 motion.  There was also some reference to the

5    temporarily requirement under 1752.

6              THE COURT:  Temporarily visiting.

7              MR. VALENTINI:  Right, temporarily visiting.  To the

8    extent the defense is arguing that there is not enough evidence

9    for the jury to conclude that the Vice President was

10   temporarily visiting Congress that day, that's just plainly

11   wrong.  To the extent they're arguing something as a matter of

12   law, I believe this Court rejected the argument before trial,

13   so I'm not sure either way it's something that --

14             THE COURT:  I think I did reject it before trial on

15   this case and maybe in *Puma* also, and Judge Moss went into some

16   length about it in one of his opinions.

17             MR. VALENTINI:  I think there have been a number of

18   opinions on this issue.  It's one of those issues where it's

19   not a one to everyone else, it's a zero to everyone else kind

20   of tally right now.

21             THE COURT:  And I think you also had testimony which

22   the jury can accept or reject from the General Counsel to the

23   Secretary of the Senate about how often that particular Vice

24   President, Vice President Pence, used the office at the Senate.

25             MR. VALENTINI:  As well as Inspector Hawa's testimony

```
 1    with respect to the plans for that day.

 2              THE COURT:  Correct.

 3              MR. VALENTINI:  They spilled into the following day,

 4    but there was still a plan to leave at some point.  So there's

 5    plenty of evidence in the record, Your Honor.

 6         There was a question raised about a potential lesser

 7    included instruction under 1752 that would allow the jury to

 8    convict on the misdemeanor version of 1752, the one without

 9    that deadly and dangerous weapon enhancement.  I think that's a

10    matter for Monday as well, but to the extent that they are

11    advancing the argument there is insufficient evidence for the

12    jury to conclude that Mr. GossJankowski was carrying a deadly

13    or dangerous weapon as he entered or -- and remained in the --

14    in a restricted area or building or that he violated 1752

15    (a)(2) without carrying a dangerous or -- deadly or dangerous

16    weapon, those arguments fail for the same reasons that we just

17    argued with respect to the 111 charge in Count III.

18         If Your Honor has any specific questions about any other

19    issue that has been raised that I've not addressed, I'm happy

20    to answer it, but I was just trying to get as close to 4:30 as

21    I could.

22              THE COURT:  Go ahead.  Anything else you wanted to

23    say?

24              MR. VALENTINI:  No.  No, thank you.

25              THE COURT:  Ms. GossJankowski -- Ms. GossJankowski.
```

1     Ms. Goetzl.

2          MS. GOETZL:  Yes.  Thank you.  I just want to address

3     two points that government counsel made.  The first is that he

4     argued that in Count 231, which is Count I, the certification

5     of the electoral vote was the federally protected function.

6     That just cannot be.  There's a statutory definition of

7     federally protected function, and it has to involve a

8     department or agency.  Congress is not a department or agency,

9     so to the extent that they're going to rely on that argument,

10    that's just wrong as a matter of law, and they can't use the

11    certification of the electoral vote to show a federally

12    protected function.

13         Second, government counsel, I believe there was some

14    confusion about our argument with respect to assault with

15    intent to commit another felony.  So government counsel just

16    made reference -- when government counsel submitted to us their

17    proposed jury instructions, their jury instructions for that

18    charge read that they were charging him with assault with

19    intent to commit Count I, which is -- which we're calling civil

20    disorder, but it isn't actually civil disorder.  It's

21    obstructing or interfering with a law enforcement officer who

22    is engaged in a civil disorder, so the civil disorder itself is

23    not the count.

24         So it's obstructing or interfering with a law enforcement

25    officer.  So the government essentially has -- essentially, I

1    believe, thinks that it's going to show or could show that

2    Mr. GossJankowski intended or assaulted Officer Moore with the

3    intent to impede Officer Moore, which really makes no sense.

4    It's the same -- he has to intend -- it's basically the same

5    thing, because the only difference there is for the civil --

6    for the interfering of law enforcement officers, the only

7    different elements are the commerce element and the lack of the

8    word "forcibly."

9        So I mean -- and this might be something I have to take

10   another look at over the weekend, but it seems to me that the

11   government has to identify which law enforcement officer it's

12   saying that Mr. GossJankowski impeded in Count I so that we can

13   make sense of the assault with intent to commit that felony of

14   interfering with a specific law enforcement officer in Count I.

15           THE COURT:  As I understand the statute, the last

16   phrase, where the acts in violation of this section involve

17   physical contact with the victim and the intent to commit

18   another felony, I understand they could prove either/or.  With

19   respect to the first part of it, the acts in violation of this

20   section involve physical contact with the victim, I believe,

21   unless the government has a different view, that that phrase

22   refers back to the victim identified in Count III, which is

23   Officer Moore.

24       The question is the intent to commit another felony.  If

25   that other felony that they say the evidence shows has been

1    demonstrated, proved, and have a jury instruction that focuses

2    on a particular other felony, they want the jury to be told

3    what that last few words in Count III means is back to

4    231(a)(3).  Your argument is that they need to identify in

5    Count I who the victim is, and it might or might not be Officer

6    Moore.

7              MS. GOETZL:  Correct.  And if it's not Officer Moore,

8    then it would not make sense.  Then there would be no --

9    there's just no evidence of -- if it is Officer Moore, it seems

10   problematic because it's essentially the same -- the same

11   conduct being charged in both prongs of the test; right?  So

12   assaulting Officer Moore with the intent to impede Officer

13   Moore.  It seems redundant.

14             THE COURT:  You all -- you both can look at it.

15             MS. GOETZL:  To the extent it's a different officer,

16   it makes no sense, because it would be assaulting Officer Moore

17   with the intent to impede Officer Mastony, who was up in the

18   tunnel, or Officer Beaver, who we heard from, or Officer

19   Spooner, who --

20             THE COURT:  Well, Count III says he used a deadly

21   weapon to forcibly assault, resist, blah, blah, blah, blah,

22   blah, blah, an officer employed by the United States.  That is

23   Officer Moore.

24             MS. GOETZL:  Correct.

25             THE COURT:  Any of those verbs.

```
 1            MS. GOETZL:  Yes.

 2            THE COURT:  The Capitol police officer while Officer

 3    Moore was engaged in the -- in the performance of his official

 4    duties and with the acts in violation of the section about

 5    physical contact with the victim clearly means Officer Moore.

 6            MS. GOETZL:  Correct.

 7            THE COURT:  The question is that last phrase --

 8            MS. GOETZL:  Correct.

 9            THE COURT:  -- which may or may not ever come into

10    play, because the jury only has to find one or the other.  But

11    then we get to what we tell the jury in our instructions about

12    the last phrase.

13            MS. GOETZL:  And whether we ask for either

14    interrogatories or a special verdict form.

15            THE COURT:  Yeah.

16            MS. GOETZL:  And with respect to that I also just

17    want to indicate that for the first time I just heard

18    government counsel say, oh, well, it could have been the 1512,

19    the intent to -- the assault with intent to commit the 1512,

20    which is Count II.  To the extent that the government is going

21    to make that argument, we are definitely requesting a special

22    verdict form where the jury has to find that the other felony

23    was either Count I or Count II, because that's not an argument

24    that we were expecting when we submitted the joint instructions

25    and verdict form to the Court.
```

1    THE COURT:  Mr. Valentini, anything you want to

2    clarify or explain or respond to?

3    MR. VALENTINI:  Just briefly.  As to the federally

4    protected function for the 231, I don't think -- I don't think

5    we'll ever get to that, but just as a legal point, the Vice

6    President's participation in the certification of the Electoral

7    College satisfies that.  I mean, you know, they said there has

8    to be a member of the Executive Branch.  The Vice President is

9    a member of the Executive Branch, and this argument has been

10   teed up in a number of cases.  I'm trying to remember if I've

11   seen it decided yet, but it's one of the many arguments on

12   these statutes that has been debated.  But, anyway, we have

13   testimony here with respect to commerce.

14   Now, with respect to the intent to commit a different

15   felony, there is no merging.  This is *Blockburger* 101.  There's

16   different elements, right, so these are different felonies.

17   Right?  The only argument, as I understand it, is that they

18   think that to the extent that the 231 comes into play as the

19   last element of the aggravated version of the 111(a), then we

20   have to identify a specific officer, but that seems to assume

21   that 111(a) means with the intent to commit another felony

22   except 231, in which case you have to specify the officer.

23   I don't understand --

24   THE COURT:  We could go round and round on this, but

25   her last point is if you are -- if she heard you right and you

1   are proposing the other felony referenced in Count III could be

2   either Count I or Count II, and I'm not sure you were, but

3   that's what she heard you say.

4           MR. VALENTINI:  Oh, I understand.  Okay.  So with

5   respect to the special verdict as to different felonies, we can

6   talk about whether it's means or elements and whether it has --

7           THE COURT:  My question is, as I understand it,

8   intent to commit another felony.  The argument you first made

9   and I believe your proposed jury instruction says, ladies and

10  gentlemen of the jury, that other felony is 231.

11          MR. VALENTINI:  Yes.

12          THE COURT:  If you're now saying, ladies and

13  gentlemen of the jury, you can find either 231 or Count II,

14  "A," it changes your jury instruction, and "B," it complicates

15  the issues that we've just been discussing.  Maybe not for

16  Rule 29, but in terms of fair notice before you make your

17  closing argument and what the jury instructions say, which then

18  leads into the defense argument.  It's even worse than we

19  thought.  We really do need a special verdict form now or

20  interrogatories.

21          MR. VALENTINI:  I understand how the points line up

22  completely.  It's nothing to do with Rule 29.  We will continue

23  to consider among ourselves with respect to which felony we're

24  talking about.

25       The other point I wanted to make is certainly there's

1    nothing in the indictment that limits which felony we can

2    argue, so that's also an important point.

3             THE COURT:  You do agree that if the jury instruction

4    says "X," it would be unfair in closing argument to say it can

5    be either "X" or "Y."

6             MR. VALENTINI:  No.  Of course, of course.  I

7    understand that, yes.

8             THE COURT:  And they need to know in advance, and it

9    may lead them to a stronger special verdict form argument.

10            MR. VALENTINI:  Understood, Your Honor.

11            THE COURT:  Okay.

12            MR. VALENTINI:  Thank you.

13            THE COURT:  Anything else?

14            MR. VALENTINI:  Not from the government, unless you

15   have any other questions, Your Honor.

16            THE COURT:  Probably not surprising to some, I'm

17   going to invoke Rule 29(B) and reserve decision on all counts,

18   proceed with the trial -- or rather submit the case to the jury

19   and decide the motion after the jury returns its verdict.

20        I do that for two reasons.  One, I may not have to decide

21   part of the motion because the jury might acquit on some

22   counts; and two, in fairness to the government, if I reserve

23   ruling and there's an appeal and the Court of Appeals -- from

24   the defense and the government raises -- and if -- if after the

25   jury returns a verdict I then grant the motion of the

 1   government in part and the Court of Appeals thinks I was wrong,

 2   they can remand and order me to reinstate it.  If I grant it

 3   before the jury verdict, because of double jeopardy it's lost

 4   forever.

 5       And so Rule 29 provides that option, and in this case I

 6   could rule on some of them now and deny some portions of the

 7   motion based in part on some of my earlier decisions and

 8   decisions of my colleagues, but I think in fairness to both

 9   sides, I'll reserve ruling and decide it later.

10       So 9:00 o'clock Monday you'll provide defense theory of --

11   defendant's theory of the case.  If there are any other

12   developments, you've narrowed your points of differences.  If

13   you have other things that are either problems or less of a

14   problem than they have appeared thus far, if you email Erica,

15   she and I will be in touch over the weekend.

16       So everybody have a good weekend.  You know, it's a shame

17   about Tuesday in some ways, but without an ASL interpreter it

18   would have been complicated anyway, and I think we will lose

19   Juror Number 4, but we started a day late, and I think jury

20   selection took a day longer than we thought it was going to

21   take, but it is what it is at this point, and we'll get it

22   done.

23       Thank you very much, everybody.  Have a good weekend.

24       COURTROOM DEPUTY:  Court is adjourned.

25       (Adjourned at 4:48 p.m.)