EXHIBIT 3

No. 22-3062

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA**

_____

UNITED STATES OF AMERICA,

*Appellee (Complainant)*

v.

THOMAS ROBERTSON

*Appellant (Defendant)*

_____

On Appeal from the U.S. District Court for the District of
Columbia Case No. 1:21-cr-0034  Hon. Christopher R. Cooper

_____

**AMICUS CURIAE BRIEF IN SUPPORT OF APPELLANT**
*National Constitutional Law Union, Condemned USA, Ryan Zink, Deborah Lee,
Aaron Westbury, Isaac Westbury, Aaron James Westbury, Daniel Paul Gray*

_____

John M. Pierce
**JOHN PIERCE LAW, P.C.**
21550 Oxnard Street,
3rd Floor, PMB 172
Woodland Hills, CA 91367
(213) 279-7846
jpierce@Johnpiercelaw.com
*Attorneys for Proposed Amici*

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                            1

TABLE OF AUTHORITIES                                                         2

FRAP RULE 26.1 AND FRAP 29(a)(4)(E) DISCLOSURE STATEMENT    3

STATEMENT OF INTEREST OF AMICUS CURIAE                         5

I.      SUMMARY OF ARGUMENT                                          6

II.     ARGUMENT                                                              9

III.     RELATED GOVERNING LAW                                      15

IV.    CONCLUSION                                                          19

V.     APPENDIX         *All relevant statutes set forth in Argument*

# TABLE OF AUTHORITIES

**Cases**

*Balogun v. U.S. Atty. Gen.,* 425 F.3d 1356, 2005 WL 2333840 (11th Cir. 2005) ...................................................................................11

*BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). ....................................................................10

*Duncan v Walker*, 533 U.S. 158, 121 S.Ct. 2087,

50 L.Ed.2d 198 (2001) .......................................................9

*Morissette v. United States*, 342 U.S. 246 (1952) ...................................13

**Statutes**

18 U.S.C. § 1512(c)(2)........................................... 3, 6, 7, 8, 9, 11, 12, 13, 20

18 U.S.C. § 1752 ...................................................................................9, 12

40 U.S. Code § 5101 ..............................................................................15

40 U.S.C. §§ 5101 – 5109 ......................................................................12

U.S.C. Chapter 40 ..................................................................................12

**Other Authorities**

FRAP 29(a)(4)(E) ....................................................................................3

FRAP RULE 26.1 ....................................................................................3

## FRAP RULE 26.1 AND FRAP 29(a)(4)(E)) DISCLOSURE STATEMENT

Defendants *Ryan Zink, Deborah Lee, Aaron Westbury, Isaac Westbury, Aaron James Westbury, Daniel Paul Gray* are individuals who have been charged under 18 U.S.C. § 1512(c)(2) but have not yet gone to trial.

None of the proposed *Amici* are a majority stockholder owner of any for-profit corporation or holder of a controlling interest of any other type of business entity of a for-profit business.

In compliance with Federal Rules of Appellate Procedure ("FRAP") Rule 29(a)(4)(E), the John Pierce Law Firm further states that this brief was authored by counsel for the above named individual attorneys, without the involvement of counsel for any of the parties in *United States v. Thomas Robertson*, whom counsel here does not know and has not communicated with. No party or counsel for any party in this case contributed money that was intended to fund preparing or submitting this brief.

Counsel's law partner Roger Roots did defend one of the criminal defendants in *United States v. Ethan Nordean, et al,* in which one of the counsel in the appeal of *United States v. Fischer* was counsel for another

3

defendant.  In that case, the various defense counsel discussed with each other and with the District Court the applicability of 18 U.S.C. § 1512(c)(2).  However, this law firm did not discuss, coordinate with, consult with, or reach any tacit or express agreement concerning the preparation, contents, purpose, or filing of this proposed *Amicus Curiae* brief.

Counsel was funded in small part, leaving the rest of the work and expenses *pro bono*, in preparing and submitting this brief through appeals for donations directly to the individual Defendants and through the National Constitutional Law Union at www.NCLU.com.  It is possible that NCLU will recover further expenses of this brief from general donations from the public.  No donor is allowed to determine the content of the law firm's professional judgment in this brief.

Dated: June 8, 2023

/s/ John M. Pierce
John M. Pierce
**JOHN PIERCE LAW, P.C.**
21550 Oxnard Street,
3rd Floor, PMB 172
Woodland Hills, CA 91367
(213) 279-7846
jpierce@Johnpiercelaw.com
*Attorneys for proposed Amici*

## STATEMENT OF INTEREST OF AMICUS CURIAE

*National Constitutional Law Union* is a non-profit social welfare organization. Its mission is to preserve and protect the U.S. Constitution and American life by providing legal support and funding to individuals whose Constitutional rights, civil liberties and similar rights are being violated or in jeopardy.  If freedom-loving Americans do not unite to stand up for these rights, they will be lost forever. We believe the most important thing that can be done to protect liberty is to fight in court for those who do not have the means or ability to.  The undersigned counsel is a member of the Board of Directors of NCLU.

*Condemned USA* is a Legal Advocacy Group fighting to restore the freedom and unity of under-represented American families.  It is a united front of Americans dedicated to sharing the truth that leads to change.  We are citizen journalists, investigators, community leaders, speakers, and contributors in effort to preserve the sanctity of American institutions for those who have forgotten. We seek to ensure that our brothers, sisters, mothers, fathers, daughters, sons and friends never be victimized again by the deception, misinformation and outright lies by politicians for political gain at the expense of our freedoms.  We are a

5

safeguard for the human rights of our fellow man.

Defendants *Ryan Zink, Deborah Lee, Aaron Westbury, Isaac Westbury, Aaron James Westbury, Daniel Paul Gray* are individuals who have been charged under 18 U.S.C. § 1512(c)(2) but have not yet gone to trial.  They each face the prospect of being convicted of an inapplicable statute, facing enormous extra expense and effort to correct such an error.

In addition, NCLU and likewise Condemned USA each separately work to try to raise funds to help Defendants in criminal prosecutions pay for attorneys of their choice pursuant to their right to counsel under the Sixth Amendment to the U.S. Constitution.  Such fund-raising has typically so far been vastly less than what is needed to pay for legal expenses off the top for court filings, exhibits, transcripts, etc., much less attorneys' fees, travel of witnesses and family to court, etc.  Most defense attorneys end up working for free or very little.  Many such attorneys are 'rewarded' for their sacrifice with public and professional attacks, threats, harassment, and the like and efforts to destroy their careers based on some people's political inclinations.

In this context, the Government prosecuting and defense counsel

defending against an inapplicable statute 18 U.S.C. 1512(c)(2) against hundreds of Defendants is a waste of judicial resources, resources of the Federal Bureau of Investigation, the U.S. Department of Justice, and defense attorneys.

Furthermore, other organizations desire to lobby and influence Congress and Congressional committees through their constitutionally protected rights under the First Amendment without fear of being persecuted for their political positions and beliefs disfavored by incumbent leaders of the moment.  It is false that 18 U.S.C. 1512(c)(2) prohibits obstruction of an official proceeding (only).  In fact, the statute criminalizes "***influenc[ing]***" or "imped[ing]" an official proceeding, threatening 20 years in jail.  Therefore, lobbyists, amateur or professional, citizen or formal, face 20 years in jail for petitioning their government for the redress of grievances, that is lobbying Congress. Those who wish to speak to Congress on important issues thus have an interest in whether the statute will be carefully and correctly interpreted.

## 18 U.S. CODE § 1512 - TAMPERING WITH A
## WITNESS, VICTIM, OR AN INFORMANT

* * *

**(c)**Whoever corruptly—

**(1)**   alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

**(2)** otherwise obstructs, ***influences***, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

* * *

*(Emphasis added).*

# I.   <u>SUMMARY OF ARGUMENT</u>

There is only one point concerning the word "corruptly" in 18 U.S.C. § 1512(c)(2)  that proposed *Amici* sees as not already extensively briefed and discussed, which is important enough to make an extra effort to bring to this Court's attention in support of Appellant.

A search of the United States Code through a legal research tool Fastcase, revealed that the United States Congress pursuant to its key role and power under Article I of the U.S. Constitution conditioned

A) on the word "**corruptly**" -- <u>**26 times**</u>

B) on the word "**unlawfully**" -- <u>**203 times**</u>

C) on the word "**willfully**" -- <u>**729 times**</u>

D) on the word "**knowingly**" -- <u>**1,177 times**</u>

However, it is well-established that when Congress chooses to use one word instead of another, it does so intentionally, or at least courts must presume it does.

Therefore, it would be an error of statutory interpretation to read "corruptly" the same as "unlawfully" or as "knowingly."

When Congress wants to say "unlawfully," it knows how to say it. When Congress uses the word "corruptly" sparingly, not promiscuously

or carelessly, only 26 times in the entire United States Code, it must mean something in particular that is different from "unlawfully."

Placing all other statutory interpretive rules in front of us, none of those apply here. This Court cannot interpret "corruptly" as a synonym in language or effect of "unlawfully."

"Corruptly" must have a different meaning than "unlawfully" because Congress intentionally and with forethought chose the word "corruptly" only 26 times, including in 18 U.S.C. § 1512(c)(2)\, in the entire United States Code.

## II.  <u>ARGUMENT</u>

When Congress goes to the trouble to set up a barrage of similar laws specifically related to the U.S. Capitol, as contrasted with an incredibly vague generic statute, the Court must conclude that Congress meant what it said and intended to regulate the specific situation with narrowly-applicable statutes, especially when a large number of statutes on the topic are set forth in sections 18 U.S.C. § 1752 and 40 U.S.C. § 5104:

> "This Court's duty to give effect, where possible, to every word of a statute,

10

> *United States v. Menasche, 348 U.S. 528,
> 538-539, makes the Court reluctant* to
> treat statutory terms as surplusage. This
> is especially so when the term occupies so
> pivotal a place in the statutory scheme..."

*Duncan v Walker*, 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001)
*(emphasis added).*

By analogy, the Government and the Court are not free to

completely ignore one statute because the Government likes a different

statute.  Every statute enacted by Congress if its meaning can be

discerned and it is constitutional has the same majesty and dignity and

importance under the law as any other statute.

> "It is generally presumed that Congress acts
> intentionally and purposely when it includes
> particular language in one section of a statute but
> omits it in another," *Chicago v. Environmental
> Defense Fund, ante*, at 338 (internal quotation marks
> omitted), and that presumption is even stronger when
> the omission entails the replacement of standard legal
> terminology with a neologism.[1]

*BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128
L.Ed.2d 556 (1994).

---

[1]    "A *neologism* is a new word or expression in a language, or a new
meaning for an existing word or expression."  Collins Dictionary.
https://www.collinsdictionary.com/us/dictionary/english/neologism .
This footnote added within this brief, not found in the precedent.

Again, the same reasoning requires that every statute be given full effect and every statute must be understood to "mean something rather than nothing."

> "[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757 1761, 128 L.Ed.2d 556, (1994) (citation and quotation marks omitted); accord *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir.2000) (en banc) (noting that "[w]here Congress knows how to say something but chooses not to, its silence is controlling") (alteration in original) (quotation marks omitted)."

*Balogun v. U.S. Atty. Gen.,* 425 F.3d 1356, 2005 WL 2333840 (11th Cir. 2005).

No Court can properly collapse the word "corruptly" into simply another way of saying "unlawfully." (Of course on the theory that two heads are better than one and many learned heads are better than merely two, our legal system provides for careful consideration and review aimed at zeroing in on the correct result after due consideration of all views.  Different views among the courts may be well-meaning but may have to give way in the end to the better view.)

12

## 18 U.S. CODE § 1512 - TAMPERING WITH A WITNESS, VICTIM, OR AN INFORMANT

* * *

(c)Whoever ***corruptly***—

> (1)   alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

> shall be fined under this title or imprisoned not more than 20 years, or both.

* * *

*(Emphasis added).*

Here, Congress enacted a comprehensive statutory scheme concerning the regulation of activities in and around and protection of the U.S. Capitol complex and grounds under U.S.C. Chapter 40 and buildings or grounds temporarily declared restricted to assist the U.S. Secret Service in guarding a protectee under their care in 18 U.S.C. § 1752.  These statutes are explicitly intended by Congress to protect the personnel and proceedings of the U.S. Congress.  These statutes are all misdemeanors.

By contrast, 18 U.S.C. § 1512 including (c)(2) is explicitly ***not***

about the U.S. Capitol or its personnel or proceedings.  Every indication refuting the idea that 18 U.S.C. § 1512 regulates disruptions of Congress or Congressional proceedings but concerns destruction of records or preventing witnesses from testifying in court, instead on the contrary shows that 40 U.S.C. §§ 5101 – 5109 are explicitly about Congress and explicitly refer to disruptions of Congress or Congressional proceedings.

Every interpretive test that points away from the application of 18 U.S.C. § 1512(c)(2) here on the contrary resoundingly affirms the application of 40 U.S.C. §§ 5101 – 5109 to proceedings in Congress.

And in that context, Congress chose to qualify 18 U.S.C. § 1512(c)(2) by the word "corruptly" – which Congress chose to do only 25 other times throughout the entirety of the U.S. Code.

18 U.S.C. § 1512(c)(2)[2] requires proof beyond a reasonable doubt that a Defendant:

    a) Corruptly

_____

[2]    This being the Government's interpretation, so this assumes the interpretation holds through many expected appeals.

14

    b) Obstructed, influenced, or impeded

    c) Any official proceeding

    d) It must be implied in any such crime the *mens rea* of acting knowingly and intentionally, not accidentally or unawares or by reflex action.[3]

By contrast, 40 U.S.C. § 5104(e)(2)(D) requires proof beyond a reasonable doubt that a Defendant:

    a) willfully and knowingly

---

[3]     *MORISSETTE V. UNITED STATES*, 342 U.S. 246 (1952) ("We hold that mere omission from § 641 of any mention of intent will not be construed as eliminating that element from the crimes denounced.") For example, a congressional staffer walking in the corridor outside a hearing closed for national security confidentiality could begin choking on a chicken bone from one of the cafes, stumble into the national security hearing looking for help, and disrupt the entire congressional hearing for a substantial period of time as perhaps testifying witnesses are consumed with attempting the Heimlich maneuver. This would be an *involuntary* act, even if one in which the staffer was fully awake and aware (knowing), but not *intending* to cause a disruption. It could not qualify as "corrupt" even if seeking the benefit of not choking to death but receiving medical assistance. "Corruptly" must mean something else. Even where the choking staffer seeks a benefit – help – it could not count as "corruptly." This is true even though the staffer might lack the security clearance to be in the room and may be violating the law by being in a classified briefing to which he does not have the necessary national security clearance.

b) engaged in disorderly or disruptive conduct (more specific and narrowly targeted than the sweeping language of 1512)

c) at any place in the Grounds or in any of the Capitol (more specific and narrowly targeted than the sweeping language of 1512)

d) with the intent to impede, disrupt, or disturb the orderly conduct of (more specifically than culpable *mens rea)*

e) a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress (more specific and narrowly targeted than the sweeping language of 1512 to any official proceeding).

All differences between the statutes are increased specificity, not difference in kind. Without any different in the nature of the elements of the crime, 40 U.S.C. § 5104(e)(2)(D) more precisely and more narrowly targets the exact scenario charged in this case at bar.

The application of 18 U.S.C. § 1512(c)(2) to "influence" a

16

proceeding is especially alarming and deeply and profoundly disturbing, because it collides with the First Amendment's guarantee of the right of free speech and of petitioning the government for the redress of grievance.

A limitation not merely in comforting form but in biting substance is constitutionally needed to ensure that the reach of 18 U.S.C. § 1512(c)(2) does not transgress the red line of Constitutionally protected First Amendment rights.

No, of course, allegedly criminal conduct _accompanied by_ speech is no less culpable than if the same acts were carried out in silence.  That could not be farther from the point.  On the contrary, however, we must take exceedingly great care to understand where the red line is and to define things with extreme precision where just on the other side of the line are the core and most precious constitutional rights in our American system.

Yet it seems to have been lost that Congress already did this:

III.   **RELATED GOVERNING LAW**

**40 U.S. Code § 5101 - Definition**

In this chapter, the term "Capitol Buildings" means the United States Capitol, the Senate and House

17

Office Buildings and garages, the Capitol Power Plant, all buildings on the real property described under section 5102(c) (including the Administrative Building of the United States Botanic Garden) [1] all buildings on the real property described under section 5102(d), all subways and enclosed passages connecting two or more of those structures, and the real property underlying and enclosed by any of those structures.

## 40 U.S. Code § 5104 - Unlawful activities

(a)DEFINITIONS.—In this section—

(1)ACT OF PHYSICAL VIOLENCE.—The term "act of physical violence" means any act involving—
>(A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or
>(B) damage to, or destruction of, real or personal property.

(2)DANGEROUS WEAPON.—The term "dangerous weapon" includes—
>(A) all articles enumerated in section 14(a) of the Act of July 8, 1932 (ch. 465, 47 Stat. 654); and
>(B) a device designed to expel or hurl a projectile capable of causing injury to individuals or property, a dagger, a dirk, a stiletto, and a knife having a blade over three inches in length.

(3)EXPLOSIVES.—
The term "explosives" has the meaning given that term in section 841(d) of title 18.

18

**(4)**F<small>IREARM</small>.—
The term "firearm" has the meaning given that term in section 921(3) of title 18.

**(b)**O<small>BSTRUCTION OF</small> R<small>OADS</small>.—
A person may not occupy the roads in the United States Capitol Grounds in a manner that obstructs or hinders their proper use, or use the roads in the area of the Grounds, south of Constitution Avenue and B Street and north of Independence Avenue and B Street, to convey goods or merchandise, except to or from the United States Capitol on Federal Government service.

**(c)**S<small>ALE OF</small> A<small>RTICLES</small>, D<small>ISPLAY OF</small> S<small>IGNS</small>, <small>AND</small> S<small>OLICITATIONS</small>.—A person may not carry out any of the following activities in the Grounds:

> **(1)** offer or expose any article for sale.
> **(2)** display a sign, placard, or other form of advertisement.
> **(3)** solicit fares, alms, subscriptions, or contributions.

**(d)**I<small>NJURIES TO</small> P<small>ROPERTY</small>.—
A person may not step or climb on, remove, or in any way injure any statue, seat, wall, fountain, or other erection or architectural feature, or any tree, shrub, plant, or turf, in the Grounds.

**(e)**C<small>APITOL</small> G<small>ROUNDS AND</small> B<small>UILDINGS</small> S<small>ECURITY</small>.—

**(1)**F<small>IREARMS, DANGEROUS WEAPONS, EXPLOSIVES, OR INCENDIARY DEVICES</small>.—An individual or group of individuals—

**(A)**except as authorized by regulations prescribed by the Capitol Police Board—

19

**(i)** may not carry on or have readily accessible to any individual on the Grounds or in any of the Capitol Buildings a firearm, a dangerous weapon, explosives, or an incendiary device;

**(ii)** may not discharge a firearm or explosives, use a dangerous weapon, or ignite an incendiary device, on the Grounds or in any of the Capitol Buildings; or

**(iii)** may not transport on the Grounds or in any of the Capitol Buildings explosives or an incendiary device; or

**(B)** may not knowingly, with force and violence, enter or remain on the floor of either House of Congress.

**(2)**VIOLENT ENTRY AND DISORDERLY CONDUCT.—An individual or group of individuals may not willfully and knowingly—

**(A)** enter or remain on the floor of either House of Congress or in any cloakroom or lobby adjacent to that floor, in the Rayburn Room of the House of Representatives, or in the Marble Room of the Senate, unless authorized to do so pursuant to rules adopted, or an authorization given, by that House;

**(B)** enter or remain in the gallery of either House of Congress in violation of rules governing admission to the gallery adopted by that House or pursuant to an authorization given by that House;

**(C)** with the intent to disrupt the orderly conduct of official business, enter or remain in a room in any of the Capitol Buildings set aside or designated for the use of—

    **(i)** either House of Congress or a Member, committee, officer, or employee of Congress, or either House of Congress; or

    **(ii)** the Library of Congress;

**(D)** utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress;

**(E)** obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings;

**(F)** engage in an act of physical violence in the Grounds or any of the Capitol Buildings; or

**(G)** parade, demonstrate, or picket in any of the Capitol Buildings.

**(3)** EXEMPTION OF GOVERNMENT OFFICIALS.—This subsection does not prohibit any act performed in the lawful discharge of official duties by—

**(A)** a Member of Congress;

21

(B) an employee of a Member of Congress;
(C) an officer or employee of Congress or a committee
of Congress; or
(D) an officer or employee of either House
of Congress or a committee of that House.

(f) PARADES, ASSEMBLAGES, AND DISPLAY OF
FLAGS.—Except as provided in section 5106 of this
title, a person may not—

(1) parade, stand, or move in processions
or assemblages in the Grounds; or
(2) display in the Grounds a flag, banner,
or device designed or adapted to bring
into public notice a party, organization, or
movement.

## IV.   <u>CONCLUSION</u>

The proposed *Amici* ask that the U.S. Court of Appeals for the

District of Columbia Circuit consider these matters in reaching its

decisions concerning the application of 18 U.S.C. § 1512(c)(2).

Dated: June 8, 2023                    Respectfully Submitted,


                                       /s/ John M. Pierce
                                       John M. Pierce
                                       John Pierce Law, P.C.
                                       21550 Oxnard Street,
                                       Woodland Hills, CA 91367
                                       Tel: (213) 279-7846
                                       Jpierce@Johnpiercelaw.com
                                       *Attorney for Proposed Amici*

22

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
**Record No. 22-3062**
UNITED STATES
v.
Thomas Robertson

U.S. Court of Appeals for D.C. Circuit
333 Constitution Avenue, N.W.
Washington, DC 20001-2866

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS,**
**AND TYPE-STYLE REQUIREMENTS**

1. This motion complies with the word limit requirements of *Fed. R. App. P. 27(d)(2)(a)* because the document contains 3,243 words, as determined by the word-count function of Microsoft Word, excluding the parts of the motion exempted by *Fed. R. App. P. 32(f)*; and

2. This motion complies with the typeface requirements of *Fed. R. App. P. 32(a)(5)* and *32(a)(6)* because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ John M. Pierce
John M. Pierce
John Pierce Law, P.C.
2550 Oxnard Street
3rd Floor, PMB# 172
Woodlands, Hills, CA 91367

23

jpierce@johnpiercelaw.com
(213) 279-7648

*Attorney for Proposed Amici*
Dated: June 7, 2023

## CERTIFICATE OF SERVICE

I hereby certify from my review of the Court's PACER system, that the foregoing will be delivered automatically this June 8, 2023, through the Court's computerized ECF system to the following attorneys of record listed with the Court's ECF system:

Mr. Timothy Cone, Esq
1615 New Hampshire Avenue, N.W.
Washington, D.C. 20009
Telephone (202) 862-4333
Email:  timcone@comcast.net
Counsel for Appellant Robertson
Appointed by the Court


Mr. MATTHEW M. GRAVES
United States Attorney

Mr. James I. Pearce
Special Assistant U.S. Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, NW
Washington, DC 20530
Telephone:  (202) 532-4991
Email:  James.Pearce@usdoj.gov

_____/s/John M. Pierce____
John M. Pierce

24