**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-123-PLF** |
| | : | |
| **VITALI GOSSJANKOWSKI** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO MOTION FOR A JUDGMENT OF ACQUITTAL OR NEW TRIAL**

Pursuant to the Court's order issued on December 27, 2023, the government submits its

supplemental memorandum further addressing the *mens rea* requirement of 18 U.S.C. § 1752.

**I.    SECTION 1752(a) DOES NOT REQUIRE PROOF OF A DEFENDANT'S KNOWLEDGE THAT THE VICE PRESIDENT IS TEMPORARILY VISITING THE RESTRICTED BUILDING OR GROUNDS, OR OF THE REASON WHY THE AREA IS RESTRICTED**

As the government explained in its opposition (ECF No. 195 at 28-33), a defendant need

not know that a Secret Service protectee is present, or that the area is restricted pursuant to

Section 1752 specifically, to act knowingly. Such a requirement cannot be squared with

Congress's intent in enacting § 1752(a), and nothing in the statute's text demands that its

"knowingly" requirement extend to the reasons why an area is "posted, cordoned off, or

otherwise restricted."  A substantial number of judges in this District have employed the Section

1752 jury instruction this Court routinely uses, which does not specifically require the

government to prove that a defendant knew why the Capitol and its grounds were restricted on

January 6, 2021, or the additional fact of the presence of a protected person.  This view is correct

and, as explained more fully below, the government respectfully submits that the Section 1752

formulations in *United States v. Elizalde*, No. 1:23-cr-170-CJN, 2023 WL 8354932 (D.D.C.

Dec. 1, 2023), and *United States v. Bingert*, No. 1:21-CR-91-1-RCL, 2023 WL 3613237, at *1

(D.D.C. May 24, 2023),[1] are incorrect.

> **A.   Neither The Text Nor The Purpose Of Section 1752(a) Supports The Defendant's Theory That The Defendant Must Know Of The Vice President's Visit To The Restricted Area Or Under What Statutory Authority The Area Was Restricted**

1.     Section 1752(a)(1) makes it a crime to "knowingly enter[] or remain[] in any

restricted building or grounds without lawful authority to do so."  Section 1752(a)(2) similarly

makes it a crime to "knowingly, and with intent to impede or disrupt the orderly conduct of

Government business or official functions, engage[] in disorderly or disruptive conduct in, or

within such proximity to, any restricted building or grounds when, or so that, such conduct, in

fact, impedes or disrupts the orderly conduct of Government business or official functions."

Section 1752(c)(1), in turn, provides that the term "restricted building or grounds" means "any

posted, cordoned off, or otherwise restricted area … (A) of the White House or its grounds, or

the Vice President's official residence or its grounds; (B) of a building or grounds where the

President or other person protected by the Secret Service is or will be temporarily visiting; or (C)

of a building or grounds so restricted in conjunction with an event designated as a special event

of national significance."  There is no dispute that the statute requires that a defendant know both

that he was in a "restricted building or grounds" and, for Section 1752(a)(1), that he was there

"without lawful authority."  The question is what it means for a defendant to know that he is in a

"restricted building or grounds."

---

[1]     As the government previously noted (Opp. 31-32 n.8), *Bingert* was a bench trial, and Judge Lamberth's passing reference to the *mens rea* issue in his verdict lends, at most, minimal support to the defendant's view.  Although one sentence in that verdict is consistent with the defendant's reading of the statute, the issue was immaterial in *Bingert* because the court found the defendants guilty on all Section 1752 charges regardless.  *See Bingert*, ECF No. 166, at 11-13.  And, in other cases, Judge Lamberth applied the law consistently with the consensus view urged by the government.  *See United States v. Kelly*, 21-cr-708-RCL, ECF No. 101; *United States v. Worrell*, 21-cr-292-RCL, ECF No. 245.

As explained in the government's opposition, whether "a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent." *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019).  Courts begin with the presumption "that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct."  *Id.* (quotation marks omitted).  Although "as 'a matter of ordinary English grammar,' [courts] normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime,'" *id.* at 2196 (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009)), ultimately, "the inquiry into a sentence's meaning is a contextual one."  *Flores-Figueroa*, 556 U.S. at 652.  Unless "the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."  *Bryan v. United States*, 524 U.S. 184, 193 (1998).

Applying these principles, it is apparent that, under § 1752(a), the government does not have to prove that the defendant knew that a specific dignitary was there, or that the area was restricted pursuant to a specific statutory authority.  This result can be seen by inserting the definition of "restricted building or grounds" from § 1752(c)(1) into, for example, § 1752(a)(1). The statute then applies to "whoever—

> knowingly enters or remains in any [posted, cordoned off, or otherwise restricted area—(A) of the White House or its grounds, or the Vice President's official residence or its grounds; (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance,] without lawful authority to do so.

§ 1752(a)(1), (c)(1).

Where, as here, "the modifier 'knowingly' introduces a long statutory phrase, … questions may reasonably arise about how far into the statute the modifier extends."  *Rehaif*, 139

S. Ct. at 2196.  Here, the facts that constitute the offense, and that criminalize otherwise innocent conduct, are, respectively, that (i) the defendant knew that he was entering or remaining in a "posted, cordoned off, or otherwise restricted area," and that he knew that he lacked authority to do so (in § 1752(a)(1)); and that (ii) the defendant knew that he was engaging in disorderly or disruptive conduct in an area that he knew was "posted, cordoned off, or otherwise restricted" (in § 1752(a)(2)).[2]  In this way, § 1752(a)(1) and (2) resemble typical trespassing and disorderly conduct statutes.  *See, e.g.*, 3 Wayne R. LaFave, Substantive Criminal Law § 21.2(c) (3d ed. 2022) ("[T]he common requirement of criminal trespass offenses is that the actor be aware of the fact that he is making an unwarranted intrusion, which serves to exclude from criminal liability both the inadvertent trespasser and the trespasser who believes that he has received an express or implied permission to enter or remain.") (quotation marks omitted).

There are good reasons why Congress did not intend to require a defendant to know *why* a particular area is restricted—whether the reason is that "the President or other person protected by the Secret Service is or will be temporarily visiting" or that it is "so restricted in conjunction with an event designated as a special event of national significance."  18 U.S.C. § 1752(c)(1)(B)-(C).  *First*, like jurisdictional elements, these requirements "have nothing to do with the wrongfulness of the defendant's conduct[.]"  *Rehaif*, 139 S. Ct. at 2196.  A defendant who enters or remains in an area he knows to be restricted while knowing that he lacks authority to be there, or a defendant who engages in disorderly and disruptive conduct in such an area, has engaged in wrongful conduct regardless of whether he knows the area is restricted because, for example, a former First Lady or a "distinguished foreign visitor[ ] to the United States" is present.  18 U.S.C. § 3056(a)(3), (6).

---

[2] Section 1752(a)(2) also requires proof of specific intent to impede or disrupt the orderly conduct of Government business or official functions.

*Second*, as the government explained in its opposition (ECF No. 195 at 30-31), and as Judge McFadden explained in the verdict in *United States v. Griffin*, 21-cr-92, ECF No. 106 at 332, *appeal pending,* No. 22-3042 (D.C. Cir. argued Dec. 4, 2023), such a requirement would undermine Congress's intent in enacting "a statute designed to safeguard the President and other Secret Service protectees[.]" *United States v. Griffin*, 549 F. Supp. 3d 49 (D.D.C. 2021). If the statute "require[s] the Secret Service to somehow be telling people" that a protectee is present, that would tend to make the person less safe, not more. *Griffin*, ECF No. 106 at 332. It would make no sense for Congress to require such a result given the "'overwhelming[] interest in protecting the safety of [the] Chief Executive.'" *Wood v. Moss*, 572 U.S. 744, 758 (2014) (quoting *Watts v. United States*, 394 U.S. 705, 707 (1969)). *See generally United States v. Morgan*, 45 F.4th 192, 206 (D.C. Cir. 2022) (explaining that "the ordinary textual understanding of the operation of the word 'knowingly' in criminal statutes … is 'a contextual one,' subject to being overcome") (quoting *Flores-Figueroa*, 556 U.S. at 652).

*Third*, requiring that a defendant know the reason or statutory basis for the area's restriction is difficult to square with Congress's elimination, in 2012, of the statute's requirement that the defendant act "willfully." That change was meant to "correct and simplify" the statute, and to "clarif[y] that the penalties in Section 1752 of title 18 apply to those who knowingly enter or remain in any restricted building or grounds without lawful authority to do so." H.R. Rep. No. 112-9, at 1-2. When it eliminated the statute's "willfully" requirement, Congress moved the language "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting" from § 1752(a)(1) to a separate definitional provision. *Compare* 18 U.S.C. § 1752(a)(1) (2011), *with* 18 U.S.C. § 1752(a)(1) (2023). Nothing in this statutory amendment suggests that Congress

meant to require proof that the defendant knows why an area is posted, cordoned off, or otherwise restricted.  To the contrary, by eliminating the statute's requirement that a defendant act willfully and moving the relevant language to a separate statutory section, Congress made clear its intent to lower the bar for prosecutions under § 1752.  *See Griffin*, 549 F. Supp. 3d at 56 ("But Congress did lower the mens rea requirement, striking the requirement that a defendant act 'willfully.'").

Consistent with the foregoing, until recently, in the many other cases arising out of January 6 that have charged offenses under Section 1752(a), no court, including the Court in this case, had specifically instructed a jury that the government is required to prove that the defendant knew that the area was "of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  *See e.g.*, ECF No.166 at 31 (adopting the government's proposed instructions on violations of Sections 1752(a)); *United States v. Rhine*, 21-cr-687-RC, ECF No. 105 at 15 (same); *United States v. Wren et al.*, No. 21-cr-599-RBW, ECF No. 121 at 39 (same); *United States v. Carpenter*, 21-cr-305-JEB, ECF No. 97 at 12 (same); *United States v. Vargas Santos*, No. 21-cr-47-RDM, ECF No. 73 at 129 (same).[3]  And Judge McFadden expressly rejected the defendant's reading in a carefully explained ruling in *Griffin*. *See supra*.  That approach is correct, and this Court should adhere to it in this case.

2.      In his post-trial submissions, GossJankowski relies extensively (ECF No. 191 at 18-21; ECF No. 200 at 11-13) on the Supreme Court's decision in *McFadden v. United States*, 576 U.S. 186 (2015).  But, as the government has already explained, *McFadden* undermines, rather than supports, the defendant's reading of the statute.  *See* ECF No. 195 at 32-33.

---

[3] As noted, one sentence in Judge Lamberth's bench verdict in *Bingert* appears to be consistent with the defendant's view.  *See Bingert*, ECF No. 166, at 11-13.  But, as noted, the issue was immaterial in that case because the court found the defendants guilty on all Section 1752 charges regardless.

The government's argument is not, as the defendant appears to suggest, based on an attempt to impose an everyday meaning to the statutory term "restricted building or grounds." Rather, it is based on the statutory definition of "restricted building or grounds." Before the 2012 amendments, § 1752 made it a crime "willfully and knowingly to enter or remain in any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting[.]" 18 U.S.C. § 1752(a)(1) (2011). After those amendments, Congress moved the language "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting" to a different section of the statute. § 1752(c)(1)(B). Under either version, the relevant question is which phrases the term "'knowingly' modifies[.]" *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022). For the reasons previously discussed, § 1752's text, structure, and context support the conclusion that Congress intended to require that a defendant know he was entering or remaining in a "posted, cordoned off, or otherwise restricted area"—words that immediately follow "knowingly" when the definition of "restricted building or grounds" is inserted—and that he lacked lawful authority to be there, but not to know why the area was restricted, or that a protectee was visiting the restricted building or grounds.

The flaw in the defendant's interpretation is underscored by his argument that the requisite knowledge may be established by a "'POSTED' notice citing § 1752(a)." Reply 14-15. Putting aside the fact that § 1752 applies only to places where Secret Service protectees are or will be temporarily visiting (thus making the posting of such temporary signs often impractical), it is unclear how the knowledge the defendant posits differs from a defendant's knowledge that he is entering a posted, cordoned off, or otherwise restricted area. It appears to be

GossJankowski's position that if a defendant is warned he is entering a "Restricted Area, § 1752" (proper noun, with statutory citation), he can be convicted of violating § 1752(a)(1), but if the defendant is warned that he is entering a restricted area (noun, without specific citation to § 1752)—much as GossJankowski was in this case, *see* Ex. 604 (sign stating "AREA CLOSED – By order of the United States Capitol Police Board")—he cannot.  There is no reason why Congress would draw such a hyper-technical and nonsensical distinction.

Moreover, requiring Secret Service signage or its equivalent could substantially hinder § 1752(a)'s protective purpose. "[W]hile the Secret Service has primary responsibility for guarding its protectees … it invariably relies on other law enforcement agencies for support[,]" including "state and local police who assist when protectees travel outside of the District[.]" *Griffin*, 549 F. Supp. 3d at 54.  *See, e.g.*, *Pahls v. Thomas*, 718 F.3d 1210, 1218 (10th Cir. 2013) ("Whenever the President travels, the Secret Service is in charge of security, and it works with other federal agencies, as well as state and local entities, to design and implement security measures."); Tr. 1096-1098 (testimony of Secret Service Inspector Hawa), 1107-1108 (same), 1120-1121.  Such agencies would rarely, if ever, have access to Secret Service signage. Nor would it be practical to post signs all along the "nearby roadways" that are "of particular concern to the Secret Service" due to "the risk of attack by vehicle-borne explosives." *Pahls*, 718 F.3d at 1218.

## B.  *Elizalde* **Was Incorrectly Decided**

In *United States v. Elizalde*, No. 23-cr-170-CJN, 2023 WL 8354932, Judge Nichols recently parted ways with *Griffin*, finding that the word "knowingly" in 18 U.S.C. § 1752(a)(1) and (2) applies to every phrase in a separate definitional subsection, 18 U.S.C. § 1752(c)(1)(B), effectively requiring proof that the defendant knew not only that a location was a "posted, cordoned off, or otherwise restricted area," but also that it was such an area of a "building and

grounds where a person protected by the Secret Service would be visiting." *Id.* at *3 (cleaned up).  The *Elizalde* court's reasoning is unpersuasive, and its ruling is incorrect.

In rejecting the government's reading of Section 1752, *Elizalde* stated that, while Congress did intend to protect Secret Service protectees, "concerns about practical enforceability are insufficient to outweigh the clarity of the text." 2023 WL 8354932 at *5 (citations omitted, quoting *Flores-Figueroa*, 556 U.S. at 656).  But that assertion misses the mark for several reasons.  At the outset, the government's interpretation of Section 1752 is not animated by concerns about practical enforceability.  Rather, the point is one of Congressional intent, which is the ultimate touchstone of statutory interpretation.

Even more significantly, the textual and contextual considerations informing Congress' intent with respect to Section 1752 are fundamentally different from their counterpart in *Flores-Figueroa*.  Start with the text.  In *Flores-Figueroa*, the statutory language at issue consisted of a single sentence imposing enhanced penalties for defendants who "knowingly transfer[], possess[], or us[e], without lawful authority, a means of identification of another person" in the commission of certain predicate offenses.  556 U.S. at 648 (quoting 18 U. S. C. § 1028A(a)(1)).  The question in *Flores-Figueroa* was whether the word "knowingly" applied to the sentence's "last three words," *id.*: "of another person."  *See also id.* (identifying the dispute as "whether the provision requires that a defendant also know that the something he has unlawfully transferred is, for example, a real ID belonging to another person rather than, say, a fake ID").  In ruling that "knowingly" applied to those words, *Flores-Figueroa* found support, first and foremost, in "ordinary English grammar."  *Id.* at 650.  The Court reasoned that "[i]n ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as

knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Id.*

That straightforward grammatical reasoning has no counterpart in Section 1752(a)(1) and (2). No one disputes that, consistent with the holding in *Flores-Figueroa*, the "knowingly" requirement in Section 1752(a)(1) and (2) applies to the relevant "object" in those provisions: the term "any restricted building or grounds." But that is not the question presented in *Elizalde* or, belatedly, in this case. The question here is: given that "knowingly" applies to the "any restricted building or grounds" element in Section 1752(a)(1) and (2), does a knowledge requirement necessarily extend to every phrase in that term's definition—including phrases that do not serve to differentiate between culpable conduct and otherwise innocent conduct—even though Congress tucked that term's definition into a separate and standalone statutory subsection? *That* textual question, unlike its counterpart in *Flores-Figueroa*, plainly does not find a conclusive answer in "ordinary English grammar." 556 U.S. at 650. That alone undermines *Elizalde*'s reliance on *Flores-Figueroa*.[4]

Next, consider the statute's "context"—another consideration that *Flores-Figueroa* singled out as relevant and weighty in discerning *mens rea*—and its purpose. 556 U.S. at 652

---

[4] *Elizalde* also cites *Rehaif*, reasoning that, there, the provision criminalizing "knowing" violations of firearms prohibitions (18 U.S.C. § 924(a)(2)) was distinct from the provision setting forth the classes of individuals prohibited from possessing firearms (18 U.S.C. § 922(g)), and yet the Supreme Court held that the statute required proof of the defendant's knowledge that he belongs to a prohibited class in § 922(g). But *Rehaif* also made clear that § 924(a)(2)'s knowledge requirement does *not* extend to the jurisdictional interstate-commerce elements of § 922(g), reasoning that jurisdictional elements "normally have nothing to do with the wrongfulness of the defendant's conduct" and, thus, "are not subject to the presumption in favor of scienter." 139 S. Ct. at 2196. The same is true here. As already explained, the trespass and disorderly conduct prohibited under Sections 1752(a)(1) and (2) is wrongful regardless of whether a Secret Service protectee is visiting the restricted building or grounds. Just as was true for § 922(g)'s jurisdictional elements, therefore, the "knowing" requirement of Section 1752(a)(1) and (2) should not carry over to every aspect of the definition set forth in the statute's separate definitional subsection (18 U.S.C. § 1752(c)(1)(B)).

("[T]he inquiry into a sentence's meaning is a contextual one").  In *Flores-Figueroa*, the Court found no "special context" to displace the "ordinary English" operation of the word "knowingly" in Section 1028A's single-sentence context.  *Id.*  In a similar vein, with respect to the "statute's purpose," *Flores-Figueroa* found 18 U.S.C. § 1028A's "history (outside of the statute's language) … inconclusive."  556 U.S. at 655 (discussing the statute's evolution and legislative history).

In these critical respects, Section 1752(a)(1) and (2) could not be more different.  As already explained (*see* ECF No. 195 at 26-27; *supra*), a "special context" plainly exists here: Whereas requiring knowledge that the area is restricted serves to "separate wrongful from otherwise *innocent* conduct," *United States v. Morgan*, 45 F.4th 192, 208 (D.C. Cir. 2022)—and thus there is no dispute that knowledge of the area's restricted status is required—requiring proof that the defendant knew of a protectee's presence within that area serves no such purpose.  Given the central role of the wrongful-versus-innocent demarcation in discerning a statute's *mens rea*, *see, e.g.*, *Morgan,* 45 F.4th at 208; *Ruan v. United States*, 142 S. Ct. 2370, 2376-2377 (2022), that alone supplies a "special context" absent in *Flores-Figueroa.*

Even more significantly, moreover, every indicia of congressional intent—including Congress's clear intent, in 2012, to provide additional safeguards for protectees by relaxing aspects of the applicable *mens rea* requirements, *see supra* p.5 (discussing the statute's evolution)—favors the government's reading.  As the *Griffin* court persuasively explained, if Congress's aim in enacting Section 1752 was to safeguard Secret Service protectees, it is implausible that it would have intended the statute to apply as narrowly as the *Elizalde* decision implies, requiring public knowledge of a protectee's location for the statute's protections to

operate. *Griffin*, ECF No. 106 at 332. That, too, sets this case apart from *Flores-Figueroa*, where the evidence of Congress' specific purpose was "inconclusive."

In addition to misapprehending *Flores-Figueroa* and *Rehaif*, *Elizalde* appears to have misconstrued some of the government's arguments. The *Elizalde* court, for example, stated that "[t]he government's proposed reading gives a single term in a single sentence two different meanings, which would be highly anomalous in any circumstance, but especially here, where Congress expressly defined the term." 2023 WL 8354932 at *3; *see also id.* at *1. But that characterization misapprehends the government's position. The government's interpretation does not give the term "restricted building or grounds" two different meanings. Instead, the question is simply what information the defendant must know to commit the offense. This same logic was presented just last year in *United States v. Morgan*, 45 F.4th 192 (D.C. Cir. 2022), where the relevant statute made it a crime to "'knowingly transport[] an individual who has not attained the age of 18 years in interstate or foreign commerce'" "'with intent that the individual engage … in any sexual activity for which any person can be charged with a criminal offense'" (including statutory rape). *Id.* at 204-205 (quoting 18 U.S.C. § 2423(a)). The court of appeals held "that, while section 2423(a) required proof that J.T. in fact was underage (under 18 for purposes of the knowingly clause and under 16 for purposes of the [statutory-rape] intent clause), the statute did not require proof that Morgan knew J.T. was underage." *Id.* at 205. No one would seriously maintain that, in so holding, the court of appeals assigned two different meanings to the phrase "any sexual activity for which any person can be charged with a criminal offense"—one that includes statutory rape's age requirement for *actus reus* purposes and one that excludes statutory rape's age requirement for *mens rea* purposes. Yet that is the crux of the *Elizalde* court's "two different meanings" criticism of the government's position.

*Elizalde* distinguishes the court of appeals' recent decision in *Morgan* as "nearly *sui generis*," 2023 WL 8354932, at *5, characterizing child-sex crime cases as an exception to the general presumption of *mens rea*.  But that characterization misses the key point.  The ruling in *Morgan* (dealing with child-sex crimes), no differently from *McFadden v. United States*, 576 U.S. 186, 192 (2015) (dealing with narcotics), did not depend on an arbitrary, judge-made categorization.  Rather, the special nature of child-sex offenses was relevant because it helped inform Congress' likely intent with respect to *mens rea*.  An analogous analysis, with the same result, is appropriate here:  in both cases Congress intended to enhance the protections of specific group of persons, and such intent is evident through ample and known statutory history.

Separately, *Elizalde* expressed concern that, "[u]nder the government's interpretation, a person could 'knowingly' enter a § 1752 'restricted building or grounds' even if the grounds are not restricted within the statutory definition."  2023 WL 8354932, at *3 n.1.  But that argument is just another way of saying that, under the prevailing view, there may be instances in which a person satisfies the statute's *mens rea* requirement even though he does not satisfy the statute's *actus reus* requirement.  Nothing about that outcome is remarkable, let alone undesirable.  Indeed, that outcome is exactly what the court of appeals endorsed for § 2423(a) in *Morgan*, which could similarly be said to allow for instances in which the *mens rea* element is satisfied but the statute's *actus reus* element is not—say, because the human-trafficking victim is not, in fact, underage.  But the fact that one can construct such scenarios does not obscure the critical upshot that, in those scenarios, the defendant is *not* guilty of the offense—precisely because, by definition, in those cases, the facts do *not* satisfy the statute's *actus reus* requirement.

*Elizalde* also posits that it "seems unlikely" that someone who "ends up near a Secret Service protectee by happenstance, without knowing that the protectee is present, is there to

cause the protectee harm" and speculates that "Congress may well have acted cautiously to avoid sweeping up conduct that poses little threat to a Secret Service protectee."   2023 WL 8354932, at *5.  This, too, is unpersuasive.  For one thing, *Elizalde*'s speculation about Congress' intent is unsupported by any evidence.  For another, it leads to results that Congress could not have intended.  It is implausible, for example, that Congress would have deemed the "threat" posed by a defendant who knowingly penetrates a cordoned off area to shoot a firearm at an official function attended by a Secret Service protectee insufficiently serious to trigger liability under Section 1752(a)—unless the government can also prove beyond a reasonable doubt that the defendant knew that a Secret Service protectee was present at the official function.  Yet that is precisely the outcome under *Elizalde*'s logic.  Finally, and relatedly, *Elizalde* would require believing that Congress intended to force the Secret Service to choose between forgoing the protections secured by Section 1752 or publicly announce the presence of a protectee within the restricted area.  *See Griffin*, ECF No. 106 at 332.  This would make the protectee *less* safe and frustrate congressional intent.  *Id.*  Rather than "act[ing] cautiously to avoid sweeping up conduct that poses little threat to a Secret Service protectee," 2023 WL 8354932 at *5, Congress chose to strengthen provisions designed to provide safety for protectees.  *See supra* p.5.  A person who knowingly disregards a restricted perimeter is exactly the type of person that Congress intended to deter or punish.[5]

---

[5] The same *mens rea* issue is also presented in *United State v. Groseclose*, No. 1:21-cr-311-CRC (bench trial concluded on Nov. 21, 2023).  In *Groseclose*, Judge Cooper initially reserved the Court's verdict as to the Section 1752(a) counts.  Minute Order (Nov. 21, 2023).  This evening, shortly before this filing, the *Groseclose* court issued a memorandum opinion ruling that "the government must prove knowledge as to both elements which, taken together, collectively define 'restricted building or grounds' under the statute" and finding Groseclose not guilty of the Section 1752(a) charges.  *Groseclose*, ECF No. 99 at 1, 22 (Jan. 5, 2024).  The government respectfully requests leave to address *Groseclose* in a separate filing, after it has had the opportunity to review and consider the *Groseclose* court's opinion.

## II.    EVEN UNDER THE DEFENDANT'S FLAWED READING OF SECTION 1752, HE IS NOT ENTITLED TO RELIEF

### A.    The Evidence Was Sufficient Even Under The Defendant's Reading Of The Statute

Even assuming *arguendo* that the defendant is correct about the statute's *mens rea* requirement, his sufficiency claim would still fail.  According to the defendant (ECF No. 200 at 13), the government was required to prove *both* (1) that he knew he was in a posted, cordoned off, or otherwise restricted area; and (2) that he knew *either* (a) that the area "was restricted by the federal government under § 1752(a), without knowing that a protectee was present," *or* (b) that "Vice-President Pence [was] temporarily visiting the Capitol."  "[V]iewing the evidence in the light most favorable to the prosecution," there was substantial evidence from which "any rational juror could have found [both of] the[se] elements of the crime beyond a reasonable doubt." *United States v. Borda*, 848 F.3d 1044, 1053 (D.C. Cir. 2017).

The first knowledge element—that GossJankowski knew that he was entering (and, later, remaining) in a posted, cordoned off, or otherwise restricted area—is straightforward.  As the government explained in its opposition (ECF No. 195 at 26-28), the trial evidence provided ample grounds for a rational jury to conclude (i) that, on January 6, a restricted area was put in place on Capitol grounds, corresponding to the diagram in Exhibit 601; (ii) that, after entering that restricted area, between 2:36 p.m. and 2:41 p.m., GossJankowski climbed the inaugural stadium's seating, where he had a direct line of sight—and, indeed, looked down on—the mayhem unfolding between the rioters and the police on the Lower West Plaza; and (iii) that he repeatedly entered the Lower West Terrace tunnel, at one point walking past a door marked with a sign stating, "Members Entrance Only" (*see* Ex. 137; Tr. 929).  From these uncontroverted facts (among other evidence), a rational jury could easily conclude that GossJankowski knew that he was entering or remaining in a posted, cordoned off, or otherwise restricted area.

The trial evidence also included sufficient evidence to conclude that GossJankowski knew that the Vice President was within the restricted building or grounds.  As the government explained at trial and in its opposition (ECF No. 200 at 5, 20-21), even before January 6, GossJankowski was fully aware that, on that day, Congress was set to certify the Electoral College vote.  In the evening of January 5, for example, in discussing the local authorities' security plans, GossJankowski told a Facebook friend: "Tomorrow, it's the Congress to certify the electoral certification."  Ex. 303, at 2.  From that reference (and from GossJankowski's flaunting his knowledge of the upcoming proceeding), a rational jury could reasonably infer that GossJankowski also understood, at a minimum, the basic contours of the proceeding: that it would involve a Joint Session of Congress, and that the Vice President would be present at the Capitol for the proceeding.  *See generally* Ex. 500-502 (Constitutional and statutory provisions and Congressional resolution), 503 (montage video of certification proceeding), 506-507 (Congressional Record); Tr. 1197-1240 (testimony of Daniel Schwager).

Indeed, the fact that GossJankowski knew of Vice President Pence's visit was not merely *a* reasonable inference based on the evidence—which, of course, is all that is required under the deferential sufficiency standard.  It was *the more likely* inference for a rational jury to draw.  It is, after all, highly unlikely that an avid consumer of political news like Mr. GossJankowski— someone who knew and enlightened others on Facebook about the upcoming certification proceeding—was somehow oblivious to the fact that the Vice President, the presiding officer and linchpin of that certification proceeding, would be present at the Capitol for the proceeding.  Even accepting GossJankowski's reading of the statute, therefore, his sufficiency challenge necessarily fails.

**B.      The Defendant's Instructional Error Claim, Asserted Under Rule 33, Fails Because This Court's Jury Instructions Were Not Erroneous, Plainly Or Otherwise**

In his Rule 33 motion for a new trial, GossJankowski separately repackages (ECF No. 191 at 26) his Section 1752 theory as an instructional error claim.  As explained below, the defendant forfeited that claim by failing to raise it at trial.  In any event, he has shown no error, plain or otherwise.

1.      At trial, the Court instructed the jury that, to find GossJankowski guilty of violating 18 U.S.C. § 1752(a)(1), it was required to find:

> *First:*           that the defendant entered or remained in a restricted building or grounds.
>
> *Second:*      that the defendant did so without lawful authority.
>
> *Third:*         that the defendant did so knowingly.

ECF No. 166 at 33 (Count 4).[6]   The court's instruction then separately set out the statutory definition of "restricted building or ground."  *Id.*   The instructions did not specify whether the jury was (or was not) required to find that the defendant knew of the Vice President's visit to the restricted building or grounds.   Before and during trial, GossJankowski raised numerous objections to the court's proposed jury instructions.  But at no point did he object to the Section 1752(a) instructions on the ground that they did not sufficiently inform the jury as to the *mens rea* issue that he has now raised in his post-trial briefing.

2.      At the outset, because the defendant did not properly preserve his current objection, his instructional error claim is reviewed, at most, for plain error.

Federal Rule of Criminal Procedure 30(d) provides that "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of

---

[6] With respect to *mens rea*, the court's instruction for the Section 1752(a)(2) charge (Count Five) was analogous in all material respects.

the specific objection and the grounds for the objection before the jury retires to deliberate."  The same rule also makes clear that "[f]ailure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)."  *Id.*

Here, as noted, at no point before or during trial did GossJankowski object to the Section 1752 instructions on the *mens rea* ground that he now asserts in his post-trial briefing.  He did not propose such an instruction before trial.  ECF No. 129 at 61-62, 64-65 (defendant's proposed jury instructions dated Feb. 17, 2023); ECF No. 154 at 3-4 (defendant's proposed jury instructions dated Mar. 12, 2023).  Nor did he object on that ground at the charging conference.  Accordingly, his instructional error claim is reviewed, at most, for plain error.  To establish plain error, GossJankowski must demonstrate (1) "an error" (2) that is "clear or obvious, rather than subject to reasonable dispute," (3) "affected [his] substantial rights," and (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation omitted).

3.     GossJankowski has shown no error in this Court's Section 1752 instructions, much less an error that is plain and obvious.    As the Supreme Court has explained, "[a] trial judge has considerable discretion in choosing the language of an instruction so long as the substance of the relevant point is adequately expressed."  *Boyle v. United States*, 556 U.S. 938, 947 (2009).  Accordingly, even where (unlike here) an instructional error claim is preserved, "'[t]he choice of language to be used in a particular instruction is reviewed only for abuse of discretion.'"  *United States v. Vega*, 826 F.3d 514, 524 (D.C. Cir. 2016) (quoting *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993)) (alterations omitted); *see also United States v. Lundstrom*, 880 F.3d 423, 443 (8th Cir. 2018) ("We review the district court's

jury instructions for abuse of discretion, affirming if the instructions as a whole 'fairly and adequately submitted the issues to the jury.'").

Applying these standards, even under GossJankowski's reading of the statute, the Court's instructions would not be erroneous, much less rise to the level of plain error. As noted, the Court's instructions on Counts Four and Five merely tracked the statutory language. The defendant does not appear to contend, at least for purposes of this motion, that the instructions were inaccurate with respect to the *actus reus* elements, ECF No. 166 at 33, or that they inaccurately set forth the statutory definition of "restricted building or grounds." *Id.* With respect to *mens rea*, moreover, the instructions simply directed the jury that, to find the defendant guilty, the jury had to find that "the defendant did so [*i.e.*, committed the *actus reus*] knowingly." ECF No. 166 at 33.

The Court's *mens rea* instruction—which merely tracked the statutory language—cannot logically support GossJankowski's request for a new trial. The reason is straightforward. If, as the defendant now contends, the statutory text "clear[ly]" or "obvious[ly]" required the defendant's current reading of the statute, then the Court's instructions, which simply tracked that assertedly unambiguous statutory language, could not have misled the jury, much less given rise to plain error. Conversely, if the statutory question was "subject to reasonable dispute," *Puckett*, 556 U.S. at 135, then the defendant cannot prevail under the plain error standard that governs his forfeited claim. Either way, the defendant has failed to show a viable path to a new trial.

Finally, even if the defendant could show that the alleged instructional error was clear and obvious (which he cannot), his claim would still fail because he has failed to show that the purported error affected his substantial rights—*i.e.*, that he was prejudiced. *Puckett*, 556 U.S. at

135. As noted, even before January 6, GossJankowski was plainly aware that a certification proceeding was set to take place at the Capitol on January 6.  Indeed, on January 5, he was lecturing a Facebook friend on that proceeding's implications for the District.  It strains credulity to suppose that, despite knowing that the certification proceeding was set to take place at the Capitol, GossJankowski was somehow unaware that the Vice President was visiting the Capitol as part of that proceeding.  At a minimum, the defendant has failed to carry its burden of establishing that far-fetched possibility.  For that reason as well, GossJankowski's instructional error claim fails.

## CONCLUSION

For the foregoing reasons and the reasons asserted in the government's opposition, the defendant's motions should be denied.[7]

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ *Francesco Valentini*
FRANCESCO VALENTINI
Deputy Chief
Capitol Siege Section, Breach and Assault
DC Bar No. 986769
601 D Street NW
Washington, D.C. 20530
(202) 598-2337
francesco.valentini@usdoj.gov

/s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
Mich. Bar No. P79246
601 D Street NW
Washington, D.C. 20530

---

[7] As explained in footnote 5, *supra*, the government respectfully seeks leave to address Judge Cooper's decision in *Groseclose*, which was issued shortly before this filing, in a separate filing.

adam.dreher@usdoj.gov

/s/ *Karen E. Rochlin*
KAREN E. ROCHLIN
Assistant United States Attorney
DC Bar No. 394447
9 Northeast 4th Street
Miami, Florida 33132
karen.rochlin@usdoj.gov