UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-123-PLF |
| : | |
| VITALI GOSSJANKOWSKI : | |
| : | |
| Defendant. : | |

**UNITED STATES' SUPPLEMENTAL RESPONSE REGARDING
AUTHORITIES CITED DURING THE APRIL 26, 2024 HEARING**

The government hereby submits this supplemental response addressing four decisions—all four from other jurisdictions—that the defendant cited for the first time at the April 26, 2024 hearing: (1) *United States v. Baptiste*, 8 F.4th 30 (1st Cir. 2021); (2) *Wolford v. United States*, 722 F. Supp. 2d 664 (E.D. Va. 2010); (3) *State v. Fuller*, No. A-2393-09T4, 2010 WL 2010869 (N.J. Super. Ct. App. Div. May 18, 2010); and (4) *Riggins v. State*, 168 So. 3d 322 (Fla. Dist. Ct. App. 2015). These decisions—two of which were issued by intermediate state courts and none of which is binding on this Court—lend no support to the defendant's claim.

1.      At the April 26 hearing, the defendant cited *United States v. Baptiste*, 8 F.4th 30 (1st Cir. 2021), for the notion that, because he included his ineffective assistance claim in a Rule 33 motion for a new trial, his claim should be accorded more favorable treatment than the exacting standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant's attempt to tilt the playing field is meritless.

As the government explained at the hearing, when the defendant initially briefed the present motion, he correctly identified the governing standard: "[a] claim by [a] defendant that his counsel unfairly denied him the right to testify is analyzed under the ineffective assistance of

1

counsel standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984)." ECF No. 191 at 23. Indeed, in two decisions that the defendant's motion also cited (*id.*), Judge Cooper and the D.C. Circuit both expressly applied the *Strickland* standards in adjudicating an analogous "'claim[] that [an] attorney[] 'failed to adequately prepare a defendant to testify, resulting in a less-than-fully-informed waiver of that right.'" *Id.* (quoting *United States v. Gray-Burriss*, 251 F. Supp. 3d 13, 23 (D.D.C. 2017) (Cooper, J.), and citing *United States v. Gray-Burriss*, 920 F.3d 61 (D.C. Cir. 2019)). Notably, moreover, in *Gray-Burriss*, Judge Cooper and the D.C. Circuit applied the *Strickland* standards to review Gray-Buriss' ineffective assistance claim even though—similar to this case—the defendant had raised the claim via a motion for a new trial, as opposed to a motion for collateral review under 28 U.S.C. § 2255. *See Gray-Burriss*, 251 F. Supp. 3d at 17 ("The Court must evaluate Gray-Burriss's motion for a new trial under the standard laid out in *Strickland*"); *id.* (explaining procedural history); *Gray-Burriss*, 920 F.3d at 64 (applying *Strickland* standards where "Gray-Burriss moved for a new trial … based on his claims of ineffective assistance"); *id.* at 69 (concluding that "Gray-Burriss' claims of ineffective assistance lack merit and affirm[ing] the district court's denial *of his motion for a new trial*" (emphasis added)). The usual *Strickland* standards should therefore govern the defendant's current claim, just as those standards governed the analogous claim presented in *Gray-Burriss*.[1]

The First Circuit's decision in *Baptiste*, 8 F.4th 30, does not warrant a different result. For one thing, as noted, the D.C. Circuit's decision in *Gray-Burriss* is on point and, therefore,

---

[1]  Gray-Buriss first raised his ineffective assistance claim on direct appeal, which resulted in a remand for factual development of the claim, *see United States v. Gray-Burriss*, 791 F.3d 50 (D.C. Cir. 2015), and, after remand, in Gray-Buriss' motion for a new trial and, ultimately, the pair of decisions discussed in the text. *See Gray-Burriss*, 251 F. Supp. 3d at 23; *Gray-Burriss*, 920 F.3d 61. But that distinction is immaterial. In both cases, the defendant's ineffective assistance claim was presented as part of a motion for a new trial, and the happenstance of the initial remand in *Gray-Buriss* should not make a difference to the standard to be applied.

controlling on the question. To the extent *Baptiste* pointed to a different result, *Gray-Burriss*, not *Baptiste*, would supply the controlling precedent in this district.

In any event, there is no actual conflict between *Gray-Burriss* and *Baptiste*, and *Baptiste* lends no support to the defendant's position. In *Baptiste*, the government appealed from a district court's decision granting a post-verdict motion for a new trial based on a *Strickland* claim. 8 F.4th at 33-34. On appeal, the government did not contest that the principal defendant (Baptiste)'s trial attorney had been deficient under *Strickland*'s first prong, but maintained that the district court had committed an error of law—and therefore abused its discretion in granting Baptiste's Rule 33 motion—because it had misapplied *Strickland*'s second prong (*i.e.*, the prejudice prong) by failing to consider the "overwhelming" evidence of guilt presented at trial. *Id.* at 37. In reviewing the claim, the *Baptiste* court began by correctly observing—consistent with the D.C. Circuit's holding in *Gray-Burriss*—that "[t]o grant a new trial on an ineffective-assistance claim, a judge must find that counsel performed objectively unreasonably and that prejudice followed." *Id.* at 35.

Applying these standards, the *Baptiste* court affirmed the district court's prejudice finding, explaining that, while the "strength of the prosecution's case is *a* factor in the prejudice analysis" under *Strickland*, 8 F.4th at 37 (citing *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012)), "it is not the be-all and end-all, for (after all) the chief 'focus'" under *Strickland*'s second prong "remains 'on the "*fundamental fairness* of the proceeding,"'" *id.* (quoting *Dugas v. Coplan*, 506 F.3d 1, 9 (1st Cir. 2007), in turn quoting *Strickland*, 466 U.S. at 696); *see also id.* (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 300-301 (2017)). That is because, the court explained, "[t]he prejudice essential to a violation of the Sixth Amendment right to effective assistance of counsel" is not that the defendant was necessarily innocent, but rather "'being convicted when one would have been acquitted, or at least would have had a good shot at acquittal, had one been competently

3

represented.'" *Id.* (quoting *United States v. Mercedes-De La Cruz*, 787 F.3d 61, 67 n.6 (1st Cir. 2015)). The court then noted that, in the Rule 33 posture, (1) courts "recognize that Rule 33's standard 'is the interest of justice'—a standard that 'comprehends the interests of the law-abiding as well as those of possibly guilty defendants,'" *id.* (quoting *United States v. Morales*, 902 F.2d 604, 609 (7th Cir. 1990)); and (2) "a judge can grant a new trial under Rule 33 to prevent 'a miscarriage of justice'—even if 'there [is] sufficient evidence to convict.'" *Id.* at 37-38.

The upshot is clear: northing in this portion of *Baptiste* supports the defendant's request to apply a watered-down version of *Strickland* based on the happenstance that he included his ineffective assistance claim in a Rule 33 motion. Rather, in the passage discussed above, *Baptiste* applied the ordinary *Strickland* standards and found those standards satisfied on the facts presented. The references to Rule 33 noted above merely underscored that, when (as here) a *Strickland* claim is pressed via a Rule 33 motion, Rule 33's "interest of justice" standard does not *further restrict Strickland*'s ordinary prejudice standard. *Id.* at 37-38. Or, to put it differently, when a defendant brings a *Strickland* claim as part of a Rule 33 motion and establishes *Strickland*'s twin requirements, Rule 33 requires nothing more, and a district court does not abuse its discretion if it chooses to grant the motion (even though there may have been sufficient evidence at trial to support the conviction). *Id.* at 37-38.

Nor is there merit to defendant's apparent reliance on *Baptiste*'s separate observation—which the *Baptiste* court made in reversing *another* defendant (Boncy)'s convictions based on Baptiste's counsel's errors—that Rule 33's "'interest of justice' empowers a judge to grant a new trial based on perceived unfairness of something not amounting to reversible error." 8 F.4th at 41. In affirming *that* application of the Rule 33 standard, the First Circuit made abundantly clear that neither the relevant defendant (Boncy) nor the district court had relied on a "*Sixth Amendment*

4

claim keyed to Baptiste's lawyer's ineffective assistance." *Id.* at 41.  Instead, Boncy had raised—and the district court had credited—"a Fifth Amendment claim tied to the denial of [Boncy's] own due-process rights." *Id.*  And, precisely for that reason, the court of appeals declined to consider whether the district court's grant of a new trial as to Boncy should be reversed as inconsistent with the governing Sixth Amendment standards.  *Id.* at 41-42.

The defendant in this case, in contrast, has not based his claim on any plausible alternative source of right beyond his right to effective assistance of counsel.  Accordingly, in this case, unlike in *Baptiste*, a conflict with governing Sixth Amendment standards *would* preclude relief under Rule 33.

2. At the April 26 hearing, the defendant also cited *Wolford v. United States*, 722 F. Supp. 2d 664 (E.D. Va. 2010), a trial court order from another district, as support for the notion that his Sixth Amendment rights were violated when his trial attorneys—who were concerned that the defendant's testimony would do more harm than good and made a strategic decision to prioritize other trial preparation tasks—did not conduct a full-fledged, in-character mock examination leading up to the defendant's decision *not* to testify at trial.  *Wolford*'s non-precedential order does not support the defendant's claim.

In *Wolford,* the defendant was charged, in relevant part, with conspiracy to distribute controlled substances. 722 F. Supp. 2d at 677.  At trial, Wolford, unlike the defendant in this case, *did* take the stand on her own behalf.  *Id.* 683.  But her testimony did not go as hoped and, "after initially denying the charged conduct," Wolford "eventually admitted that she distributed controlled substances during the relevant time period, both to family members and to other individuals who were neither household nor family members." *Id.* at 683.  After the jury found her guilty, Wolford sought a new trial, claiming, among other things, that her trial counsel had not

5

adequately prepared her for her trial testimony. Specifically, after an evidentiary hearing, it emerged that Wolford's trial counsel had "'talked with [the defendant] about general themes and issues that he wanted to bring out with her testimony,'" but never "discuss[ed] with Wolford any of the specific questions that he planned to ask her during the course of her direct examination" or "prepared Wolford for cross-examination in any respect." *Id.* (alterations in *Wolford* omitted). In fact, Wolford's trial counsel later admitted that he was "surprised" when his client admitted to the core facts of the charged conspiracy and that he had not discussed with his client "what she was going to say to that question." *Id.* at 694 & n.45. On collateral review, the court concluded, under *Strickland*'s first prong, that trial counsel's failure to discuss with the defendant "any of the specific questions that he planned to ask her during the course of her testimony, combined with his failure to prepare her for cross-examination in any respect, was objectively unreasonable." *Id.* at 694. But the court nonetheless found that Wolford's claim "fail[ed] on the prejudice prong" because there was no reasonable probability of a different result given "the overwhelming amount of testimony and evidence of guilt presented" at trial. *Id.* at 695.

    *Wolford* is readily distinguishable, both as a matter of law and fact. Begin with the law. The defendant in this case does not complain, like Wolford, that his testimony at trial went sideways because his trial attorneys did not adequately prepare him before he took the stand. And no wonder: after multiple conversations with his trial attorneys and a comprehensive colloquy with the Court, the defendant in this case chose *not* to testify at trial. Indeed, the defendant's entire theory of ineffective assistance is, at best, the *converse* of the claim raised in Wolford: he claims that his decision *not* to testify at trial—despite being consistent with his attorneys' advice and despite being vetted through his colloquy with the Court—was nonetheless invalid, seemingly because it was made without the benefit of an full, in-character mock examination. *Wolford*,

6

however, says nothing about *that* question.  The reason is straightforward: it is one thing to say, as *Wolford* confirms, that a trial attorney must engage in certain preparations before a criminal defendant takes the stand in his or her own defense.  722 F. Supp. 2d at 694.  It is another thing entirely to maintain, as the defendant implies in this case, that the same level of preparation must be attained when, as here, the defendant decides to follow his attorneys' advice and *not* to testify, lest that decision later be impugned as "involuntary" or "unintelligent" if the defendant is found guilty.  Here, of course, the defendant's capable trial attorneys repeatedly testified that, at the time the defendant made his decision not to testify, they were satisfied that the defendant's decision was knowing, voluntary, and intelligent.  *See*, *e.g.*, 3/13/2024 Tr. 26-30 (Goetzl), 63-65 ("Q. So you did not think that … your decision or the timing of your preparation … rendered that waiver of his right to testify involuntary? A [Smock:] Correct."), 96-97 (Smock), 116 (Goetzl).  And the record makes equally clear that, had the defendant indicated that he wanted to testify notwithstanding his attorneys' advice, his attorneys would have devoted additional time to preparing him before he did so.  3/13/2024 Tr. 68-69, 110.

Further, and in any event, *Wolford* is readily distinguishable on the facts.  In *Wolford*, trial counsel let the defendant take the stand without ascertaining whether, on cross-examination, she would admit to the critical charge in the case: whether she had conspired to distribute controlled substances during the relevant period.  722 F. Supp. 2d at 694 & n.45.  Given that lack of preparation, "it was not at all surprising" that Wolford eventually made that critical admission during cross-examination.  *Id.* at 694.  Here, in contrast, despite not conducting an in-character mock examination (and despite never reaching the point where such an exercise might be warranted), the defendant's attorneys *did* conduct "prep sessions" with the defendant "where [they] reviewed the videos … and discussed the videos and the questions that would be asked about his

7

behavior in the videos." *See* 3/13/2024 Tr. 109 (Goetzl); *id.* at 109-110 ("Just generally questions about why certain things were happening in the tunnel. *So questions that could have arisen in hypothetically a cross-examination of him*. We asked him those questions as his lawyers just in discussing the video evidence with him." (emphasis added)). In other words, even if the defendant had taken the stand (which he of course did not), his preparation would have exceeded the low bar reflected in *Wolford*.

   3. At the April 26 hearing, the defendant also cited two decisions issued by intermediate state courts. *See State v. Fuller*, No. A-2393-09T4, 2010 WL 2010869 (N.J. Super. Ct. App. Div. May 18, 2010); *Riggins v. State*, 168 So. 3d 322, 325 (Fla. Dist. Ct. App. 2015). Neither helps his cause.

   In *Fuller*, the defendant was charged with possessing a controlled substance (heroin) with intent to distribute, among other offenses. 2010 WL 2010869, at *1. At trial, the defendant took the stand in his own defense. But when he did, the defendant's trial counsel "elicited from the defendant that he was a drug dealer." *Id.* at *2. Specifically, after eliciting that the defendant was not selling drugs at the time charged in the indictment, defense counsel—who, it appears, was "likely … unaware that defendant had previously sold drugs"—asked the defendant, "Q. Were you ever a drug dealer?" *Id.* To which, the defendant candidly answered, "A. Not at the time they said I was. I was a juvenile at the time." *Id.* After the defense opened the door, the defendant "had to reaffirm on cross that he had been a drug dealer," and the "[p]rosecutor was able to inquire without objection about a possible witness who would confirm that [the defendant] sold heroin." *Id.* at *3.

   On state collateral review, the court vacated Fuller's conviction, finding that the defendant's trial counsel had been ineffective when he elicited the defendant's inculpatory information about past drug dealing. *Id.* The state intermediate appellate court affirmed. In a

brief unpublished opinion, the court reasoned that "[a]t a minimum, a trial attorney must be assured that questions he will be asking his client are not misunderstood or that language incorporated in a question is not imprecise that even the most sophisticated and experienced witness would fail to comprehend the import or implications of a particular question." *Id.* at *6. And, on the facts presented, defense counsel's "inquiry as to whether defendant was 'ever' a drug dealer" did not live up to that standard, as it "covered the spectrum of whether defendant had, at any time, been accused of or been convicted of drug dealing"—a potentially devastating issue as to which "[a]dquate preparation … was lacking." *Id.*

*Fuller* is inapposite for essentially the same reasons discussed above. *Fuller* dealt with the minimum preparation standards that might apply when the defendant *does* take the stand. Here, again, the defendant *declined* to take the stand. His claim, therefore, turns on a tangentially related—but entirely different—question: did the defendant's attorneys provide ineffective assistance by not conducting an in-character mock examination prior to the defendant's decision that he would *not* testify, so as to render that decision involuntary or unintelligent? *Fuller* says nothing about that question. And, in any event, nothing in the record suggests that the defendant's capable attorneys in this case did anything remotely as questionable as the defense counsel in *Fuller*.

Finally, the defendant cited *Riggins v. State*, 168 So. 3d 322 (Fla. Dist. Ct. App. 2015), but his reliance on that decision is even more puzzling, albeit for a different reason. Differently from *Wolford* and *Fuller*, in *Riggins*, the defendant *did* raise the same type of claim at issue here: similarly to GossJankowski, Riggins "alleged that he received ineffective assistance of counsel because his trial counsel failed to properly advise him concerning his right to testify and thus his decision not to testify was not made knowingly, intelligently, and voluntarily." *Id.* at 324. But

9

nothing about the state courts' dispositions in *Riggins* helps the defendant in this case. The *Riggins* trial court *denied* Riggins' ineffective-assistance claim, both on procedural grounds (waiver) and because it found that the defendant's testimony would have been "cumulative" of other witnesses' testimony. *Id.* Similarly, the state intermediate appellate court, despite disagreeing with the trial court's "waiver" and "cumulative[ness]" rulings, still rejected Riggins' ineffective-assistance claim as "facially insufficient." *Id.* at 325. Specifically, the appellate court reasoned that—although Riggins had made "a bare bones allegation that [his] trial counsel did not discuss with him the question of whether he should testify" and "included [a] summary of what his testimony would have been and alleged how he was prejudiced by his failure to testify"—Riggins' claim still failed because it "did not include any allegations as to how trial counsel deprived him of the ability to choose whether to testify on his own behalf." *Id.*[2] Nothing about *Riggins*' *rejection* of that defendant's ineffective-assistance claim can logically support the defendant's ineffective-assistance claim in this case. To the contrary, the fact that, like Riggins, the defendant in this case relies on a nebulous and elusive nexus between his attorneys' conduct and his own decision not to testify only underscores one of the many fatal flaws in the defendant's theory.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ *Francesco Valentini*
FRANCESCO VALENTINI
Deputy Chief
Capitol Siege Section, Breach and Assault
DC Bar No. 986769
601 D Street NW
Washington, D.C. 20530

---

[2] The appellate court ultimately remanded, but based only on a procedural state-law ground. *Id.* at 325 ("[R]ather than deny this facially insufficient claim outright, the postconviction court was required 'to allow the defendant at least one opportunity to amend the motion.'").

(202) 598-2337
francesco.valentini@usdoj.gov

/s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
Mich. Bar No. P79246
601 D Street NW
Washington, D.C. 20530

/s/ *Karen E. Rochlin*
KAREN E. ROCHLIN
Assistant United States Attorney
DC Bar No. 394447
9 Northeast 4th Street
Miami, Florida 33132

11