UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 21-123 (PLF) |
| | ) |
| VITALI GOSSJANKOWSKI, | ) |
| | ) |
| Defendant. | ) |

OPINION

At an evidentiary hearing to assess the defendant's claims of ineffective assistance of counsel, the defendant attempted to introduce statements that he made to his former housemate. The government objected on hearsay grounds. Because the Court concluded that these are prior consistent statements admissible under Federal Rule of Evidence 801(d)(1)(B), however, the Court admitted them as evidence by minute order. April 24, 2024 Minute Order. This Opinion explains the reasoning behind that decision.[1]

---

[1] The papers that the Court reviewed in conjunction with this ruling include: Motion for Judgment of Acquittal or for a New Trial ("Def. Rule 29/33 Mot.") [Dkt. No. 191]; United States' Opposition to Motion for a Judgment of Acquittal or a New Trial ("Gov't Rule 29/33 Opp.") [Dkt. No. 195]; Reply in Support of Motion for Judgment of Acquittal or, Alternatively, for a New Trial ("Def. Rule 29/33 Reply") [Dkt. No. 200]; Government's Memorandum Re: Prior Consistent Statements ("Gov't Br.") [Dkt. No. 219]; and Defendant's Supplemental Memorandum Regarding Admissibility of Defendant's Prior Consistent Statement ("Def. Br.") [Dkt. No. 220]. The transcripts of proceedings the Court reviewed include: Transcript of Record (Mar. 7, 2023) ("3/7/23 Trial Tr.") [Dkt. No. 176]; Transcript of Record (Mar. 10, 2023) ("3/10/23 Trial Tr.") [Dkt. No. 179]; Transcript of Record (Mar. 15, 2023) ("3/15/23 Trial Tr.") [Dkt. No. 186]; and Transcript of Record (Apr. 8, 2024) ("4/8/24 H'rg Tr.") [Dkt. No. 221].

I.  BACKGROUND

In March 2023, Vitali GossJankowski was convicted of six offenses relating to his conduct during the events of January 6, 2021:  civil disorder, in violation of 18 U.S.C. § 231(a)(3); obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); assaulting, resisting, or impeding a federal officer, in violation of 18 U.S.C. § 111(a)(1); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); and disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D).  Amended Verdict Form [Dkt. No. 163]; see Second Superseding Indictment [Dkt. No. 127].  One of the central disputes at trial was Mr. GossJankowski's intent during an interaction with Capitol Police Officer Morris Moore.  The government's theory was that Mr. GossJankowski assaulted Officer Moore by attempting to use a stun gun on him; the defense theory was that Mr. GossJankowski was trying to help the officer while other rioters were assaulting him.  See 3/15/23 Trial Tr. at 69, 72-74 (government closing argument); id. at 89, 93-100 (defense closing argument).

After the verdict, Mr. GossJankowski moved for a new trial, in part on grounds of ineffective assistance of counsel.  Def. Rule 29/33 Mot. at 22-25.  He argued that his former counsel failed to prepare him to testify at trial, and that although he waived his right to testify through a colloquy with the Court, his lawyers' failure to prepare him meant that he did not have the ability to make a knowing and voluntary waiver.  Id. at 23-24; see Def. Rule 29/33 Reply at 19.  The government responded that Mr. GossJankowski's former counsel's decision to prioritize other tasks over preparing him to testify before and during trial was a reasonable strategic one because his testimony would not have been credible.  Gov't Rule 29/33 Opp.

at 40-41.  The Court held an evidentiary hearing to assess Mr. GossJankowski's ineffective assistance claims.  This hearing began on March 13, 2024, continued on April 8, 2024, and concluded on April 26, 2024.  The witnesses at the hearing included two of Mr. GossJankowski's former lawyers and the defendant himself.

As its final witness at the hearing, the defense called Mr. GossJankowski's former housemate, Kyle Sexton.  When Mr. Sexton began to testify about statements that Mr. GossJankowski made to him upon returning home from the Capitol on January 6, the government objected that the statements were inadmissible hearsay.  Mr. GossJankowski argued that the statements were admissible under Federal Rule of Evidence 801(d)(1)(B), which excludes certain prior consistent statements from the restrictions on hearsay.  The Court provisionally allowed the testimony of Mr. Sexton but reserved ruling on the hearsay question.  Mr. Sexton then testified that, on January 6, the defendant told him that he had tried to help one of the police officers at the Capitol.  See 4/8/24 H'rg Tr. at 108-114.  After the government cross-examined Mr. Sexton, the defense called Mr. GossJankowski back to the stand, and Mr. GossJankowski testified about the statements he made to Mr. Sexton.  The government declined to cross-examine Mr. GossJankowski about the statements.  See id. at 124-26.

The parties then briefed the hearsay issue.  See Gov't Br.; Def. Br.  After considering the parties' arguments, the Court admitted Mr. GossJankowski's prior consistent statements as evidence, April 24, 2024 Minute Order, and orally explained its ruling during the final day of the evidentiary hearing.  This Opinion memorializes the Court's reasoning for admitting Mr. GossJankowski's statements under Federal Rule of Evidence 801(d)(1)(B).

3

II.  ANALYSIS

As an initial matter, the context in which this question arises is unusual.  The purpose of the evidentiary hearing was to evaluate Mr. GossJankowski's argument that the Court should grant a new trial because of his former counsel's ineffective assistance.  To make out a claim of ineffective assistance under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), a defendant must show that "his counsel's performance was deficient," meaning that it "'fell below an objective standard of reasonableness.'"  United States v. Doost, 3 F.4th 432, 436-37 (D.C. Cir. 2021) (quoting Strickland v. Washington, 466 U.S. at 688).  A defendant must also show that "the deficient performance prejudiced him," meaning that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. (quoting Strickland v. Washington, 466 U.S. at 694).  The content of Mr. GossJankowski's statements to Mr. Sexton – that he attempted to help an officer at the Capitol on January 6 – is not directly relevant to either of these showings.  But the statements are indirectly relevant to both.  With respect to deficient performance, Mr. GossJankowski's statements to Mr. Sexton rebut the government's claim that his former attorneys' decision not to prepare him to testify at trial was a reasonable strategic one by showing that Mr. GossJankowski's credibility could have been rehabilitated after the government cross-examined him.  With respect to prejudice, the defendant's statements increase the probability that a jury would have believed his account of his interaction with Officer Moore, and that at least one juror would have voted to acquit him for that reason.

The Court evaluates whether Mr. GossJankowski's statements to Mr. Sexton are admissible under Federal Rule of Evidence 801(d)(1)(B).  The Rule has two general requirements that are easily met here.  First, that "[t]he declarant testifies and is subject to cross-

4

examination about a prior statement." FED. R. EVID. 801(d)(1). Mr. GossJankowski is the declarant. He testified at the hearing about his statements to Mr. Sexton and was subject to cross-examination.[2] Second, that the statement "is consistent with the declarant's testimony." FED. R. EVID. 801(d)(1)(B). Mr. GossJankowski testified at the hearing that he was trying to help Officer Moore and that he was holding the stun gun out away from him because he did not know how to turn the device off and was afraid to put it in his pocket. 4/8/24 H'rg Tr. at 56, 79-84.[3] His prior statements to Mr. Sexton are consistent with this testimony – and of particular importance because the primary issue surrounding the assault charge at trial was whether Mr. GossJankowski was trying to help or harm Officer Moore on January 6.

In addition to the general requirements of Rule 801(d)(1)(B), a statement must meet one of two further requirements to be admissible under the rule. The statement must be offered (1) "to rebut an express or implied charge that the declarant recently fabricated [his testimony] or acted from a recent improper influence or motive in so testifying," FED. R. EVID. 801(d)(1)(B)(i); or (2) "to rehabilitate the declarant's credibility as a witness when attacked on another ground." FED. R. EVID. 801(d)(1)(B)(ii).

---

[2] The fact that the government declined to cross-examine him about the statements does not matter. A declarant is "subject to cross-examination about a prior statement," FED. R. EVID. 801(d)(1), so long as opposing counsel has the opportunity to cross-examine him about the statement. See United States v. Flores, 945 F.3d 687, 706 (2d Cir. 2019). The government could have cross-examined Mr. GossJankowski about his conversation with Mr. Sexton when the defense recalled Mr. GossJankowski, or could have requested to continue its original cross-examination of Mr. GossJankowski at some point later in the hearing.

[3] Although at various points in the evidentiary hearing Mr. GossJankowski referred to a different officer (Metropolitan Police Officer Michael Fanone), the defendant later clarified that he had been referring to Officer Moore. 4/8/24 H'rg Tr. at 103-04.

*A. The History of Rule 801(d)(1)(B)*

Understanding these two prongs of Rule 801(d)(1)(B), and the relationship between them, requires some understanding of the rule's history. When the Federal Rules of Evidence first went into effect in 1975, Rule 801(d)(1)(B) only included the first prong – recent fabrication or recent improper influence or motive – and not the second. See FED. R. EVID. 801(d)(1)(B) (1975). The original Advisory Committee notes clarified that if statements fell into this limited category, they were admissible as substantive evidence. Id. advisory committee's note (1972). The Committee wrote that "if the opposite party wishes to open the door for [a prior consistent statement's] admission in evidence [to show recent fabrication or improper influence or motive], no sound reason is apparent why it should not be received generally." Id.

In its 1995 decision, Tome v. United States, the Supreme Court held that Rule 801(d)(1)(B) retained the common-law restriction that statements offered to rebut a charge of recent fabrication or improper influence or motive are admissible if the statements were made before the alleged fabrication, influence, or motive arose, but not admissible if made afterwards. See 513 U.S. 150, 156 (1995). This decision, along with the language of the 1975 version of the rule itself, generated confusion about whether prior consistent statements could be introduced for reasons other than the truth of the matters asserted – i.e., as nonhearsay – or whether such statements were not admissible at all if they did not fall under the recent fabrication/motive category specified in the rule. As Professor Jeffrey Bellin explains:

> The non-hearsay purpose typically invoked when offering consistent prior statements – rehabilitating the witness' credibility – represents an intuitive non-hearsay analogue to prior inconsistent statements offered for the non-hearsay purpose of impeachment. If a witness who says different things on a specific topic is less credible with respect to that topic, it follows that a witness who remains consistent over time on a particular point is more credible. Basic hearsay analysis would suggest, then, that when "prior statements

6

are offered for credibility," in this manner, "the question is not governed by Rule 801." It was never clear, however, how this non-hearsay use of prior consistent statements interfaced with Rule 801(d)(1)(B). And <u>Tome</u> simply mirrored this ambiguity in interpreting the rule. Indeed, the failure to speak to this point is an example of a circumstance where a Supreme Court opinion likely suffered from the Justices' relative lack of trial-level litigation experience.

30B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & JEFFREY BELLIN, FEDERAL PRACTICE AND PROCEDURE § 6754 (2023) (quoting <u>United States v. Simonelli</u>, 237 F.3d 19, 27 (1st Cir. 2001)).

In the years that ensued, federal circuit courts coalesced around the view that statements falling outside the 1975 version of Rule 801(d)(1)(B) were still sometimes admissible to rehabilitate a witness. <u>See</u> WRIGHT, MILLER & BELLIN, <u>supra</u>. This view was articulated early on by Judge Henry J. Friendly, who explained:

> [C]onsistent statements used <u>only</u> for rehabilitation are never hearsay since they are not offered in evidence to prove the truth of the matter asserted, but only for the fact of their having been made. By allowing <u>certain</u> prior consistent statements to be used as proof of the matter asserted, as they could not previously have been, Rule 801(d)(1)(B) does not imply that others not meeting that standard can never be used for rehabilitation.

<u>United States v. Rubin</u>, 609 F.2d 51, 69 (2d Cir. 1979) (Friendly, J., concurring) (citations and internal quotation marks omitted), <u>aff'd</u>, 449 U.S. 424 (1981). Under the consensus that emerged, the important question was <u>which</u> statements that did not fall under the rule were still admissible for purposes of rehabilitation. This question was – and still is – a difficult one. "The difficulty comes from the breathtaking possibilities of a frank recognition that all prior consistent statements speak to credibility through corroboration and consequently could theoretically be admitted as non-hearsay." WRIGHT, MILLER & BELLIN, <u>supra</u>. But there have always been two clear limits on admitting prior consistent statements for rehabilitation. First, prior consistent statements cannot be admitted "simply to bolster the credibility of a witness." <u>United States v.</u>

7

Simonelli, 237 F.3d at 28. And second, prior consistent statements are admissible only if a witness's credibility has already been attacked. See United States v. Bolick, 917 F.2d 135, 138-39 (4th Cir. 1990).

These traditional principles flow at least partly from the restrictions of Federal Rule of Evidence 403. While all prior consistent statements may be relevant in the sense that they make more probable the fact that the witness is telling the truth, see FED. R. EVID. 401, such evidence should be excluded where "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "[I]f no attack has been made" on a witness's credibility, "the probative value of rehabilitation is nearly nil." WRIGHT, MILLER & BELLIN, supra. Similarly nonprobative is the fact that a witness was consistent on an inconsequential point. "Probative value starts to accrue when there is an attack and increases as the prior consistent statement responds to the particular attack." Id. On the other side of the equation, prior consistent statements may confuse the issues, mislead the jury, or represent needlessly cumulative evidence where the circumstances under which they were made fail to respond to a credibility attack. For example, witness statements crafted by attorneys will often be inadmissible because they are more reflective of a lawyer's strategy than they are of a declarant's consistency. Cf. FED. R. EVID. 801(d)(1) advisory committee's note (1972) ("The position taken by the Advisory Committee in formulating this part of the rule is founded upon an unwillingness to countenance the general use of prior prepared statements as substantive evidence . . . .").

The 2014 amendment to Rule 801(d)(1)(B) adding the second prong – rehabilitating credibility on "another ground" – did not change the traditional rules regarding

8

admissibility of prior consistent statements. According to the Advisory Committee, "[t]he amendment does not make any consistent statement admissible that was not admissible previously – the only difference is that prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well." FED. R. EVID. 801(d)(1)(B) advisory committee's note (2014 amendments). The amendment also made clear that Judge Friendly and the majority of federal circuits were right that the original Rule 801(d)(1)(B) was not the exclusive way to admit prior consistent statements. If it were, then the reference to "statements otherwise admissible for rehabilitation" would make no sense. The Advisory Committee further noted that, with respect to the first prong, "[t]he amendment retains the requirement set forth in Tome v. United States, 513 U.S. 150 (1995): that under Rule 801(d)(1)(B), a consistent statement offered to rebut a charge of recent fabrication or improper influence or motive must have been made before the alleged fabrication or improper inference or motive arose." Id.

### B. The First Prong

All of this history clarifies that Mr. GossJankowski's statements to Mr. Sexton are admissible under either prong of Rule 801(d)(1)(B). Under the first prong, the Court first asks whether the statements were "offered to rebut an express or implied charge of recent fabrication or improper motive." United States v. Bonin, 932 F.3d 523, 542 (7th Cir. 2019). Here, they were. While the government never expressly charged Mr. GossJankowski with fabricating his account of his interaction with Officer Moore, the standard for finding an implied charge is a lenient one. "[T]here need be only a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." United States v. Frazier, 469 F.3d 85, 88 (3d Cir. 2006) (quoting United States v. Casoni, 950 F.2d 893, 904 (3d Cir. 1991)). In United States v. Montague, for example,

9

the D.C. Circuit held that "where the defense counsel suggests to the jury by cross examination that the government's witness hopes to secure clemency by his testimony," "an implied charge of improper motive, and possibly also of recent fabrication" is "apparent."  958 F.2d 1094, 1096 (D.C. Cir. 1992); see also Gaines v. Walker, 986 F.2d 1438, 1443-45 (D.C. Cir. 1993) (plaintiff-arrestee's counsel's questioning of defendant-officer about offenses listed in report written contemporaneous to arrest contained "clear implication" that report omitted "crucial fact" because the officer fabricated it); United States v. Frazier, 469 F.3d at 90-91 (defense counsel's questioning of witness about the fact that witness gave a different account at a suppression hearing implied recent fabrication because that questioning "was sustained longer than any other" during cross-examination, defense counsel "repeatedly questioned [the witness] about all the preparations he had made to testify truthfully and accurately at the suppression hearing," and defense counsel "skeptically questioned [the witness's] explanation").

>Viewed as a whole, the government's cross-examination of Mr. GossJankowski implied that the defendant had recently fabricated his account of his interaction with Officer Moore and had the improper motive of avoiding punishment for wrongdoing.  The government pursued multiple lines of questioning related to the interaction.  First, the government questioned Mr. GossJankowski extensively about his conduct in a tunnel that connected the Capitol Building to the inaugural stage, during the approximately half hour before his interaction with Officer Moore on the Lower West Terrace.  It played several videos of the defendant in the tunnel.  One video (Government Exhibit 101.1) showed Mr. GossJankowski wagging his finger and spitting at officers.  The government highlighted each of these actions through its questions.  4/8/24 H'rg Tr. at 24-29.  Government counsel asked, "you were wagging your index finger to express disapproval of what the officers were doing, right?"  Id. at 26:18-19.  The government also

questioned Mr. GossJankowski about whether he was attempting to take officers' riot shields from them, id. at 29-34, whether he flashed the stun gun in the direction of the officers in order to intimidate them, id. at 64-68, whether he joined other rioters in a coordinated push against the officers, id. at 68, and whether he was comfortable holding the stun gun in his pocket or near his body. Id. at 60-62, 69-70. This questioning implied that Mr. GossJankowski intended to harm police on January 6 and that he was lying when he said that he reached towards Officer Moore with the stun gun because he was afraid to hold it in his pocket. On re-cross, the government pointed out that Mr. GossJankowski's finger-wagging on the Lower West Terrace came only minutes after his finger-wagging inside the tunnel. Id. at 94. The government's clear implication, as it has argued in post-trial briefing, see Gov't Rule 29/33 Opp. at 18-19, 41, was that Mr. GossJankowski was expressing disapproval of the police officers on the Lower West Terrace in the same way that he had been expressing disapproval of the officers when he was in the tunnel – and that he was lying when he said he was trying to signal to other rioters to stop dragging police officers away from the tunnel entrance. See 4/8/24 H'rg Tr. at 72-75.

In addition, the government played a video, which defense counsel had played on redirect, of Mr. GossJankowski on the Lower West Terrace before and during his interaction with Officer Moore (Government Exhibit 144.2). In relation to this video, the government questioned Mr. GossJankowski about whether he initially told police that he moved closer to Officer Moore in order to film him, questioned Mr. GossJankowski about the fact that he – as counsel put it – "tinker[ed]" with the stun gun before approaching Officer Moore and reaching towards the officer with the hand holding the stun gun, and questioned Mr. GossJankowski about the fact that another rioter waved a stick and pointed his finger at Mr. GossJankowski after the interaction as if to express disapproval. 4/8/24 H'rg Tr. at 95-99. The clear suggestion in this

11

line of questioning was that Mr. GossJankowski had given inconsistent accounts of why he moved towards Officer Moore and that he was attempting to use the stun gun on the officer.

The implication of all of these questions was that the defendant made up his account of the interaction with Officer Moore, and did so in order to avoid punishment. The charged motive of avoiding punishment is apparent from the questions the government asked Mr. GossJankowski about the timing of his ineffective assistance claim compared to the possible years-long sentences arising from the charges on which he had been convicted. For example, government counsel asked: "And because of that [assault] verdict, that part of the verdict, you could face an additional eight years in prison in addition to the five years for civil disorder? . . . And it was only after the jury finds you guilty of assaulting Officer Moore that you started telling the Court that you were not satisfied with your attorneys?" 4/8/24 H'rg Tr. at 47:15-21; see id. at 46-48. As the government stated in post-hearing briefing, its argument was that "the defendant plainly had a motive to make self-serving statements that would tend to minimize his knowledge of the riot and his assaultive intent vis-à-vis Officer M[oore]." Gov't Br. at 4. The government therefore did charge Mr. GossJankowski with a recent fabrication based on an improper motive.

The second question under the first prong of Rule 801(d)(1)(B) is whether the prior consistent statements came before this alleged fabrication and motive arose. See United States v. Bonin, 932 F.3d at 542; United States v. Frazier, 469 F.3d at 88. The government argues that they did not. According to the government, Mr. GossJankowski "had a motive to lie about his knowledge of the riot and intent in assaulting Officer M[oore]" as soon as he "participated in the January 6 attack on the Capitol." Gov't Br. at 4. Relying on the temporal motive requirement of Tome, the government argues that the statements to Mr. Sexton came after Mr. GossJankowski's fabrication and improper motive arose and are therefore inadmissible

under the first prong. Id. at 2-4. The Court, however, declines to assume that a declarant has a motive to fabricate as soon as they engage in criminal conduct. See United States v. Wilson, 355 F.3d 358, 361-62 (5th Cir. 2003) (affirming admission of prior consistent statements by a cooperating witnesses made after the witness committed criminal offenses to which they ultimately agreed to plead guilty); United States v. Prieto, 232 F.3d 816, 821 (11th Cir. 2000) (holding that even "statements made after arrest are not automatically and necessarily contaminated by a motive to fabricate").

When Mr. GossJankowski spoke to Mr. Sexton, the defendant had not yet been informed that federal officers were looking for him, nor did he know the extent to which the events at the Capitol had been captured on video. See Def. Br. at 6. During trial, Gallaudet University Police Officer Neal Matthews testified that he was the one who told Mr. GossJankowski that the FBI was looking for him, and that he did so around January 14, 2021 – eight days after January 6. 3/7/23 Trial Tr. at 1173-78. It was only then that Mr. GossJankowski voluntarily reached out to law enforcement officers. Id. at 1187-90. And Special Agent James Mulvihill confirmed, in his trial testimony, that law enforcement first talked to Mr. GossJankowski on January 14, 2021 after being informed that Mr. GossJankowski wanted to turn himself in. 3/10/23 Trial Tr. at 1819-1820.

Finally, to accept the government's theory that Mr. GossJankowski's motive to fabricate arose immediately after the events at the Capitol would mean that no prior consistent statement by a January 6 defendant postdating the events at the Capitol could ever be admissible under the first prong of Rule 801(d)(1)(B). Such a broad exclusion would threaten to swallow the entire recent fabrication/motive category of the rule. For all of these reasons, the Court is unpersuaded by the government's arguments.

### *C. The Second Prong*

Even if Mr. GossJankowski's statements are not admissible under the first prong of Rule 801(d)(1)(B), they are admissible under the second prong because the government attacked his credibility on grounds other than recent fabrication or improper motive. In addition to implying that Mr. GossJankowski fabricated his account of his interaction with Officer Moore, the government's questioning also implied that, if the defendant had testified at trial, he would not have appeared credible to a jury because of inconsistencies with statements he made previously or videos of the events themselves. These inconsistencies, also described above, include: the asserted meaning of his finger wagging inside the tunnel versus on the Lower West Terrace; Mr. GossJankowski's explanation of why he reached towards officers' riot shields compared to the video of him doing so; his description of why he activated the stun gun near the officers compared to the video; and his explanation of why he moved towards Officer Moore and reached towards him with the stun gun compared to the video of him doing so and compared to the explanation of the interaction that he initially gave law enforcement when interviewed by them.

The government engaged in a lengthy attempt to show that Mr. GossJankowski gave inconsistent accounts of how he obtained the stun gun, including by playing video of an FBI interview with the defendant. The government pointed out that Mr. GossJankowski told the FBI that he found the stun gun on the ground, but that a video showed that he had obtained the device from another rioter. 4/8/24 H'rg Tr. at 56-60. This potential discrepancy regarding how the device got into the defendant's hands has little bearing on whether Mr. GossJankowski actually used the device to commit assault. The attention the government gave to the point, however, suggests a broader argument that showing the jury this inconsistency – and other

14

inconsistencies in Mr. GossJankowski's description of his conduct on January 6 – would have made the government's cross-examination at trial "withering." See Gov't Rule 29/33 Opp. at 41. Such an argument, while not implying recent fabrication or improper motive, opens the door for the defendant to introduce prior consistent statements showing why the government's questioning at trial would not be as damaging as the government suggests.

Because Mr. GossJankowski's credibility as a potential witness at trial was directly at issue at the evidentiary hearing, the prior consistent statements he made to Mr. Sexton did much more than bolster Mr. GossJankowski's credibility as a general matter. They showed how Mr. GossJankowski could have responded to cross-examination about the videos and his interaction with Officer Moore if he had taken the stand at trial. This provides forceful evidence of the reasonableness (or lack thereof) of his former counsel's decision not to prepare him to testify. And the prior consistent statements were also probative of whether the failure of his attorneys to prepare Mr. GossJankowski to take the stand was prejudicial. The more credible Mr. GossJankowski's testimony would have been, the more likely it is that a jury – or at least one juror – would have believed that he was trying to help Officer Moore, leading to an acquittal or hung jury. Moreover, the Rule 403 analysis embedded in the second prong of Rule 801(d)(1)(B) favors admissibility. Mr. GossJankowski's statements to Mr. Sexton are particularly probative, and unlikely to confuse the factfinder, because they came so close in time to the events at the Capitol on January 6. As explained in the Court's discussion of the first prong, the defendant did not yet know that he or other rioters were being investigated.

The Court concludes that Mr. GossJankowski's prior consistent statements to Mr. Sexton meet the requirements of Federal Rule of Evidence 801(d)(1)(B).  The Court therefore admitted those statements, through the testimony of Mr. GossJankowski and Mr. Sexton, as evidence for the purposes of the defendant's Motion for Judgment of Acquittal or for a New Trial [Dkt. No. 191].

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  May 7, 2024