UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 21-0123 (PLF) |
| | ) | |
| VITALI GOSSJANKOWSKI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

OPINION

On January 22, 2025, the Court entered a Minute Order granting in part and denying in part United States' Motion to Dismiss Indictment with Prejudice Pursuant to Federal Rule of Criminal Procedure 48(a) ("Mot.") [Dkt. No. 230]. It dismissed the indictment without prejudice. This Opinion explains the Court's reasoning.

I. BACKGROUND

*A. Mr. GossJankowski's Actions on January 6, 2021*

On January 6, 2021, a joint session of Congress convened to certify the results of the 2020 presidential election. Ex. 503; see also Trump v. Thompson, 20 F.4th 10, 17 (D.C. Cir. 2021). This certification process is mandated by the Twelfth Amendment to the United States Constitution and by the Electoral Count Act. See U.S. CONST. amend. XII; 3 U.S.C. § 15. Then-Vice President Mike Pence was present and presided over the certification proceedings. Ex. 503. On that day, the United States Capitol Police had set up barriers around the perimeter of the Capitol grounds, including bike racks and snow fencing on the Capitol's west side, and they posted signs indicating that the area was closed. Ex. 601; Ex. 603; Ex. 604; Trial Tr.

at 780-84.[1]  On the west side of the Capitol, in addition to the outer perimeter, the Capitol Police also set up a middle perimeter and an inner perimeter.  Trial Tr. at 784.  The middle perimeter consisted primarily of snow fencing, with additional signs indicating the area was closed.  Id.  The inner perimeter consisted of more bike racks and more signage.  Id.

Shortly before noon on January 6, at a rally on the Ellipse, just south of the White House, then-President Donald Trump reiterated his unfounded claims that the election was "rigged" and "stolen," and "urged then-Vice President Pence . . . to 'do the right thing' by rejecting various States' electoral votes and refusing to certify the election in favor of [Joseph] Biden."  Trump v. Thompson, 20 F.4th at 17-18.  As the court of appeals has recounted:

> Shortly after the speech, a large crowd of President Trump's supporters – including some armed with weapons and wearing full tactical gear – marched to the Capitol and violently broke into the building to try and prevent Congress's certification of the election results.  The mob quickly overwhelmed law enforcement and scaled walls, smashed through barricades, and shattered windows to gain access to the interior of the Capitol.  Police officers were attacked with chemical agents, beaten with flag poles and frozen water bottles, and crushed between doors and throngs of rioters.  As rioters poured into the building, members of the House and Senate, as well as Vice President Pence, were hurriedly evacuated from the House and Senate chambers. Soon after, rioters breached the Senate chamber.  In the House chamber, Capitol Police officers barricaded the door with furniture and drew their weapons to hold off rioters. . . .  Capitol Police were not able to regain control of the building and establish a security perimeter for hours. The Joint Session reconvened late that night. It was not until 3:42 a.m. on

---

[1]     The transcripts of pretrial and trial proceedings through the close of evidence include:  Transcript of Record (Feb. 28, 2023, pages 1-250) [Dkt. No. 171]; Transcript of Record (Mar. 1, 2023, pages 251-532) [Dkt. No. 172]; Transcript of Record (Mar. 2, 2023, pages 533-715) [Dkt. No. 173]; Transcript of Record (Mar. 3, 2023, pages 716-915) [Dkt. No. 174]; Transcript of Record (Mar. 6, 2023, pages 916-1078) [Dkt. No. 175]; Transcript of Record (Mar. 7, 2023, pages 1079-1243) [Dkt. No. 176]; Transcript of Record (Mar. 8, 2023, pages 1244-1470) [Dkt. No. 177]; Transcript of Record (Mar. 9, 2023, pages 1471-1676) [Dkt. No. 178]; and Transcript of Record (Mar. 10, 2023, pages 1677-1870) [Dkt. No. 179].  Because these transcripts are consecutively paginated, they are cited in this Opinion as "Trial Tr."

> January 7th that Congress officially certified Joseph Biden as the
> winner of the 2020 presidential election.

Id. at 18 (internal citations and quotation marks omitted).  Defendant Vitali GossJankowski was a member of the crowd that entered the Capitol grounds that day and participated in the riot.

On the night before the certification, January 5, 2021, Mr. GossJankowski sent the following message to a Facebook friend:  "Tomorrow, it's the Congress to certify the electoral vote certification."  Ex. 303 at 2.  In the same exchange, he predicted, with respect to potential disturbances:  "I will find out tomorrow in the early morning."  Id.  In a separate post in a Facebook group titled "Deaf MAGA – General," Mr. GossJankowski wrote:  "We need to set up an arrangement to meet to make a big gathering before we start marching.  I know the excessive usage of phones in heavily crowded areas are going to slow us to communicate."  Ex. 305 at 15.

On the afternoon of January 6, 2021, Mr. GossJankowski entered the area of the Capitol's west front that had been fenced off by the Capitol Police.  See Ex. 130A at 0:20-0:25.  He approached the inaugural stage's scaffolding, id., and climbed up the Capitol's northwest steps.  Ex. 131 at 0:30.  From there, he made his way to the stadium seating surrounding the inaugural stage, where he arrived a few minutes before other rioters entered the stage at 2:42 p.m.  Ex. 132 at 0:01; Trial Tr. at 868-71.

Sometime between 2:36 p.m. and 2:42 p.m., as police officers were retreating into the tunnel that connected the Capitol Building to the inaugural stage, Mr. GossJankowski went down the stairs, walked across the stage, and approached the tunnel.  Ex. 134; Ex. 135A; Trial Tr. at 877-85.  He arrived at the mouth of the tunnel within a minute of the first rioters.  Trial Tr. at 893-95; Ex. 100.1 (2:41 p.m. to 2:42 p.m.).  He then entered the tunnel and stood inside while another rioter shattered the outer door's glass pane.  Ex. 138 at 0:40 to 0:59; Ex. 100.1 (2:42 p.m. to 2:43 p.m.); Ex. 101 (2:42 p.m. to 2:43 p.m.); Trial Tr. at 930-39.  When the officers used

pepper spray, Mr. GossJankowski briefly left the tunnel. Ex. 138 at 0:57 to 1:02; Trial Tr. at 933-34. He then returned to the tunnel and advanced past the outer doors, above which hung a "Members Only Entrance" sign. Ex. 136 at 1:50 to 2:00; Ex. 139 at 0:25 to 0:45; Trial Tr. at 885-91, 941-45.

A few minutes later, Mr. GossJankowski wagged his index finger at the officers in the tunnel and spat twice in their direction. Ex. 101 (2:45:00 p.m. to 2:45:25 p.m.); Trial Tr. at 944-45. He then moved towards the center of the tunnel and reached towards the protective shield of one of the officers. Ex. 101 (2:45:50 p.m. to 2:46:02 p.m.). After doing so, he raised his arms above his head and made a gesture appearing to beckon other rioters to come towards him. Ex. 100.1 (2:46:02 p.m. to 2:46:41 p.m.).

For the next several minutes, Mr. GossJankowski moved in and out of the tunnel area, helping other rioters move law enforcement officers' protective shields out of the tunnel. Ex. 100.1 (2:46:41 p.m. to 2:53:55 p.m.); Ex. 141 at 2:25-2:30, 2:40-2:45; Trial Tr. at 945-55. At 2:53 p.m., inside the tunnel, another rioter gave Mr. GossJankowski a stun gun. Ex. 100.1 (2:53:57 p.m.); Ex. 141 at 2:45-2:49; Tr. 957-59. Mr. GossJankowski then activated the device – seemingly to test it – and gestured toward other rioters. Ex. 100.1 (2:53:57 p.m. to 2:54:10 p.m.); Ex. 141 at 2:47-3:00. A few moments later, he stepped toward the front of the police line, raised the device above his head, and flashed it in the officers' direction. Ex. 100.1 (2:54:10 p.m. to 2:54:16 p.m.); Ex. 141 at 3:00-3:05; Trial Tr. at 960. He then moved closer to the officers and again spat twice in their direction. Ex. 100.1 (2:54:16 p.m. to 2:54:52 p.m.). Mr. GossJankowski exited the tunnel at approximately 2:59 p.m. Ex. 100.1 (2:56:26 p.m. to 2:59:59 p.m.). At 3:10 p.m., Mr. GossJankowski again returned to the mouth of the tunnel. Ex. 100.2 (3:10:10 p.m.). A minute later, he reentered the tunnel and joined other rioters in a

seeming attempt to push past the police line. Id. (3:12:00 p.m. to 3:12:40 p.m.); Trial Tr. at 984. He then left the tunnel and showed the stun gun to another rioter, again activating the device's electric arc. Ex. 143.2A at 3:42-4:04; Trial Tr. at 984-86.

By about 3:19 p.m., the police officers had pushed the rioters back to the mouth of the tunnel. Ex. 100.2 (3:18:00 p.m. to 3:19:25 p.m.). During that time, however, the rioters pulled at least two police officers into the crowd that had formed on the inaugural stage. Ex. 100.2 (3:18:00 p.m. to 3:19:33 p.m.); Trial Tr. at 988-93. One of these officers was Capitol Police Officer Morris Moore. Trial Tr. at 990-93, 1728-45; see Trial Tr. at 1748-50, 1762. As Officer Moore and another officer were being pulled into crowd, some of the rioters were saying "don't hurt the cops," "stop it," and other similar phrases. Ex. 144.2 at 4:30-5:22; Ex. 147 at 0:40-0:55. At that point, Mr. GossJankowski was within the crowd. Ex. 147 at 0:40. As the police officers were pulled through the crowd, Mr. GossJankowski wagged his finger and repeatedly mouthed or said what appears to be the word "no." Id. at 0:40-0:52. Mr. GossJankowski then moved through the crowd towards Officer Moore, raised and looked at the stun gun device, made contact with Officer Moore's helmet with his right hand, and brought the device close to the officer's helmet with his left hand. Id. at 1:02-1:10; Ex. 144.2 at 5:10-5:34. Mr. GossJankowski then moved away from the officer, and other rioters escorted Officer Moore out of the crowd. Ex. 144.2 at 5:31-6:20; Trial Tr. at 1758-59.

Later that evening, Mr. GossJankowski told another individual in a series of Facebook messages: "I have a taser lol. . . . They snatched two riot guys out of their line then they ripped off their protective headgear then strike many fists at him. . . . One of them was ghostly scared." Ex. 303 at 3. He later added: "Riot guys formed five rows to push us out of the building. Pepper mace is their powerful tool. . . . Every time they reloaded canisters of pepper

5

mace, the rioters violently pushed riot cops back into the building. . . . Rioters took more than five ballistic shields then smashed them to riot cops' head." Ex. 303 at 3-4.

### B. The Case Against Mr. GossJankowski

In February 2021, a grand jury charged Mr. GossJankowski with numerous offenses based on his actions at the United States Capitol on January 6. Indictment [Dkt. No. 10]. Under the Second Superseding Indictment, Mr. GossJankowski faced six counts: (1) civil disorder, in violation of 18 U.S.C. § 231(a)(3); (2) obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (3) assaulting, resisting, or impeding a federal officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (4) entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); (5) disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); and (6) disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D). Second Superseding Indictment [Dkt. No. 127]; see Superseding Indictment [Dkt. No. 41]. In March 2023, Mr. GossJankowski proceeded to a trial before a jury, which began on March 1, 2023, and lasted approximately two weeks. Because Mr. GossJankowski is deaf, the proceedings were conducted with the assistance of American Sign Language ("ASL") interpreters.

On March 16, 2023, the jury returned unanimous guilty verdicts on Counts 1, 2, and 6, and guilty verdicts on the following included charges in Counts 3, 4, and 5: on Count 3, assaulting, resisting, or impeding a federal officer while making physical contact with the victim and with the intent to commit another felony; on Count 4, entering and remaining in a restricted building or grounds; and on Count 5, disorderly and disruptive conduct in a restricted building or

grounds. The jury found the defendant not guilty of the statutory "deadly or dangerous weapon" enhancements. Signed Verdict Form [Dkt. No. 163].[2]

Mr. GossJankowski, through new counsel appointed by the Court, filed a Motion for Judgment of Acquittal or for a New Trial under Rules 29 and 33 of the Federal Rules of Criminal Procedure. See [Dkt. No. 191]. On December 5, 2023, the Court held a hearing on the defendant's motion and scheduled an evidentiary hearing for the parties to present witnesses and other evidence relevant to one of his claims of ineffective assistance of counsel. Dec. 5, 2023 Minute Entry. The evidentiary hearings were held on March 13, April 8, and April 26, 2024. Mar. 13, 2024 Minute Entry; Apr. 8, 2024 Minute Entry; Apr. 26, 2024 Minute Entry. The Court has carefully reviewed the record and the parties' written submissions filed in connection with Mr. GossJankowski's Rule 29 and 33 motions and was prepared to deny both motions.

## II.  DISCUSSION

On January 20, 2025, President Trump issued a sweeping proclamation pardoning individuals charged for their conduct at the Capitol on January 6, 2021. See Unnumbered Proclamation, -- Fed. Reg. ---- (Jan. 20, 2025), https://perma.cc/W4NT-4K4S (hereinafter "Proclamation"). The Proclamation commuted the sentences of a number of individuals, granted pardons to many more, and instructed the Attorney General to seek dismissal with prejudice "of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Id. On the same day, the government filed a motion

---

[2] Following the Supreme Court's decision in Fischer v. United States, 603 U.S. 480 (2024), the government moved to dismiss Count Two, under which Mr. GossJankowski had been convicted of violating 18 U.S.C. § 1512(c)(2). See United States' Unopposed Motion to Dismiss Count 2 [Dkt. No. 227]. The Court subsequently granted the motion and dismissed that count. See Order [Dkt. No. 228].

to dismiss this case with prejudice pursuant Rule 48(a) of the Federal Rules of Criminal Procedure.  See Mot.

Rule 48(a) of the Federal Rules of Criminal Procedure provides that the "government may, with leave of court, dismiss an indictment, information, or complaint."  FED. R. CRIM. P. 48(a).  While the government has broad prosecutorial discretion in both pursuing and dismissing criminal cases, see, e.g., Wayte v. United States, 470 U.S. 598, 607-08 (1985) (recognizing the government's broad prosecutorial discretion), the Supreme Court and the D.C. Circuit have recognized that the term "leave of court" in Rule 48(a) "obviously vest[s] some discretion in the court."  Rinaldi v. United States, 434 U.S. 22, 29 n.15 (1977); see United States v. Ammidown, 497 F.2d 615, 620 (D.C. Cir. 1973).  The discretion afforded to the Court under Rule 48(a) is granted in part to "guard[] against abuse of prosecutorial discretion."  United States v. Ammidown, 497 F.2d at 620.  "To ensure that the government's request for dismissal of criminal charges 'sufficiently protects the public,' the government may be required to submit 'a statement of reasons and underlying factual basis,' which must be 'substantial' to justify the dismissal and not 'a mere conclusory statement.'"  United States v. DeCarlo & Ochs, Crim. No. 21-0073 (BAH), 2025 WL 266308, at *2 (D.D.C. Jan. 22, 2025) (quoting United States v. Ammidown, 497 F.2d at 620).

In this case, the government has not provided a factual basis for dismissal.  The only justification is a citation to the presidential proclamation.  See Mot at 1.  The Proclamation itself – in directing the Attorney General "to pursue [the] dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021" – attempts to justify dismissal by asserting that it is needed to "end[] a grave national injustice that has been perpetrated upon the

8

American people over the last four years and begin[] a process of national reconciliation." Proclamation.

The Proclamation's assertion is factually incorrect. There has been no "grave national injustice." Nor is Mr. GossJankowski innocent. He committed serious crimes on January 6, 2021, of which a jury unanimously found him guilty beyond a reasonable doubt. As Judge Chutkan observed in the context of an identically worded motion to dismiss in another January 6 case:

> The Court does not discern – and neither party has identified – any defect in either the legal merits of, or the factual basis for, the Government's case. Indeed, while a pardon exercises the Executive's "exclusive authority and absolute discretion to decide whether to prosecute a case," United States v. Nixon, 418 U.S. 683, 693 (1974), it "does not necessarily render 'innocent' a defendant of any alleged violation of the law," United States v. Flynn, 507 F. Supp. 3d 116, 136 (D.D.C. 2020).

United States v. Banuelos, Crim. No. 24-0135 (TSC), Order (D.D.C. Jan. 22, 2025) [Dkt. No. 30].

The undersigned has presided over a great many of the January 6 cases, and other judges of this Court have done the same. In each of the cases, law enforcement diligently investigated the facts. The prosecutors from the Department of Justice and the United States Attorney's Office conscientiously presented the evidence to support the convictions – including powerful testimony from law enforcement officers and other witnesses, as well as hundreds of hours of shocking videos of assaults on the Capitol and those trying to protect it. In each case, either a judge or jury evaluated the evidence presented through the crucible of direct and cross-examination. Judges methodically applied the law to the facts or instructed juries to do so. The voluminous records created in these cases will forever reflect that in the tumultuous time following the events of January 6, 2021, this Court was at all times a place of law and fact.

9

The government's "conclusory" assertion in support of its motion is utterly insufficient to find that dismissal of this case "protects the public." United States v. Ammidown, 497 F.2d at 620. Nevertheless, despite the Court's fundamental disagreement with the government's decision to seek dismissal of this case, it will of course follow the law pursuant to its sworn oath. The Court has "no power" "to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority." United States v. Fokker Servs. B.V., 818 F.3d 733, 742 (D.C. Cir. 2016); see United States v. DeCarlo & Ochs, 2025 WL 266308, at *3. The government's baseless interpretation of the public interest in dismissing this case "does not clearly fall within the types of reasons found to provide legitimate grounds to deny the government Rule 48(a) motion to dismiss charges." United States v. DeCarlo & Ochs, 2025 WL 266308, at *3; see United States v. Flynn, 507 F. Supp. 3d at 130-31 (collecting cases denying Rule 48(a) motions).

That said, the government's justification does not warrant dismissal with prejudice. A dismissal with prejudice is a final adjudication of the matter. See Brown v. Amtrak Corp., No. 03-7033, 2003 WL 22433755, at *1 (D.C. Cir. Oct. 27, 2003) (per curiam) ("A dismissal 'with prejudice' is a final judgment on the merits which bars further litigation between the same parties."); see also Reed v. Farley, 512 U.S. 339, 368 (1994) (Blackmun, J., dissenting) ("The dismissal with prejudice of criminal charges is a remedy rarely seen in criminal law, even for constitutional violations."). In the instant case, dismissal with prejudice is particularly inappropriate given the fact that a jury unanimously found Mr. GossJankowski guilty of criminal conduct, including assaulting, resisting, or impeding Capitol Police Officer Morris Moore. See Signed Verdict Form [Dkt. No. 163]. The Court therefore concludes that dismissal should be without prejudice. See United States v. DeCarlo & Ochs, 2025 WL 266308, at *3-4; United

10

States v. Banuelos, Crim. No. 24-0135 (TSC), Order (D.D.C. Jan. 22, 2025) [Dkt. No. 30].

Although the Court has granted the motion to dismiss, neither this dismissal, the dismissal orders issued by other judges of this Court, or the pardons issued by the President will undo the damage done by the insurrectionists on January 6, 2021. Nor will it change the truth of what happen on that day of infamy. As Judge Chutkan aptly put it:

> More broadly, no pardon can change the tragic truth of what happened on January 6, 2021. On that day, "a mob professing support for then-President Trump violently attacked the United States Capitol" to stop the electoral college certification. Trump v. Thompson, 20 F.4th 10, 15 (D.C. Cir. 2021). The dismissal of this case cannot undo the "rampage [that] left multiple people dead, injured more than 140 people, and inflicted millions of dollars in damage." Id. It cannot diminish the heroism of law enforcement officers who "struggled, facing serious injury and even death, to control the mob that overwhelmed them." United States v. Griffin, 119 F.4th 1001, 1004 (D.C. Cir. 2024). It cannot whitewash the blood, feces, and terror that the mob left in its wake. [Trump v. ]Thompson, 20 F.4th at 19. And it cannot repair the jagged breach in America's sacred tradition of peacefully transitioning power.
>
> In hundreds of cases like this one over the past four years, judges in this district have administered justice without fear or favor. The historical record established by those proceedings must stand, unmoved by political winds, as a testament and as a warning.

United States v. Banuelos, Crim. No. 24-0135 (TSC), Order (D.D.C. Jan. 22, 2025) [Dkt. No. 30] at 2.

11

III. CONCLUSION

For the reasons outlined in this Opinion, the United States' Motion to Dismiss Indictment with Prejudice Pursuant to Federal Rule of Criminal Procedure 48(a) [Dkt. No. 230] has been GRANTED in part and DENIED in part.  This case has been DISMISSED without prejudice.

An Order consistent with this Memorandum Opinion was issued on January 22, 2025.  See Order [Dkt. No. 233].

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 24, 2025